**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:19-cv-249-FL**

|  |  |
|---|---|
| MATTHEW BRADLEY,<br><br>        Plaintiff,<br><br>v.<br><br>ANALYTICAL GRAMMAR, INC.,<br><br>        Defendant. | **DEFENDANT ANALYTICAL GRAMMAR, INC.'S APPENDIX TO LOCAL CIVIL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** |

Exhibit 2: Deposition Transcript of Matthew Bradley taken December 12, 2019
(Ex. 1 to Declaration of D. Booth)

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NORTH CAROLINA

WESTERN DIVISION

MATTHEW BRADLEY,                  )
                                  )
     Plaintiff,                   )
                                  )
v.                                ) Case No. 19-cv-249(FL)
                             )
ANALYTICAL GRAMMAR, INC.,         )
                                  )
     Defendant.                   )
                                  )
_____)

DEPOSITION
OF
MATTHEW BRADLEY

     This is the deposition of MATTHEW BRADLEY, taken
pursuant to Notice of the parties and in accordance with the
North Carolina Rules of Civil Procedure before Kathleen M.
Van Voorhis, RPR, at 301 Fayetteville Street, Suite 1400,
Raleigh, North Carolina, on the 12th day of December, 2019,
beginning at 10:00 a.m.

     The reading and signing of this transcript is reserved.

```
 1                    A P P E A R A N C E S

 2

 3

 4   Plaintiff:           Allan IP Litigation
                          409 East Boulevard
 5                        Charlotte, North Carolina  28203
                          Albert Allan, Esq., appearing
 6

 7

 8

 9   Defendant:           Parker Poe Adams & Bernstein, LLP
                          301 Fayetteville Street
                          Suite 1400
10                        Raleigh, North Carolina  27602
                          Catherine Lawson, Esq., appearing
11                        and
                          Sloan Carpenter, Esq., appearing
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

www.NCDepo.com                    Depositions, Inc.
info@NCDepo.com          Serving all of North Carolina          (919) 557-4640
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 3 of 99

```
1                          I N D E X

2

3                    E X A M I N A T I O N S

4

5   EXAMINATION                                          PAGE

6

7   Examination by Ms. Lawson . . . . . . . . . . . . .    5

8

9

10

11                    E X H I B I T S

12                                                       MARKED

13
    Defendant's Exhibit 1  . . . . . . . . . . . . . .     5
14      (Notice of Deposition)
    Defendant's Exhibit 2  . . . . . . . . . . . . . .     9
15      (Superseding Answers and Objections)
    Defendant's Exhibit 3  . . . . . . . . . . . . . .     9
16      (Superceding Objections and Responses)
    Defendant's Exhibit 4  . . . . . . . . . . . . . .    14
17      (Definition)
    Defendant's Exhibit 5  . . . . . . . . . . . . . .    17
18      (The Poke Document)
    Defendant's Exhibit 6  . . . . . . . . . . . . . .    18
19      (Twitter Post)
    Defendant's Exhibit 7  . . . . . . . . . . . . . .    18
20      (Facebook Post)
    Defendant's Exhibit 8  . . . . . . . . . . . . . .    18
21      (Twitter Post)
    Defendant's Exhibit 9  . . . . . . . . . . . . . .    19
22      (Complaint)
    Defendant's Exhibit 10 . . . . . . . . . . . . . .    20
23      (Facebook Terms and Services),
    Defendant's Exhibit 11 . . . . . . . . . . . . . .    22
24      (Dec.17Post.PDF)
    Defendant's Exhibit 12  . . . . . . . . . . . . . .   33
25      (Post)
```

*www.NCDepo.com*               *Depositions, Inc.*
*info@NCDepo.com*        *Serving all of North Carolina*        *(919) 557-4640*
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 4 of 99

```
 1                    E X H I B I T S  (Continued)

 2                                                          MARKED

 3    Defendant's Exhibit 13  . . . . . . . . . . . . .      35
         (BuzzFeed Article)
 4    Defendant's Exhibit 14  . . . . . . . . . . . . .      36
         (Article)
 5    Defendant's Exhibit 15  . . . . . . . . . . . . .      36
         (Unilad Tech Post)
 6    Defendant's Exhibit 16  . . . . . . . . . . . . .      37
         (Twisted Sifter)
 7    Defendant's Exhibit 17  . . . . . . . . . . . . .      37
         (Flip)
 8    Defendant's Exhibit 18  . . . . . . . . . . . . .      39
         (Post)
 9    Defendant's Exhibit 19  . . . . . . . . . . . . .      41
         (Post)
10    Defendant's Exhibit 20  . . . . . . . . . . . . .      43
         (News Article)
11    Defendant's Exhibit 21  . . . . . . . . . . . . .      48
         (Post)
12    Defendant's Exhibit 22  . . . . . . . . . . . . .      49
         (Edit History)
13    Defendant's Exhibit 23  . . . . . . . . . . . . .      49
         (Edit History)
14    Defendant's Exhibit 24  . . . . . . . . . . . . .      55
         (Post)
15    Defendant's Exhibit 25  . . . . . . . . . . . . .      57
         (Copyright Application)
16    Defendant's Exhibit 26  . . . . . . . . . . . . .      57
         (Public Catalog)
17    Defendant's Exhibit 27  . . . . . . . . . . . . .      58
         (Certificate of Registration)
18    Defendant's Exhibit 28  . . . . . . . . . . . . .      58
         (Certificate of Registration)
19    Defendant's Exhibit 29  . . . . . . . . . . . . .      64
         (Answer)
20    Defendant's Exhibit 30  . . . . . . . . . . . . .      74
         (Note)
21    Defendant's Exhibit 31  . . . . . . . . . . . . .      67
         (Email)
22    Defendant's Exhibit 32  . . . . . . . . . . . . .      69
         (Email)
23    Defendant's Exhibit 33  . . . . . . . . . . . . .      71
         (Email)
24    Defendant's Exhibit 34  . . . . . . . . . . . . .      75
         (One Deleted Comment.PDF)
25
```

www.NCDepo.com                    *Depositions, Inc.*
info@NCDepo.com              *Serving all of North Carolina*              *(919) 557-4640*
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 5 of 99

```
 1              Whereupon, at 10:00 A.M.:

 2              MATTHEW BRADLEY,

 3              having been duly sworn,

 4              was examined and testifies as follows:

 5  DIRECT EXAMINATION BY MS. LAWSON:

 6      Q.  All right.  Welcome, Mr. Bradley.  I hope that your

 7  travel went smoothly.

 8      A.  It's all right.

 9      Q.  All right.  First thing we're going to look over is

10  just to confirm your notice of deposition.

11                              (Whereupon, Defendant's 1 is

12                              marked for identification.)

13      Q.  This is the Notice of Deposition that told you you

14  were going to be here today.  I assume that you have seen

15  this?

16      A.  Yes.

17      Q.  And that you're here pursuant to it.  Great.

18          MR. ALLAN:  There was a supplemental that changed it

19  to 10:00 per my request and I do appreciate that

20  consideration, so the record is clear.

21      Q.  Thank you.  All right.  The first thing we're going to

22  do is just go through a couple of background facts and

23  instructions.  Will you first please state your full name for

24  the record?

25      A.  Matthew Joseph Bradley.
```

www.NCDepo.com                 *Depositions, Inc.*
info@NCDepo.com          *Serving all of North Carolina*          (919) 557-4640
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 6 of 99

1    Q.  Have you ever been deposed before?

2    A.  No.

3    Q.  Okay.  So, in this deposition as you see our court

4    reporter is going to be recording all of our back and forth

5    questions and answers so it's important that you give a verbal

6    response to any questions that I ask, that is a yes or no

7    instead of a nod or un-huh.  It makes for a cleaner record.

8    Does that make sense?

9    A.  Yes.

10   Q.  You understand you're under oath this morning?

11   A.  Yes.

12   Q.  You understand that means you're obligated to give

13   complete and truthful answers to my questions?

14   A.  Yes.

15   Q.  Are you aware of anything that might affect your

16   ability to truthfully answer my questions today?

17   A.  No.

18   Q.  All right.  As we go back and forth and get into kind

19   of all of these documents and questions, it's also important

20   that we try not to interrupt each other, again, for the

21   clarity of the record.  Does that make sense?

22   A.  Yes.

23   Q.  Okay.  Great.  If you need to take a break at any

24   point, just go ahead and ask me.  The only restriction on that

25   that I will request that if I have asked a question you have

www.NCDepo.com                    Depositions, Inc.
info@NCDepo.com          Serving all of North Carolina          (919) 557-4640
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 7 of 99

1    to answer that question before we take a break.

2        A.  I understand.

3        Q.  Okay.  All right.  Mr. Bradley, could you please

4    describe your educational background for me?

5        A.  I have an undergraduate degree from Cornell

6    majoring in physics, then a master's degree in mechanical

7    engineering from Penn State University and I was working on a

8    PhD in electrical engineering until I got too busy with

9    work.

10       Q.  When was that?

11       A.  Which?

12       Q.  The PhD.

13       A.  That was after the master's so the master's was in

14   '93, so after that through about '96.

15       Q.  Okay.  So you stopped working on --

16       A.  Pretty much.  I think that was the dates but it has

17   been twenty something years so I might be off by a year or

18   two.

19       Q.  Okay.  Are you currently employed?

20       A.  Yes.

21       Q.  Where?

22       A.  I am a high tech consultant.

23       Q.  Can you describe for me what that means?

24       A.  The easiest way to describe it is to use an example.

25   Do you remember the Motorola StarTac phone?

www.NCDepo.com                    Depositions, Inc.
info@NCDepo.com           Serving all of North Carolina              (919) 557-4640
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 8 of 99

1    Q.  Uh-huh.

2    A.  I built the production line for Motorola for that

3    phone, things like that.  That's probably the easiest way to

4    explain it.  If I get into more details it's not very

5    informative and tends to be boring.

6    Q.  Fair.  Do you do that as a freelancer, contract

7    worker?

8    A.  Contract.

9    Q.  Contract.  Okay.  And how long have you been doing

10   that?

11   A.  Since 1994, full-time since 1998.

12   Q.  And what did you do before that?

13   A.  I was on the faculty at Penn State University.

14   Q.  And before that?

15   A.  I was in school.

16   Q.  Okay.  In any of these prior work experiences or your

17   current work experiences, do you have experience with

18   copyrights?

19   A.  No.

20   Q.  Before the subject matter of this lawsuit, had you

21   ever filed for a copyright?

22   A.  No.

23   Q.  Okay.  All right.  I'm going to hand you your

24   Superseding Answers and Objections to Defendant's First Set of

25   Interrogatories.

www.NCDepo.com                    Depositions, Inc.
info@NCDepo.com          Serving all of North Carolina          (919) 557-4640
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 9 of 99

```
 1                            (Whereupon, Defendant's 2 is
 2                            marked for identification.)
 3      Q.  And then with that also the Objections and Responses
 4   to the First Set of Request for Production of Documents.
 5                            (Whereupon, Defendant's 3 is
 6                            marked for identification.)
 7      Q.  Feel free to take a minute to familiarize yourself
 8   with these.  Have you seen these before?
 9      A.  Yeah.  This one I haven't but this one I'll take a
10   look at to see if I have seen this one.  Okay.  Yeah.  I'm
11   just trying to figure out how these are different.
12      Q.  So, Exhibit 2 is your responses to the
13   interrogatories.
14      A.  Yes.
15      Q.  Exhibit 3 is the responses to the request for document
16   production.
17      A.  Oh, I see.  Yes.  Okay.  I understand now.  Yes, I
18   have seen both of them.
19      Q.  You have seen both of them?
20      A.  Yeah.
21      Q.  Do you remember when you first saw these?
22      A.  It would have been about October 30th or so.
23      Q.  Okay.  How did you go about answering the
24   interrogatories in Exhibit 2?
25      A.  Sat down in front of my computer and typed out answers
```

www.NCDepo.com                    Depositions, Inc.
info@NCDepo.com          Serving all of North Carolina          (919) 557-4640
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 10 of 99

1 to all of them.  For Exhibit 2 I'm trying to think if there

2 was anything else.  I had to look up a couple things on my

3 computer where I had all of the information.  It was all done

4 within an hour.

5    Q.  Okay.

6    A.  Maybe two.

7    Q.  If you'll turn to page three of the responses to the

8 interrogatories you see the large hyperlink in the answer to

9 interrogatory number two?

10    A.  Yes, uh-huh.

11    Q.  That hyperlink is broken when you put it into a web

12 browser.  Do you know if the post for your Facebook post

13 that's the subject matter of the complaint is still live?

14    A.  Yes, it is.

15    Q.  Okay.  Is it still public?

16    A.  I don't know for certain.  I believe it is.

17    Q.  Okay.  I represent to you that we looked, went to look

18 for it on your public Facebook page and it was not there.  So,

19 if that is something that can be confirmed and a fresh link

20 sent as a supplement to the interrogatory responses, that

21 would be helpful.

22    A.  Okay.

23    Q.  However, as you said in your answer to interrogatory

24 number two, when the post was first made, it was public?

25    A.  That's correct.

www.NCDepo.com                    Depositions, Inc.
info@NCDepo.com        Serving all of North Carolina        (919) 557-4640
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 11 of 99

1    Q.   Okay.  Considering the request for production of

2   documents, how did you go about identifying documents that

3   were responsive to those requests?

4    A.   Well, all of the documents, almost all of them at

5   least I can think of right now, were emails so I have them all

6   in a folder that I, because I organized everything that way,

7   and I just grabbed all of those emails, exported them and that

8   was it.

9    Q.   Okay.

10    A.   The couple other ones, I think there were some PDFs

11   that were from different Facebook posts and I just used

12   Facebook to export them to PDFs.  I'm not sure if I remember

13   exactly how I did that, whether I went through Word or not but

14   I didn't do anything very complicated, not very remarkable.

15    Q.   Okay.  So, other than Facebook posts and email files,

16   did you do any other searching for responsive documents?

17    A.   I didn't have any other responsive documents.  All

18   that was in either Facebook or in emails.

19    Q.   All right.  How did you go about searching your

20   Facebook posts for responsive posts or messages or other

21   materials?

22    A.   Basically based on my memory of, first of all, there

23   was the one on the Facebook post itself and then my memory of

24   when I first -- the only other Facebook posts that were

25   involved were around September 15th where I started receiving

www.NCDepo.com                    Depositions, Inc.
info@NCDepo.com          Serving all of North Carolina        (919) 557-4640
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 12 of 99

1  rather strange and insulting posts on my Facebook page for

2  other posts and that was easy to find because I remember the

3  date and I just went through and grabbed those as well.

4  That's all there is to it.

5      Q.  Okay.  So, you were primarily guided by memory?

6      A.  There wasn't much to remember even.

7      Q.  Okay.  How many email accounts do you have?

8      A.  Two primary ones.  One, I probably have some throw

9  away ones like gmail ones I never use.

10     Q.  Which email account did you use to communicate about

11 the subject matter of your complaint?

12     A.  mbradley@bradtech.com.

13     Q.  Did you ever use another or a different email

14 account?

15     A.  Not to the best of my knowledge, no.

16     Q.  Okay.  Did you search that other email account for any

17 potentially responsive emails?

18     A.  No.

19     Q.  What is that other email account primarily used for?

20     A.  At times I have been a part-time adjunct faculty

21 member of Santa Rosa Junior College and it's used for

22 communications about for my department and class work and

23 stuff like that.

24     Q.  Do you use social media apps, messaging apps of any

25 kind to communication?

www.NCDepo.com                    Depositions, Inc.
info@NCDepo.com          Serving all of North Carolina          (919) 557-4640
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 13 of 99

1    A.   Facebook Messenger is the only one I can think of.

2    Q.   Okay.  Did you search Facebook Messenger for any

3  potentially responsive communications?

4    A.   No.  I know there is nothing in there that is

5  responsive.

6    Q.   And is that knowledge based on your memory?

7    A.   Yes.

8    Q.   Do you use any other social media accounts other than

9  Facebook?

10   A.   Can you give me some examples?

11   Q.   Twitter?

12   A.   No.

13   Q.   Instagram?

14   A.   No.

15   Q.   What's App, Tik Tok?

16   A.   I had an account on What's App that I used for talking

17  to some of my clients and I haven't even used it in years.

18   Q.   Okay.  Snapchat?

19   A.   No.

20   Q.   Tumbler?

21   A.   No.

22   Q.   Okay.  Let's talk about the post.  Mr. Bradley, are

23  you familiar with the concept of a meme?

24   A.   Yes.

25   Q.   How would you define a meme?

www.NCDepo.com                    Depositions, Inc.
info@NCDepo.com          Serving all of North Carolina          (919) 557-4640
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 14 of 99

1      A.   Well, I guess I would say it's a picture with some

2    words on it.

3      Q.   Okay.  Do you know what it means when something goes

4    viral?

5      A.   Yes.

6      Q.   How would you define that?

7      A.   Where all of a sudden it's all over the internet and

8    for usually for no explained reason.

9      Q.   What's the point of a meme?

10     A.   I suppose that would depend on the person, the author

11   of the meme.

12     Q.   Okay.

13     A.   So, that's kind of a very open-ended question.  It

14   depends on the meme and it depends on the author.

15     Q.   Can you elaborate?

16     A.   Well, I might make ten memes and have ten different

17   points for them.  Somebody else might make ten different memes

18   and have ten different points for them.  So, that's a very

19   open-ended question and quite frankly it's almost impossible

20   to answer.

21                         (Whereupon, Defendant's 4 is

22                          marked for identification.)

23     Q.   I give you Exhibit 4.  It is a Merriam-Webster print

24   out definition.  You can look on page two at the definition of

25   a meme.

www.NCDepo.com                *Depositions, Inc.*
info@NCDepo.com        *Serving all of North Carolina*        *(919) 557-4640*
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 15 of 99

1      A.   Okay.

2      Q.   So, you see here that it defines a meme as an idea,

3  behavior, style, or usage that spreads from person to person

4  within a culture.  Memes, discrete units of knowledge, gossip,

5  jokes and so on, are to culture what genes are to life.  Just

6  as biological evolution is driven by the survival of the

7  fittest genes in the gene pool, cultural evolution may be

8  driven by the most successful memes.  Mr. Bradley, have you

9  ever shared a meme through social media, primarily Facebook as

10 you said?

11     A.   Yes.

12     Q.   Okay.  Are you generally aware that when people share

13 memes through social media they do it without attribution?

14     A.   I am not aware of that.

15     Q.   Okay.  When you shared memes on your social media, did

16 you know who the original author of the meme was?

17     A.   I assumed that it was whoever was posting it in the

18 first place.  So, I do not, if I am going to share something,

19 I share it with the attribution of the person who I saw it

20 from posted from.

21     Q.   Who you most recently saw it from or from the very

22 first person who posted it?

23     A.   The very first person.

24     Q.   So, when you see a meme you track the entire history

25 of its life on the internet to find the very first instance of

www.NCDepo.com                Depositions, Inc.
info@NCDepo.com         Serving all of North Carolina         (919) 557-4640
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 16 of 99

1    its appearance?

2        A.   I have never seen it more than once, so.

3        Q.   Okay.

4        A.   I have never had to do that.

5        Q.   Okay.  So, when you see a meme, you assume that the

6    person posting that meme is the author and you reposted it?

7        A.   That's correct.

8        Q.   Okay.  Did you ask that person's permission before you

9    posted it?

10       A.   No because every time that I have shared a meme it has

11   been public, so that is not required.

12       Q.   So, you find it significant that a public meme does

13   not require permission for reposting?

14       A.   As long as I am continuing, what's the word I'm

15   looking for, as long as I still retain the information of who

16   it's from.

17       Q.   Can you describe for me what you mean by that?

18       A.   I would take someone else's picture and then remove

19   the information as to who it is from and then share that.

20       Q.   Remove the information from the picture?

21       A.   From the post.

22       Q.   So, you are talking about resharing a post, not a

23   picture?

24       A.   That's correct.  I don't reshare pictures.  I only

25   reshare the post because that has the information on it as to

www.NCDepo.com                    Depositions, Inc.
info@NCDepo.com            Serving all of North Carolina            (919) 557-4640
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 17 of 99

1  who it came from.

2      Q.  Okay.  Thank you.  All right.  What prompted you to

3  make the wrong on many levels meme?

4      A.  I frequently take pictures of things I think are

5  amusing and share them on Facebook.  That's all.

6      Q.  Were you aware of prior memes that had a similar play

7  on imagery and words as the one you ended up creating?

8      A.  I don't know.  I have since seen similar memes when I

9  searched on my own and I don't know if I had seen them before

10  I had done my own or not.

11      Q.  Okay.  We'll just walk through a couple of examples of

12  those pre-existing.

13                      (Whereupon, Defendant's 5 is

14                      marked for identification.)

15      Q.  Here you can see down at the bottom where the full URL

16  is that it shows that this was created on 2012/3/9, that's

17  either going to be probably March 9th and here you can see on

18  that first page it has a image with two plus two equals five

19  on top of a level with the joke this is wrong on so many

20  levels?

21      A.  Uh-huh.

22      Q.  Do you remember if you had ever seen this before

23  December 2017?

24      A.  I have never seen it before today.

25      Q.  Okay.

www.NCDepo.com                Depositions, Inc.
info@NCDepo.com        Serving all of North Carolina        (919) 557-4640
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 18 of 99

1                            (Whereupon, Defendant's 6 is

2                            marked for identification.)

3       Q.   This is Exhibit 6.   Here you see this is a post on

4    Twitter dated August 1st, 2016.   It has several levels with

5    the word wrong written on them.   The caption, rather the post

6    says well this is wrong on so many levels.   Do you remember

7    having seen this prior to December 2017?

8       A.   No, I don't.

9       Q.   Okay.

10                           (Whereupon, Defendant's 7 is

11                           marked for identification.)

12      Q.   This is Exhibit 7.   This appears to be the same

13   picture as the one in Exhibit 6, but different post.   This

14   this one is to Facebook.   Do you remember seeing this prior to

15   your December 2017 post?

16      A.   No, I do not.

17                           (Whereupon, Defendant's 8 is

18                           marked for identification.)

19      Q.   Okay.   The last one, Exhibit 8, again, same picture as

20   Exhibit 6, again on Twitter with a different person.   Do you

21   remember having seen this prior to December 2017?

22      A.   No, I do not.

23      Q.   If you can try to let me finish the question before

24   answering, just to make it easier on our court reporter.

25      A.   Sorry.

www.NCDepo.com                    Depositions, Inc.
info@NCDepo.com          Serving all of North Carolina          (919) 557-4640
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 19 of 99

1    Q.  Okay.  So, you were not aware of any of these prior

2  memes before you created your own image?

3    A.  I have not been aware of them, that's correct.

4    Q.  Okay.  All right.  I'm going to make sure we are all

5  on the same page when we refer to the photograph.  This is the

6  complaint that was submitted in this case.

7                          (Whereupon, Defendant's 9 is

8                          marked for identification.)

9    Q.  Mr. Bradley, you are aware that this is the complaint

10  that you filed in this case?

11    A.  Yes.

12    Q.  If you flip to the back, couple pages from the back,

13  Exhibit A.

14    A.  There?

15    Q.  One more forward.  That one is Exhibit B.

16    A.  I see.

17    Q.  All right.  Mr. Bradley, this is your Exhibit A to

18  your complaint.

19    A.  Uh-huh.

20    Q.  So, this is the photograph that you posted on

21  Facebook, correct?

22    A.  Yes.

23    Q.  Okay.  Do you still have the original photograph on

24  your phone or computer?

25    A.  Yes, I do.

www.NCDepo.com                  Depositions, Inc.
info@NCDepo.com          Serving all of North Carolina          (919) 557-4640
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 20 of 99

1    Q.   Okay.  And you took that photograph yourself, correct?

2    A.   Yes, I did.

3    Q.   Okay.  All right.  So, for the rest of this deposition

4    when I refer to the photograph, Exhibit A to your complaint is

5    what I'm referring to.  Is that understood?

6    A.   Yes.

7    Q.   Okay.  Did you post this photograph anywhere other

8    than Facebook?

9    A.   No.

10   Q.   Why did you post it on Facebook?

11   A.   I often post pictures that I think are funny.

12   Q.   And I believe you already said earlier that the

13   privacy setting when you posted it was to public?

14   A.   Correct.

15   Q.   Why was it public?

16   A.   If my friends want to share, share one of my posts,

17   I'm perfectly fine with that.

18   Q.   Okay.  Are you aware that your conduct on Facebook is

19   governed by the terms and services of Facebook?

20   A.   Yes.

21   Q.   Have you read those terms and services before?

22   A.   I have.

23                          (Whereupon, Defendant's 10 is

24                          marked for identification.)

25   Q.   Okay.  If you look on that first page at section two,

www.NCDepo.com                    Depositions, Inc.
info@NCDepo.com            Serving all of North Carolina              (919) 557-4640
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 21 of 99

1    Sharing your Content and Information, do you see that?  So,

2    heading two, little subheading one, it says that, "For content

3    that is governed by intellectual property rights, like photos

4    and videos, IP content, you specifically give us the following

5    permission, subject to your privacy and application settings:

6    you grant us an non-exclusive, transferable, sub-licensable,

7    royalty-free, worldwide license to use any IP content that you

8    post on or in connection with Facebook.  This IP License ends

9    when you delete your IP content or your account unless your

10   content has been shared with others and they have not deleted

11   it".  Do you agree that that is what that says?

12        A.   I do.

13        Q.   So, these are the terms and conditions that govern

14   your activity on Facebook, correct?

15        A.   Correct.

16        Q.   Okay.  So, you understand that based on that language,

17   you granted a license to the photograph?

18        A.   To Facebook.

19        Q.   Okay.

20        A.   Yes.

21        Q.   Okay.  All right.  Looking at the photograph as it is

22   shown in Exhibit A, so you confirm that this is a picture that

23   was first posted to your Facebook account, correct?

24        A.   Yes.

25        Q.   Okay.  Can you describe the copyright management

www.NCDepo.com                    Depositions, Inc.
info@NCDepo.com           Serving all of North Carolina          (919) 557-4640
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 22 of 99

1   information that identifies you as the photographer of the

2   photograph?

3        A.   There is the -- I'm sorry.  Could you please repeat

4   that question, make sure I understand it.

5        Q.   Can you describe, what on the photograph indicates

6   that you are the photographer?

7        A.   There is the metadata on the photograph itself which

8   identifies me as the photographer, my phone more

9   specifically.

10       Q.   Okay.  Is that metadata included in the Facebook

11  post?

12       A.   As far as I'm aware it is.

13       Q.   Have you confirmed that?

14       A.   No.

15       Q.   Have you produced that metadata?

16       A.   To my legal counsel.

17                          (Whereupon, Defendant's 11 is

18                          marked for identification.)

19       Q.   I'm going to mark this is now the December 17 post.

20  All right.  Mr. Bradley, this is what you produced as the

21  December 17 Post PDF.

22       A.   Yes.

23       Q.   Now, the image that appears in this is not the

24  original image from December 2017, correct?

25       A.   Correct.

www.NCDepo.com                    Depositions, Inc.
info@NCDepo.com          Serving all of North Carolina          (919) 557-4640
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 23 of 99

1    Q.   So, this is what you produced to us in response to our

2    request that you show us the Facebook post and the photograph.

3    Did you produce us metadata from this post that connects it to

4    your authorship?

5    A.   The metadata is part of the photograph itself.  You

6    would have to have the ability to read that metadata to get it

7    off of that.  That's not going to be on a document like

8    this.

9    Q.   So, did you confirm that if somebody on Facebook right

10   clicked on that photograph, that it would show the metadata

11   that you claim identifies you as the author?

12   A.   I did not.

13   Q.   Okay.  Looking at the photograph as it is portrayed in

14   Exhibit A of the complaint, so setting aside the metadata that

15   has not been produced, what about that photograph tells us

16   that you were the author?

17   A.   The photograph itself does not.  It's the post that

18   does, which has my name on it.

19   Q.   Okay.  So, the post, the entire post, not the

20   photograph, but the post is what you claim provides the

21   management information for your copyright?

22   A.   It provides the proof that I am the author of it,

23   yes.

24   Q.   Okay.  But that information is not in the photograph?

25   A.   No.

www.NCDepo.com                    Depositions, Inc.
info@NCDepo.com          Serving all of North Carolina          (919) 557-4640
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 24 of 99

1        Q.  Okay.

2        A.  It is in the metadata of the photograph, but not

3   visible in the photo as it is shown.

4        Q.  Okay.  But today you cannot prove to me that that

5   metadata is either included in the Facebook post or that it

6   has been produced in this case?

7        A.  Again, I provided that to my lawyer.  I do not know if

8   Facebook, if it, Facebook postings preserve the metadata

9   information.  I'm unaware of that.

10       Q.  Okay.

11       A.  It may be, it may not, I don't know.

12       Q.  Okay.  So, other than the metadata that you don't know

13  if whether or not it is included with the photograph when it

14  gets posted to Facebook, does the photograph have your

15  copyright management information within the four corners of

16  the photograph?

17       A.  No, not the original.

18       Q.  Okay.  Correct.  Which is the December 2017

19  photograph?

20       A.  Yes.

21       Q.  All right.  Similarly, that copyright management

22  information is not a watermark on the photograph?

23       A.  No.

24       Q.  You did not put the copyright management information

25  on a sticker and attach it to the photograph before posting it

www.NCDepo.com                  Depositions, Inc.
info@NCDepo.com          Serving all of North Carolina          (919) 557-4640
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 25 of 99

1   to your Facebook?

2       A.  I did not.

3       Q.  The copyright management information was not affixed

4   to the photograph in some way, correct?

5       A.  It was not.

6       Q.  So, if somebody copied the photograph itself, the

7   copyright management information that you claim is in the post

8   would not have been copied with it?

9       A.  That's correct.

10      Q.  So, to your knowledge if somebody copied just the

11  photograph from your Facebook page and posted it somewhere

12  else on Facebook, the copyright management information you're

13  describing would not necessarily be copied with it?

14      A.  That's correct.

15      Q.  So, posting a copy of the photograph without that

16  copyright management information would not require removing

17  the copyright information from the photograph, would it?

18      A.  I mean, from a technical perspective it would not

19  require it.

20          MR. ALLAN:  Just answer the question.

21      A.  I'm just trying to make sure I understood it, that's

22  all.

23      Q.  All right.  Unless you need a break, we're going to

24  start walking through the comments on the post.  Is that okay?

25      A.  We're going to go through all of them?

www.NCDepo.com             Depositions, Inc.
info@NCDepo.com      Serving all of North Carolina      (919) 557-4640
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 26 of 99

1    Q.   Not one by one but the sticky tabs for them.

2    A.   All right.

3    Q.   Okay.  All right.  If you look at the first page of

4    Exhibit 11, see Josh Vallee says, "This is good, I just might

5    have to steal this one"?

6    A.   Right.

7    Q.   Okay.  If you look on the second page you respond to

8    him saying, "Go ahead"?

9    A.   Right.  An explanation, he is my --

10        MR. ALLAN:  There is no question.

11   A.   Okay.

12   Q.   If you look still at that first page to the lower

13   right hand corner of Vallee's post, do you see that little

14   one?

15   A.   Yes.

16   Q.   Is that an indication of a like of his comment?

17   A.   I don't know.

18   Q.   Okay.  We weren't able to confirm whether or not it is

19   a like because the post appears to no longer be public.  So,

20   that is one of the reasons we need a fresh, live link to the

21   post.  Do you remember if you liked his comment?

22   A.   That I liked it, is that a Facebook like?

23   Q.   A Facebook like.

24   A.   I don't remember.

25   Q.   Okay.  If you look at page two, so MB 014, about two

www.NCDepo.com                 Depositions, Inc.
info@NCDepo.com         Serving all of North Carolina          (919) 557-4640
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 27 of 99

1   thirds of the way down, Tonya Liburd says, "Stealing", do you

2   see that?

3       A.  Uh-huh.

4       Q.  Again, it looks like we have an indication that her

5   comment was liked.  Do you remember whether you Facebook liked

6   her comment?

7       A.  I don't recall.

8       Q.  Okay.  All right.  We're going to turn to page MB 026.

9       A.  Okay.

10      Q.  All right.  Right under the image that's there, Joseph

11  Hennessy also commented, "I had to steal this", and it again

12  appears somebody has Facebook liked his comment.  Do you

13  remember if you Facebook liked his comment?

14      A.  I do not.

15      Q.  Okay.  Mr. Bradley, did you read all of these comments

16  when they started coming on to your post?

17      A.  Probably not all of them.

18      Q.  Did you notice that this many people were commenting

19  on your post?

20      A.  Yes.

21      Q.  Did you notice how many people were sharing your

22  post?

23      A.  Yes.

24      Q.  When you first made this post in December 2017, what

25  did you expect would happen?

www.NCDepo.com                    Depositions, Inc.
info@NCDepo.com        Serving all of North Carolina          (919) 557-4640
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 28 of 99

1    A.   As with other posts I have done there, I might get

2   five to ten, maybe fifty at most likes.   Typically that's what

3   usually happens with my posts.   Josh, for example, always

4   tends to like my posts so I wasn't surprised at all he was the

5   first one to like it.

6    Q.   Okay.   Did you expect to do anything else with the

7   meme that you created?

8    A.   At that time, no.

9    Q.   So, you did not expect it to go viral?

10    A.   No.

11    Q.   You did not expect to use it on merchandise of any

12   kind?

13    A.   At that time, no.

14    Q.   So that you expected five to ten, maybe fifty people

15   to like it.   Did you expect people to share it?

16    A.   Maybe a couple.

17    Q.   But you did expect that at least one person might

18   share it?

19    A.   I didn't expect it.   I wouldn't have been surprised.

20    Q.   When did you first realize that your meme was going

21   viral?

22    A.   I believe it was not too long later that night after I

23   posted it when there was a couple, maybe a hundred shares all

24   of a sudden or something like that, that just seemed to be an

25   enormous number for me.

www.NCDepo.com                    Depositions, Inc.
info@NCDepo.com           Serving all of North Carolina          (919) 557-4640
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 29 of 99

1      Q.   Okay.  When did you first see it published by someone

2  other than yourself?

3      A.   December 2018.

4      Q.   So, between December 2017 and December 2018 you were

5  unaware that other places were posting your meme?

6      A.   That's correct.

7      Q.   If we can turn to MB 040.  All right.  You see there

8  is a comment by Angie Fogo Moulton and you responded to it

9  saying, "Sorry, the picture is the joke.  I included the link

10 to my blog because I thought people might enjoy it.  I really

11 didn't expect 100 shares, so this is kind of surprising to

12 me".  Then you have a parenthetical comment.  This was it says

13 that it was one year ago, so presumably that's one year ago

14 from --

15     A.   I believe that is probably not correct because from

16 what I understand Facebook, for example, it would have to be

17 if we looked at it today, December 7th of this year it would

18 still say one year and then if we look at it December 8th then

19 it just goes to two years, but this was shortly after,

20 probably within a week of the original posting.

21     Q.   All right.  Again, if we had the live version of the

22 post we would be able to more easily verify whether that one

23 year mark means December '18 or December '17, so again, if you

24 could figure out where the post still lives that would be

25 helpful in confirming that, but to your memory you believe

www.NCDepo.com              Depositions, Inc.
info@NCDepo.com       Serving all of North Carolina        (919) 557-4640
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 30 of 99

1  that this was still within a week of the December 2017 post?

2     A.  Correct.  Almost all of the comments were within a

3  couple of weeks of the original posting.

4     Q.  Okay.  So, within a week of the original posting you

5  were aware that it was being widely shared?

6     A.  Shared, yes.

7     Q.  Okay.  If you turn the page to 41, this is why I

8  question the timeline of Moulton's comment being one week

9  after, you see here Mick Macklemore making a comment about the

10  edit.  Did you make an edit to your post prior to December

11  2018?

12     A.  Yes.  I put in the link to my blog.

13     Q.  Okay.

14     A.  That's all.  At that point there was 12,000 shares.

15     Q.  Did you look at the shares as they were happening?

16     A.  The first couple of weeks.

17     Q.  So, after that you didn't really follow up on the

18  subsequent shares in your Facebook history?

19     A.  I would look perhaps once a month and they hadn't been

20  changing much after that, it was still at 19,000, some odd

21  number of shares.

22     Q.  So, by changing much you mean the number of shares?

23     A.  The number of shares, yes.

24     Q.  Okay.  Did you go through to look at the individual

25  shares that were happening to see what those ultimate reshares

www.NCDepo.com       Depositions, Inc.
info@NCDepo.com    Serving all of North Carolina    (919) 557-4640
Case 5:19-cv-00249-FL  Document 29-2  Filed 07/17/20  Page 31 of 99

1    looked like?

2       A.   At first I did but with that many shares I didn't

3    bother.

4       Q.   Why?

5       A.   It took too much of my time.

6       Q.   Why did you add the link to your blog to the post?

7       A.   Because I wanted people to read my blog.

8       Q.   All right.  You see here that same thread on page 41

9    between you and Mick Macklemore?

10      A.   Yes.

11      Q.   It says at the bottom of his response to you, view 29

12   more replies, and that's an unexpanded list of replies?

13      A.   Yes.  He just kept insulting me and saying I was

14   sleazy for including my blog link on there and one of my

15   friends, Verna, defended me and he started saying nasty things

16   to her and I said well, she has every right to be here, she's

17   one of my friends, you're not, and that's it.  At which point

18   he blocked me which is why you see the blank.  I don't know

19   why it didn't print out all 29 replies.

20      Q.   Okay.  The rest of those replies are about the post?

21      A.   Yes, about the linking to the blog.

22      Q.   Okay.  Mr. Bradley, what was your response when the

23   meme started going viral?

24      A.   From the Facebook perspective I was pleased.

25      Q.   What about not the Facebook perspective?

www.NCDepo.com             Depositions, Inc.
info@NCDepo.com      Serving all of North Carolina      (919) 557-4640
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 32 of 99

1     A.   Then I was concerned because I wasn't aware that it

2  was so widespread other than the shares on Facebook and I was

3  both a little flattered and a little annoyed that people were

4  stealing it, not sharing it, but literally stealing it because

5  when I see somebody say on Facebook that they're stealing

6  something I assume they mean sharing because that's what

7  typically people say, that's what they do and I was concerned

8  that people were actually stealing it and not sharing it.

9     Q.   Okay.  So, when you hear somebody saying that they're

10  going to steal it, to you that means sharing?

11     A.   Yes.

12     Q.   What's the basis of that belief?

13     A.   Just like my friend Josh, who is my cousin's husband,

14  when he says steal it he means share it.  Other people that I

15  have had say steal it, they mean share it because they

16  actually do share it.  They don't really steal it.

17     Q.   Were all of the people circulating the photograph your

18  friends?

19     A.   No, but I assumed that when since everyone else that I

20  had ever heard say steal it meant share it, I assumed that

21  that was true of all of the rest.

22     Q.   But it was just an assumption on your part?

23     A.   It was.

24     Q.   Okay.  All right.  If we turn to MB 43, so here about

25  half way down we see your friend Josh Vallee commenting

www.NCDepo.com                    Depositions, Inc.
info@NCDepo.com            Serving all of North Carolina            (919) 557-4640
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 33 of 99

1    again?

2        A.   Yes.

3        Q.   "OMG, this got some traction Matthew", and you respond

4    to him saying, "I know, still can't believe it, I am stunned,

5    the good news is I thought of something even better, coming

6    soon"?

7        A.   Yeah.

8        Q.   So, is this an accurate statement that you were

9    stunned in a happy way when it started going viral?

10       A.   Yes.  Again, this is just after, this is still

11   probably around 13,000 shares.

12       Q.   Okay.

13       A.   So, it's still within about a week or two of the

14   original posting.

15       Q.   And then here you see down at the bottom of that back

16   and forth between you and Josh there is another option to view

17   one more reply?

18       A.   Yeah.  I don't remember off hand what that is.

19       Q.   Okay.  So, Mr. Bradley, earlier you said that you

20   believed you first became aware that other mediums were

21   sharing the photograph in December of 2018; is that correct?

22       A.   Yes.  To the best of my knowledge, that is correct.

23       Q.   Okay.  This is now Exhibit 12.

24                        (Whereupon, Defendant's 12 is

25                         marked for identification.)

www.NCDepo.com                    Depositions, Inc.
info@NCDepo.com          Serving all of North Carolina          (919) 557-4640
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 34 of 99

1      Q.  You see that this is a post from you on April 20,

2    2018?

3      A.  Yes, that is true.  I had forgotten that one.

4      Q.  Okay.  Tell me what this post is?

5      A.  Well, my friend Luke Thompson had let me know that my

6    picture was on The Most Clever Puns the Internet Has to

7    Offer.

8      Q.  Why did you share that article?

9      A.  Well, I was pleased that it had been shown somewhere

10   else.

11     Q.  Somewhere else meaning not Facebook?

12     A.  That's correct.

13     Q.  Okay.  If you look at your first comment under that

14   post you say, "Hey, I'm famous, my picture made the list of

15   the most clever puns on the internet, woo hoo"?

16     A.  Yes.

17     Q.  You were excited by this coverage?

18     A.  Granted.

19     Q.  Okay.  If you look at the third comment that you have

20   on that post you say, "About my picture, 'The person who came

21   up with this one definitely leveled up in the pun game'", is

22   that a quote from the article?

23     A.  I believe that is.

24     Q.  Okay.  Since the article said the person who came up

25   with this one, does that mean that the article did not

www.NCDepo.com                 Depositions, Inc.
info@NCDepo.com          Serving all of North Carolina          (919) 557-4640
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 35 of 99

```
 1   identify you as the creator of the meme?
 2       A.  That's correct.
 3       Q.  And yet you still shared this article and celebrated
 4   it?
 5       A.  Yes.
 6       Q.  Okay.  Were you aware of other articles that
 7   celebrated the photograph?
 8       A.  To my knowledge, not until about December of 2018.
 9       Q.  Okay.
10                            (Whereupon, Defendant's 13 is
11                             marked for identification.)
12       Q.  All right.  Exhibit 13 is a BuzzFeed article, 17 Puns
13   That You'll Need to be a Little Clever to Get, posted on
14   January 27, 2018?
15       A.  Uh-huh.
16       Q.  And the puns in the back did not print their images
17   for unknown reasons.  Let's see.  If you look at AG 0036, you
18   can see number six there, this pun, which is just wrong on so
19   many levels?
20       A.  Uh-huh.
21       Q.  With what appears to be the photograph, correct?
22       A.  Correct.
23       Q.  Okay.  And this does not identify you?
24       A.  That is also correct.
25       Q.  In any way?
```

*www.NCDepo.com*                    *Depositions, Inc.*
*info@NCDepo.com*          *Serving all of North Carolina*          *(919) 557-4640*
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 36 of 99

1     A.  Correct.

2     Q.  Do you remember seeing this article?

3     A.  No, I do not.

4     Q.  Okay.

5                 (Whereupon, Defendant's 14 is

6                 marked for identification.)

7     Q.  This is an article from August 26, 2019, The Most

8  Clever Puns The Internet Has To Offer, on page starting on

9  AG 0072 towards the end you can first see at the bottom the

10  caption, that's so wrong, and on the next page appears to be a

11  clipped version of the photograph, correct?

12     A.  Yes.

13     Q.  This does not identify you with the photograph,

14  correct?

15     A.  That's correct.

16     Q.  Okay.  Have you seen this article before?

17     A.  Not to my knowledge, no.

18     Q.  Okay.

19                 (Whereupon, Defendant's 15 is

20                 marked for identification.)

21     Q.  Okay.  So, you see this is a post on Facebook from

22  Unilad Tech?

23     A.  Okay.

24     Q.  And that is the photograph, correct?

25     A.  Yes.

www.NCDepo.com          Depositions, Inc.
info@NCDepo.com    Serving all of North Carolina    (919) 557-4640
Case 5:19-cv-00249-FL  Document 29-2  Filed 07/17/20  Page 37 of 99

1     Q.   With the caption this is wrong on so many levels?

2     A.   Yes.

3     Q.   This does not identify you with the photograph,

4   correct?

5     A.   That's correct.

6     Q.   Do you remember having seen this before today?

7     A.   No, I do not.

8     Q.   Okay.

9                         (Whereupon, Defendant's 16 is

10                        marked for identification.)

11    Q.   This is the Twisted Sifter.  This is an article that

12   was published on September 18, 2019, The Shirk Report on

13   page --

14    A.   51.

15    Q.   Thank you.  That is a picture of the photograph?

16    A.   Uh-huh.

17    Q.   With no connection between you and the photograph,

18   correct?

19    A.   Correct.

20    Q.   Do you remember having seen this before today?

21    A.   No, I do not.

22                        (Whereupon, Defendant's 17 is

23                        marked for identification.)

24    Q.   This is from Flip image and you see this is actually

25   other memes regarding levels?

www.NCDepo.com                Depositions, Inc.
info@NCDepo.com         Serving all of North Carolina        (919) 557-4640
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 38 of 99

1     A.  Uh-huh.

2     Q.  So, this meme is wrong on so many levels on that first

3  page there?

4     A.  Uh-huh.

5     Q.  Do you recall seeing any of these?

6     A.  No.

7     Q.  All right.  You never saw any of those images prior to

8  December, 2017?

9     A.  Not to my knowledge.

10    Q.  Okay.  All right.  So looking at the Exhibits 14, 15,

11  16 and the BuzzFeed article, do any of these articles identify

12  authors of the memes?

13    A.  You mean are you talking about the other pictures?

14    Q.  Uh-huh.

15    A.  I don't know.  I haven't looked at the articles.

16    Q.  Okay.  Do you want to pull out Exhibit 14?

17    A.  I don't see any.

18    Q.  Okay.

19    A.  And I would have to look at each and every one, but I

20  don't see any.

21    Q.  Okay.  That's fine.  Mr. Bradley, since December 2017

22  when you made the wrong on so many levels meme, have you since

23  posted other memes and hoped that they would go viral?

24    A.  Well, according to the definition you have of memes it

25  almost has to go viral for it to be a meme so by that

www.NCDepo.com                    Depositions, Inc.
info@NCDepo.com            Serving all of North Carolina        (919) 557-4640
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 39 of 99

```
 1   definition no because nothing else that I posted on my
 2   personal Facebook pages had that same reaction.
 3       Q.  Have you posted other images with words overlaid in
 4   them in a funny or cleaver way that you intended for people to
 5   share?
 6       A.  Yes.
 7       Q.  Okay.  Go back to the, yeah, full post, MB 058.
 8       A.  Okay.
 9       Q.  About two thirds of the way down you see that you made
10   a comment, "If you liked my previous post check out the latest
11   one, dot dot dot"?
12       A.  Yes.
13       Q.  So, you were encouraging people who had looked at,
14   commented, shared and liked the photograph to follow your
15   other materials?
16       A.  Yes.
17       Q.  And to share, comment, like?
18       A.  Yes.
19       Q.  Okay.  You wanted those other images?
20       A.  Yes.
21       Q.  To be shared and to go viral?
22       A.  Yes.
23       Q.  Okay.
24                            (Whereupon, Defendant's 18 is
25                             marked for identification.)
```

www.NCDepo.com              Depositions, Inc.
info@NCDepo.com        Serving all of North Carolina        (919) 557-4640
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 40 of 99

1   Q. I'm handing you a document marked MB 70. So, this is

2   a post of yours, yes?

3   A. Correct.

4   Q. Okay. So, you posted several photos of a hammer

5   followed by drills with commentary on them?

6   A. Yes.

7   Q. Within this image or this series of images that you

8   posted, did your name appear on those images?

9   A. On the images, no.

10   Q. Okay. Your first comment there on MB 071 says, "As

11   always, please feel free to share"?

12   A. Correct.

13   Q. Okay. And then, if you see further down below,

14   Jennifer Ippoliti says, "Matt, Matt, Matt, have you learned

15   nothing from the so many levels debacle? Watermark those

16   photos, man".

17   A. Uh-huh.

18   Q. Well, then there is 17 replies, I'm not sure if that's

19   above or below your comment, but your second comment to her on

20   this page says, well, your first comment says, "Actually, I

21   copyrighted that photo". Your second comment says, "And I'll

22   do the same here if it takes off"?

23   A. Yes. And I meant immediately, not waiting for it.

24        MR. ALLAN: Wait until there is a question.

25   A. Sorry. Sorry. Sorry.

www.NCDepo.com                *Depositions, Inc.*
info@NCDepo.com          *Serving all of North Carolina*          *(919) 557-4640*
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 41 of 99

1    Q.  Why would you not copyright it immediately?

2    A.  It costs money.

3    Q.  Why would you not put your name in a watermark on the

4    image immediately?

5    A.  I hadn't thought of it.

6    Q.  Why wait until it becomes popular?

7    A.  Again, because copyrighting it would cost money and I

8    just didn't feel like spending money on anything unless

9    somebody liked it, it actually took off.

10   Q.  So, until after it went viral?

11   A.  Correct.

12   Q.  Okay.

13                        (Whereupon, Defendant's 19 is

14                        marked for identification.)

15   Q.  So, this is another post by you?

16   A.  Yes.

17   Q.  Okay.  And this is another pun, Buoys will be Buoys

18   but they're buoys?

19   A.  Yes.

20   Q.  So, this is another meme that you created?

21   A.  Uh-huh.

22   Q.  Are those photographs your photographs?

23   A.  No, they're not.

24   Q.  Okay.  In the drills pictures, the previous exhibit,

25   were those photographs your photographs?

www.NCDepo.com                 Depositions, Inc.
info@NCDepo.com         Serving all of North Carolina        (919) 557-4640
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 42 of 99

1      A.   Yes, they were.

2      Q.   Those ones were.  Okay.  But the photographs on

3    Exhibit 19 are not?

4      A.   No, they're not.

5      Q.   Okay.  This also does not have within those images any

6    association of your name?

7      A.   That's correct.

8      Q.   No watermark claiming them as yours?

9      A.   That's correct.

10     Q.   Okay.  Mr. Bradley, Exhibit 19 was not produced by

11   you?

12     A.   No, it wasn't.

13     Q.   Okay.  Why?

14     A.   I don't understand the question.

15     Q.   Okay.

16     A.   Why wasn't it produced by me?

17     Q.   Uh-huh.

18     A.   I didn't take the pictures.

19     Q.   But you made the post?

20     A.   Yes.

21     Q.   Okay.  Can you explain to me why the fact that you did

22   not take the pictures made you believe that this Facebook post

23   of a meme that you shared was not responsive?

24     A.   At the time I did not understand what the copyright

25   laws were.

www.NCDepo.com                    Depositions, Inc.
info@NCDepo.com          Serving all of North Carolina          (919) 557-4640
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 43 of 99

1    Q.  Can you explain what you mean by that?

2    A.  I didn't understand what could and could not be

3    copyrighted.

4    Q.  What's the impact of that lack of understanding?

5    A.  Well, if anybody had copyrighted these photos, I would

6    be liable for a copyright infringement on those individually,

7    so.

8    Q.  What's the basis for your belief in that?

9    A.  What I have learned about copyright laws since then.

10   MR. ALLAN:  You can answer the question to the extent

11   it doesn't disclose communications you had with counsel.

12   A.  No, that's before what I read in December 2018 about

13   copyright law.

14   Q.  Okay.

15                        (Whereupon, Defendant's 20 is

16                        marked for identification.)

17   Q.  This is not a meme.  This is a news article,

18   correct?

19   A.  Correct.

20   Q.  Okay.  You can turn to page two, see that Tyler Potter

21   commented, "No matter which side you take, it's just wrong on

22   so many levels".  You responded, "It's everywhere now.  I met

23   a guy at work who said that was one of his favorite pictures

24   on the internet.  He uses it all the time.  When he found out

25   I took it, he acted like he was meeting a celebrity idol"?

www.NCDepo.com               Depositions, Inc.
info@NCDepo.com        Serving all of North Carolina          (919) 557-4640
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 44 of 99

1     A.   Yes.

2     Q.   Okay.   How did you respond to the person at work

3  telling you that it's one of his favorite pictures on the

4  internet and that he uses it all of the time?

5     A.   I warned him to be careful of copyright

6  infringement.

7     Q.   You warned him to be careful of copyright

8  infringement?

9     A.   Yes.

10    Q.   So, you say he acted like he was meeting a celebrity

11  idol?

12    A.   Yes.

13    Q.   Was that pleasing?

14    A.   Yes.

15    Q.   Okay.   You can pull out the request for production

16  responses that you gave.   That's Exhibit 3.

17    A.   Okay.

18    Q.   All right.   If you could turn to page nine.   At the

19  top of the page document request number 22 says, asks you to

20  produce documents sufficient to show and identify any

21  photograph or other creative work that Plaintiff created or

22  authored and posted online.

23       MR. ALLAN:   Where are we?

24    Q.   Page nine at the top, number 22.

25       MR. ALLAN:   Okay.

www.NCDepo.com              Depositions, Inc.
info@NCDepo.com       Serving all of North Carolina      (919) 557-4640
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 45 of 99

1     Q.  Documents sufficient to show and identify any

2  photograph or other creative work that Plaintiff created or

3  authored and posted online with the intent, design, aim, hope

4  or purpose that it would become a meme, your response to that

5  RFP was Plaintiff does not have any documents in his

6  possession responsive to request number 22, do you see that?

7     A.  Yes.

8     Q.  Looking again at Exhibit 19?

9     A.  Yes.

10     Q.  Is this a meme?

11     A.  No, not at this point.

12     Q.  What do you think it is?

13     A.  Just a picture that I made.

14     Q.  Okay.  Is it a creative work?

15     A.  Yes.

16     Q.  Okay.  So, it's a creative work that you made?

17     A.  Yes.

18     Q.  Okay.  And you posted it online, yes?

19     A.  Yes.

20     Q.  And did you believe it might become a meme?

21     A.  Maybe, but honestly I have no idea what makes

22  something a meme so I just posted.

23     Q.  Did you hope people would share it?

24     A.  Not really.  I guess I would have been pleased if

25  people shared it but I didn't hope that they shared it.

www.NCDepo.com          Depositions, Inc.
info@NCDepo.com    Serving all of North Carolina    (919) 557-4640
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 46 of 99

1    Q.  Okay.  If you look at the comment on, the first

2  comment on Exhibit 19, Josh Vallee says, "Another attempt?  I

3  don't know if anything will top your first one", and then you

4  respond, "That was lightning in a bottle.  I had many before,

5  I will have more in the future.  If I get lucky again, well,

6  it happens"?

7    A.  Yeah.

8    Q.  That's the hope, that the creative works you make will

9  go viral?

10    A.  No.  It's a statement that if it ever happens again,

11  because I don't know if it ever will.  I'm not trying to

12  necessarily.  I'm just posting things that I think are

13  funny.

14    Q.  You say I will have more in the future?

15    A.  More pictures like that.  I frequently post pictures

16  like that.

17    Q.  Okay.  And that was the basis for why you believe that

18  this post was not responsive to request for production number

19  22?

20    A.  Yeah.  I'm not trying to make anything become, go

21  viral.  I just posted just as much as I had before, just as

22  much as I have since, maybe a little less actually.  I have

23  been busier.

24    Q.  Have you created other creative works similar to

25  Exhibit 19 that you did not produce?

www.NCDepo.com          Depositions, Inc.
info@NCDepo.com     Serving all of North Carolina     (919) 557-4640
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 47 of 99

1    A.  Yes.

2    Q.  How many?

3    A.  Same reason, I don't know how many.  I have been doing

4    it for years on Facebook.

5    Q.  Okay.  So, you're not aware of how many other of these

6    types of creative works?

7    A.  No.  Sometimes I do one or two a week.  Sometimes it's

8    months between them.  So, it's just something I do for fun to

9    share with my friends.  I don't think of them as something I'm

10   trying to make go viral because I don't have any idea how to

11   do that.

12   Q.  Do you hope any of them will be shared?

13   A.  Not hope.  Pleased if they are shared but if they

14   aren't it's like I'm doing if for my friends, like I said.  If

15   they want to share them, fine, if they don't, fine.

16   Q.  You're posting them for public consumption?

17   A.  Yes.

18   Q.  Okay.

19   A.  As I said, if they want to share them, fine.

20   Q.  Okay.  All right.  If you go to page MB 063 of the

21   December 17 Post document, Exhibit 11.

22        MR. ALLAN:  I'm sorry.  What page?

23        MS. LAWSON:  063.

24   Q.  Down at the very bottom of the page, Ricco Wayne

25   Fleming said, "Matthew Bradley, can you post a non meme

www.NCDepo.com                Depositions, Inc.
info@NCDepo.com        Serving all of North Carolina        (919) 557-4640
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 48 of 99

1   version?  It'd be fun to see who gets it without the actual

2   phrase".   And the next page you say, "No problem", and you

3   provide a link to a post?

4       A.  I believe that is the link to the original post before

5   the edits, but I'm not certain.

6       Q.  Okay.  So, this is requesting a link back to the

7   photograph as it appears in Exhibit 2 of your complaint, not

8   the edited version that you posted after December 2018,

9   correct?

10      A.  I believe that's correct, yes.

11      Q.  Okay.

12                          (Whereupon, Defendant's 21 is

13                          marked for identification.)

14      A.  I had forgotten I had even posted this.

15      Q.  All right.  So, this is, to the best of your

16  recollection is this the post that you were linking to in the

17  unmeme'ed version?

18      A.  I believe this is, but the difference is that it does

19  have the copyright information on it.

20      Q.  This is dated December 15th, 2018?

21      A.  Yes.

22      Q.  So, this one has the actual a copyright watermark down

23  at the bottom right hand corner, correct?

24      A.  I don't call it a watermark.  I just call it a

25  copyright.  A watermark is a different thing.

www.NCDepo.com                  Depositions, Inc.
info@NCDepo.com          Serving all of North Carolina        (919) 557-4640
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 49 of 99

1    Q.  Fair enough.  All right.

2                          (Whereupon, Defendant's 22 and 23

3                          are marked for identification.)

4    Q.  All right.  We're going to look at 22 and 23 together.

5    So, Exhibit 22, MB 066 is what you produced as the edit

6    history for the December 2017 post, and then Exhibit 23,

7    AG 0010, is what Analytical Grammar produced as the edit

8    history it found when the post was still public.  Can you

9    explain why your production shows an incomplete edit

10   history?

11        MR. ALLAN:  Objection.  You can answer.

12   A.  As far as I know, it would probably be a Facebook --

13   better off asking Facebook that question.  I have no idea.

14   Q.  Okay.  All right.  So, looking at Exhibit 23, you can

15   see that it first shows this is wrong on so many levels

16   December 8th, 2017 at 5:02 P.M. and the image there is

17   missing, but the image there was the photograph, correct?

18   A.  That's correct.

19   Q.  Then it shows that on December 14th, 2017 at

20   11:31 A.M. you edited it to add wow, I am stunned and then you

21   provide a link to your blog, correct?

22   A.  Correct.

23   Q.  Okay.  And then there is another edit on December

24   14th, 2017, not too long later, where then you add an

25   explanation for why you edited the post's caption, correct?

*www.NCDepo.com*              *Depositions, Inc.*
*info@NCDepo.com*       *Serving all of North Carolina*       *(919) 557-4640*
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 50 of 99

1      A.   Correct.

2      Q.   Okay.  And then we see down on December 14th, 2018 at

3   10:48 P.M. you added a notation, "Please note that this

4   picture is copyrighted.  I appreciate all of you who shared

5   it, very unexpectedly.  Some people, however, are passing it

6   off as their own work.  I took the picture with my phone.

7   This is the original photo, meme added"?

8      A.   Uh-huh.

9      Q.   That was when you substituted the picture that now

10  appears on page one of Exhibit 11, correct?

11     A.   I can verify that.  Exhibit 11.

12     Q.   Yes.  It's the large, it's the post one right there.

13     A.   This one?

14     Q.   Uh-huh.

15     A.   I believe that's correct.

16     Q.   Okay.

17     Q.   What prompted you to change the picture?

18     A.   Well, there are two changes to the picture.  One is

19  adding the words and the other is adding the copyright.  The

20  words, I just thought that some people had commented that I

21  should add the words and I figured while I'm doing that I

22  might as well add that as well.  The copyright is for my own

23  protection.

24     Q.   Okay.  What prompted the change?

25     A.   Which change?

www.NCDepo.com                    Depositions, Inc.
info@NCDepo.com          Serving all of North Carolina          (919) 557-4640
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 51 of 99

1      Q.   The change to the photograph?

2      A.   Which change to the photograph?

3      Q.   Let's take them one by one.  What prompted the

4   addition of the actual, the pun joke?

5      A.   As I said, you just asked that question and I said

6   people suggested that it would be better to have the words in

7   there as well.

8      Q.   Right.  But this was a year later?

9      A.   Yes.

10      Q.   What made you go between December 2017 to December

11   2018 to decide now is the time that I'm going to change the

12   words?

13      A.   That week I didn't have anything to do because of my

14   work situation.  I was also going to be having surgery shortly

15   and I just happened to revisit it that week and took care of

16   it then.

17      Q.   Okay.  Then what prompted the addition of the

18   copyright?

19      A.   I had copyrighted it.

20      Q.   Okay.  So, you had at that point received your

21   registration?

22      A.   No.  I had filed it.

23      Q.   Okay.  What prompted you to file that?

24      A.   To answer that question fully I'm going to start with

25   Dick from accounting, and --

www.NCDepo.com                    Depositions, Inc.
info@NCDepo.com            Serving all of North Carolina            (919) 557-4640
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 52 of 99

1        MR. ALLAN:  Before you give cryptic answers, don't

2   disclose any communications with your attorney.

3        A.   I won't.

4        MR. ALLAN:  Okay.

5        A.   As I said --

6        Q.   If I may interrupt you very quickly, I'm not asking

7   about the substance of any communications with an attorney but

8   if you did talk to an attorney that fact is something you can

9   share.

10       A.   No.  What happened was, as I said, that week I didn't

11  have anything to do workwise and I just happened to do a

12  Google image search and that's when I found out that it was

13  all over the place and I clicked on the first one and it was a

14  Reddit post and it was my photo and somebody had put their,

15  given themselves credit and the first name was Dick from

16  accounting and that annoyed me and at that point I decided to

17  see -- there were two problems there, one is somebody had

18  taken the picture and used it somewhere else without my

19  knowledge, and second of all they had taken credit for

20  themselves.  Both of those annoyed me and so then I started to

21  look into copyrighting it.

22       Q.   Okay.  And then looking again at page MB 13 of that

23  exhibit.

24       A.   Uh-huh.

25       Q.   Exhibit 11, so you have the text superimposed, this is

www.NCDepo.com                Depositions, Inc.
info@NCDepo.com         Serving all of North Carolina           (919) 557-4640
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 53 of 99

1    wrong on so many levels, and down in the right hand corner you

2    have copyright 2018 Matthew J. Bradley?

3        A.  Yes.

4        Q.  The copyright application was not an image of the

5    photograph with that text on it, correct?

6        A.  No.  That is not correct.  It was both with and

7    without the text.

8        Q.  Okay.

9    (Whereupon, a recess was taken.)

10       Q.  Welcome back.  Mr. Bradley, you understand that you

11   are still under oath, correct?

12       A.  Yes.

13       Q.  Okay.  Let's turn back to Exhibit 2, the superseding

14   answers and objections to the first set of interrogatories.

15       A.  Yes.

16       Q.  Okay.  If you can turn to page nine, if can you just

17   confirm for me that that is your signature?

18       A.  Yes.

19       Q.  Okay.  Thank you.  And then if you can turn to page

20   eight, please, excuse me, page six.  I'm sorry.

21       A.  Uh-huh.

22       Q.  All right.  If you can look at interrogatory number 11

23   down towards the bottom.  In your response to that

24   interrogatory you said, "Plaintiff's name was conveyed in

25   connection with the initial publication of the photograph on

www.NCDepo.com                    Depositions, Inc.
info@NCDepo.com           Serving all of North Carolina          (919) 557-4640
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 54 of 99

1    his Facebook page", do you see that?

2        A.   Yes.

3        Q.   Okay.  You are the plaintiff referred to in this

4    response, correct?

5        A.   Correct.

6        Q.   Okay.  Other than your name, do you claim that there

7    is any copyright management information conveyed in connection

8    with the initial publication of the photograph?

9        A.   No.  I agree with you.

10       Q.   Okay.  So, just to confirm some of what you said

11   earlier, there was no copyright tag that appeared in

12   connection with the initial publication of the photograph?

13       A.   Correct.

14       Q.   Sorry.  What?

15       A.   Correct.

16       Q.   Okay.  Was there any author attribution line conveyed

17   in connection with the initial publication of the

18   photograph?

19       A.   The Facebook post itself has my name on it.

20       Q.   Okay.  But not the photograph itself?

21       A.   That's correct.

22       Q.   Okay.  Is there any information that identified you as

23   the photographer conveyed in connection with the initial

24   publication of the photograph?

25       A.   Publication, yes, because it was on my Facebook page

www.NCDepo.com              Depositions, Inc.
info@NCDepo.com         Serving all of North Carolina          (919) 557-4640
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 55 of 99

1    and it had my name on it.

2        Q.  Was there any information that identified you as the

3    photographer on the photograph?

4        A.  No.

5        Q.  Okay.  All right.

6                              (Whereupon, Defendant's 24 is

7                              marked for identification.)

8        Q.  This is the December 16, 2017 post by Analytical

9    Grammar/Grammar Planet that shows the photograph along with

10   the caption this is wrong on so many levels, correct?

11       A.  Correct.

12       Q.  That image that appears there, is there anything that

13   was removed from the photograph?

14       A.  From the photograph, the photograph itself, no.  I

15   can't say whether any metadata was removed or not because I

16   can't tell from this.

17       Q.  So, to your knowledge nothing was removed from the

18   photograph when it was shared here?

19       A.  That's correct.

20       Q.  Sorry.  Can you answer?

21       A.  That's correct.

22       Q.  Thank you.

23           MR. ALLAN:  Let her finish the question.  Take your

24   time.

25       A.  Sorry.

www.NCDepo.com              Depositions, Inc.
info@NCDepo.com        Serving all of North Carolina          (919) 557-4640
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 56 of 99

1      Q.  Okay.  So, you said earlier that in December 2018 you

2   decided to apply for a copyright registration, correct?

3      A.  Yes.

4      Q.  Okay.  You applied for two copyright registrations; is

5   that correct?

6      A.  That is correct.

7      Q.  Okay.  What was wrong with the first application?

8      A.  My legal counsel said that --

9         MR. ALLAN:  Objection and don't say what your legal

10   counsel said.

11     Q.  I'm not asking for what your legal counsel told you.

12   I'm asking for your understanding of why you decided to file

13   for a second application?

14     A.  It was on the advice -- can I say that?

15        MR. ALLAN:  No.

16     A.  No.  I don't know how to answer the question then.

17        MR. ALLAN:  Well, do you know why?  Can we take a

18   break?

19     Q.  I would prefer to finish the answer to the question.

20        MR. ALLAN:  If you can answer the question without

21   disclosing communications that you had with counsel, go ahead

22   and answer the question.  If you can't without disclosing what

23   you talked about with counsel, then I advise you not to answer

24   the question.

25     A.  Then I can't answer the question.

www.NCDepo.com              Depositions, Inc.
info@NCDepo.com        Serving all of North Carolina        (919) 557-4640
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 57 of 99

1    Q.  Okay.  The fact that you spoke with counsel is not

2  privileged, merely the substance.

3        MR. ALLAN:  Well, I think we're talking about the

4  substance.

5    Q.  Okay.  You have no independent knowledge for why you

6  applied for a second copyright application?

7    A.  That is correct.

8    Q.  Okay.  Would you still like to take a break?

9        MR. ALLAN:  I don't think so.  I think we have just

10  covered it.

11    Q.  Okay.

12    A.  Yeah.

13    Q.  Okay.  So we have Exhibit 25.

14                        (Whereupon, Defendant's 25 is

15                        marked for identification.)

16    Q.  Exhibit 25 is a copyright application dated December

17  14th, 2018?

18    A.  Yes.

19    Q.  Okay.  So, this was your application that you sent in

20  on your own?

21    A.  It does appear to be.

22    Q.  Okay.

23                        (Whereupon, Defendant's 26 is

24                        marked for identification.)

25    Q.  Exhibit 26, this is the public catalog of the

www.NCDepo.com          Depositions, Inc.
info@NCDepo.com      Serving all of North Carolina      (919) 557-4640
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 58 of 99

1  copyright registration Wrong on Many Levels, correct?

2      A.  Correct.

3                          (Whereupon, Defendant's 27 is

4                          marked for identification.)

5      Q.  Exhibit 27, this is the Certificate of Registration,

6  correct?

7      A.  That is correct.

8      Q.  Okay.  You stated on here this was not a work made for

9  hire and that you are the author, correct?

10     A.  That is correct.

11     Q.  Okay.

12                         (Whereupon, Defendant's 28 is

13                         marked for identification.)

14     Q.  Exhibit 28 is a Certification of Registration marked

15  VA 2-133-725, correct?

16     A.  Correct.

17     Q.  It is dated as the Effective Date of Registration is

18  January 3rd, 2019, correct?

19     A.  Correct.

20     Q.  Okay.  The Title of Work is 12082017knives.  Did you

21  select that title?

22     A.  No, I did not.

23     Q.  Okay.  This identifies you as the author of the

24  photograph, correct?

25     A.  Correct.

www.NCDepo.com              *Depositions, Inc.*
info@NCDepo.com        *Serving all of North Carolina*        *(919) 557-4640*
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 59 of 99

1    Q.  Okay.  Do you recall what you intended to do with this

2  copyright registration?

3    A.  This, the first or the second?

4    Q.  The second.

5    A.  That was part of the whole copyright procedure so I

6  could defend my work.

7    Q.  Okay.  Did you intend to make T shirts with this

8  copyright registration?

9    A.  I have thought about it.

10   Q.  When did you think about it?

11   A.  Probably a year and a half ago but I can't say for

12  certain.

13   Q.  Okay.  So, you testified earlier that you did not

14  intend to do anything with the photograph in December of 2017,

15  correct?

16   A.  At that point, yes, that's correct.

17   Q.  So, at some point in time you thought you might do

18  something with it?

19   A.  Yes.

20   Q.  Okay.  What prompted this decision?

21   A.  The fact that there were 20,000 shares.

22   Q.  Okay.

23   A.  Approximately.

24   Q.  Why T shirts?

25   A.  I had done T shirts for a family reunion so I knew

www.NCDepo.com                Depositions, Inc.
info@NCDepo.com         Serving all of North Carolina         (919) 557-4640
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 60 of 99

1    something about how to do them so I thought that would be good

2    since I knew something about it but that's the only thing that

3    came to mind.

4        Q.   Have you ever made T shirts for public sale before?

5        A.   Public sale before this, yes.

6        Q.   When was that?

7        A.   In either, yeah, November of 2019.

8        Q.   So, not prior to December 2018?

9        A.   No, that is not correct.  I had also done some several

10   years ago with CafePress for a couple different things that I

11   thought were funny.

12       Q.   Can you describe those T shirts to me, please?

13       A.   At this point, no, I cannot.  I do not remember

14   them.

15       Q.   But you believe that several years ago you used

16   CafePress to make T shirts?

17       A.   I didn't make any because I didn't sell any, so I made

18   them available for sale.

19       Q.   Okay.  So, have you ever sold T shirts for public

20   purchase?

21       A.   Most recently, yes.

22       Q.   Okay.  What was that?

23       A.   The fires that happened in northern California, they

24   were stopped a quarter of a mile from my house so I made

25   T shirts for a fundraiser for Cal Fire.

www.NCDepo.com                  Depositions, Inc.
info@NCDepo.com          Serving all of North Carolina          (919) 557-4640
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 61 of 99

```
 1       Q.   Okay.   When was that?

 2       A.   This would be in November of 2019.

 3       Q.   Okay.  So, you said that the idea for T shirts with

 4   the photograph occurred to you about a year and a half ago?

 5       A.   Yes.

 6       Q.   So, prior to November 2019?

 7       A.   Right.

 8       Q.   So, at the time that this application was made, you

 9   had never sold T shirts before, correct?

10       A.   That's correct.

11       Q.   Have you made any T shirts with the photograph?

12       A.   Not yet.

13       Q.   Have you taken any steps in order to sell T shirts

14   with the photograph?

15       A.   Yes.

16       Q.   Can you describe those steps for me, please?

17       A.   I learned how to set up a Custom Ink account for the

18   T shirts I described about Cal Fire.

19       Q.   So, you have established an account?

20       A.   Yes.

21       Q.   Have you uploaded the photograph to that account?

22       A.   Not yet.

23       Q.   Okay.  You did not disclose any of that in your

24   interrogatories.  Is there a reason?

25       A.   I believe it is in the interrogatories where I talk
```

www.NCDepo.com              Depositions, Inc.
info@NCDepo.com       Serving all of North Carolina              (919) 557-4640
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 62 of 99

1   about how I have looked at doing the Custom Ink.

2       Q.  Okay.  Did you intend to sell the photograph through

3   the medium of T shirts via third-party Custom Ink as your

4   response to interrogatory number four in Exhibit 2, is that

5   what you're referring to?

6       A.  I believe so, yes.

7       Q.  Okay.  You did not disclose that you have an actual

8   account with them yet, correct?

9       A.  When I answered those interrogatories I had not set up

10  the account yet.

11      Q.  When did you set up that account?

12      A.  A couple days after actually I had answered the

13  interrogatories because that was when I, yes, after we moved

14  back in after the evacuation from the fires.

15      Q.  If you can pick up Exhibit 2, please, and go to page

16  nine, do you see that that verification page is dated December

17  6, 2019, correct?

18      A.  That's correct.

19      Q.  Okay.  December 6, 2019 is after November 2019,

20  correct?

21      A.  That's correct.

22      Q.  Okay.  So, as of December 6, 2019 when you verified

23  that the answers in this interrogatory request were true and

24  complete, had you already created a Custom Ink account?

25      A.  Yes, I had.

www.NCDepo.com                    Depositions, Inc.
info@NCDepo.com            Serving all of North Carolina              (919) 557-4640
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 63 of 99

1    Q.   Okay.  Why did you verify -- why did you not disclose

2  that as of the date of your verification?

3    A.   I believe the response that I had given was

4  sufficient, that I had been looking into Custom Ink.  I didn't

5  give all of the details to it but I didn't think the details

6  of having set up a Custom Ink account was relevant.

7    Q.   Okay.  Mr. Bradley, when did you respond to these

8  interrogatories?

9    A.   Let's see.  I received them it would be I believe it

10  was the first Sunday in November.

11    Q.   Okay.

12    A.   It might have been the second Sunday.

13    Q.   Do you recall making changes to the interrogatory

14  responses?

15    A.   Yes.  I made one change because I left off one word.

16    Q.   Okay.  Do you remember making any changes after last

17  Thursday?

18    A.   Yes.  It was one word.

19    Q.   Mr. Bradley, you see that this Exhibit 2 is titled

20  Plaintiff Matthew Bradley's Superseding Answers and Objections

21  to Defendant's First Set of Interrogatories?

22    A.   Yes.

23    Q.   Okay.  Do you understand that you have submitted two

24  sets of responses to these interrogatories?

25    A.   I understand you are saying that.

www.NCDepo.com                    Depositions, Inc.
info@NCDepo.com          Serving all of North Carolina          (919) 557-4640
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 64 of 99

1    Q.  Okay.  Do you recall seeing two different sets of

2    interrogatory responses?

3    A.  That were submitted to you?

4    Q.  Uh-huh.

5    A.  No, I do not.

6    Q.  Okay.  So, you do not remember seeing a new set of

7    interrogatory responses that were given to you to sign a

8    verification page for last Thursday or Friday?

9    A.  Yes, but I did not know that they were submitted to

10   you, the first set.

11   Q.  Okay.  So, I'm going to ask you to please look through

12   these responses that are here in Exhibit 2, just confirm to me

13   that when you signed that verification you had actually seen

14   every single one of these responses because some of them are

15   materially different from the first set that was produced?

16   A.  Yes, I have seen them and that is what I fixed with I

17   believe the one word.

18   Q.  Okay.  And we can get the original set that was

19   produced.  More than one word was changed.

20   A.  I don't know if you can or not.

21   Q.  Okay.  Can we take a break?

22   (Whereupon, a recess was taken.)

23   Q.  Okay.  Thank you for taking that moment.

24                              (Whereupon, Defendant's 29 is

25                              marked for identification.)

www.NCDepo.com                    Depositions, Inc.
info@NCDepo.com            Serving all of North Carolina          (919) 557-4640
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 65 of 99

1    Q.  Mr. Bradley, you will see that Exhibit 29 is titled

2   Plaintiff Matthew Bradley's Answers and Objections to

3   Defendant's First Set of Interrogatories, where as Exhibit 2

4   identifies that as the superseding answers and objections,

5   correct?

6    A.  Yep.  Correct.

7    Q.  Okay.  Make sure we're on the same page here.  You

8   mentioned a moment ago that you were not aware that this first

9   document of Exhibit 29 was produced; is that correct?

10    A.  No.  I said I wasn't aware that you had it.

11    Q.  Okay.  Fair enough.  So you were not aware that it had

12   been sent to counsel for defendant?

13    A.  Correct.

14    Q.  Okay.  If you can please look at page seven of both

15   Exhibit 2 and Exhibit 29?

16    A.  Okay.

17    Q.  All right.  If you look at interrogatory number 13, it

18   asks you to describe the fee arrangement between you and

19   Liebowitz Law Firm, PLLC, Clements Bernard Walker, and Allan

20   IP Litigation, and identify the payer of fees and costs for

21   legal services in connection with this action, and then you

22   see on Exhibit 29 that the answer is, "Plaintiff objects to

23   interrogatory number 13 on grounds of attorney/client

24   privilege.  Accordingly, no further notice is required",

25   correct?

www.NCDepo.com              Depositions, Inc.
info@NCDepo.com        Serving all of North Carolina        (919) 557-4640
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 66 of 99

1    A.   That's correct.

2    Q.   All right.  Then if you can look over at the

3  superseding responses, Exhibit 2, same interrogatory number

4  13, you can see the response now to interrogatory number 13

5  says, "Plaintiff has retained Liebowitz Law Firm, PLLC, the

6  firm, to enforce his copyrights under a contingency fee

7  arrangement, the Firm advances all costs associated with the

8  litigation and then deducts such costs from the proceeds of

9  litigation", correct?

10    A.   Correct.

11    Q.   Did you make that change?

12    A.   That's an attorney/client privilege I believe.

13         MR. ALLAN:  She just asked if you made that change.

14  That's a yes or no.

15    A.   Okay.  I was making sure I understood.  No, I did

16  not.

17    Q.   Okay.  Were you aware of that change?

18    A.   Yes.

19    Q.   Okay.  Thank you.  Okay.  Let's go back to T shirts.

20  How has Analytical Grammar's post impacted your efforts to

21  sell T shirts?

22    A.   It has not.

23    Q.   Okay.  Because you had not yet made efforts to sell

24  T shirts?

25    A.   That's correct.

www.NCDepo.com                    Depositions, Inc.
info@NCDepo.com          Serving all of North Carolina          (919) 557-4640
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 67 of 99

1      Q.   Okay.  When did you first contact somebody asking them
2   to remove the photograph from the internet?
3      A.   I believe that would have been December 2018.
4      Q.   Okay.  So, you don't recall any earlier incident of
5   asking somebody to remove the photograph?
6      A.   I do not recall.
7      Q.   Okay.

8                            (Whereupon, Defendant's 30 and 31
9                             are marked for identification.)

10     Q.   Exhibit 30 and 31 are emails you sent, one to
11   imgur.com and the other to Reddit, correct?
12     A.   That's correct.
13     Q.   The imgur email is dated December 14th and the Reddit
14   email is dated December 17th, correct?
15     A.   Correct.
16     Q.   Okay.  Do you recall any other emails you sent to
17   third parties prior to these two?
18     A.   Emails, no, I do not recall any emails.
19     Q.   Do you recall any other forms of communications?
20     A.   There were a couple around the same time.  There were
21   a total of five.
22     Q.   Who were they to?
23     A.   I don't recall.
24     Q.   What was their format?
25     A.   The format of what?

www.NCDepo.com              Depositions, Inc.
info@NCDepo.com         Serving all of North Carolina         (919) 557-4640
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 68 of 99

1      Q.   The format of those communications?

2      A.   Their web page had a comment submission form.

3      Q.   Did you receive a confirmation from those web pages?

4      A.   No, I did not.

5      Q.   Okay.  You don't recall what those other three

6   websites were?

7      A.   I do not recall what they are, what they were,

8   no.

9      Q.   Okay.  Do you remember when you made them?

10      A.   It would have been about the same time as these ones,

11   December 2018.

12      Q.   What did you do to try to identify those other three

13   web pages?

14      A.   I had done a Google image search and they came up.

15      Q.   Okay.  What efforts did you make after receiving the

16   request for production of documents and interrogatories to

17   remember or identify those other three web pages?

18      A.   I have them in a Word document and I sent that to my

19   attorney.

20      Q.   You had a Word document with five different web pages

21   you contacted?

22      A.   Three other ones.  These two are --

23      Q.   Three in addition to imgur and Reddit?

24      A.   Yes.

25      Q.   Okay.  That was not produced and we need to see that.

www.NCDepo.com                    Depositions, Inc.
info@NCDepo.com           Serving all of North Carolina          (919) 557-4640
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 69 of 99

1          (Whereupon, Defendant's 32 is

2          marked for identification.)

3     Q.  All right.  Exhibit 32 is a response you received from

4   Reddit legal support and then your response to it as well?

5     A.  Yes.

6     Q.  Did you receive any other responses to those total of

7   five inquiries that you sent?

8     A.  Not that I'm aware of.

9     Q.  Okay.  Did you follow up with any of those five?

10    A.  Directly, no.

11    Q.  Okay.  So, between December of 2018 and the present,

12  you have not followed up with any of those?

13    A.  No.  Directly with them, no.

14    Q.  Okay.  So, you have referred them to counsel?

15    A.  Correct.

16    Q.  All five of them?

17    A.  Yes.

18    Q.  Okay.  You still cannot remember the other three?

19    A.  I don't remember off hand, no, I don't.

20    Q.  Okay.  And you don't recall whether any of the five,

21  other than this response from Reddit, responded?

22    A.  If I recall correctly one of the other ones did

23  message me a chat message saying that they would remove it,

24  but I may be mistaken at that point.  I may be mistaken.

25    Q.  Okay.  Your post, the photograph, excuse me, was

www.NCDepo.com                    Depositions, Inc.
info@NCDepo.com          Serving all of North Carolina          (919) 557-4640
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 70 of 99

1  shared many more than five times in five places, correct?

2     A.  As far as I know, it was shared from my Facebook page,

3  that's what I know, is 20,000 times and now I see on the

4  Analytical Grammar one it was shared 13,000 times.  Those are

5  the only places where I know that it has been shared.

6     Q.  Okay.  You're referring to the Facebook post being

7  shared on Facebook, correct?

8     A.  Correct.

9     Q.  Okay.  The photograph, you stated that you did a

10  Google image search?

11     A.  Yes.

12     Q.  And saw that the photograph was showing up on many,

13  many websites separate from Facebook, correct?

14     A.  Yes.

15     Q.  More than five?

16     A.  Yes.

17     Q.  Okay.  Did you reach out to every single one of those

18  organizations?

19     A.  No.

20     Q.  Okay.  Did you reach any licensing agreements with any

21  third parties to use the photograph?

22     A.  No.

23     Q.  Did you reach any other type of agreement with third

24  parties to use the photograph?

25     A.  No.

www.NCDepo.com          Depositions, Inc.
info@NCDepo.com     Serving all of North Carolina     (919) 557-4640
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 71 of 99

1    Q.  Other than the five web pages you have already

2    identified, did you reach out to any other third parties to

3    attempt to arrange an agreement or license for use of the

4    photograph?

5    A.  Not that I recall.

6    Q.  Okay.  When did you decide to sue Analytical Grammar?

7    A.  I believe that's in the response.  The date on it I

8    believe was June of 2019.  I know it's in the interrogatories.

9    I can't remember the exact date but I did have an email when I

10   responded to them which gave the time stamp on there.

11                          (Whereupon, Defendant's 33 is

12                          marked for identification.)

13   Q.  Is that the email you're remembering?

14   A.  Yes.  June 2019, that's correct.

15   Q.  This is not an email from you, correct?

16   A.  No.  This is the email that was sent from my law firm,

17   my legal counsel.

18        MR. ALLAN:  This was sent by your legal counsel to

19   you?

20   A.  Yes.

21        MR. ALLAN:  Okay.  This shouldn't -- I'm going to ask

22   to have this attorney/client privileged information.

23   Q.  Well, let me ask this, were they your legal counsel at

24   the time you received this?

25   A.  Yes.

www.NCDepo.com                    Depositions, Inc.
info@NCDepo.com           Serving all of North Carolina          (919) 557-4640
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 72 of 99

1    Q.  You had already hired them when you received this

2    email?

3    A.  I already said yes.

4    Q.  Okay.  How did you learn about Mr. Liebowitz?

5    A.  Google search.

6    Q.  What did you search?

7    A.  DRM attorney I believe.

8    Q.  Okay.  What did that mean to you?

9    A.  Digital rights management attorneys.

10   Q.  What were you looking for in an attorney?

11   A.  Someone who would take care of things like this.

12   Q.  Define like this?

13   A.  Like those first five.  I just didn't want to do it on

14   my own and so I wanted someone to take care of it for me.

15   Q.  Okay.  When did you decide to hire counsel or to

16   research counsel first?

17   A.  December 2018 shortly after I sent those five, after

18   the copyright and after I sent those five companies emails or

19   messages.

20   Q.  Okay.  Did you spend those six months in between

21   December 2018 and June 10, 2019 researching?

22   A.  I'm not sure I understand your question.  I did other

23   things.  I mean, not the entire six months.  I occasionally

24   looked into it but I essentially let the law firm take care of

25   it.

www.NCDepo.com                    Depositions, Inc.
info@NCDepo.com          Serving all of North Carolina              (919) 557-4640
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 73 of 99

1     Q.  Yes, but so in between December 2018 and June 10,

2  2019, did you look at other law firms?

3     A.  No.

4     Q.  Okay.  What were you looking for in counsel?

5     A.  Someone who would take care of this for me.

6     Q.  Okay.  What does take care of this for you mean to

7  you?

8     A.  Pursue any legal remedies that were appropriate.

9     Q.  Okay.  Why pursue Analytical Grammar?

10     A.  Because it was suggested as one of the, one of the

11  places that infringed on my copyright.

12     Q.  Were you aware of Analytical Grammar before this June

13  10th email?

14     A.  No.

15     Q.  Have you initiated lawsuits against anyone else for

16  use of the photograph?

17     A.  They have been initiated.

18     MR. ALLAN:  Answer the question.

19     A.  Okay.  Just making sure.

20     MR. ALLAN:  Listen to the question.  Just answer the

21  question.

22     A.  Yes.

23     Q.  Okay.  How many?

24     A.  I don't know off hand.

25     Q.  Fewer than ten?

www.NCDepo.com         Depositions, Inc.
info@NCDepo.com    Serving all of North Carolina    (919) 557-4640
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 74 of 99

1    A.  Yes.

2    Q.  Okay.  Are you, were you aware of the defendants in

3    those lawsuits prior to notification from any third party?

4    A.  No.

5    Q.  Okay.  As you saw in Exhibit 2, the superseding

6    interrogatory responses, interrogatory 13 --

7        MR. ALLAN:  Before we get off topic, based upon what I

8    have heard, he indicated that he was represented by

9    Mr. Liebowitz at the time of this email so I'm going to ask

10   that we claw back document MB 087.

11       MS. LAWSON:  Understood.  We'll have to confirm with

12   the privilege log that was produced in the case just to check

13   that time line, but if that's true, of course.

14   Q.  So, Exhibit 2, the interrogatory responses, you saw

15   that one of the changes was to interrogatory 13.  So, you

16   understand that you have a contingency fee arrangement,

17   correct?

18   A.  Correct.

19   Q.  Okay.  What is your understanding of what that

20   means?

21   A.  Contingency fees, for example, there is a certain

22   amount of, for example, if the case goes forward and a certain

23   amount of money is settled on or set by the courts, then the

24   fee, there is certain fees that come out of that and then a

25   percentage goes to the attorney and a percentage goes to me.

www.NCDepo.com                    Depositions, Inc.
info@NCDepo.com          Serving all of North Carolina          (919) 557-4640
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 75 of 99

1     Q.  Okay.  What is the split that you have agreed to?

2          MR. ALLAN:  Objection.  I'm going to advise you not to

3     answer that on the grounds it's attorney/client

4     communication.

5          MS. LAWSON:  Fee arrangements are typically in the 4th

6     Circuit allowed to be disclosed and held to be not privileged.

7          MR. ALLAN:  Can you show me something on that?  You

8     may be right.  I don't come across this as an issue typically,

9     so.

10         MS. LAWSON:  We'll check into that.

11                              (Whereupon, Defendant's 34 is

12                              marked for identification.)

13    Q.  You produced Exhibit 34 identifying it as August 2019

14    One Deleted Comment.  What is this?

15    A.  Someone, a supporter of Analytical Grammar had left a

16    very nasty remark there and I was attempting to recreate it.

17    I thought I had.  I had not so you can't really see what it

18    is.

19    Q.  Okay.  This was a post that you made?

20    A.  A share I had made from Blanca Perla.

21    Q.  Got you.  You said that somebody from Analytical

22    Grammar made a comment?

23    A.  No.  A supporter.

24    Q.  A supporter.

25    A.  I believe it's a supporter just because of the

www.NCDepo.com              Depositions, Inc.
info@NCDepo.com        Serving all of North Carolina         (919) 557-4640
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 76 of 99

1    language.  I believe she even said something about Analytical

2    Grammar.  I can't remember the exact words.

3        Q.  Okay.

4        A.  And I was annoyed and deleted it.

5        Q.  Do you believe that this person is associated with

6    Analytical Grammar?

7        A.  I don't know.

8        Q.  Okay.  You stated in your complaint, I believe in your

9    interrogatories which, yes, if you can go to page six of

10   Exhibit 2?

11       A.  Okay.

12       Q.  If you look at your response to interrogatory 9, you

13   say that although Plaintiff cannot state with certainty about

14   their relation to the Defendant, Plaintiff has received

15   numerous insulting remarks from people who he assumes are

16   favoring the Defendant.  What is the basis for that

17   assumption?

18       A.  Frequently these remarks mention Analytical Grammar.

19       Q.  Okay.  Do you have any basis to believe that they are

20   associated with Analytical Grammar?

21       A.  Associated, what do you mean by associated?

22       Q.  That they are personally connected to Analytical

23   Grammar.  Let me ask it a different way.  Do you have any

24   basis to believe that Analytical Grammar's employees have been

25   posting insulting remarks on your Facebook?

www.NCDepo.com              Depositions, Inc.
info@NCDepo.com        Serving all of North Carolina        (919) 557-4640
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 77 of 99

1    A.  No.

2    Q.  Do you have any basis to believe that relatives of

3  employees of Analytical Grammar have been posting on your

4  Facebook?

5    A.  I don't know.  One way or the other, I do not know.

6    Q.  So, you have no basis for an affirmative belief?

7    A.  No.  No.  No.

8    Q.  Do you have any basis for the belief that customers of

9  Analytical Grammar are posting on your Facebook?

10   A.  Yes because some of the remarks I have seen have

11  referenced something like that.

12   Q.  Referenced that they were customers of Analytical

13  Grammar?

14   A.  I believe so.

15   Q.  Okay.  Do you know where those comments are?

16   A.  Yes.

17   Q.  Where?

18   A.  On Analytical Grammar's GoFundMe Facebook page.

19   Q.  Okay.  So, not on your Facebook page?

20   A.  That's correct.

21   Q.  Okay.  So, you are not aware of any customers of

22  Analytical Grammar posting insulting comments on your Facebook

23  page?

24   A.  No, that's not correct.  What I'm saying is they would

25  say they were customers, if I recall correctly, but they would

www.NCDepo.com              Depositions, Inc.
info@NCDepo.com        Serving all of North Carolina        (919) 557-4640
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 78 of 99

1    say something about the fact that they were customers on

2    Analytical Grammar's web page and then they would comment on

3    mine.

4         Q.   The same people?

5         A.   I believe so.

6         Q.   Okay.  Have you identified those people in your

7    production?

8         A.   No.  I didn't think it was relevant.

9         Q.   Interrogatory number 9 asks you to describe with

10   particularity all communications you have had with third

11   parties related to the photograph, Defendant and/or this

12   action, and you're telling me that there are comments that

13   have been made on your Facebook, so communications?

14        A.   Yes.

15        Q.   From people you believe to be customers that you have

16   not, of Analytical Grammar, that you have not identified?

17        A.   That's correct.

18        Q.   Okay.  So, when your response to interrogatory number

19   9 does not actually name anybody or point to any examples in

20   your production of individuals who have said that that you

21   believe are customers, that answer to that interrogatory

22   number 9 is not true?

23             MR. ALLAN:  Objection.

24        A.   No.  No, that's not true.

25        Q.   Okay.  Why is it not true?

www.NCDepo.com                Depositions, Inc.
info@NCDepo.com         Serving all of North Carolina         (919) 557-4640
Case 5:19-cv-00249-FL  Document 29-2  Filed 07/17/20  Page 79 of 99

1      A.   Because, as I have said, they left the remarks on my

2    web page, my Facebook page, and looking at the Analytical

3    Grammar page, I saw that they were customers of Analytical

4    Grammar or friends of Analytical Grammar or whatever.  They

5    were third parties and I produced all of that, including the

6    one deleted comment which that's where it was.

7      Q.   Okay.  But the deleted comment does not show anybody

8    making an insulting comment to you?

9      A.   No, it doesn't but I was trying to produce every place

10   where I had seen remarks like that.

11     Q.   Okay.  What else have you produced that shows the

12   insulting comments that you're referring to?

13     A.   They're in the comments on the drills, for examples,

14   and also in the original posting.  I believe that you have

15   that as the large exhibit.  It would be maybe Exhibit 3 I

16   believe.

17     Q.   Yes.  Mr. Bradley, I am aware that there are comments

18   that could be perceived as insulting potentially.

19     A.   Yes.

20     Q.   What I'm asking you is have you actually described the

21   individuals that you believe have done that and described the

22   basis of your belief for their connection to Analytical

23   Grammar?

24     A.   I believe I have gone over that.  I believe that I

25   have seen the same names on Analytical Grammar's Facebook page

www.NCDepo.com                 Depositions, Inc.
info@NCDepo.com          Serving all of North Carolina        (919) 557-4640
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 80 of 99

1  and then commenting on mine and they also left very insulting

2  remarks on the Analytical Grammar page about me.

3      Q.  Okay.  If you can again look at page six of the

4  interrogatory?

5      A.  Yes.

6      Q.  Look at response to interrogatory number 9.

7      A.  Yes.

8      Q.  Does that response describe any of the information

9  that you just conveyed to me?

10     A.  The part that's on my Facebook page because it says

11 particularly all communications you have had with third

12 parties.  That's all included in those documents.

13     Q.  Okay.  So, other than the documents you have produced

14 to us, you are not aware of any of those communications?

15     A.  There are no other communications.  No one has

16 communicated in any way with me.

17     Q.  Okay.  And the exclusive basis for your belief that

18 some of those are customers of Analytical Grammar is a

19 connection you have independently made between looking at

20 posts on Analytical Grammar's Facebook page and your posts?

21     A.  Yes.

22     Q.  Okay.

23     A.  And I may be wrong.

24     Q.  Okay.

25     A.  It's just my belief.

www.NCDepo.com                    Depositions, Inc.
info@NCDepo.com          Serving all of North Carolina          (919) 557-4640
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 81 of 99

1      Q.  Okay.  All right.  Let's take a seven minute break.

2   (Whereupon, a recess was taken.)

3      Q.  Mr. Bradley, what is your contingency fee arrangement

4   with your counsel?

5      A.  Honestly, I don't remember the details, I don't.

6      Q.  Okay.  So, you don't remember whether it's 60/40,

7   70/30, any of that split?

8      A.  I don't remember, no.

9      Q.  Okay.  We'll follow up with an interrogatory.  Last

10  question, why did you choose to use a contingency fee?

11     A.  It seemed easy.

12     Q.  Okay.  What was easy about it?

13     A.  It's a very straightforward arrangement so I didn't

14  have to worry about it.

15     Q.  What would you worry about with a different fee

16  arrangement?

17     A.  Depending on the arrangement.

18     Q.  If you were to be paying your attorney by the hour,

19  what would your worry be?

20     A.  I would worry about how honest my attorney is and

21  whether he's just trying to run up the bill.

22     Q.  And if you were to pay per proceeding, what would you

23  worry about?

24     A.  Same thing.

25     Q.  So, a payment per proceeding is a fixed cost to go

www.NCDepo.com              Depositions, Inc.
info@NCDepo.com        Serving all of North Carolina        (919) 557-4640
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 82 of 99

1    through a complaint or a motion to dismiss or a certain point

2    in time in litigation, so it's unrelated to how many hours the

3    attorney works on the matter.

4        A.  That's correct.

5        Q.  What about that would worry you?

6        A.  Again, same thing, that there would be all kinds of

7    motions, all kinds of proceedings and I would end up paying

8    for each and every one of them and, you know, the attorney

9    could run up the bill that way.

10       Q.  Okay.  If it were an arrangement that was X number of

11   dollars from filing the complaint through the finish of the

12   case, never going to be changed no matter how much work was

13   done on it, what would you worry about it then?

14       A.  That would depend on X.  If X is $10 it's one thing.

15   If it's $10,000 it is entirely different.

16       Q.  If it is whatever amount you thought reasonable?

17       A.  I would have to consider it, but no one made that

18   offer so I didn't consider it.

19       Q.  Okay.  My question though is you said that the

20   contingency fee arrangement means it's something you don't

21   have to worry about.

22       A.  Yes.

23       Q.  I'm trying to understand the nature and scope of your

24   worry through non contingency fee arrangements?

25       A.  Because in a contingency fee, all of the money goes to

www.NCDepo.com               Depositions, Inc.
info@NCDepo.com        Serving all of North Carolina        (919) 557-4640
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 83 of 99

1    the lawyer first and then I get whatever I'm supposed to get

2    after that.  I don't have to put money up front.  I don't have

3    to pay money regularly.  It's all very simple.

4        Q.  So, you don't have to bear the risk?

5        A.  Well, it's kind of a shared risk in many ways.

6        Q.  Okay.  You are not risking your money up front?

7        A.  That's also true.  I hadn't really thought of that but

8    that's also true.

9            MS. LAWSON:  All right.  I think we are done for

10   today.  I'm going to hold this deposition open, however,

11   because there is going to need to be a supplementation of

12   document production.  Those documents should be sufficient but

13   obviously we don't know what is going to happen.

14           MR. ALLAN:  Well, I guess that's between you and

15   Mr. Liebowitz at the appropriate time.  We're here for up to

16   seven hours.  I understand your issues so let's just say I

17   object to that, but I understand.  I have no questions.  We

18   would like to read and sign.

19

20           (Whereupon, at 12:33 P.M., the deposition in the

21   above-entitled matter ceased.)

22

23

24

25

www.NCDepo.com                  Depositions, Inc.
info@NCDepo.com          Serving all of North Carolina          (919) 557-4640
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 84 of 99

```
 1                    DEPOSITION ERRATA SHEET

 2    Date Taken:   December 12, 2019

 3    Witness:      Matthew Bradley

 4              I, Matthew Bradley, do hereby certify that I have

 5    read the foregoing transcript of my testimony, and further

 6    certify that it is a true and accurate record of my testimony

 7    (with the exception of the corrections listed below):

 8      Page        Line                  Correction

 9    _____     _____      _____

10    _____     _____      _____

11    _____     _____      _____

12    _____     _____      _____

13    _____     _____      _____

14    _____     _____      _____

15    _____     _____      _____

16        WITNESS my hand and seal on this the _____ day of

17    _____, 2019.

18                              _____

19                              WITNESS SIGNATURE

20        This deposition certificate was signed in my presence by

21    _____ on the _____ of _____, 2019.

22                              _____

23                              NOTARY PUBLIC

24    NOTARY NO._____     My Commission expires:_____

25
```

*www.NCDepo.com*            *Depositions, Inc.*
*info@NCDepo.com*       *Serving all of North Carolina*        *(919) 557-4640*
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 85 of 99

```
 1                    CERTIFICATE OF COURT REPORTER

 2   North Carolina

 3   Wake County

 4        I, Kathleen M. Van Voorhis, Notary Public in and for the

 5   State of North Carolina, certify that on December 12, 2019, in

 6   Raleigh, North Carolina, Matthew Bradley, produced to me

 7   satisfactory evidence of identification and was duly sworn by

 8   me prior to the taking of the foregoing deposition to tell the

 9   truth, thereupon testified as set forth in the preceding

10   pages, exclusive of errata sheet and signature page, if

11   required, the examination being reported by me in stenotype

12   and reduced to typewritten form by me personally.

13        I further certify that I am not of counsel or in the

14   employ of the parties to this action; that I am not related by

15   blood or connected by marriage to the parties of this action;

16   that I am not interested in the outcome thereof; that the

17   foregoing is a true and accurate transcript of said proceeding

18   to the best of my ability and understanding.

19        This the 23rd day of December, 2019.

20
                              Kathy Van Voorhis
21                            _____

22                            KATHLEEN M. VAN VOORHIS

23                            Registered Professional Reporter

24                            Notary Public, #19971530155

25
```

www.NCDepo.com                    Depositions, Inc.
info@NCDepo.com          Serving all of North Carolina          (919) 557-4640
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 86 of 99

## Exhibits

**Exhibit 1**  3:13

**Exhibit 2**  3:14 9:12,24 10:1 48:7 53:13 62:4,15 63:19 64:12 65:3, 15 66:3 74:5,14 76:10

**Exhibit 3**  3:15 9:15 44:16 79:15

**Exhibit 4**  3:16 14:23

**Exhibit 5**  3:17

**Exhibit 6**  3:18 18:3,13,20

**Exhibit 7**  3:19 18:12

**Exhibit 8**  3:20 18:19

**Exhibit 9**  3:21

**Exhibit 10**  3:22

**Exhibit 11**  3:23 26:4 47:21 50:10,11 52:25

**Exhibit 12**  3:24 33:23

**Exhibit 13**  4:3 35:12

**Exhibit 14**  4:4 38:16

**Exhibit 15**  4:5

**Exhibit 16**  4:6

**Exhibit 17**  4:7

**Exhibit 18**  4:8

**Exhibit 19**  4:9 42:3,10 45:8 46:2,25

**Exhibit 20**  4:10

**Exhibit 21**  4:11

**Exhibit 22**  4:12 49:5

**Exhibit 23**  4:13 49:6,14

**Exhibit 24**  4:14

**Exhibit 25**  4:15 57:13,16

**Exhibit 26**  4:16 57:25

**Exhibit 27**  4:17 58:5

**Exhibit 28**  4:18 58:14

**Exhibit 29**  4:19 65:1,9,15,22

**Exhibit 30**  4:20 67:10

**Exhibit 31**  4:21

**Exhibit 32**  4:22 69:3

**Exhibit 33**  4:23

**Exhibit 34**  4:24 75:13

### 0

**0010**  49:7

**0036**  35:17

**0072**  36:9

**014**  26:25

**026**  27:8

**040**  29:7

**058**  39:7

**063**  47:20,23

**066**  49:5

**071**  40:10

**087**  74:10

### 1

**1**  3:13 5:11

**10**  3:22 20:23 72:21 73:1

**100**  29:11

**10:00**  5:1,19

**10:48**  50:3

**10th**  73:13

**11**  3:23 22:17 26:4 47:21 50:10,11 52:25 53:22

**11:31**  49:20

**12**  3:24 33:23,24

**12,000**  30:14

**12082017knives**  58:20

**13**  4:3 35:10,12 52:22 65:17,23 66:4 74:6,15

**13,000**  33:11 70:4

**14**  3:16 4:4 36:5 38:10,16

**14th**  49:19,24 50:2 57:17 67:13

**15**  4:5 36:19 38:10

**15th**  11:25 48:20

**16**  4:6 37:9 38:11 55:8

**17**  3:17 4:7 22:19,21 29:23 35:12 37:22 40:18 47:21

**17th**  67:14

**18**  3:18,19,20 4:8 29:23 37:12 39:24

**19**  3:21 4:9 41:13 42:3,10 45:8 46:2,25

**19,000**  30:20

**1994**  8:11

**1998**  8:11

**1st**  18:4

### 2

**2**  3:14 9:1,12,24 10:1 48:7 53:13 62:4,15 63:19 64:12 65:3,15 66:3 74:5,14 76:10

**2-133-725**  58:15

**20**  3:22 4:10 34:1 43:15

**20,000**  59:21 70:3

**2012/3/9**  17:16

**2016**  18:4

**2017**  17:23 18:7,15,21 22:24 24:18 27:24 29:4 30:1 38:8,21 49:6,16,19,24 51:10 55:8 59:14

**2018**  29:3,4 30:11 33:21 34:2 35:8,14 43:12 48:8,20 50:2 51:11 53:2 56:1 57:17 60:8 67:3 68:11 69:11 72:17,21 73:1

**2019**  36:7 37:12 58:18 60:7 61:2, 6 62:17,19,22 71:8,14 72:21 73:2 75:13

**21**  4:11 48:12

**22**  3:23 4:12 44:19,24 45:6 46:19 49:2,4,5

**23**  4:13 49:2,4,6,14

**24**  4:14 55:6

**25**  4:15 57:13,14,16

**26**  4:16 36:7 57:23,25

**27**  4:17 35:14 58:3,5

**28**  4:18 58:12,14

**29**  4:19 31:11,19 64:24 65:1,9,15, 22

*www.NCDepo.com*                *Depositions, Inc.*
info@NCDepo.com           Serving all of North Carolina          *(919) 557-4640*
Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 87 of 99

**3**

**3** 3:15 9:5,15 44:16 79:15

**30** 4:20 67:8,10

**30th** 9:22

**31** 4:21 67:8,10

**32** 4:22 69:1,3

**33** 3:24 4:23 71:11

**34** 4:24 75:11,13

**35** 4:3

**36** 4:4,5

**37** 4:6,7

**39** 4:8

**3rd** 58:18

**4**

**4** 3:16 14:21,23

**41** 4:9 30:7 31:8

**43** 4:10 32:24

**48** 4:11

**49** 4:12,13

**4th** 75:5

**5**

**5** 3:7,13,17 17:13

**51** 37:14

**55** 4:14

**57** 4:15,16

**58** 4:17,18

**5:02** 49:16

**6**

**6** 3:18 18:1,3,13,20 62:17,19,22

**60/40** 81:6

**64** 4:19

**67** 4:21

**69** 4:22

**7**

**7** 3:19 18:10,12

**70** 40:1

**70/30** 81:7

**71** 4:23

**74** 4:20

**75** 4:24

**7th** 29:17

**8**

**8** 3:20 18:17,19

**8th** 29:18 49:16

**9**

**9** 3:14,15,21 19:7 76:12 78:9,19, 22 80:6

**93** 7:14

**96** 7:14

**9th** 17:17

**A**

**A.M.** 5:1 49:20

**ability** 6:16 23:6

**account** 12:10,14,16,19 13:16 21:9,23 61:17,19,21 62:8,10,11, 24 63:6

**accounting** 51:25 52:16

**accounts** 12:7 13:8

**accurate** 33:8

**acted** 43:25 44:10

**action** 65:21 78:12

**activity** 21:14

**actual** 48:1,22 51:4 62:7

**add** 31:6 49:20,24 50:21,22

**added** 50:3,7

**adding** 50:19

**addition** 51:4,17 68:23

**adjunct** 12:20

**advances** 66:7

**advice** 56:14

**advise** 56:23 75:2

**affect** 6:15

**affirmative** 77:6

**affixed** 25:3

**AG** 35:17 36:9 49:7

**agree** 21:11 54:9

**agreed** 75:1

**agreement** 70:23 71:3

**agreements** 70:20

**ahead** 6:24 26:8 56:21

**aim** 45:3

**Allan** 5:18 25:20 26:10 40:24 43:10 44:23,25 47:22 49:11 52:1, 4 55:23 56:9,15,17,20 57:3,9 65:19 66:13 71:18,21 73:18,20 74:7 75:2,7 78:23

**allowed** 75:6

**amount** 74:22,23

**amusing** 17:5

**Analytical** 49:7 55:8 66:20 70:4 71:6 73:9,12 75:15,21 76:1,6,18, 20,22,24 77:3,9,12,18,22 78:2,16 79:2,3,4,22,25 80:2,18,20

**and/or** 78:11

**Angie** 29:8

**annoyed** 32:3 52:16,20 76:4

**answering** 9:23 18:24

**answers** 3:15 6:5,13 8:24 9:25 52:1 53:14 62:23 63:20 65:2,4

**App** 13:15,16

**appearance** 16:1

**appeared** 54:11

**appears** 18:12 22:23 26:19 27:12 35:21 36:10 48:7 50:10 55:12

**application** 4:15 21:5 53:4 56:7,

www.NCDepo.com
info@NCDepo.com

Depositions, Inc.
Serving all of North Carolina

(919) 557-4640

Case 5:19-cv-00249-FL    Document 29-2    Filed 07/17/20    Page 88 of 99

13 57:6,16,19 61:8

**applied** 56:4 57:6

**apply** 56:2

**Approximately** 59:23

**apps** 12:24

**April** 34:1

**arrange** 71:3

**arrangement** 65:18 66:7 74:16 81:3,13,16,17

**arrangements** 75:5

**article** 4:3,4,10 34:8,22,24,25 35:3,12 36:2,7,16 37:11 38:11 43:17

**articles** 35:6 38:11,15

**asks** 44:19 65:18 78:9

**association** 42:6

**assume** 5:14 16:5 32:6

**assumed** 15:17 32:19,20

**assumes** 76:15

**assumption** 32:22 76:17

**attach** 24:25

**attempt** 46:2 71:3

**attempting** 75:16

**attorney** 52:2,7,8 68:19 72:7,10 74:25 81:18,20

**attorney/client** 65:23 66:12 71:22 75:3

**attorneys** 72:9

**attribution** 15:13,19 54:16

**August** 18:4 36:7 75:13

**author** 14:10,14 15:16 16:6 23:11,16,22 54:16 58:9,23

**authored** 44:22 45:3

**authors** 38:12

**authorship** 23:4

**aware** 6:15 15:12,14 17:6 19:1,3, 9 20:18 22:12 30:5 32:1 33:20 35:6 47:5 65:8,10,11 66:17 69:8 73:12 74:2 77:21 79:17 80:14

---

**B**

**back** 6:4,18 19:12 33:15 35:16 39:7 48:6 53:10,13 62:14 66:19 74:10

**background** 5:22 7:4

**based** 11:22 13:6 21:16 74:7

**Basically** 11:22

**basis** 32:12 43:8 46:17 76:16,19, 24 77:2,6,8 79:22 80:17

**behavior** 15:3

**belief** 32:12 43:8 77:6,8 79:22 80:17,25

**believed** 33:20

**Bernard** 65:19

**bill** 81:21

**biological** 15:6

**Blanca** 75:20

**blank** 31:18

**blocked** 31:18

**blog** 29:10 30:12 31:6,7,14,21 49:21

**boring** 8:5

**bother** 31:3

**bottle** 46:4

**bottom** 17:15 31:11 33:15 36:9 47:24 48:23 53:23

**Bradley** 5:2,6,25 7:3 13:22 15:8 19:9,17 22:20 27:15 31:22 33:19 38:21 42:10 47:25 53:2,10 63:7, 19 65:1 79:17 81:3

**Bradley's** 63:20 65:2

**break** 6:23 7:1 25:23 56:18 57:8 64:21 81:1

**broken** 10:11

**browser** 10:12

**built** 8:2

**buoys** 41:17,18

**busier** 46:23

**busy** 7:8

---

**buzzfeed** 4:3 35:12 38:11

---

**C**

**Cafepress** 60:10,16

**Cal** 60:25 61:18

**California** 60:23

**call** 48:24

**caption** 18:5 36:10 37:1 49:25 55:10

**care** 51:15 72:11,14,24 73:5,6

**careful** 44:5,7

**case** 19:6,10 24:6 74:12,22

**catalog** 4:16 57:25

**celebrated** 35:3,7

**celebrity** 43:25 44:10

**certainty** 76:13

**certificate** 4:17,18 58:5

**Certification** 58:14

**change** 50:17,24,25 51:1,2,11 63:15 66:11,13,17

**changed** 5:18 64:19

**changing** 30:20,22

**chat** 69:23

**check** 39:10 74:12 75:10

**choose** 81:10

**Circuit** 75:6

**circulating** 32:17

**claim** 23:11,20 25:7 54:6

**claiming** 42:8

**clarity** 6:21

**class** 12:22

**claw** 74:10

**cleaner** 6:7

**clear** 5:20

**cleaver** 39:4

**Clements** 65:19

**clever** 34:6,15 35:13 36:8

---

**clicked** 23:10 52:13

**clients** 13:17

**clipped** 36:11

**College** 12:21

**comment** 26:16,21 27:5,6,12,13 29:8,12 30:8,9 34:13,19 39:10,17 40:10,19,20,21 46:1,2 68:2 75:14, 22 78:2 79:6,7,8

**Comment.pdf** 4:24

**commentary** 40:5

**commented** 27:11 39:14 43:21 50:20

**commenting** 27:18 32:25 80:1

**comments** 25:24 27:15 30:2 77:15,22 78:12 79:12,13,17

**communicate** 12:10

**communicated** 80:16

**communication** 12:25 75:4

**communications** 12:22 13:3 43:11 52:2,7 56:21 67:19 68:1 78:10,13 80:11,14,15

**companies** 72:18

**complaint** 3:22 10:13 12:11 19:6,9,18 20:4 23:14 48:7 76:8

**complete** 6:13 62:24

**complicated** 11:14

**computer** 9:25 10:3 19:24

**concept** 13:23

**concerned** 32:1,7

**conditions** 21:13

**conduct** 20:18

**confirm** 5:10 21:22 23:9 26:18 53:17 54:10 64:12 74:11

**confirmation** 68:3

**confirmed** 10:19 22:13

**confirming** 29:25

**connected** 76:22

**connection** 21:8 37:17 53:25 54:7,12,17,23 65:21 79:22 80:19

**connects** 23:3

**consideration** 5:20

**consultant** 7:22

**consumption** 47:16

**contact** 67:1

**contacted** 68:21

**content** 21:1,2,4,7,9,10

**contingency** 66:6 74:16,21 81:3,10

**Continued** 4:1

**continuing** 16:14

**contract** 8:6,8,9

**conveyed** 53:24 54:7,16,23 80:9

**copied** 25:6,8,10,13

**copy** 25:15

**copyright** 4:15 8:21 21:25 23:21 24:15,21,24 25:3,7,12,16,17 41:1 42:24 43:6,9,13 44:5,7 48:19,22, 25 50:19,22 51:18 53:2,4 54:7,11 56:2,4 57:6,16 58:1 59:2,5,8 72:18 73:11

**copyrighted** 40:21 43:3,5 50:4 51:19

**copyrighting** 41:7 52:21

**copyrights** 8:18 66:6

**Cornell** 7:5

**corner** 26:13 48:23 53:1

**corners** 24:15

**correct** 10:25 16:7,24 19:3,21 20:1,14 21:14,15,23 22:24,25 24:18 25:4,9,14 29:6,15 30:2 33:21,22 34:12 35:2,21,22,24 36:1,11,14,15,24 37:4,5,18,19 40:3,12 41:11 42:7,9 43:18,19 48:9,10,23 49:17,18,21,22,25 50:1,10,15 53:5,6,11 54:4,5,13, 15,21 55:10,11,19,21 56:2,5,6 57:7 58:1,2,6,7,9,10,15,16,18,19, 24,25 59:15,16 60:9 61:9,10 62:8, 17,18,20,21 65:5,6,9,13,25 66:1, 9,10,25 67:11,12,14,15 69:15 70:1,7,8,13 71:14,15 74:17,18 77:20,24 78:17

**correctly** 69:22 77:25

**cost** 41:7 81:25

**costs** 41:2 65:20 66:7,8

**counsel** 22:16 43:11 56:8,10,11, 21,23 57:1 65:12 69:14 71:17,18, 23 72:15,16 73:4 81:4

**couple** 5:22 10:2 11:10 17:11 19:12 28:16,23 30:3,16 60:10 62:12 67:20

**court** 6:3 18:24

**courts** 74:23

**cousin's** 32:13

**coverage** 34:17

**covered** 57:10

**created** 17:16 19:2 28:7 41:20 44:21 45:2 46:24 62:24

**creating** 17:7

**creative** 44:21 45:2,14,16 46:8, 24 47:6

**creator** 35:1

**credit** 52:15,19

**cryptic** 52:1

**cultural** 15:7

**culture** 15:4,5

**current** 8:17

**Custom** 61:17 62:1,3,24 63:4,6

**customers** 77:8,12,21,25 78:1, 15,21 79:3 80:18

**D**

**date** 12:3 58:17 63:2 71:7,9

**dated** 18:4 48:20 57:16 58:17 62:16 67:13,14

**dates** 7:16

**days** 62:12

**debacle** 40:15

**Dec.17post.pdf** 3:24

**December** 17:23 18:7,15,21 22:19,21,24 24:18 27:24 29:3,4, 17,18,23 30:1,10 33:21 35:8 38:8, 21 43:12 47:21 48:8,20 49:6,16, 19,23 50:2 51:10 55:8 56:1 57:16 59:14 60:8 62:16,19,22 67:3,13, 14 68:11 69:11 72:17,21 73:1

*www.NCDepo.com*
*info@NCDepo.com*

*Depositions, Inc.*
*Serving all of North Carolina*

*(919) 557-4640*

Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 90 of 99

**decide** 51:11 71:6 72:15

**decided** 52:16 56:2,12

**decision** 59:20

**deducts** 66:8

**defend** 59:6

**defendant** 65:12 76:14,16 78:11

**Defendant's** 3:13,14,15,16,17, 18,19,20,21,22,23,24 4:3,4,5,6,7, 8,9,10,11,12,13,14,15,16,17,18, 19,20,21,22,23,24 5:11 8:24 9:1,5 14:21 17:13 18:1,10,17 19:7 20:23 22:17 33:24 35:10 36:5,19 37:9,22 39:24 41:13 43:15 48:12 49:2 55:6 57:14,23 58:3,12 63:21 64:24 65:3 67:8 69:1 71:11 75:11

**defendants** 74:2

**defended** 31:15

**define** 13:25 14:6 72:12

**defines** 15:2

**definition** 3:17 14:24 38:24 39:1

**degree** 7:5,6

**delete** 21:9

**deleted** 4:24 21:10 75:14 76:4 79:6,7

**department** 12:22

**depend** 14:10

**Depending** 81:17

**depends** 14:14

**deposed** 6:1

**deposition** 3:14 5:10,13 6:3 20:3

**describe** 7:4,23,24 16:17 21:25 22:5 60:12 61:16 65:18 78:9 80:8

**describing** 25:13

**design** 45:3

**details** 8:4 63:5 81:5

**Dick** 51:25 52:15

**difference** 48:18

**Digital** 72:9

**DIRECT** 5:5

**Directly** 69:10,13

**disclose** 43:11 52:2 61:23 62:7 63:1

**disclosed** 75:6

**disclosing** 56:21,22

**discrete** 15:4

**document** 3:18 9:15 23:7 40:1 44:19 47:21 65:9 68:18,20 74:10

**documents** 6:19 9:4 11:2,4,16, 17 44:20 45:1,5 68:16 80:12,13

**dot** 39:11

**drills** 40:5 41:24 79:13

**driven** 15:6,8

**DRM** 72:7

**duly** 5:3

### E

**earlier** 20:12 33:19 54:11 56:1 59:13 67:4

**easier** 18:24

**easiest** 7:24 8:3

**easily** 29:22

**easy** 12:2 81:11,12

**edit** 4:12,13 30:10 49:5,7,9,23

**edited** 48:8 49:20,25

**edits** 48:5

**educational** 7:4

**Effective** 58:17

**efforts** 66:20,23 68:15

**elaborate** 14:15

**electrical** 7:8

**else's** 16:18

**email** 4:21,22,23 11:15 12:7,10, 13,16,19 67:13,14 71:9,13,15,16 72:2 73:13 74:9

**emails** 11:5,7,18 12:17 67:10,16, 18 72:18

**employed** 7:19

**employees** 76:24 77:3

**encouraging** 39:13

**end** 36:9

**ended** 17:7

**ends** 21:8

**enforce** 66:6

**engineering** 7:7,8

**enjoy** 29:10

**enormous** 28:25

**entire** 15:24 23:19 72:23

**equals** 17:18

**essentially** 72:24

**established** 61:19

**evacuation** 62:14

**evolution** 15:6,7

**exact** 71:9 76:2

**Examination** 3:5,7 5:5

**examined** 5:4

**examples** 13:10 17:11 78:19 79:13

**excited** 34:17

**exclusive** 80:17

**excuse** 53:20 69:25

**exhibit** 3:13,14,15,16,17,18,19, 20,21,22,23,24 4:3,4,5,6,7,8,9,10, 11,12,13,14,15,16,17,18,19,20, 21,22,23,24 9:12,15,24 10:1 14:23 18:3,12,13,19,20 19:13,15, 17 20:4 21:22 23:14 26:4 33:23 35:12 38:16 41:24 42:3,10 44:16 45:8 46:2,25 47:21 48:7 49:5,6,14 50:10,11 52:23,25 53:13 57:13, 16,25 58:5,14 62:4,15 63:19 64:12 65:1,3,9,15,22 66:3 67:10 69:3 74:5,14 75:13 76:10 79:15

**Exhibits** 38:10

**expect** 27:25 28:6,9,11,15,17,19 29:11

**expected** 28:14

**experience** 8:17

**experiences** 8:16,17

**explain** 8:4 42:21 43:1 49:9

**explained** 14:8

explanation 26:9 49:25

export 11:12

exported 11:7

extent 43:10

---

**F**

facebook 3:20,23 10:12,18
11:11,12,15,18,20,23,24 12:1
13:1,2,9 15:9 17:5 18:14 19:21
20:8,10,18,19 21:8,14,18,23
22:10 23:2,9 24:5,8,14 25:1,11,12
26:22,23 27:5,12,13 29:16 30:18
31:24,25 32:2,5 34:11 36:21 39:2
42:22 47:4 49:12,13 54:1,19,25
70:2,6,7,13 76:25 77:4,9,18,19,22
78:13 79:2,25 80:10,20

fact 42:21 52:8 57:1 59:21 78:1

facts 5:22

faculty 8:13 12:20

Fair 8:6 49:1 65:11

familiar 13:23

familiarize 9:7

family 59:25

famous 34:14

favoring 76:16

favorite 43:23 44:3

fee 65:18 66:6 74:16,24 75:5
81:3,10,15

feel 9:7 40:11 41:8

fees 65:20 74:21,24

Fewer 73:25

fifty 28:2,14

figure 9:11 29:24

figured 50:21

file 51:23 56:12

filed 8:21 19:10 51:22

files 11:15

find 12:2 15:25 16:12

fine 20:17 38:21 47:15,19

finish 18:23 55:23 56:19

Fire 60:25 61:18

fires 60:23 62:14

firm 65:19 66:5,6,7 71:16 72:24

firms 73:2

fittest 15:7

fixed 64:16 81:25

flattered 32:3

Fleming 47:25

flip 4:7 19:12 37:24

Fogo 29:8

folder 11:6

follow 30:17 39:14 69:9 81:9

forgotten 34:3 48:14

form 68:2

format 67:24,25 68:1

forms 67:19

forward 19:15 74:22

found 43:24 49:8 52:12

frankly 14:19

free 9:7 40:11

freelancer 8:6

frequently 17:4 46:15 76:18

fresh 10:19 26:20

Friday 64:8

friend 32:13,25 34:5

friends 20:16 31:15,17 32:18
47:9,14 79:4

front 9:25

full 5:23 17:15 39:7

full-time 8:11

fully 51:24

fun 47:8 48:1

fundraiser 60:25

funny 20:11 39:4 46:13 60:11

future 46:5,14

---

**G**

game' 34:21

gave 44:16 71:10

gene 15:7

generally 15:12

genes 15:5,7

give 6:5,12 13:10 14:23 21:4 52:1
63:5

gmail 12:9

Gofundme 77:18

good 26:4 33:5 60:1

Google 52:12 68:14 70:10 72:5

gossip 15:4

govern 21:13

governed 20:19 21:3

grabbed 11:7 12:3

Grammar 49:7 70:4 71:6 73:9,12
75:15,22 76:2,6,18,20,23 77:3,9,
13,22 78:16 79:3,4,23 80:2,18

Grammar's 66:20 76:24 77:18
78:2 79:25 80:20

Grammar/grammar 55:9

grant 21:6

granted 21:17 34:18

Great 5:17 6:23

grounds 65:23 75:3

guess 14:1 45:24

guided 12:5

guy 43:23

---

**H**

half 32:25 59:11 61:4

hammer 40:4

hand 8:23 26:13 33:18 48:23
53:1 69:19 73:24

handing 40:1

happen 27:25

www.NCDepo.com
info@NCDepo.com

*Depositions, Inc.*
*Serving all of North Carolina*

*(919) 557-4640*

Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 92 of 99

**happened** 51:15 52:10,11 60:23

**happening** 30:15,25

**happy** 33:9

**heading** 21:2

**hear** 32:9

**heard** 32:20 74:8

**held** 75:6

**helpful** 10:21 29:25

**Hennessy** 27:11

**Hey** 34:14

**high** 7:22

**hire** 58:9 72:15

**hired** 72:1

**history** 4:12,13 15:24 30:18 49:6, 8,10

**honest** 81:20

**honestly** 45:21 81:5

**hoo** 34:15

**hope** 5:6 45:3,23,25 46:8 47:12, 13

**hoped** 38:23

**hour** 10:4 81:18

**house** 60:24

**hundred** 28:23

**husband** 32:13

**hyperlink** 10:8,11

---

**I**

**idea** 15:2 45:21 47:10 49:13 61:3

**identification** 5:12 9:2,6 14:22 17:14 18:2,11,18 19:8 20:24 22:18 33:25 35:11 36:6,20 37:10, 23 39:25 41:14 43:16 48:13 49:3 55:7 57:15,24 58:4,13 64:25 67:9 69:2 71:12 75:12

**identified** 54:22 55:2 71:2 78:6, 16

**identifies** 22:1,8 23:11 58:23 65:4

**identify** 35:1,23 36:13 37:3 38:11

44:20 45:1 65:20 68:12,17

**identifying** 11:2 75:13

**idol** 43:25 44:11

**image** 17:18 19:2 22:23,24 27:10 37:24 40:7 41:4 49:16,17 52:12 53:4 55:12 68:14 70:10

**imagery** 17:7

**images** 35:16 38:7 39:3,19 40:7, 8,9 42:5

**imgur** 67:13 68:23

**imgur.com** 67:11

**immediately** 40:23 41:1,4

**impact** 43:4

**impacted** 66:20

**important** 6:5,19

**impossible** 14:19

**incident** 67:4

**included** 22:10 24:5,13 29:9 80:12

**including** 31:14 79:5

**incomplete** 49:9

**independent** 57:5

**independently** 80:19

**indication** 26:16 27:4

**individual** 30:24

**individually** 43:6

**individuals** 78:20 79:21

**information** 10:3 16:15,19,20,25 21:1 22:1 23:21,24 24:9,15,22,24 25:3,7,12,16,17 48:19 54:7,22 55:2 71:22 80:8

**informative** 8:5

**infringed** 73:11

**infringement** 43:6 44:6,8

**initial** 53:25 54:8,12,17,23

**initiated** 73:15,17

**Ink** 61:17 62:1,3,24 63:4,6

**inquiries** 69:7

**Instagram** 13:13

**instance** 15:25

**instructions** 5:23

**insulting** 12:1 31:13 76:15,25 77:22 79:8,12,18 80:1

**intellectual** 21:3

**intend** 59:7,14 62:2

**intended** 39:4 59:1

**intent** 45:3

**internet** 14:7 15:25 34:6,15 36:8 43:24 44:4 67:2

**interrogatories** 8:25 9:13,24 10:8 53:14 61:24,25 62:9,13 63:8, 21,24 65:3 68:16 71:8 76:9

**interrogatory** 10:9,20,23 53:22, 24 62:4,23 63:13 64:2,7 65:17,23 66:3,4 74:6,14,15 76:12 78:9,18, 21 80:4,6 81:9

**interrupt** 6:20 52:6

**involved** 11:25

**IP** 21:4,7,8,9 65:20

**Ippoliti** 40:14

**issue** 75:8

---

**J**

**January** 35:14 58:18

**Jennifer** 40:14

**joke** 17:19 29:9 51:4

**jokes** 15:5

**Joseph** 5:25 27:10

**Josh** 26:4 28:3 32:13,25 33:16 46:2

**June** 71:8,14 72:21 73:1,12

**Junior** 12:21

---

**K**

**kind** 6:18 12:25 14:13 28:12 29:11

**knew** 59:25 60:2

**knowledge** 12:15 13:6 15:4 25:10 33:22 35:8 36:17 38:9

*www.NCDepo.com*              *Depositions, Inc.*
*info@NCDepo.com*        *Serving all of North Carolina*              *(919) 557-4640*
Case 5:19-cv-00249-FL    Document 29-2    Filed 07/17/20    Page 93 of 99

52:19 55:17 57:5

---

**L**

lack  43:4

language  21:16 76:1

large  10:8 50:12 79:15

latest  39:10

law  43:13 65:19 66:5 71:16 72:24 73:2

laws  42:25 43:9

Lawson  3:7 5:5 47:23 74:11 75:5,10

lawsuit  8:20

lawsuits  73:15 74:3

lawyer  24:7

learn  72:4

learned  40:14 43:9 61:17

left  63:15 75:15 79:1 80:1

legal  22:16 56:8,9,11 65:21 69:4 71:17,18,23 73:8

level  17:19

leveled  34:21

levels  17:3,20 18:4,6 35:19 37:1, 25 38:2,22 40:15 43:22 49:15 53:1 55:10 58:1

liable  43:6

Liburd  27:1

license  21:7,8,17 71:3

licensing  70:20

Liebowitz  65:19 66:5 72:4 74:9

life  15:5,25

lightning  46:4

likes  28:2

link  10:19 26:20 29:9 30:12 31:6, 14 48:3,4,6 49:21

linking  31:21 48:16

list  31:12 34:14

Listen  73:20

literally  32:4

litigation  65:20 66:8,9

live  10:13 26:20 29:21

lives  29:24

log  74:12

long  8:9 16:14,15 28:22 49:24

longer  26:19

looked  10:17 29:17 31:1 38:15 39:13 62:1 72:24

lower  26:12

lucky  46:5

Luke  34:5

---

**M**

Macklemore  30:9 31:9

made  10:24 27:24 34:14 38:22 39:9 42:19,22 45:13,16 51:10 58:8 60:4,17,24 61:8,11 63:15 66:13,23 68:9 75:19,20,22 78:13 80:19

majoring  7:6

make  6:8,21 14:16,17 17:3 18:24 19:4 22:4 25:21 30:10 46:8,20 47:10 59:7 60:16,17 65:7 66:11 68:15

makes  6:7 45:21

making  30:9 63:13,16 66:15 73:19 79:8

man  40:16

management  21:25 23:21 24:15,21,24 25:3,7,12,16 54:7 72:9

March  17:17

mark  22:19 29:23

marked  3:12 4:2 5:12 9:2,6 14:22 17:14 18:2,11,18 19:8 20:24 22:18 33:25 35:11 36:6,20 37:10, 23 39:25 40:1 41:14 43:16 48:13 49:3 55:7 57:15,24 58:4,13,14 64:25 67:9 69:2 71:12 75:12

master's  7:6,13

materially  64:15

materials  11:21 39:15

Matt  40:14

matter  8:20 10:13 12:11 43:21

Matthew  5:2,25 33:3 47:25 53:2 63:20 65:2

MB  26:25 27:8 29:7 32:24 39:7 40:1,10 47:20 49:5 52:22 74:10

mbradley@bradtech.com. 12:12

meaning  34:11

means  6:12 7:23 14:3 29:23 32:10,14 74:20

meant  32:20 40:23

mechanical  7:6

media  12:24 13:8 15:9,13,15

medium  62:3

mediums  33:20

meeting  43:25 44:10

member  12:21

meme  13:23,25 14:9,11,14,25 15:2,9,16,24 16:5,6,10,12 17:3 28:7,20 29:5 31:23 35:1 38:2,22, 25 41:20 42:23 43:17 45:4,10,20, 22 47:25 50:7

memes  14:16,17 15:4,8,13,15 17:6,8 19:2 37:25 38:12,23,24

memory  11:22,23 12:5 13:6 29:25

mention  76:18

mentioned  65:8

merchandise  28:11

Merriam-webster  14:23

message  69:23

messages  11:20 72:19

messaging  12:24

Messenger  13:1,2

met  43:22

metadata  22:7,10,15 23:3,5,6, 10,14 24:2,5,8,12 55:15

Mick  30:9 31:9

mile  60:24

*www.NCDepo.com*
*info@NCDepo.com*

*Depositions, Inc.*
*Serving all of North Carolina*

*(919) 557-4640*

Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 94 of 99

mind 60:3

mine 78:3 80:1

minute 9:7 81:1

missing 49:17

mistaken 69:24

moment 64:23 65:8

money 41:2,7,8 74:23

month 30:19

months 47:8 72:20,23

morning 6:10

Motorola 7:25 8:2

Moulton 29:8

Moulton's 30:8

moved 62:13

**N**

names 79:25

nasty 31:15 75:16

necessarily 25:13 46:12

news 4:10 33:5 43:17

night 28:22

nod 6:7

non-exclusive 21:6

northern 60:23

notation 50:3

note 4:20 50:3

notice 3:14 5:10,13 27:18,21 65:24

notification 74:3

November 60:7 61:2,6 62:19 63:10

number 10:9,24 28:25 30:21,22, 23 35:18 44:19,24 45:6 46:18 53:22 62:4 65:17,23 66:3,4 78:9, 18,22 80:6

numerous 76:15

**O**

oath 6:10 53:11

Objection 49:11 56:9 75:2 78:23

objections 3:15,16 8:24 9:3 53:14 63:20 65:2,4

objects 65:22

obligated 6:12

occasionally 72:23

occurred 61:4

October 9:22

odd 30:20

Offer 34:7 36:8

OMG 33:3

online 44:22 45:3,18

open-ended 14:13,19

option 33:16

order 61:13

organizations 70:18

organized 11:6

original 15:16 19:23 22:24 24:17 29:20 30:3,4 33:14 48:4 50:7 64:18 79:14

overlaid 39:3

**P**

P.M. 49:16 50:3

pages 19:12 39:2 68:3,13,17,20 71:1

parenthetical 29:12

part 23:5 32:22 59:5 80:10

part-time 12:20

particularity 78:10

parties 67:17 70:21,24 71:2 78:11 79:5 80:12

party 74:3

passing 50:5

pay 81:22

payer 65:20

paying 81:18

payment 81:25

PDF 22:21

PDFS 11:10,12

Penn 7:7 8:13

people 15:12 27:18,21 28:14,15 29:10 31:7 32:3,7,8,14,17 39:4,13 45:23,25 50:5,20 51:6 76:15 78:4, 6,15

perceived 79:18

percentage 74:25

perfectly 20:17

Perla 75:20

permission 16:8,13 21:5

person 14:10 15:3,19,22,23 16:6 18:20 28:17 34:20,24 44:2 76:5

person's 16:8

personal 39:2

personally 76:22

perspective 25:18 31:24,25

Phd 7:8,12

phone 7:25 8:3 19:24 22:8 50:6

photo 24:3 40:21 50:7 52:14

photograph 19:5,20,23 20:1,4,7 21:17,21 22:2,5,7 23:2,5,10,13, 15,17,20,24 24:2,13,14,16,19,22, 25 25:4,6,11,15,17 32:17 33:21 35:7,21 36:11,13,24 37:3,15,17 39:14 44:21 45:2 48:7 49:17 51:1, 2 53:5,25 54:8,12,18,20,24 55:3, 9,13,14,18 58:24 59:14 61:4,11, 14,21 62:2 67:2,5 69:25 70:9,12, 21,24 71:4 73:16 78:11

photographer 22:1,6,8 54:23 55:3

photographs 41:22,25 42:2

photos 21:3 40:4,16 43:5

phrase 48:2

physics 7:6

pick 62:15

*www.NCDepo.com*
*info@NCDepo.com*

*Depositions, Inc.*
*Serving all of North Carolina*

*(919) 557-4640*

Case 5:19-cv-00249-FL    Document 29-2    Filed 07/17/20    Page 95 of 99

**picture** 14:1 16:18,20,23 18:13, 19 21:22 29:9 34:6,14,20 37:15 45:13 50:4,6,9,17,18 52:18

**pictures** 16:24 17:4 20:11 38:13 41:24 42:18,22 43:23 44:3 46:15

**place** 15:18 52:13 79:9

**places** 29:5 70:1,5 73:11

**plaintiff** 44:21 45:2,5 54:3 63:20 65:2,22 66:5 76:13,14

**Plaintiff's** 53:24

**Planet** 55:9

**play** 17:6

**pleased** 31:24 34:9 45:24 47:13

**pleasing** 44:13

**PLLC** 65:19 66:5

**point** 6:24 14:9 30:14 31:17 45:11 51:20 52:16 59:16,17 60:13 69:24 78:19

**points** 14:17,18

**Poke** 3:18

**pool** 15:7

**popular** 41:6

**portrayed** 23:13

**possession** 45:6

**post** 3:19,20,21,25 4:5,8,9,11,14 10:12,24 11:23 13:22 16:21,22,25 18:3,5,13,15 20:7,10,11 21:8 22:11,19,21 23:2,3,11,19,24 24:5 25:7,24 26:13,19,21 27:16,19,22, 24 29:22,24 30:1,10 31:6,20 34:1, 4,14,20 36:21 39:7,10 40:2 41:15 42:19,22 46:15,18 47:21,25 48:3, 4,16 49:6,8 50:12 52:14 54:19 55:8 66:20 69:25 70:6 75:19

**post's** 49:25

**posted** 15:20,22 16:9 19:20 20:13 21:23 24:14 25:11 28:23 35:13 38:23 39:1,3 40:4,8 44:22 45:3,18,22 46:21 48:8,14

**posting** 15:17 16:6 24:25 25:15 29:5,20 30:3,4 33:14 46:12 47:16 76:25 77:3,9,22 79:14

**postings** 24:8

**posts** 11:11,15,20,24 12:1,2 20:16 28:1,3,4 80:20

**potentially** 12:17 13:3 79:18

**Potter** 43:20

**pre-existing** 17:12

**prefer** 56:19

**present** 69:11

**preserve** 24:8

**Pretty** 7:16

**previous** 39:10 41:24

**primarily** 12:5,19 15:9

**primary** 12:8

**print** 14:23 31:19 35:16

**prior** 8:16 17:6 18:7,14,21 19:1 30:10 38:7 60:8 61:6 67:17 74:3

**privacy** 20:13 21:5

**privilege** 65:24 66:12 74:12

**privileged** 57:2 71:22 75:6

**problem** 48:2

**problems** 52:17

**procedure** 59:5

**proceeding** 81:22,25

**proceeds** 66:8

**produce** 23:3 44:20 46:25 79:9

**produced** 22:15,20 23:1,15 24:6 42:10,16 49:5,7 64:15,19 65:9 68:25 74:12 75:13 79:5,11 80:13

**production** 8:2 9:4,16 11:1 44:15 46:18 49:9 68:16 78:7,20

**prompted** 17:2 50:17,24 51:3,17, 23 59:20

**proof** 23:22

**property** 21:3

**protection** 50:23

**prove** 24:4

**provide** 48:3 49:21

**provided** 24:7

**public** 4:16 10:15,18,24 16:11,12 20:13,15 26:19 47:16 49:8 57:25 60:4,5,19

**publication** 53:25 54:8,12,17,24, 25

**published** 29:1 37:12

**pull** 38:16 44:15

**pun** 34:21 35:18 41:17 51:4

**puns** 34:6,15 35:12,16 36:8

**purchase** 60:20

**purpose** 45:4

**pursuant** 5:17

**pursue** 73:8,9

**put** 10:11 24:24 30:12 41:3 52:14

---

## Q

**quarter** 60:24

**question** 6:25 7:1 14:13,19 18:23 22:4 25:20 26:10 30:8 40:24 42:14 43:10 49:13 51:5,24 55:23 56:16,19,20,22,24,25 72:22 73:18,20,21 81:10

**questions** 6:5,6,13,16,19

**quickly** 52:6

**quote** 34:22

---

## R

**reach** 70:17,20,23 71:2

**reaction** 39:2

**read** 20:21 23:6 27:15 31:7 43:12

**realize** 28:20

**reason** 14:8 47:3 61:24

**reasons** 26:20 35:17

**recall** 27:7 38:5 59:1 63:13 64:1 67:4,6,16,18,19,23 68:5,7 69:20, 22 71:5 77:25

**receive** 68:3 69:6

**received** 51:20 63:9 69:3 71:24 72:1 76:14

**receiving** 11:25 68:15

**recently** 15:21 60:21

**recess** 53:9 64:22 81:2

*www.NCDepo.com*
*info@NCDepo.com*

*Depositions, Inc.*
*Serving all of North Carolina*

*(919) 557-4640*

Case 5:19-cv-00249-FL    Document 29-2    Filed 07/17/20    Page 96 of 99

recollection 48:16

record 5:20,24 6:7,21

recording 6:4

recreate 75:16

Reddit 52:14 67:11,13 68:23 69:4,21

refer 19:5 20:4

referenced 77:11,12

referred 54:3 69:14

referring 20:5 62:5 70:6 79:12

registration 4:17,18 51:21 56:2 58:1,5,14,17 59:2,8

registrations 56:4

related 78:11

relation 76:14

relatives 77:2

relevant 63:6 78:8

remark 75:16

remarkable 11:14

remarks 76:15,18,25 77:10 79:1, 10 80:2

remedies 73:8

remember 7:25 9:21 11:12 12:2, 6 17:22 18:6,14,21 26:21,24 27:5, 13 33:18 36:2 37:6,20 60:13 63:16 64:6 68:9,17 69:18,19 71:9 76:2 81:5,6,8

remembering 71:13

remove 16:18,20 67:2,5 69:23

removed 55:13,15,17

removing 25:16

repeat 22:3

replies 31:12,19,20 40:18

reply 33:17

Report 37:12

reporter 6:4 18:24

reposted 16:6

reposting 16:13

represent 10:17

represented 74:8

request 5:19 6:25 9:4,15 11:1 23:2 44:15,19 45:6 46:18 62:23 68:16

requesting 48:6

requests 11:3

require 16:13 25:16,19

required 16:11 65:24

research 72:16

researching 72:21

reshare 16:24,25

reshares 30:25

resharing 16:22

respond 26:7 33:3 44:2 46:4 63:7

responded 29:8 43:22 69:21 71:10

response 6:6 23:1 31:11,22 45:4 53:23 54:4 62:4 63:3 66:4 69:3,4, 21 71:7 76:12 78:18 80:6,8

responses 3:16 9:3,12,15 10:7, 20 44:16 63:14,24 64:2,7,12,14 66:3 69:6 74:6,14

responsive 11:3,16,17,20 12:17 13:3,5 42:23 45:6 46:18

rest 20:3 31:20 32:21

restriction 6:24

retain 16:15

retained 66:5

reunion 59:25

revisit 51:15

RFP 45:5

Ricco 47:24

rights 21:3 72:9

Rosa 12:21

royalty-free 21:7

run 81:21

**S**

sale 60:4,5,18

Santa 12:21

Sat 9:25

school 8:15

search 12:16 13:2 52:12 68:14 70:10 72:5,6

searched 17:9

searching 11:16,19

section 20:25

select 58:21

sell 60:17 61:13 62:2 66:21,23

sense 6:8,21

separate 70:13

September 11:25 37:12

series 40:7

services 3:23 20:19,21 65:21

set 8:24 9:4 53:14 61:17 62:9,11 63:6,21 64:6,10,15,18 65:3 74:23

sets 63:24 64:1

setting 20:13 23:14

settings 21:5

settled 74:23

share 15:12,18,19 16:19 17:5 20:16 28:15,18 32:14,15,16,20 34:8 39:5,17 40:11 45:23 47:9,15, 19 52:9 75:20

shared 15:9,15 16:10 21:10 30:5, 6 35:3 39:14,21 42:23 45:25 47:12,13 50:4 55:18 70:1,2,4,5,7

shares 28:23 29:11 30:14,15,18, 21,22,23,25 31:2 32:2 33:11 59:21

sharing 21:1 27:21 32:4,6,8,10 33:21

Shirk 37:12

shirts 59:7,24,25 60:4,12,16,19, 25 61:3,9,11,13,18 62:3 66:19,21, 24

shortly 29:19 51:14 72:17

show 23:2,10 44:20 45:1 75:7 79:7

showing 70:12

*www.NCDepo.com*
*info@NCDepo.com*
*Depositions, Inc.*
*Serving all of North Carolina*
*(919) 557-4640*

Case 5:19-cv-00249-FL    Document 29-2    Filed 07/17/20    Page 97 of 99

shown 21:22 24:3 34:9

shows 17:16 49:9,15,19 55:9
79:11

side 43:21

Sifter 4:6 37:11

sign 64:7

signature 53:17

signed 64:13

significant 16:12

similar 17:6,8 46:24

Similarly 24:21

single 64:14 70:17

situation 51:14

sleazy 31:14

smoothly 5:7

Snapchat 13:18

social 12:24 13:8 15:9,13,15

sold 60:19 61:9

specifically 21:4 22:9

spend 72:20

spending 41:8

split 75:1 81:7

spoke 57:1

spreads 15:3

stamp 71:10

start 25:24 51:24

Startac 7:25

started 11:25 27:16 31:15,23
33:9 52:20

starting 36:8

state 5:23 7:7 8:13 76:13

stated 58:8 70:9 76:8

statement 33:8 46:10

steal 26:5 27:11 32:10,14,15,16,
20

stealing 27:1 32:4,5,8

steps 61:13,16

sticker 24:25

sticky 26:1

stopped 7:15 60:24

straightforward 81:13

strange 12:1

stuff 12:23

stunned 33:4,9 49:20

style 15:3

sub-licensable 21:6

subheading 21:2

subject 8:20 10:13 12:11 21:5

submission 68:2

submitted 19:6 63:23 64:3,9

subsequent 30:18

substance 52:7 57:2,4

substituted 50:9

successful 15:8

sudden 14:7 28:24

sue 71:6

sufficient 44:20 45:1 63:4

suggested 51:6 73:10

Sunday 63:10,12

superceding 3:16

superimposed 52:25

superseding 3:15 8:24 53:13
63:20 65:4 66:3 74:5

supplement 10:20

supplemental 5:18

support 69:4

supporter 75:15,23,24,25

suppose 14:10

surgery 51:14

surprised 28:4,19

surprising 29:11

survival 15:6

sworn 5:3

**T**

tabs 26:1

tag 54:11

takes 40:22

taking 64:23

talk 13:22 52:8 61:25

talked 56:23

talking 13:16 16:22 38:13 57:3

tech 4:5 7:22 36:22

technical 25:18

telling 44:3 78:12

tells 23:15

ten 14:16,17,18 28:2,14 73:25

terms 3:23 20:19,21 21:13

testified 59:13

testifies 5:4

text 52:25 53:5,7

thing 5:9,21 48:25 60:2 81:24

things 8:3 10:2 17:4 31:15 46:12
60:10 72:11,23

third-party 62:3

thirds 27:1 39:9

Thompson 34:5

thought 29:10 33:5 41:5 50:20
59:9,17 60:1,11 75:17

thread 31:8

throw 12:8

Thursday 63:17 64:8

Tik 13:15

time 16:10 28:8,13 31:5 42:24
43:24 44:4 51:11 55:24 59:17
61:8 67:20 68:10 71:10,24 74:9,
13

timeline 30:8

times 12:20 70:1,3,4

title 58:20,21

titled 63:19 65:1

www.NCDepo.com
info@NCDepo.com

*Depositions, Inc.*
*Serving all of North Carolina*

*(919) 557-4640*

Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 98 of 99

today  5:14 6:16 17:24 24:4 29:17
  37:6,20

Tok  13:15

told  5:13 56:11

Tonya  27:1

top  17:19 44:19,24 46:3

topic  74:7

total  67:21 69:6

track  15:24

traction  33:3

transferable  21:6

travel  5:7

true  32:21 34:3 62:23 74:13
  78:22,24,25

truthful  6:13

truthfully  6:16

Tumbler  13:20

turn  10:7 27:8 29:7 30:7 32:24
  43:20 44:18 53:13,16,19

twenty  7:17

twisted  4:6 37:11

twitter  3:19,21 13:11 18:4,20

Tyler  43:20

type  70:23

typed  9:25

types  47:6

typically  28:2 32:7 75:5,8

---

**U**

uh-huh  8:1 10:10 17:21 19:19
  27:3 35:15,20 37:16 38:1,4,14
  40:17 41:21 42:17 50:8,14 52:24
  53:21 64:4

ultimate  30:25

un-huh  6:7

unaware  24:9 29:5

undergraduate  7:5

understand  6:10,12 7:2 9:17
  21:16 22:4 29:16 42:14,24 43:2
  53:10 63:23,25 72:22 74:16

---

understanding  43:4 56:12
  74:19

understood  20:5 25:21 66:15
  74:11

unexpanded  31:12

unexpectedly  50:5

unilad  4:5 36:22

units  15:4

University  7:7 8:13

unknown  35:17

unmeme'ed  48:17

uploaded  61:21

URL  17:15

usage  15:3

---

**V**

VA  58:15

Vallee  26:4 32:25 46:2

Vallee's  26:13

verbal  6:5

verification  62:16 63:2 64:8,13

verified  62:22

verify  29:22 50:11 63:1

Verna  31:15

version  29:21 36:11 48:1,8,17

videos  21:4

view  31:11 33:16

viral  14:4 28:9,21 31:23 33:9
  38:23,25 39:21 41:10 46:9,21
  47:10

visible  24:3

---

**W**

wait  40:24 41:6

waiting  40:23

walk  17:11

Walker  65:19

walking  25:24

---

wanted  31:7 39:19 72:14

warned  44:5,7

watermark  24:22 40:15 41:3
  42:8 48:22,24,25

Wayne  47:24

web  10:11 68:2,3,13,17,20 71:1
  78:2 79:2

websites  68:6 70:13

week  29:20 30:1,4,8 33:13 47:7
  51:13,15 52:10

weeks  30:3,16

widely  30:5

widespread  32:2

woo  34:15

word  11:13 16:14 18:5 63:15,18
  64:17,19 68:18,20

words  14:2 17:7 39:3 50:19,20,
  21 51:6,12 76:2

work  7:9 8:16,17 12:22 43:23
  44:2,21 45:2,14,16 50:6 51:14
  58:8,20 59:6

worker  8:7

working  7:7,15

works  46:8,24 47:6

workwise  52:11

worldwide  21:7

worry  81:14,15,19,20,23

wow  49:20

written  18:5

wrong  17:3,19 18:5,6 35:18
  36:10 37:1 38:2,22 43:21 49:15
  53:1 55:10 56:7 58:1 80:23

---

**Y**

year  7:17 29:13,17,18,23 51:8
  59:11 61:4

years  7:17 13:17 29:19 47:4
  60:10,15

---

www.NCDepo.com
info@NCDepo.com

Depositions, Inc.
Serving all of North Carolina

(919) 557-4640

Case 5:19-cv-00249-FL   Document 29-2   Filed 07/17/20   Page 99 of 99