**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**WESTERN DIVISION**
**No. 5:19-cv-249-FL**

| | | |
|---|---|---|
| MATTHEW BRADLEY, | | ) |
| | Plaintiff, | ) |
| | | ) |
| - against – | | ) |
| | | ) |
| | | ) |
| ANALYTICAL GRAMMAR, INC. | | ) |
| | | ) |
| | | ) |
| | Defendant. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR**
**PARTIAL SUMMARY JUDGMENT ON DEFENDANT'S LIABILITY FOR**
**COPYRIGHT INFRINGEMENT UNDER 17 U.S.C. § 501**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iv

INTRODUCTION ............................................................................................................... 1

UNCONTROVERTED STATEMENT OF FACTS .......................................................... 3

LEGAL STANDARD .......................................................................................................... 7

ARGUMENT ....................................................................................................................... 7

POINT I:  THERE IS NO GENUINE ISSUE OF MATERIAL FACT THAT
PLAINTIFF HAS ESTABLISHED HIS INFRINGEMENT CLAIM ................... 8

  A.  PLAINTIFF OWNS A VALID COPYRIGHT ............................................................. 8

    (1)  Plaintiff's Photograph is Registered with the Copyright Office ................................... 8

    (2)  Plaintiff's Photograph Meets the Minimum Threshold of Originality .......................... 9

  B.  DEFENDANT ADMITS IT COPIED BRADLEY'S PHOTOGRAPH WITHOUT AUTHORIZATION .. 11

POINT II:  THE LICENSE DEFENSE FAILS AS A MATTER OF LAW ............................... 12

  A.  NO EXPRESS LICENSE EXISTS UNDER FACEBOOK'S TERMS OF SERVICE ........................... 12

  B.  THERE IS NO EVIDENCE TO SUPPORT AN IMPLIED LICENSE ................................. 15

POINT III:  THE FAIR USE DEFENSE FAILS AS A MATTER OF LAW ......................... 16

  A.  THE FIRST FACTOR WEIGHS HEAVILY AGAINST FAIR USE ................................. 17

    (1)  Defendant's Secondary Use is NOT Transformative .................................................... 17

    (2)  Defendant's Use is Commercial Rather Than Non-Profit ........................................... 19

  B.  THE SECOND FACTOR WEIGHS AGAINST FAIR USE ......................................... 19

  C.  THE THIRD FACTOR WEIGHS AGAINST FAIR USE BECAUSE  DEFENDANT PUBLISHED A
FULL-COLOR, FULL-SCALE REPRODUCTIONS OF THE IMAGE WITHOUT ALTERATION 20

  D.  THE FOURTH FACTOR WEIGHS AGAINST FAIR USE BECAUSE MARKET HARM MAY BE
PRESUMED AS A MATTER OF LAW ............................................................... 21

POINT IV:    DEFENDANT'S REMAINING AFFIRMATIVE DEFENSES SHOULD BE
             DISMISSED AS A MATTER OF LAW ............................................................ 23

   1.   THE DEFENSE OF FAILURE TO STATE A CLAIM SHOULD BE DISMISSED ............................ 24

   2.   THE DEFENSE OF ACQUIESCENCE SHOULD BE DISMISSED ................................................. 24

   3.   THE DEFENSE OF STANDING SHOULD BE DISMISSED ........................................................ 25

   4.   THE DEFENSE OF JUSTIFICATION SHOULD BE DISMISSED ................................................. 26

   5.   THE DEFENSE OF DE MINIMIS USE SHOULD BE DISMISSED ................................................ 26

   6.   THE DEFENSE OF UNCLEAN HANDS SHOULD BE DISMISSED ............................................ 28

   7.   THE DEFENSE OF COPYRIGHT MISUSE SHOULD BE DISMISSED ........................................ 28

CONCLUSION ................................................................................................................ 30

## TABLE OF AUTHORITIES

**CASES**

*ABKCO Music, Inc. v. Sagan*,
No. 15 CIV. 4025 (ER), 2018 WL 1746564, at *18 (S.D.N.Y. Apr. 9, 2018) ........................ 15

*Aetna Cas. & Surety Co. v. Aniero Concrete Co., Inc.*,
404 F.3d 566, 607 (2d Cir. 2005)................................................................................... 28

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 249 (1986)................................................................................................. 7

*Ashcroft v. Iqbal*,
556 U.S. 662, 678 (2009)............................................................................................... 24

*Associated Press v. Meltwater U.S. Holdings*,
931 F.Supp.2d 537, 551 (S.D.N.Y. 2013) ..................................................................... 17

*Avtec Sys., Inc. v. Peiffer*,
21 F.3d 568, 571 (4th Cir.1994) ...................................................................................... 8

*Barcroft Media, Ltd. v. Coed Media Group, LLC*,
No. 16-cv-7634 (JMF), 2017 WL 5032993, *6 (S.D.N.Y. Nov. 2, 2017)....................... 18

*Basic Books, Inc. v. Kinko's Graphics Corp.*,
758 F.Supp. 1522, 1539–40 (S.D.N.Y.1991) ................................................................ 24

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 570 (2007)............................................................................................... 24

*Blanch v. Koons*,
467 F.3d 244, 251 (2d Cir. 2006)................................................................................... 17

*Broadcast Music, Inc. v. Hearst/ABC Viacom Entm't Servs.*,
746 F. Supp. 320, 329 (S.D.N.Y. 1990) ........................................................................ 28

*BWP Media USA Inc. v. Gossip Cop Media, Inc.*,
196 F.Supp.3d 395, 404-405 (S.D.N.Y. 2016) .............................................................. 18

*Cable/Home Commc'n Corp. v. Network Prods., Inc.*,
902 F.2d 829, 845 (11th Cir.1990) ................................................................................ 22

*Campbell v. Acuff– Rose Music, Inc.*,
510 U.S. 569, 579 (1994)............................................................................................... 17

*Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc.*,
  150 F.3d 132, 137 (2d Cir. 1998).................................................................................. 11

*Celotex Corp. v. Catrett*,
  477 U.S. 317, 322–23 (1986)......................................................................................... 7

*Design Options Inc. v. BellePointe, Inc.*,
  940 F.Supp. 86, 92 (S.D.N.Y 1996) ............................................................................ 16

*Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*,
  307 F.3d 197, 208 (3d Cir. 2002).................................................................................. 28

*Dyer v. V.P. Records Retail Outlet, Inc.*,
  No. 05 Civ. 6583 (WHP), 2008 WL 2876494, at *4 (S.D.N.Y. July 24, 2008) ...................... 27

*Eclaire Advisor Ltd. v. Daewoo Engineering Co.*,
  375 F.Supp.2d 257, 260 (S.D.N.Y. 2005) .................................................................... 24

*Ets–Hokin v. Skyy Spirits, Inc.*,
  225 F.3d 1068, 1074-76 (9th Cir. 2000) ...................................................................... 10

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
  499 U.S. 340, 345 (1991)............................................................................................ 8, 10

*Ferdman v. CBS Interactive, Inc.*,
  17-cv-1317 (PGG), 2018 WL 4572241, *19 (S.D.N.Y. Sept. 21, 2018)................................ 22

*Fonar Corp. v. Domenick*,
  105 F.3d 99, 105 (2d Cir. 1997).................................................................................... 9

*Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*,
  139 S. Ct. 881, 203 L. Ed. 2d 147 (2019) .................................................................... 25

*Goodman v. Universal Beauty*,
  17-cv-1716 (KBF), 2018 WL 1274855, at *5 (S.D.N.Y. March 9, 2018)................................ 9

*Harper & Row v. Nation Enterprises*,
  471 U.S. 539, 560 (1985)............................................................................................. 16

*Harper & Row, Publishers, Inc. v. Nation Enters.*,
  471 U.S. 539, 560 (1985)............................................................................................. 7

*Hirsch v. Complex Media, Inc.*,
  No. 18-cv-5488 (CM), 2018 WL 6985227, at *6 (S.D.N.Y., December 10, 2018) ................ 18

*I.A.E., Inc. v. Shaver,*
74 F.3d 768, 776 (7th Cir. 1996) ............................................................ 15

*Infinity Broadcast Corp. v. Kirkwood,*
150 F.3d 104, 108 & n. 2 (2d Cir. 1998) ............................................... 17

*Intergraph Corp. v. Intel Corp.,*
195 F.3d 1346, 1362 (Fed.Cir.1999) ..................................................... 29

*Island Software & Computer Serv., Inc. v. Microsoft Corp.,*
413 F.3d 257 (2d Cir. 2005) ..................................................................... 8

*Jewelers′ Circular Pub. Co. v. Keystone Pub. Co.,*
274 F. 932, 934 (S.D.N.Y. 1921) ........................................................... 10

*Knitwaves, Inc. v. Lollytogs Ltd. (Inc.),*
71 F.3d 996, 1002 (2d Cir. 1995) ......................................................... 26

*Lasercomb Am., Inc. v. Reynolds,*
911 F.2d 970, 976 (4th Cir. 1990) ........................................................ 29

*Lowry′s Reports, Inc. v. Legg Mason, Inc.,*
271 F. Supp. 2d 737, 748–49 (D. Md. 2003) .......................................... 7

*Mannion v. Coors Brewing Co.,*
377 F.Supp.2d 444, 451 (S.D.N.Y. 2005) ............................................. 10

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,*
475 U.S. 574, 587–88 (1986) ................................................................... 7

*Microsoft Computer, Corp. v. Grey,*
910 F.Supp. 1077, 1083 (D.Md.1995) ................................................... 11

*Monster Communications, Inc. v. Turner Broadcasting,*
935 F.Supp. 490, 494 (S.D.N.Y. 1996). ............................................... 20

*Morris v. Guetta,*
2013 WL 440127, *3 (CD. Cal. Feb. 4, 2013) ...................................... 10

*Nihon Keizai Shimbun, Inc. v. Comline Bus. Data, Inc.*
166 F.3d 65, 71–72 (2d Cir. 1999) ........................................................ 28

*NXIVM Corp. v. Ross Inst.,*
364 F.3d 471, 478 (2d Cir. 2004) .......................................................... 17

*Otto v. Hearst Commc'ns, Inc.*,
No. 1:17-CV-4712-GHW, 2018 WL 6510801 at *6 (S.D.N.Y. Dec. 10, 2018) ("*Otto*") ........ 12

*Psihoyos v. National Examiner*,
1998 WL 336655, *3 (S.D.N.Y. June 22, 1998) ..................................................... 18

*Psihoyos v. Pearson Educ., Inc.*,
855 F. Supp. 2d at 124 ............................................................................................ 15

*Ringgold v. Black Entertainment Television, Inc.*,
126 3d 70, 79 (2d Cir. 1997) ............................................................................. 17, 27

*Rogers v. Koons*,
960 F.2d 301, 307 (2d Cir. 1992) ........................................................................ 10

*Scholz Design, Inc. v. Sard Custom Homes, LLC*,
691 F.3d 182, 186 (2d Cir. 2012) ........................................................................... 8

*Schrock v. Learning Curve Int'l, Inc.*,
586 F.3d 513, 519 (7th Cir. 2009) ....................................................................... 11

*Otto v. Hearst Commc'ns, Inc.*,
No. 1:17-CV-4712-GHW, 2018 WL 6510801 at *6 (S.D.N.Y. Dec. 10, 2018) ..................... 11

*Shapiro, Bernstein & Co. v. H.L. Green Co.*,
316 F.2d 304, 307 (2d Cir.1963) .......................................................................... 11

*Sony Corp. of America v. Universal City Studios, Inc.*,
464 U.S. 417, 450 (1984) ...................................................................................... 21

*Stewart v. Abend*,
495 U.S. 207 (1990) ............................................................................................. 16

*Tolliver v. McCants*,
684 F. Supp. 2d 343, 347 (S.D.N.Y. 2010), *aff'd*, 486 F. App'x 902 (2d Cir. 2012) ............... 24

*Trandes Corp. v. Guy F. Atkinson Co.*,
996 F.2d 655, 660 (4th Cir.1993) ............................................................................ 8

*Twentieth Century Fox Film Corp. v. Marvel Enterprises, Inc.*, 155 F. Supp. 2d 1, 46 (S.D.N.Y.
2001), remanded on other grounds, 277 F.3d 253 (2d Cir. 2002) ................................. 27

*Xechem, Inc. v. Bristol-Myers Squibb Co.*,
372 F.3d 899, 901 (7th Cir.2004) ........................................................................... 24

## <u>Statutes</u>

17 U.S.C. § 102(a)(5) ........................................................................................... 10
17 U.S.C. § 106 ............................................................................................... 2, 22
17 U.S.C. § 107 ................................................................................................... 16
17 U.S.C. § 410(c) ................................................................................................. 8
17 U.S.C. § 501 ..................................................................................................... 7
17 U.S.C. § 410(c) ................................................................................................. 8


## <u>Rules</u>

F.R.E. 406 .............................................................................................................. 8

## <u>Treatises</u>

1 NIMMER § 2.08[E][1], at 2-129 ......................................................................... 10

1 NIMMER §§ 2.01[A], [B] (1990) ........................................................................ 10

1 Melvin B. Nimmer & David Nimmer,
   NIMMER ON COPYRIGHT § 2.08[E][1], at 2–130 (1999) ........................................ 10

Plaintiff Matthew Bradley ("Plaintiff" or "Bradley") respectfully submits this memorandum of law in support of his motion for partial summary judgment against Defendant Analytical Grammar, Inc. ("Defendant") for copyright infringement.

## INTRODUCTION

This copyright infringement case is far more basic than Defendant would have this Court believe. Quite simply: Plaintiff created an innovative Photograph and posted it to his Facebook page. The Photograph went viral and thousands of Facebook users re-posted it through the "share" functionality provided by Facebook's platform. The share functionality provides proper credit to the original copyright holder, by associating the work with the creator's name and profile picture, and links back to the original copyright holder's Facebook account.

Defendant, a sophisticated publisher which operates a Facebook *business* page to generate revenue for its for-profit enterprise, did not use Facebook's share functionality to display the Photograph. Instead, Defendant expropriated the Photograph and passed the work off as its own original creation. Because Defendant did not use the share functionality provided by Facebook's platform to display the Photograph, and did not provide attribution to Plaintiff, Defendant should be held liable for copyright infringement.

Defendant's reliance on Facebook's terms of service is misguided. It was Facebook, rather than Defendant, which was the beneficiary of that license. Defendant cannot simply pretend to be Facebook and claim that its use was authorized. And there is no record evidence that Facebook actually sub-licensed the Photograph to Defendant. Moreover, because Defendant failed to associate the Photograph with Plaintiff's name and profile picture via the share functionality, Defendant cannot be shielded from liability.

Defendant's fair use defense is also unavailing. The secondary use was not transformative because Defendant did nothing more than re-publish Plaintiffs original Photograph and its associated caption – "This is wrong on so many levels". Defendant did not offer any commentary or criticism directed at the Photograph, nor did it re-contextualize the Photograph by imparting new meaning. Defendant did not report on a political or social controversy that arose because of the very existence of the Photograph itself. Nor did Defendant transform the original purpose of use or message behind the Photograph. Defendant merely used the Photograph in the exact same manner as Plaintiff.

Further, the Court may presume market harm because Defendant's secondary use constituted a mere duplication of Bradley's original photograph. Bradley is entitled to profit from the market demand generated by initial publication of his Photograph. But because Defendant engaged in wholesale copying of the Photograph, any authorized market for the original work was severely diminished.

The record shows that once Bradley discovered that his work was being expropriated and that he was not being properly credited for his creation, he took steps to realize the value of the work. First, he copyrighted the Photograph with the Copyright Office. Next, he sought compensation on his own behalf from third-party infringers. Finally, he sought competent counsel to prosecute claims on his behalf in federal court.

Defendant's argument that because the Photograph qualifies as a viral "meme" that it somehow becomes communal property is unavailing. If anything, the popularity of an image demonstrates the value of the work. It is precisely because of the work's market popularity that Bradley is entitled to demand a license fee for use by commercial entities.

2

**UNCONTROVERTED STATEMENT OF FACTS**

**Plaintiff Matthew Bradley**

Bradley is a freelance technological consultant. [SOF[1] ¶ 3]  In Bradley's free time, he enjoys creating photographs of clever puns and posting them on social media. [SOF ¶ 2] A pun makes a play on the different possible meanings of a word.  [SOF ¶ 3] Photographs depicting objects used to convey a pun are also called "memes" when they become popular, i.e., "viral," in the context of social media. [SOF ¶ 3]

**Defendant Analytical Grammar, Inc.**

Defendant is a for-profit company and sophisticated purveyor in the publishing industry. [SOF ¶ 4] According to the curriculum vitae of Defendant's principal owner, Erin M. Karl, the company designs and sells literature to private schools, writes and designs market curricula, and operates a Facebook "business page [which] has engagement in the millions." Ms. Karl is also "an experienced newspaper editor" and "well-versed in social media." [SOF ¶ 5] Defendant owns, operates and manages a Facebook page at URL https://www.facebook.com/analyticalgrammar/ (the "Website").  [SOF ¶ 6]

**Initial Publication of the "Wrong on So Many Levels" Photograph – December 8, 2017**

On December 8, 2017, Bradley created a Photograph which depicts the word "wrong" handwritten on blue scotch tape and attached to various different carpentry levels, i.e., devices typically used in construction projects as measuring tools (the "Photograph").  [SOF ¶ 7] In creating the Photograph, Bradley devised the concept, arranged and positioned the carpentry levels, and wrote the word "wrong" on scotch tape in his own handwriting.  [SOF ¶ 8] Bradley

---

[1] SOF shall refer to Plaintiff's Statement Pursuant to Local Rule 56.1(a), filed concurrently herewith.

also selected the perspective, composition, angle, lighting, and camera equipment used to create the Photograph. [SOF ¶ 8]

After creating the Photograph, Bradley posted it to his personal Facebook account which bears his name "Matthew Bradley" directly above where the Photograph was first displayed. The caption he created to accompany the photo reads: "THIS IS WRONG ON SO MANY LEVELS." The original post is dated December 8, 2017 at 5:02 p.m. [SOF ¶ 9]

**Bradley's Initial Registration of the Photograph – December 14, 2018**

On December 14, 2018, Bradley applied for registration of the copyright with the United States Copyright Office ("USCO"). [SOF ¶ 10] Bradley registered the Photograph with the Copyright Office because he observed on-line users re-posting his Photograph and passing it off as their own work. [SOF ¶ 11] Bradley believed that his rights were violated when certain users, whether on the Facebook platform or other platforms, re-published the Photograph to their own accounts or websites and took credit for his original work. [SOF ¶ 11]

**Editing of the Original Facebook Post – December 14, 2018**

On December 14, 2018, after registering tthe Photograph with the USCO, Bradley edited his original Facebook post by superimposing text in the right hand corner of the Photograph which reads: "copyright 2018 Matthew J. Bradley." [SOF ¶ 12] He also superimposed the caption "This is wrong on so many levels" over the Photograph in white block letters. [SOF ¶ 12] Finally, he included the following language underneath the text of the caption:

> "please note that this picture is copyrighted. I appreciate all of you who shared it (very unexpectedly). Some people, however, are passing it off as their own work. I took the picture with my phone. This is the original photo (meme added). If you see anyone violating this copyright, please let me know. Thanks." [SOF ¶ 12]

On December 14, 2017, Bradley made other edits to the original Facebook post to include a hyperlink to his blog. This was because the popularity of the Photograph could lead people to visit his personal blog. [SOF ¶ 13]

**Defendant's Infringing Activity – December 16, 2017**

On December 16, 2017, eight days after the Photograph was initially published on Bradley's Facebook page, Defendant re-published the Photograph on its business-related Facebook account with the same caption that Bradley had originally associated with the Photograph - "This is wrong on so many levels." [SOF ¶ 14]

Critically, Defendant did not re-share Bradley's original Facebook Post which included the Photograph. [SOF ¶ 14] Rather, Defendant uploaded the Photograph to its own Facebook business account and passed off the Photograph (and associated caption) as if it was Defendant's own creation. [SOF ¶ 15]

Defendant did not seek Bradley's permission or consent to re-publish the Photograph on its Facebook business page. [SOF ¶ 16] Bradley never granted Defendant authorization to copy the Photograph or distribute copies of the Photograph to the public. [SOF ¶ 16]

Prior to Defendant's publication of the Photograph on its Facebook page, there was no communication between Bradley and Defendant concerning the Photograph. [SOF ¶ 17] Prior to the filing of this lawsuit, there was no communication between Bradley and Defendant concerning the Photograph. [SOF ¶ 18]

**Second Copyright Registration of the Photograph – January 3, 2019**

Bradley's counsel, Liebowitz Law Firm, PLLC ("LLF"), enforces his rights against copyright infringers. [SOF ¶ 16] As part of the services it provides, LLF registers photographs with the USCO. [SOF ¶ 19] After learning that Bradley's original copyright registration

contained an error, Bradley authorized LLF to register the Photograph with the USCO on his behalf. [SOF ¶ 20]

Bradley is in possession of a registration certificate for the Photograph, bearing number VA 2-133-725, with an effective date of January 3, 2019 (the "725 Registration"). [SOF ¶ 7] The Photograph is on deposit with the 725 Registration. [SOF ¶ 21] The Photograph is on deposit with the 725 Registration. [SOF ¶ 22] The registration of the Photograph on behalf of Plaintiff was carried out in accordance with LLF's routine practice of registering clients' photographs with the USCO. [SOF ¶ 23]

Bradley obtained the 725 Registration on January 3, 2019, within five years after first publication of the Photograph, which took place on December 8, 2017. [SOF ¶ 24]

**Bradley's Efforts to Enforce the Copyright in the Photograph**

After filing for copyright registration of the Photograph, Bradley began to enforce his copyright against infringers. [Bradley Declr. ¶ 25] On or about December 24, 2018, Bradley retained LLF to enforce his copyright. [SOF ¶ 26]

**Facebook Terms of Service**

According to Facebook's terms of service, Bradley owns the copyright to the Photograph even after posting it to his Facebook page. [SOF ¶ 27] Although Bradley granted Facebook a license to use the Photograph, the license does not extend to unauthorized use by Defendant because Defendant failed to share Bradley's Facebook Post, and instead re-created its own post under the false pretense that Defendant had created the Photograph and its associated caption. [SOF ¶ 28]

6

## LEGAL STANDARD

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88 (1986).

Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson,* 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his position. *Anderson,* 477 U.S. at 252.

## ARGUMENT

On a plaintiff's motion for summary judgment, the Court may determine liability against a defendant on plaintiff's copyright infringement claim under 17 U.S.C. § 501. *Harper & Row, Publishers, Inc. v. Nation Enters.,* 471 U.S. 539, 560 (1985); *Lowry's Reports, Inc. v. Legg Mason, Inc.*, 271 F. Supp. 2d 737, 748–49 (D. Md. 2003).

**POINT I:**     **THERE IS NO GENUINE ISSUE OF MATERIAL FACT THAT PLAINTIFF HAS ESTABLISHED HIS INFRINGEMENT CLAIM**

To establish copyright infringement, Plaintiff must prove two elements: (1) that he owns a valid copyright; and (2) that the defendant "encroached upon one of the exclusive rights [those copyrights] conferred." *Avtec Sys., Inc. v. Peiffer*, 21 F.3d 568, 571 (4th Cir.1994) (citing 17 U.S.C. § 501(a)); *Trandes Corp. v. Guy F. Atkinson Co.,* 996 F.2d 655, 660 (4th Cir.1993); *see also Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).

**A.     PLAINTIFF OWNS A VALID COPYRIGHT**

**(1) Plaintiff's Photograph is Registered with the Copyright Office**

A certificate of registration from the U.S. Register of Copyrights constitutes *prima facie* evidence of the certificate holder's copyright ownership, as well as the facts stated in the registration. 17 U.S.C. § 410(c); *Serv. & Training, Inc. v. Data Gen. Corp.,* 963 F.2d 680, 688 (4th Cir.1992). A certificate of registration is *prima facie* evidence of both valid ownership of copyright <u>and</u> originality. *Scholz Design, Inc. v. Sard Custom Homes, LLC*, 691 F.3d 182, 186 (2d Cir. 2012). To be timely, a certificate of registration must be obtained "before or within five years after first publication" of a work. *Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257 (2d Cir. 2005).

Here, Bradley has established that he created the Photograph. [SOF ¶¶ 7-8]  Moreover, Bradley is in possession of a certificate of the 725 Registration from the USCO. [SOF ¶ 21]  The registration of the Photograph was carried out in accordance with LLF's routine practice of registering photographs on behalf of its clients. [SOF ¶ 23]  *See* F.R.E. 406 (evidence showing "an organization's routine practice may be admitted to prove that on a particular occasion the . . . organization acted in accordance with the . . . routine practice."). Further, Richard Liebowitz, an attorney whose name appears on the face of the 725 Registration, swears that the Photograph is

on deposit with the USCO. [SOF ¶ ] *See Goodman v. Universal Beauty*, 17-cv-1716 (KBF), 2018 WL 1274855, at *5 (S.D.N.Y. March 9, 2018) (finding on summary judgment that Liebowitz's sworn declaration was sufficient to show that photograph was on deposit with the applicable registration certificate). Defendant has failed to present any evidence to the contrary, despite the opportunity to request official deposit copies from the Copyright Office during discovery.

Further, there is no dispute that the 725 Registration was obtained within five years after first publication of the work. [SOF ¶ 24] Accordingly, the 725 Registration serves as *prima facie* evidence of Bradley's valid copyright ownership in the Photograph. *Serv. & Training, Inc.,* 963 F.2d at 688. At that point, the burden shifts to Defendant to rebut the statutory presumption of ownership by offering evidence that undermines the validity of the copyrights. *Id.* But Defendant has not offered any evidence that the 725 Registration is invalid, nor has Defendant otherwise shown that Plaintiff deliberately misrepresented facts to the Copyright Office. *See also Fonar Corp. v. Domenick*, 105 F.3d 99, 105 (2d Cir. 1997) ("the presumption [of validity] may be overcome only by 'proof of deliberate misrepresentation.'").

Accordingly, there is no issue of material fact concerning the validity of the 725 Registration and summary judgment should be granted on the issue of Bradley's copyright ownership of the Photographs. *Lowry's Reports, Inc.,* 271 F. Supp. 2d at 745.

### (2) Plaintiff's Photograph Meets the Minimum Threshold of Originality

Defendant's first counterclaim argues that Plaintiff's Photograph is not subject to copyright protection for alleged lack of originality. But as explained below, this argument fails and Defendant's first counterclaim should therefore be dismissed as a matter of law.

"Protection under the copyright statute extends to pictorial works[.]" *Rogers v. Koons*, 960 F.2d 301, 306 (2d Cir. 1992) (*citing* 17 U.S.C. § 102(a)(5)). "Original" in the copyright context "means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." *Feist Publ'ns, Inc. v. Rural Tel. Svc. Co., Inc.,* 499 U.S. 340, 345 (1991) (*citing* 1 NIMMER §§ 2.01[A], [B] (1990)). "Almost any photograph 'may claim the necessary originality to support a copyright.'" *Mannion v. Coors Brewing Co.,* 377 F.Supp.2d 444, 451 (S.D.N.Y. 2005) (*citing* 1 NIMMER § 2.08[E][1], at 2-129.

Indeed, "[e]ven the slightest artistic touch will meet the originality test for a photograph." *Ets–Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1074-76 (9th Cir. 2000); *see also Jewelers' Circular Pub. Co. v. Keystone Pub. Co.*, 274 F. 932, 934 (S.D.N.Y. 1921) (Judge Learned Hand) ("no photograph, however simple, can be unaffected by the personal influence of the author."); *see also Morris v. Guetta*, 2013 WL 440127, *3 (CD. Cal. Feb. 4, 2013) ("almost any[ ] photograph may claim the necessary originality to support a copyright merely by virtue of the photographers' personal choice of subject matter, angle of photograph, lighting, and determination of the precise time when the photograph is to be taken") (*citing* 1 Melvin B. Nimmer & David Nimmer, NIMMER ON COPYRIGHT § 2.08[E][1], at 2–130 (1999)).

"Elements of originality in a photograph may include posing the subjects, lighting, angle, selection of film and camera, evoking the desired expression, and almost any other variant involved." *Rogers v. Koons*, 960 F.2d 301, 307 (2d Cir. 1992) (citations omitted). "[I]n many cases, the photographer does not invent the scene or create the subject matter depicted in it. Rather, the original expression he contributes lies in the *rendition* of the subject matter - that is, the effect created by the combination of his choices of perspective, angle, lighting, shading,

focus, lens, and so on." *Schrock v. Learning Curve Int'l, Inc.*, 586 F.3d 513, 519 (7th Cir. 2009) .

"Unless a photograph replicates another work with total or near-total fidelity, it will be at least somewhat original in the rendition." *Mannion,* 377 F.Supp.2d at 452.

Here, the Photograph is protectable under the Copyright Act because Bradley exercised personal and creative choices in photographing the subject matter of the Photograph, including the selection and arrangement of the subject matter, the timing of when the Photograph was taken, perspective, angle, depth, and selection of camera equipment [SOF ¶ 8]

### (2) DEFENDANT ADMITS IT COPIED BRADLEY'S PHOTOGRAPH WITHOUT AUTHORIZATION

To satisfy the second element of an infringement claim, a plaintiff must show both that Defendant "encroached upon one of the exclusive rights [those copyrights] conferred." *Avtec,* 21 F.3d at 571; see also *Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc.,*150 F.3d 132, 137 (2d Cir. 1998) (requiring a showing that the work was "actually copied" and that such copying amounts to an "improper or unlawful appropriation.")

The Copyright Act vests the copyright owner with the exclusive rights to reproduce, distribute and display copies of the copyrighted work. 17 U.S.C. § 106(1), (3), (5). Violation of these rights constitutes illegal "copying." *Lowry's Reports,* 271 F. Supp. 2d at 745 (citing *Microsoft Computer, Corp. v. Grey* 910 F.Supp. 1077, 1083 (D.Md.1995). "The law of copyright *liability* takes no cognizance of a defendant's knowledge or intent." *Id.* at 746 (citing *Shapiro, Bernstein & Co. v. H.L. Green Co.,* 316 F.2d 304, 307 (2d Cir.1963)).

Here, Defendant admits that it copied the Photograph and displayed it on Defendant's Facebook business page. [SOF ¶ 14; Answer ¶ 10] *See Otto v. Hearst Commc'ns, Inc.*, No. 1:17-CV-4712-GHW, 2018 WL 6510801 at *6 (S.D.N.Y. Dec. 10, 2018) (finding actual copying took place where "the parties do not contest the fact that Hearst actually copied Otto's photograph for

its use in the Esquire Article, nor that the works are substantially similar because they are the same photograph.")

Further, Defendant admits that it did not obtain Plaintiff's permission to re-publish the Photograph [SOF ¶16; Answer ¶ 11]  As such, Defendant violated Bradley's exclusive rights under Section 106 of the Copyright Act because Defendant's actual copying amounted to "an improper and unlawful appropriation." *Castle Rock*, 150 F.3d at 137; *see also Otto v. Hearst Commc'ns, Inc.*, No. 1:17-CV-4712-GHW, 2018 WL 6510801 at *6 (S.D.N.Y. Dec. 10, 2018) ("*Otto*") ("The parties do not dispute Hearst did not have Otto's permission to use the Photograph, making the appropriation unlawful.")

In sum, there is no genuine issue of material fact concerning the two elements of Plaintiff's copyright infringement claim. Accordingly, Plaintiff respectfully requests that the Court grant Plaintiff summary judgment as to Count I of his complaint and summarily dismiss Defendant's first and second counterclaims.

## POINT II:  THE LICENSE DEFENSE FAILS AS A MATTER OF LAW

Defendant's second affirmative defense alleges that Defendant's use was subject to either an express or implied license.  For the following reasons, both arguments fail.

### 1.    NO EXPRESS LICENSE EXISTS UNDER FACEBOOK'S TERMS OF SERVICE

Defendant argues that because Plaintiff posted the Photograph to his Facebook account using the "Public" setting, that he automatically granted Defendant "an unconditional public license to access and use the photograph."  [Answer, Dkt. #12, p. 5] But the facts do not support this argument.

Although Plaintiff granted a license to Facebook to use the Photograph in accordance with Facebook's terms of service, it did not do so to Defendant.  Defendant is a separate

corporation than Facebook and does not stand in the shoes of Facebook. In short, Defendant is

not Facebook. Nor is there any evidence that Facebook *sub-licensed* the Photograph to

Defendant pursuant to the Facebook terms of service.

Section 3 of Facebook's terms of service, last revised on July 31, 2019. [SOF ¶ 27][2]

provide in pertinent part as follows:

**3. The permissions you give us**

We need certain permissions from you to provide our services:

1. Permission to use content you create and share: Some content that you share or upload, such as photos or videos, may be protected by intellectual property laws.

You own the intellectual property rights (things like copyright or trademarks) in any such content that you create and share on Facebook and the other Facebook Company Products you use. Nothing in these Terms takes away the rights you have to your own content. You are free to share your content with anyone else, wherever you want.

However, to provide our services we need you to give us some legal permissions (known as a 'license') to use this content. This is solely for the purposes of providing and improving our Products and services as described in Section 1 above.

Specifically, when you share, post, or upload content that is covered by intellectual property rights on or in connection with our Products, you grant us a non-exclusive, transferable, sub-licensable, royalty-free, and worldwide license to host, use, distribute, modify, run, copy, publicly perform or display, translate, and create derivative works of your content (consistent with your privacy and application settings). This means, for example, that if you share a photo on Facebook, you give us permission to store, copy, and share it with others (again, consistent with your settings) such as service providers that support our service or other Facebook Products you use. This license will end when your content is deleted from our systems.

On its face, nothing in Section 3 of Facebook's terms of service permit Facebook users to

re-publish as its own photographs uploaded by other Facebook users.  Instead, a Facebook user

may only <u>share</u> the content of other users by displaying such content through the share

functionality provided by Facebook's platform.  The share functionality provides proper credit to

the original copyright holder and links back to the original copyright holder's Facebook account.

---

[2] Plaintiff avers that the controlling terms of service were those in effect at the time this lawsuit was filed on June 18, 2019.

In contrast, a Facebook user may <u>not</u> simply re-publish a photograph and pass that work off as its own original creation, as Defendant did in this case. Because Defendant did not use the share functionality provided by Facebook's platform to display the Photograph, but instead re-published the Photograph as if it was Defendant's own original work, Defendant's license defense must fail.

To the extent Defendant relies on previous iterations of Facebook's terms of service which were in effect as of the time the Photograph was initially published, the result is no different. Under the terms that were in effect prior to April 2018, Facebook users granted Facebook "a non-exclusive, transferable, sub-licensable, royalty-free, worldwide license to use any IP content that you post on or in connection with Facebook." Once again, it was Facebook, rather than Defendant, which was the beneficiary of that license. Defendant cannot simply pretend to be Facebook and claim that its use was authorized. And there is no record evidence that Facebook actually sub-licensed the Photograph to Defendant.

Defendant's license defense primarily relies on a single phrase from Facebook's obsolete terms of service which provided that: "When you publish content or information using the Public setting, it means that you are allowing everyone, including people off of Facebook, to access and use that information, <u>and to associate it with you (i.e., your name and profile picture)</u>." (underline added). However, Defendant's license defense fails even under these terms.

<u>First</u>, when Defendant re-published the Photograph on its Facebook business page, it failed to associate the Photograph with Plaintiff's name and profile picture. [SOF ¶14] Had Defendant utilized Facebook's sharing functionality, as thousands of other users did after Plaintiff initially published the Photograph, then it would have been authorized to display the Photograph on its Facebook page. But that's not what Defendant did. Instead, Defendant re-

published the Photograph on its page and failed to associate the Photograph with Bradley's account. [SOF ¶14] Such use was not within the scope of the Facebook's obsolete terms of service.

Second, the outdated provision upon which Defendant relies is ambiguous as to whether it actually covers photographs. The first part of this provision refers to "content and information" but the second part only refers to "information." The second part is more critical because it says that everyone has a right "to access and use *that information*." (italics). Plaintiff's Photograph does not qualify as "information" and is therefore outside the scope of this obsolete provision.

## 2. THERE IS NO EVIDENCE TO SUPPORT AN IMPLIED LICENSE

It is undisputed that there was never any communication between Plaintiff and Defendant before the alleged infringement took place. [SOF ¶17] Nonetheless, Defendant argues that it had an implied license to use the Photograph.

An implied non-exclusive license should be found only in narrow circumstances where one party created a work at the other's request and handed it over intending that the other copy and distribute it. *ABKCO Music, Inc. v. Sagan*, No. 15 CIV. 4025 (ER), 2018 WL 1746564, at *18 (S.D.N.Y. Apr. 9, 2018) (quotations omitted and collecting cases); *see also I.A.E., Inc. v. Shaver*, 74 F.3d 768, 776 (7th Cir. 1996) (finding an implied license where: "(1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes that particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requestor copy and distribute his work"). Ultimately, "the question comes down to whether there was a 'meeting of the minds' between the parties to permit the particular usage at issue." *Psihoyos v. Pearson Educ., Inc.*, 855 F. Supp. 2d at 124 (quotation marks and citations

omitted); *see also Design Options Inc. v. BellePointe, Inc.,* 940 F.Supp. 86, 92 (S.D.N.Y 1996) (holding that there must be evidence that "*both parties* to the transaction, not just the defendant, intended that the defendant could use or copy the plaintiff's work without liability for copyright infringement").

No matter what standard applies here, Defendant cannot reasonably argue the existence of an implied license. The Photograph was not created on behalf of the Defendant, nor delivered to the Defendant with the intention of copying and distribution. Indeed, there was never any communication between Plaintiff and Defendant <u>before</u> the alleged infringement took place. [SOF ¶17] Nothing in the record supports the claim of an implied license.

In sum, Defendant cannot meet its burden for the affirmative defense of a license, express or implied. This affirmative defense therefore fails as a matter of law.

## <u>POINT III</u>:   THE FAIR USE DEFENSE FAILS AS A MATTER OF LAW

Defendant's sixth affirmative defense alleges fair use. A court "may conclude as a matter of law that the challenged use does not qualify as a fair use of the copyrighted work." *Harper & Row v. Nation Enterprises*, 471 U.S. 539, 560 (1985). Thus, the Court may grant summary judgment dismissing the fair use defense. *See, e.g., Stewart v. Abend*, 495 U.S. 207 (1990); *Castle Rock*, 150 F.3d at 137; *Otto* at *12. As set forth below, examination of the statutory factors demonstrates that Defendant's secondary use of the Photograph does not constitute fair use.[3]

---

[3] Section 107 of the Copyright Act sets out four factors to consider in determining whether a defendant's use of a copyrighted work is a fair use. These are "(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107.

**A.      THE FIRST FACTOR WEIGHS HEAVILY AGAINST FAIR USE**

The first factor under 17 U.S.C. § 107(1), which addresses the manner in which the copied work is used, is the "heart of the fair use inquiry." *Blanch v. Koons*, 467 F.3d 244, 251 (2d Cir. 2006).  Courts examine at least two sub-factors to determine the purpose and character of use, including whether the secondary use is (1) transformative; and (2) for commercial purposes.  *See NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 478 (2d Cir. 2004).

**(1)      Defendant's Secondary Use is NOT Transformative**

The fair use doctrine "allows for new transformative works that further the public discourse and the free exchange of ideas in order to promote science and the arts."  *See Campbell v. Acuff–Rose Music, Inc.*, 510 U.S. 569, 579 (1994).  The central purpose of the inquiry is to determine whether "the new work merely supersedes the objects of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message." *Ringgold v. Black Entertainment Television, Inc.*, 126 3d 70, 79 (2d Cir. 1997) (citations omitted).

"[U]se of copyrighted material that 'merely repackages or republishes the original is unlikely to be deemed a fair use' and a 'change of format, though useful' is not transformative." *Associated Press v. Meltwater U.S. Holdings*, 931 F.Supp.2d 537, 551 (S.D.N.Y. 2013) (*quoting Infinity Broadcast Corp. v. Kirkwood*, 150 F.3d 104, 108 & n. 2 (2d Cir. 1998) (citation omitted)).

 Here, Defendant's use was not transformative because Defendant did nothing more that re-publish the original Photograph and its associated caption.  Defendant did not offer any commentary or criticism directed at the Photograph, nor re-contextualize the Photograph by imparting new meaning.  Defendant did not report on a political or social controversy that

arose because of the very existence of the Photograph itself. Nor did Defendant transform the original purpose of use or message behind the Photograph. Defendant merely used the Photograph in the exact same manner as Plaintiff. [SOF ¶ 14]

A secondary use has "no transformative effect [where the article] display[s] the Images in the same manner and for the same purpose as they were originally intended to be used." *Barcroft Media, Ltd. v. Coed Media Group, LLC*, No. 16-cv-7634 (JMF), 2017 WL 5032993, *6 (S.D.N.Y. Nov. 2, 2017); *see also Psihoyos,* 1998 WL 336655 at *3 (rejecting fair use defense where purpose of secondary use was to display it "for precisely a central purpose for which it was created").

"Display of a copyrighted image or video may be transformative where the use serves to illustrate criticism, commentary, or a news story *about that work*." *Barcroft,* 2017 WL 5032993, at *6; see also *BWP Media USA Inc. v. Gossip Cop Media, Inc.*, 196 F.Supp.3d 395, 404-405 (S.D.N.Y. 2016) (not transformative where the secondary use of "photograph seems intended as a general illustration of the [celebrity] couple . . . [and] Defendant [does not] comment or report on the images in question . . .); *Hirsch v. Complex Media, Inc.*, No. 18-cv-5488 (CM), 2018 WL 6985227, at *6 (S.D.N.Y., December 10, 2018) ("Complex has not established that its Video did anything more than merely describe the subject of Hirsch's Photograph, newsworthy or not. That conduct alone does not suffice as transformative."); *Psihoyos v. National Examiner*, 1998 WL 336655, *3 (S.D.N.Y. June 22, 1998) (defendant's "use is not transformative, because its piece uses the photo to show what it depicts."); *Otto,* 2018 WL 6510801, *8 ("It would be antithetical to the purposes of copyright protection to allow media companies to steal personal images and benefit from the fair use defense by

simply inserting the photo in an article which only recites factual information—much of which can be gleaned from the photograph itself.").

Here, like the cases in Associated Press, *Otto*, *Barcroft*, *Gossip Cop, and Psihoyos* where fair use was rejected, Defendant used the Photograph to merely illustrate the subject matter depicted in the image. [SOF ¶ 14] On its face, Defendant's republication of the Photograph on its Facebook business account is essentially identical to Plaintiff's initial publication. Defendant's re-post is nothing more than a wholesale reproduction of the Photograph and associated caption, without adding any additional commentary or criticism whatsoever [SOF ¶ 14]. Accordingly, there can be no transformative effect as a matter of law.

**(2)    Defendant's Use is Commercial Rather Than Non-Profit**

The fact that Defendant used the Photograph for a commercial rather than a non-profit purpose also weighs against a finding of fair use.  *Psihoyos*, 1198 WL 336655, at *3 (*citing Campbell*, 510 U.S. at 583-84). The "crux of the profit/nonprofit distinction is . . . whether the user stands to profit from the exploitation of the copyrighted material without paying the customary price."  *Harper & Row*, 471 U.S. at 562.

Here, there can be no dispute that Defendant is a for-profit corporate publisher which disseminates content on its Facebook business page in order to generate revenue for its owner, Erin Karl. [SOF, ¶¶ 4-5]  Contrary to Defendant's assertions that the secondary use was "educational," Defendant was plainly attempting to pass of Plaintiff's work as its own to drum up business.  Accordingly, Defendant sought to profit from Bradley's copyright without paying the customary price.

**B.    THE SECOND FACTOR WEIGHS AGAINST FAIR USE**

The second factor examines the "nature of the copyrighted work." 17 U.S.C. § 107(2).

19

Courts consider "(1) whether the work if expressive or creative, with a greater leeway being allowed a claim of fair use where the work is factual or information, and (2) whether the work if published or unpublished." *Blanch*, 467 F.3d at 256. "Photographic images of actual people, places and events may be as creative and deserving of protection as purely fanciful creations." *Monster Communications, Inc. v. Turner Broadcasting*, 935 F.Supp. 490, 494 (S.D.N.Y. 1996).

Here, the Photograph is creative in nature, given that Bradley devised the concept, arranged and positioned the carpentry levels, and wrote the word "wrong" on the scotch tape in his own handwriting. [SOF ¶ 8] Bradley also selected the perspective, composition, angle, lighting, and camera equipment used to create the Photograph. [SOF ¶ 8] Accordingly, even though the Photograph wwas published, this factor weighs against fair use because the Photograph is creative in nature.

## C.    THE THIRD FACTOR WEIGHS AGAINST FAIR USE BECAUSE DEFENDANT PUBLISHED A FULL-COLOR, FULL-SCALE REPRODUCTIONS OF THE IMAGE WITHOUT ALTERATION

The third factor bearing on fair use is "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. § 107(3). The question is whether "the quantity and value of the materials used are reasonable in relation to the purpose of the copying." *Campbell*, 510 U.S. at 586. The Court should consider whether the portion taken is "essentially the heart" of the copyrighted expression. *NXIVM Corp.*, 364 F.3d at 480 (citation omitted). The "most relevant" question for this factor is whether the infringer has taken "no more" than is necessary. *Infinity Broadcast Corp.*, 150 F.3d at 110. "[T]he more of a copyrighted work that is taken, the less likely the use is to be fair." *Id.* at 109.

As a quantitative matter, Defendant has taken the entire full-color Photograph and displayed it in full-scale. [SOF ¶ 14] This fact alone weighs against fair use. *See Associated*

*Press*, 931 F.Supp.2d at 558 ("appropriation of a copyrighted work in its entirety weighs against a finding of fair use").

As a qualitative matter, Defendant has used more of the copyrighted work than was necessary to accomplish its purpose. *See Rogers*, 960 F.2d at 311. The Photograph was reproduced by Defendant in full-color without any visible modification, cropping or alteration. [SOF ¶ 14] Defendant's wholesale reproduction of the Photograph, without any aesthetic alteration, demonstrates the work's qualitative value. *See Harper & Row*, 471 U.S. at 565 ("the fact that a substantial portion of the infringing work was copied verbatim is evidence of the qualitative value of the copied material, both to the originator and to the plagiarist who seeks to profit from marketing someone else's copyrighted expression.").

**D.** **T**HE **F**OURTH **F**ACTOR **W**EIGHS **A**GAINST **F**AIR **U**SE **B**ECAUSE **M**ARKET **H**ARM **M**AY **B**E **P**RESUMED **A**S A **M**ATTER OF **L**AW

The final fair use factor considers "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). This factor "requires courts to consider not only the extent of market harm caused by the particular actions of the alleged infringer, but also whether unrestricted and widespread conduct of the sort engaged in by the defendant would result in a substantially adverse impact on the potential market for the original." *Ringgold*, 126 F.3d at 80-81 (*citing Campbell*, 510 U.S. at 590 (quotation omitted)).

As a threshold matter, the Court may presume market harm because Defendant's secondary use constituted a mere duplication of Bradley's original photograph. *See Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 450 (1984) (holding that "every commercial use of copyrighted material is presumptively an unfair exploitation of the monopoly privilege that belongs to the owner of the copyright"). "A presumption of market

harm "makes common sense[ ] when a commercial use amounts to mere duplication of the entirety of an original." *Campbell*, 510 U.S. at 591.

Further, under *Sony,* "there is a presumption of market harm [where] Defendant's use of [] photographs were not transformative." *Ferdman v. CBS Interactive, Inc.*, 17-cv-1317 (PGG), 2018 WL 4572241, *19 (S.D.N.Y. Sept. 21, 2018). Here, because Defendant's use constituted a mere duplication of Plaintiff's unaltered Photograph <u>and</u> was wholly untransformative, *Sony's* presumption of market harm applies.

Defendant's secondary use also impairs the potential market for the Photograph because "unrestricted and widespread conduct of the sort engaged in by the defendant . . . would result in the substantially adverse impact on the potential market for [licensing of] the original." *Campbell*, 510 U.S. at 590 (internal quotation omitted). "Under section 107, 'potential market' means either an immediate or a delayed market, and includes harm to derivative works." *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 845 (11th Cir.1990).

Here, Bradley is entitled to profit from the market demand generated by initial publication of his Photograph. *See* 17 U.S.C. § 106. But because Defendant engaged in wholesale copying of the Photograph, any authorized market for the original work was severely diminished. The record shows that once Bradley discovered in December 2018 that his work was being expropriated and that he was not being properly credited for his creation, he took steps to realize the value of the work. First, he copyrighted the Photograph with the Copyright Office. [SOF ¶¶ 10-11] Next, he sought compensation on his own behalf from third-party infringers. [SOF ¶ 25] Finally, he sought competent counsel to prosecute claims on his behalf in federal court. [SOF ¶ 26]

This case is therefore similar to *Otto v. Hearst*, where the court determined in analyzing the fourth factor that an amateur photographer had a right to monetize his work after discovering its market popularity.

> It is clear from Otto's communications with TMZ and Burke the morning after the wedding that he did have an interest in entering the market upon realizing the value of his work. The creator of a work should not be precluded from future profits should they lack the marketing prowess to capitalize on their work at the time of creation. *Duncan*, 744 F.2d at 1496 ("Copyrights protect owners who immediately market a work no more stringently than owners who delay before entering the market."). Otto's status as an amateur photographer with an iPhone does not limit his right to engage in sales of his work.

> *Otto*, 345 F. Supp. 3d at 432.

In this case, the fact that Plaintiff, an amateur photographer, waited a year after initial publication before taking steps to enforce his copyright does not shield Defendant from liability. Defendant is a for-profit publisher, and a sophisticated purveyor in the industry, which sought to capitalize on Plaintiff's work by promoting the Photograph on its Facebook *business* page. [SOF ¶¶ 4-5] This was not "educational" use as Defendant claims. Defendant was using the Photograph to generate interest about its corporate brand and garner revenues for itself. For that reason, the fourth factor weighs against fair use.

In sum, all four factors weigh heavily against Defendant and thus the sixth affirmative defense of fair use dense should be dismissed as a matter of law.

**POINT IV:  DEFENDANT'S REMAINING AFFIRMATIVE DEFENSES SHOULD BE DISMISSED AS A MATTER OF LAW**

With respect to liability for copyright infringement (Count I of Plaintiff's complaint), Defendant also avers failure to state a claim (1st affirmative defense); acquiescence (3d affirmative defense); standing (4th affirmative defense); justification (5th affirmative defense); de

minimis use (7th affirmative defense); unclean hands (8th affirmative defense); and copyright misuse (9th affirmative defense). All of these defenses should be summarily dismissed.

### 1. THE DEFENSE OF FAILURE TO STATE A CLAIM SHOULD BE DISMISSED

A defense based on failure to state a claim must be directed to the pleading. *See Eclaire Advisor Ltd. v. Daewoo Engineering Co.*, 375 F.Supp.2d 257, 260 (S.D.N.Y. 2005). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Further, the existence of a meritorious affirmative defense does not equate to failure to state a claim upon which relief may be granted. *Xechem, Inc. v. Bristol-Myers Squibb Co.,* 372 F.3d 899, 901 (7th Cir.2004).

Here, Plaintiff's complaint sets forth a plausible set of facts to support each element of his copyright infringement claim. *See* Complaint, Dkt. #1, ¶¶ 7-9 (ownership and validity of copyright); ¶¶ 10-11 (Defendant's unauthorized copying of Bradley's work).

### 2. THE DEFENSE OF ACQUIESCENCE SHOULD BE DISMISSED

"There is some minimal support in caselaw for the recognition of an estoppel by acquiescence defense in copyright infringement actions." *Tolliver v. McCants*, 684 F. Supp. 2d 343, 347 (S.D.N.Y. 2010), *aff'd,* 486 F. App'x 902 (2d Cir. 2012) (citing *Basic Books, Inc. v. Kinko's Graphics Corp.,* 758 F.Supp. 1522, 1539–40 (S.D.N.Y.1991) ("'The plaintiff's acquiescence in the defendant's infringing acts may, if continued for a sufficient period of time and if manifested by overt acts, result in an abandonment of copyright.' In such a case, the

estoppel 'destroys the right asserted' and will be a defense for all acts occurring after

the acquiescence.") (*quoting* 4 NIMMER ON COPYRIGHT § 13.07).

Here, there is no evidence that Plaintiff acquiesced to Defendant's infringing conduct.

Before this lawsuit was filed, there was no communication whatsoever between Bradley and

Defendant concerning the Photograph. [SOF ¶ 18]  To the extent that Defendant argues that its

own infringing conduct should be exculpated because Bradley did not express concern about

other third-party infringers not before the Court, such argument fails.  Defendant's conduct is

unique in the sense that it attempted to pass off Plaintiff's work as its own to generate interest in

its corporate brandname and Facebook business page.  There is no evidence that Plaintiff never

approved or condoned Defendant's activity. Accordingly, this defense should be dismissed.

### 3.    THE DEFENSE OF STANDING SHOULD BE DISMISSED

To have standing to sue for copyright infringement, the U.S. Supreme Court only requires

that plaintiff is in possession of a copyright registration certificate. *Fourth Estate Pub. Benefit*

*Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 203 L. Ed. 2d 147 (2019) (holding that

registration of a copyright claim occurs, and a copyright claimant may commence an

infringement suit, when the Copyright Office registers a copyright).

Section 411 of the Copyright Act generally requires that any copyright claimant must

have registered or preregistered their copyright with the U.S. Copyright Office before they can

bring suit.

> Except for an action brought for a violation of the rights of the author under
> section 106A(a), and subject to the provisions of subsection (b), no civil action for
> infringement of the copyright in any United States work shall be instituted until
> preregistration or registration of the copyright claim has been made in accordance
> with this title. . . .

17 U.S.C. § 411(a).

Here, Plaintiff was in possession of a valid copyright registration certificate, dated January 3, 2019 [SOF ¶ 21], before he filed suit in June 2019 [Dkt. #1]. Accordingly, the affirmative defense of standing should be dismissed.

### 4. THE DEFENSE OF JUSTIFICATION SHOULD BE DISMISSED

Defendant asserts a defense of "justification" to Plaintiff's claim for copyright infringement. Plaintiff has not been able to find any caselaw which supports the assertion of such a defense in the context of the Copyright Act, 17 U.S.C. §501.

To the extent such defense is available, it fails because Defendant was not justified in re-publishing the Photograph on its Facebook business page without Plaintiff's authorization and without giving him proper credit or attribution. Instead of using Facebook's share functionality as thousands of other Facebook users had done, which would have permitted a link back to Plaintiff's account, Defendant passed off Plaintiff's work as its own in a shameful attempt to generate revenues for its profitable enterprise. This is what's known as stealing and therefore the justification fails as a matter of law.

### 5. THE DEFENSE OF DE MINIMIS USE SHOULD BE DISMISSED

The *de minimis* analysis asks whether the defendant's copying is both quantitatively and qualitatively sufficient to support the legal conclusion that infringement, i.e., actionable copying, has occurred. *Ringgold v. Black Entm't Television, Inc.*, 126 F.3d 70, 74–75 (2d Cir. 1997). The qualitative component concerns the degree of similarity between the two works, focusing on "whether an average lay observe would recognize the alleged copy as having been appropriated form the copyrighted work." *Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*, 71 F.3d 996, 1002 (2d Cir. 1995) (internal quotation marks, citation, and alterations omitted).

"The quantitative component generally concerns the amount of the copyrighted work that is copied, a consideration that is especially pertinent to exact copying." *Ringgold*, 126 F.3d at 75 (internal citation omitted). Where, as here, exact copying is at issue, courts should look to the "observability" of the copied work, which, in turn, depends upon "the length of time the copied work is observable in the allegedly infringing work and such factors as focus, lighting, camera angles, and prominence." *Id.*

Here, there can be no serious dispute as to the quantitative similarity between the Plaintiff's Photograph and the image used by Defendant: they are identical. Defendant simply engaged in wholesale reproduction of the Photograph and displayed it prominently on its Facebook business page. [SOF ¶14] The Photograph is plainly recognizable to any ordinary lay observer as it was permanently affixed to the Defendant's Facebook page in conspicuous view. *See, e.g., Dyer v. V.P. Records Retail Outlet, Inc.,* No. 05 Civ 6583 (WHP), 2008 WL 2876494, at *4 (S.D.N.Y. July 24, 2008) (denying summary judgment on grounds of *de minimis* copying for shots in which offending images "take up most of the screen" for "almost three seconds"); *Twentieth Century Fox Film Corp. v. Marvel Enterprises, Inc.,* 155 F. Supp. 2d 1, 46 (S.D.N.Y. 2001), *remanded on other grounds,* 277 F.3d 253 (2d Cir. 2002) (finding likelihood that prominent display of several copyrighted clips, which each lasted less than three seconds, was not *de minimis*).

In a qualitative sense, Defendant's use of the Photograph cannot possibly be "trivial" as it is material to the subject matter of the Defendant's post. In other words, Defendant consciously selected the Photograph to illustrate the caption "This is wrong on so many levels". Given the material nature of Defendant's qualitative copying, the *de minimis* defense fails as a matter of law. *See, e.g, Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197,

208 (3d Cir. 2002) ("[a] de minimis defense does not apply where the *qualitative* value of the copying is material."); *Nihon Keizai Shimbun, Inc. v. Comline Bus. Data, Inc.,* 166 F.3d 65, 71–72 (2d Cir. 1999) ("the quantitative analysis of two works must always occur in the shadow of their qualitative nature.").

### 6.    THE DEFENSE OF UNCLEAN HANDS SHOULD BE DISMISSED

"[T]he defense of unclean hands in copyright actions is recognized only rarely, when the plaintiff's transgression is of serious proportions and relates directly to the subject matter of the infringement action." *Broadcast Music, Inc. v. Hearst/ABC Viacom Entm't Servs.,* 746 F. Supp. 320, 329 (S.D.N.Y. 1990) (internal quotation marks and citation omitted).  Critically, "[d]efense of 'unclean hands' is premised on the maxim that a party 'who has acted fraudulently, or who by deceit or any unfair means has gained an advantage' is not entitled to obtain equitable relief." *State of New York v. United Parcel Serv., Inc.*, 160 F. Supp. 3d 629, 646 (S.D.N.Y. 2016) (citation omitted). In other words, unclean hands is an "equitable defense to equitable claims," and therefore is of no assistance with respect to "damages" sought in an "action at law." *Aetna Cas. & Surety Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 607 (2d Cir. 2005).

To the extent Plaintiff seeks relief at law, the doctrine of unclean hands is not applicable. Even if it was applicable, there is no evidence that Plaintiff has committed any transgression at all, much less acted fraudulently, by deceit or so unfairly as to invoke the unclean hands doctrine.   Defendant cannot meet its burden to show any evidence of unclean hands.  This affirmative defense to equitable claims fails as a matter of law.

### 7.    THE DEFENSE OF COPYRIGHT MISUSE SHOULD BE DISMISSED

The Fourth Circuit recognizes a defense of copyright misuse where the "attempted use of a copyright [is] to violate antitrust law" or where "the copyright is being used in a manner violative of the public policy embodied in the grant of a copyright." *Lasercomb Am., Inc. v. Reynolds*, 911 F.2d 970, 976 (4th Cir. 1990). However, "market power does not 'impose on the intellectual property owner an obligation to license the use of that property to others.'" *Intergraph Corp. v. Intel Corp.,* 195 F.3d 1346, 1362 (Fed.Cir.1999) (quoting United States Dep't of Justice & Fed. Trade Comm'n, *Antitrust Guidelines for the Licensing of Intellectual Property* 4 (1995)).

Here, there is no evidence that Plaintiff's attempt to realize the value of his work violated anti-trust law. Plaintiff has not attempted to monopolize any market demand for the Photograph. Rather, Bradley registered the Photograph with the Copyright Office because he observed on-line users re-posting his Photograph and passing it off as their own work. Bradley believed that his rights were violated when certain users, whether on the Facebook platform or outside, re-published the Photograph to their own accounts or websites and took credit for his original work. [SOF 15]

Once again, had Defendant simply employed Facebook's sharing functionality and re-shared Plaintiff's Photograph as thousands of other Facebook users had done, this lawsuit would never have been filed. But because Defendant displayed the Photograph on its commercial webpage without giving Plaintiff proper credit in an attempt to pass off Plaintiff's work as Defendant's own original creation, Defendant must be held liable for copyright infringement.

Finally, Defendant's argument that because the Photograph qualifies as a viral "meme", that it somehow becomes communal property is unavailing. If anything, the popularity of an image demonstrates the value of the work. If a musician composes a #1 hit song that popular

culture finds catchy, that musician does not lose copyright protection to the underlying sound recording or composition. Rather, that musician is entitled to realize the fruits of her labor. In short, Plaintiff has not misused his copyright to the Photograph simply because the masses found it clever and appealing. It is precisely because of the work's market popularity that Bradley is entitled to realize the value of his copyright.

## CONCLUSION

For the foregoing reasons, Plaintiff Matthew Bradley's motion for partial summary judgment as to liability for copyright infringement should be GRANTED in its entirety. Further the Court should award attorneys' fees under its inherent power.

Respectfully submitted:

LIEBOWITZ LAW FIRM, PLLC

**By:/Richard Liebowitz/**
Richard Liebowitz
N.Y. Bar No. 5357702
11 Sunrise Plaza, Suite 305
Valley Stream, NY 11580
T: (516) 233-1660
F: (516) 233-1660
RL@LiebowitzLawFirm.com

*Counsel for Plaintiff*
*Matthew Bradley*

ALLAN LAW FIRM, PLLC

**By:/Albert P Allan/**
Albert P. Allan
N.C. Bar No. 18882
435 East Morehead Street
Charlotte, NC 28202
T: 704-371-5605
F: n/a
alallan@allaniplitigation.com

*Local Civil Rule 83.1(d) Counsel*