**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:19-cv-249-FL**

| | | |
|---|---|---|
| _____ | ) | |
| MATTHEW BRADLEY, | ) | **DEFENDANT ANALYTICAL** |
| | ) | **GRAMMAR, INC.'S RESPONSE** |
| Plaintiff, | ) | **IN OPPOSITION TO PLAINTIFF** |
| v. | ) | **MATTHEW BRADLEY'S MOTION** |
| | ) | **FOR PARTIAL SUMMARY** |
| ANALYTICAL GRAMMAR, INC., | ) | **JUDGMENT** |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................1

STATEMENT OF UNDISPUTED FACTS ...........................................................................3

LEGAL STANDARD............................................................................................................3

ARGUMENT .........................................................................................................................4

I.  Bradley fails to establish that an enforceable copyright protects his photograph..................4

    A.  Bradley has not shown that the photograph is properly registered. ..............................4

    B.  Bradley has not shown that the photograph has sufficient originality for a copyright. ..........................................................................................................7

II.  Bradley cannot show that he has any remedy available on his infringement claim. .............9

III.  Bradley's contention that Analytical admits that its use was unauthorized is false. ...........11

IV.  No issues are in genuine dispute and Analytical is entitled to summary judgment............12

    A.  Bradley fails to overcome Analytical's express and implied license defenses...........12

    B.  Bradley fails to overcome Analytical's fair use defense. ...........................................18

        1.  The transformative and noncommercial nature of the use is not in genuine dispute.....................................................................................................19

            a.  Analytical's transformative, educational purpose weighs strongly in favor of fair use...................................................................................19

            b.  The noncommercial, educational purpose of Analytical's use weighs strongly in favor of fair use.......................................................................21

        2.  The nature of Bradley's work weighs in favor of fair use. ...............................23

        3.  The extent of Analytical's use weighs in favor of fair use or is neutral. ...........23

        4.  The absence of market harm weighs strongly in favor of a finding of fair use....................................................................................................24

        5.  Weighed together, the four factors strongly support fair use and summary judgment in favor of Analytical. .......................................................27

    C.  Bradley fails to show that any other defenses should be dismissed. ..........................27

CONCLUSION.....................................................................................................................30

# TABLE OF AUTHORITIES

**Cases**

*Aetna Cas. & Surety Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566 (2d Cir. 2005).................29

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .................................................................3

*Arevalo v. Herman*, 128 Fed. Appx. 952 (4th Cir. 2005) ............................................................10

*Asset Mktg. Sys., Inc. v. Gagnon*, 542 F.3d 748 (9th Cir. 2008)...........................................13, 17

*Associated Press v. Meltwater U.S. Holdings, Inc.*, 931 F. Supp. 2d 537 (S.D.N.Y. 2013) .........24

*Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87 (2d Cir. 2014) ...................................................24

*A.V. v. iParadigms, LLC*, 562 F.3d 630 (4th Cir. 2009) ........................................................20, 21

*BMG Rights Mgmt. (US) LLC v. Cox. Commc'ns, Inc.*, 149 F. Supp. 3d 634
(E.D. Va. 2015).........................................................................................................................30

*Bond v. Blum*, 317 F.3d 385 (4th Cir. 2003).................................................................21, 23, 24

*Bouchat v. Baltimore Ravens Ltd. P'ship*, 619 F.3d 301 (4th Cir. 2010)....................................21

*Boyer-Liberto v. Fontainebleau Corp.*, 752 F.3d 350 (4th Cir. 2014) ........................................5, 6

*Brammer v. Violent Hues Prods., LLC*, 922 F.3d 255 (4th Cir. 2019) ..................................20, 21

*Burrow-Giles Lithographic Co. v. Sarony*, 111 U.S. 53 (1884) .....................................................7

*Burwick v. Pilkerton*, 700 Fed. Appx. 214 (4th Cir. 2017)............................................................6

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994)....................................................21, 25

*Charles W. Ross Builder, Inc. v. Olsen Fine Home Bldg., LLC*, 977 F. Supp. 2d. 567
(E.D. Va. 2013)........................................................................................................................28

*CMM Cable Rep, Inc. v. Ocean Coast Props., Inc.*, 97 F.3d 1504 (1st Cir. 1996) .......................9

*Diamond Star Bldg. Corp. v. Freed*, 30 F.3d 503 (4th Cir. 1994)................................................4

*Dowling v. United States*, 473 U.S. 207 (1985)........................................................................29

*Effects Assocs., Inc. v. Cohen*, 908 F.2d 555 (9th Cir. 1990) .....................................................16

*Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954 (4th Cir. 1996) ............................5

*Fariss v. Lynchburg Foundry*, 769 F.2d 958 (4th Cir. 1985) ......................................................9

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991) ..................................................7, 9

*Ferdman v. CBS Interactive, Inc.*, 342 F. Supp. 3d 515 (S.D.N.Y. 2018)......................................4

*Field v. Google, Inc.*, 412 F. Supp. 2d 1106 (D. Nev. 2006)........................................................16

*Gentieu v. Tony Stone Images/Chicago, Inc.*, 255 F. Supp. 2d 838 (N.D. Ill. 2003) .....................8

*Graham v. James*, 144 F.3d 229 (2d Cir. 1998) ..........................................................................23

*Harper & Row, Publrs. v. Nation Enters.*, 471 U.S. 539 (1985) .................................21, 23, 24, 29

*In re Facebook, Inc.*, 402 F. Supp. 3d 767 (N.D. Cal. 2019)........................................................14

*Jacobsen v. Katzer*, 535 F.3d 1373 (Fed. Cir. 2008) ...................................................................18

*Johnson v. Gordon*, 409 F.3d 12 (1st Cir. 2005) ...........................................................................9

*Katz v. Google, Inc.*, 802 F.3d 1178 (11th Cir. 2015) .................................................................24

*Lasercomb Am., Inc. v. Reynolds*, 911 F.2d 970 (4th Cir. 1990)..................................................30

*Lenz v. Universal Music Corp.*, 815 F.3d 1145 (9th Cir. 2016) ....................................................11

*Lowe v. Loud Records*, Civ. A. No. 01-1797, 2003 U.S. Dist. LEXIS 21234
(E.D. Pa. Nov. 20, 2003).................................................................................................................17

*Mantel v. Microsoft Corp.*, 16 Civ. 5277 (AJN), 2018 U.S. Dist. LEXIS 53549
(S.D.N.Y. Mar. 29, 2018) .................................................................................................................4

*MCA, Inc. v. Wilson*, 677 F.2d 180 (2d Cir. 1981) ......................................................................23

*Metro. Reg'l Info. Sys. v. Am. Home Realty Network, Inc.*, 722 F.3d 591 (4th Cir. 2013).............7

*Nelson-Salabes, Inc. v. Morningside Dev.*, 284 F.3d 505 (4th Cir. 2002)..........................3, 11, 17

*Nintendo of Am., Inc. v. Aeropower Co.*, 34 F.3d 246 (4th Cir. 1994) .........................................10

*Otto v. Hearst Comm'cns, Inc.*, 345 F. Supp. 3d 412 (S.D.N.Y. 2018)........................................26

*Pace v. Capobianco*, 283 F.3d 1275 (11th Cir. 2002) ...................................................................6

*Pathe Exchange, Inc. v. Dalke*, 49 F.2d 161 (4th Cir. 1931)........................................................30

*Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1148 (9th Cir. 2007)) ........................................20

*Philpot v. Media Research Ctr. Inc.*, 279 F. Supp. 3d 708 (E.D. Va. 2018) ....................17, 18, 23

*Pierce v. Freeman*, No. 95-7031, 1997 U.S. App. LEXIS 21633 (4th Cir. Aug. 15, 1997)..........10

*Psihoyos v. Pearson Educ., Inc.*, 855 F. Supp. 2d 103 (S.D.N.Y. 2012)........................................17

*Ringgold v. Black Entertainment TV, Inc.*, 126 F.3d 70 (2d Cir. 1997) ........................................29

*Rock v. Enfants Riches Deprimes, LLC*, No. 17-cv-2618 (ALC),
2020 U.S. Dist. LEXIS 15081 (S.D.N.Y. Jan. 29, 2020).................................................................6

*Rosciszewski v. Arete Assocs., Inc.*, 1 F.3d 225 (4th Cir. 1993) ...............................................10

*Ryan v. Editions Ltd. West*, 786 F.3d 754 (9th Cir. 2015) ........................................................10

*Scott v. Harris*, 550 U.S. 372 (2007) ......................................................................................3

*Seltzer v. Green Day, Inc.*, 725 F.3d 1170 (9th Cir. 2004) ........................................................24

*Shannon v. Montgomery Pub. Sch.*, No. 87-3536, 1988 U.S. App. LEXIS 19563
(4th Cir. Mar. 24, 1988) ...........................................................................................................11

*Sony Corp. of Am. v. Univ. City Studios, Inc.*, 464 U.S. 417 (1984) ...........................................25

*Tempo Music, Inc. v. Myers*, 407 F.2d 503 (4th Cir. 1969)........................................................30

*UMG Recordings, Inc. v. Disco Azteca Distribs., Inc.*, 446 F. Supp. 2d 1164
(E.D. Cal. 2006) .......................................................................................................................22

*Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*, 618 F.3d 417
(4th Cir. 2010)......................................................................................................................4, 28

*Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*, 196 Fed. Appx. 166
(4th Cir. 2010) ..........................................................................................................................4

*Usherson v. Bandshell Artist Mgmt.*, No. 19-cv-6368 (JMF),
2020 U.S. Dist. LEXIS 112368 (S.D.N.Y. June 26, 2020).......................................................6, 7

*Vanover v. Shams*, No. 08-cv-1037, 2008 U.S. Dist. LEXIS 111643
(E.D. Va. Oct. 22, 2008) ...........................................................................................................10

*Walker v. Trans-Union LLC*, No. 11-cv-1110, 2013 U.S. Dist. LEXIS 24348
(M.D.N.C. Feb. 22, 2013) .........................................................................................................10

**Statutes and Rules**

15 U.S.C. §§ 1117......................................................................................................................23

15 U.S.C. §§ 1125......................................................................................................................23

17 U.S.C. § 107..........................................................................................................................19

17 U.S.C. § 107(1) ................................................................................................................19, 21

17 U.S.C. § 107(2) ........................................................................................................23

17 U.S.C. § 107(3) ........................................................................................................24

17 U.S.C. § 107(4) ........................................................................................................24

17 U.S.C. § 301 ..............................................................................................................10

17 U.S.C. § 410(c) ...........................................................................................................4

17 U.S.C. § 412 ........................................................................................................10, 11

17 U.S.C. §§ 502-505 .....................................................................................................10

17 U.S.C. § 1202(a) ........................................................................................................23

17 U.S.C. § 1202(b) ........................................................................................................28

17 U.S.C. § 1203(c)(3)(B) ..............................................................................................28

17 U.S.C. § 1203(c)(5)(A) ..............................................................................................28

Fed. R. Civ. P. 11(b)(3) ....................................................................................................6

Fed. R. Civ. P. 37(c)(1) ...............................................................................................5, 11

Fed. R. Civ. P. 56(a) .........................................................................................................3

Fed. R. Civ. P. 56(c)(4) .....................................................................................................5

Fed. R. Civ. P. 56(f)(1) .....................................................................................................4

Local Civ. R. 7.1(i) ...........................................................................................................5

**Other Authorities**

Christopher Newman, *"A License Is Not a 'Contract Not to Sue': Disentangling Property and Contract in the Law of Copyright Licenses*, 98 Iowa L. Rev. 1101, 1110 (2013)..................18

Jane C. Ginsburg & Luke Ali Budiardjo, *Embedding Content or Interring Copyright: Does the Internet Need the "Server Rule"?*, 42 Colum. J.L. & Arts 417 (Summer 2019) ...........18

1 Melvin B. Nimmer & David Nimmer, Nimmer on Copyright § 2.01[B] (1995) .......................9

4-13 Melvin B. Nimmer & David Nimmer, Nimmer on Copyright § 13.05[A][1][c] (2010).......21

Hersh R. Reddy, *Jacobsen v. Katzer: The Federal Circuit Weighs in on the Enforceability of Free and Open Source Software Licenses*, 24 Berkeley Tech. L.J. 299 (2009) .......................17

# INTRODUCTION

Plaintiff Matthew Bradley ("Bradley") moved for partial summary judgment on his copyright infringement claim. But the claim is moot because he can identify no relief available to him. He also fails to make out his affirmative case on partial summary judgment, because he relies on disputed facts about the ostensible originality of his photograph and validity of his copyright registration. And he misapplies precedent and disregards the uncontroverted evidence that establishes that Defendant Analytical Grammar, Inc. ("Analytical") is entitled to summary judgment based on its license and fair use defenses. The Court should deny Bradley's motion, grant summary judgment for Analytical, and dismiss Bradley's infringement claim and, for reasons explained in its summary judgment papers, the CMI claim.

Bradley fails to show that there are no genuine issues of material fact on his affirmative claim. He would have this Court believe that simply taking a picture and registering a copyright establishes ownership; however, he has not shown that the photograph is his independent creation, and not copied from another work. Bradley admits he "stole" at least one other meme, and he does not dispute Analytical's showing that memes making the same pun had circulated online for years before the photograph. Failing to inform the Copyright Office that the photograph is a derivative work would invalidate his registration and the claim. The validity of Bradley's registration is also disputed on other material grounds. Instead of showing that the photograph is the work duly registered with the Copyright Office, he relies only on the unsworn declaration of a notoriously unreliable non-witness, his attorney Richard Liebowitz, whose track record of being sanctioned for falsely attesting to copyright registrations is well documented.

Bradley's infringement claim has no basis to reach a jury. It is moot because he has no remedy available under the Copyright Act. He admits that he has no evidence that he suffered any actual damages. He has no basis to claim that any of Analytical's profits are attributable to

his photograph, so he also has no evidence sufficient to require an accounting. The punitive damages he seeks are not available for copyright claims. And he cannot be awarded attorney's fees because of his delayed registration.

Bradley also cannot defeat Analytical's defenses. He admits that he posted the photograph to Facebook under the Public setting, and thereby granted Facebook an express, sub-licensable license to distribute it. Under Facebook's then-effective terms of service, he was also "allowing everyone, including people off of Facebook, to access and use that information." No evidence defeats Analytical's showing that those terms made Analytical (like "everyone" else) a licensee. Bradley's argument that the photograph "does not qualify as 'information'" is not supported by evidence, so it fails to undermine the defense of an express license. And no record evidence defeats Analytical's implied license defense. Bradley instead argues for a "meeting of the minds" requirement that contravenes fundamental principles of copyright licensing law.

Bradley likewise fails to identify any evidence that could detract from a finding of fair use. His stated purpose for the photograph was only to tell his friends a joke; Analytical's transformative, educational purpose supports fair use, particularly because it could not have come at Bradley's expense, after he had fully approved viral Facebook usage. Critically, Bradley fails to carry his burden on the "most important" fourth fair use factor to show any market harm due to Analytical's use. He admits that he has no evidence of any harm, and he cannot meet his burden to show any meaningful likelihood of future harm. After he launched the photograph for unrestricted use on social media, he is misusing copyright law in this bait-and-switch lawsuit.

Bradley has not proven his affirmative case and his attempts to manufacture issues of fact are insufficient to carry his motion or defeat Analytical's defenses. Analytical respectfully requests that the Court deny his motion and grant summary judgment in favor of Analytical.

## STATEMENT OF UNDISPUTED FACTS

On Bradley's motion for partial summary judgment (DE 35), the Court must view the facts in the light most favorable to Analytical. As detailed in its Memorandum of Points and Authorities (DE 27) and Statement of Undisputed Material Facts (DE 28) filed in support of its Motion for Summary Judgment (DE 26), which Analytical incorporates as if fully stated herein, those facts are fatal to Bradley's motion and claims for relief, which fail as a matter of law.

In the memorandum of law filed in support of his motion (DE 36), and in his Statement Pursuant to Local Rule 56.1 (DE 37), Bradley repeatedly claims support from ostensible facts for which he offers no admissible evidentiary basis. Analytical's separate statement in response, filed herewith, further itemizes his motion's factual deficiencies.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden to make that showing. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine dispute of material fact exists, the Court views both the evidence and the inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* at 380.

Under the governing legal standard, Bradley's motion should be denied. "In order to prove copyright infringement, a plaintiff must show that it owns a valid copyright, and it must establish that the defendant engaged in unauthorized copying of the work protected by the copyright." *Nelson-Salabes, Inc. v. Morningside Dev.*, 284 F.3d 505, 513 (4th Cir. 2002).

Bradley cannot carry his burden to prove that he holds a protectable and duly registered copyright in his photograph. He cannot identify any relief sought that would be available on his infringement claim. Nor can he prove that Analytical's use was not licensed or not fair. Analytical, not Bradley, is entitled to summary judgment in its favor. Fed. R. Civ. P. 56(f)(1).

## ARGUMENT

I. **Bradley fails to establish that an enforceable copyright protects his photograph.**

Bradley asserts that his copyright registration certificate is "*prima facie* evidence of both valid ownership of copyright and originality." DE 36 at 8. This is incorrect. While it may afford rebuttable evidence of "'the validity of the copyright and of the facts stated in the certificate,' such as ownership … the Copyright Office's practice of summarily issuing registrations … counsels against placing too much weight on registrations as proof of a valid copyright." *Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*, 618 F.3d 417, 428 (4th Cir. 2010) (quoting 17 U.S.C. § 410(c)). "Accordingly, a reviewing court should assess other relevant indicia of ownership." *Id.* Registration confers, at most, a "presumption of originality … [that] is fairly easy to rebut because the Copyright Office tends toward cursory issuance of registrations." *Id.* at 430. "To negate this prima facie claim … [a defendant] need only present some evidence that 'casts doubt on the question' of copyright validity." *Id.*, 196 Fed. Appx. 166, 170 (4th Cir. 2007) (quoting *Diamond Star Bldg. Corp. v. Freed*, 30 F.3d 503, 505 n. 1 (4th Cir. 1994)).

Bradley fails to prove that his copyright is duly registered or that it is sufficiently original to claim copyright protection. Triable issues of fact prevent summary judgment in his favor.

A. **Bradley has not shown that the photograph is properly registered.**

Bradley's motion for summary judgment should be denied because he has not brought forth any probative evidence establishing which photograph was registered. *Ferdman v. CBS Interactive, Inc.*, 342 F. Supp. 3d 515, 527 (S.D.N.Y. 2018) (citing *Mantel v. Microsoft Corp.*, 16

Civ. 5277 (AJN), 2018 U.S. Dist. LEXIS 53549 (S.D.N.Y. Mar. 29, 2018)). No one with firsthand knowledge attests that the photograph at issue was the one submitted to the Copyright Office with the application. This leaves Bradley in the same position as the plaintiff in another case brought by Bradley's lead counsel Richard Liebowitz ("Liebowitz"):

> Plaintiff's argument that registration is prima facie evidence of the validity of a copyright, and that Defendant has not produced evidence rebutting the validity of the registration … is not relevant, because Defendant is not challenging the validity of the copyright registration. Defendant is instead disputing whether the photographs that are the subject of this lawsuit are actually included in the registration.

*Id.* Here, Bradley cites a registration certificate issued for Copyright No. VA 2-133-725. DE 38-11 ¶¶ 7-8, DE 38-12. He relies on Liebowitz's declaration that "[t]he Photograph is on deposit with the 725 Registration." DE 38-11 ¶ 9; DE 36 at 8-9. But that declaration is neither admissible nor credible and does not carry Bradley's burden, because Liebowitz is not a fact witness and he may not testify to matters beyond his personal knowledge. *See* Fed. R. Evid. 602.

The Liebowitz declaration does not comply with Fed. R. Civ. P. 37(c)(1) because Bradley never disclosed him as a potential fact witness. The only witness who Bradley disclosed as having any "knowledge regarding the copyright registration" is Liebowitz's office manager Donna Halperin. DE 31-4 at 3. Liebowitz's declaration makes clear that he did not file the application himself. DE 38-11 ¶¶ 5-7. So his assertion that the photograph was deposited with the Copyright Office is hearsay, neither based on his personal knowledge nor sworn upon information and belief, and it does not satisfy Local Rule 7.1(i) or Fed. R. Civ. P. 56(c)(4).

Bradley's declaration also violates Rule 56(c)(4), which requires personal knowledge of admissible facts to which the declarant is competent to testify. *Boyer-Liberto v. Fontainebleau Corp.*, 752 F.3d 350, 355 (4th Cir. 2014); *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996). "The 'personal knowledge requirement prevents statements in

affidavits that are based, in part, upon information and belief—instead of only knowledge—from raising genuine issues of fact sufficient to defeat summary judgment.'" *Burwick v. Pilkerton*, 700 Fed. Appx. 214, 216 (4th Cir. 2017) (quoting *Pace v. Capobianco*, 283 F.3d 1275, 1278 (11th Cir. 2002)). Yet Bradley based his declaration "on the best of his personal knowledge *and/or good faith belief*." DE 38-1 at 1 (emphasis added). "Such evidence would not be admissible at trial, as it would amount to hearsay, speculation, or both." *Boyer-Liberto*, 752 F.3d at 356. Bradley's only direct knowledge of a registration is of the first one he obtained himself, which he concedes was erroneous and does not base his claim on. DE 38-1 ¶¶ 9, 21-22, DE 29-7 ¶ 9. Bizarrely, the exhibits to both declarations lump all of Bradley's applications and registrations together without distinguishing which accompanied the photograph at issue. DE 38-7, DE 38-12.

These failures are material because Liebowitz is a wholly unreliable witness when it comes to vouching for registrations. *See, e.g., Rock v. Enfants Riches Deprimes, LLC*, No. 17-cv-2618 (ALC), 2020 U.S. Dist. LEXIS 15081, *4 (S.D.N.Y. Jan. 29, 2020) (sanctioning Liebowitz and his client plaintiff after granting summary judgment to defendant) ("Plaintiff and his counsel knew, or should have known, that the photograph was not registered … Plaintiff's counsel had the responsibility under Federal Rules of Civil Procedure 11(b)(3) to ensure that the factual contentions in the Complaint had evidentiary support."). In another case, *Usherson v. Bandshell Management, LLC*, No. 5:19-cv-00249-FL, 2020 U.S. Dist. LEXIS 112368 (S.D.N.Y. June 26, 2020), Liebowitz's associate James Freeman "admitted that it is the regular practice of the Liebowitz Law Firm to file copyright infringement cases without verifying that the works in question are properly registered, because of the 'additional expense.'" DE 42 at 20-21. And "Mr. Liebowitz admitted that he had conducted no investigation into whether the Photograph was properly registered before filing the Complaint[.]" *Id.* at 22. Severe sanctions followed. *Id.* at 55.

Despite those admissions about his firm's slipshod "regular practice," Liebowitz has the temerity to submit a declaration to this Court based not on firsthand knowledge of the Bradley registration, but on the firm's "routine practice of registering clients' photographs with the USCO." DE 36 at 8, DE 37 ¶ 23, DE 38-11 ¶ 10. Bradley's counsel made their admissions of unreliability at an evidentiary hearing in January 2020, more than a year after the copyright application he relies on now. DE 42 at 14; DE 36 at 5-6. "Regrettably, there is reason to believe that Mr. Liebowitz's pattern of lying continued unabated even after [the *Usherson*] evidentiary hearing." DE 42 at 37 n. 5. Without admissible evidence verifying that the deposit files reflect the photograph at issue, Liebowitz's declaration offers Bradley's infringement claim no support.

**B.     Bradley has not shown that the photograph has sufficient originality for a copyright.**

Bradley also cannot bear his burden to establish that he is entitled to copyright protection as a matter of law. Any presumption of originality based on his registration is rebutted by evidence indicating that his photograph is a derivative work based on earlier memes, with only trivial variations. Issues of fact about originality must be left for a jury to determine.

Not all photographs are copyrightable. For "the ordinary production of a photograph … a copyright is no protection." *Burrow-Giles Lithographic Co. v. Sarony*, 111 U.S. 53, 58 (1884). Photographs depict reality and may be "largely 'factual,' rather than artistic, in nature." *Metro. Reg'l Info. Sys. v. Am. Home Realty Network, Inc.*, 722 F.3d 591, 595 n.8 (4th Cir. 2013). And,

> … facts are not copyrightable. The *sine qua non* of copyright is originality. To qualify for copyright protection, a work must be original to the author. … Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity.

> *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991) (citations omitted).

Record evidence contradicts Bradley's claim of independent creation. Ample prior art in memes made essentially the same visual joke years before his. DE 28 ¶¶ 6-8. In his deposition,

when asked if he was "aware of prior memes that had a similar play on imagery and words as the one you ended up creating," he could not say definitively that his photograph was not based on prior work: "I don't know. I have since seen similar memes when I searched on my own and I don't know if I had seen them before I had done my own or not." DE 29-2 (18:6-10).

Analytical has substantial, probative evidence to rebut any presumption of originality. Copyright protects neither the mere factual appearance of levels in the photograph nor the cliché they stand for, neither of which is original to Bradley. *See Gentieu v. Tony Stone Images/Chicago, Inc.*, 255 F. Supp. 2d 838, 859 (N.D. Ill. 2003). Professor Aram Sinnreich's expert report, regarding customs and norms related to memes in social media as they pertain to Bradley's photograph, explained that the "this is wrong on so many levels" cliché is "a longstanding internet trope in and of itself," and that "the visual pun embodied in the Photograph is also a longstanding meme and cliché, with several prior versions in wide, 'viral' circulation prior to Plaintiff's version[.]" DE 28 ¶ 87. And Bradley's Facebook memes often lack originality. He copied—"stole," as he put it—at least one viral meme for reuse on his page, not by clicking Share but by cut-and-pasting existing text from a shaggy-dog story nearly verbatim, and glibly encouraging other Facebook users, "Steal this, like I did." *Id.* ¶ 26. For another meme that Bradley ostensibly "created," he slapped a pun ("Buoys will be buoys") across six photographs of buoys and posted them on Facebook, but later admitted that he had not taken the photographs. DE 29-2 (42:13-43:9), DE 30-18. Professor Sinnreich reviewed Bradley's Facebook page and found that "this appears to be a habitual practice of the Plaintiff's: Drawing inspiration from clichéd memes, and posting minimally differentiated versions of them to his own Facebook page." DE 29-14 at 12, 57-60. "Based on his consistent pattern of repurposing old puns, it is reasonable to conclude that the Plaintiff's purpose in creating the Photograph was to contribute another

variation on a preexisting cultural trope, rather than inventing or composing a novel and original work." *Id.* at 13. He further opined, "the nature of the Photograph is a minimally creative variation on elements of the cultural commons, to which Plaintiff can claim no ownership[.]" *Id.*

The photograph also exhibits scant if any creativity. Its few trivial variations on a public domain cliché, and on the prior memes that were its apparent basis, do not rise above the low bar for creativity set in *Feist.* Bradley says he arranged, framed, and took the picture with his phone. DE 38-1 ¶¶ 6-8, 11. But "[t]here is no evidence that he gave special consideration to the staging, lighting, or composition of the Photograph[.]" DE 29-14 p. 12. It appears to contain no copyrightable subject matter. "[C]opyright law protects original expressions of ideas but it does not safeguard either the ideas themselves or banal expressions of them." *Johnson v. Gordon*, 409 F.3d 12, 19 (1st Cir. 2005) (*citing Feist*, 499 U.S. at 345-51). "It is axiomatic that copyright law denies protection to 'fragmentary words and phrases' and to 'forms of expression dictated solely at functional considerations' on the grounds that these materials do not exhibit the minimal level of creativity necessary to warrant copyright protection." *CMM Cable Rep, Inc. v. Ocean Coast Props., Inc.*, 97 F.3d 1504, 1519 (1st Cir. 1996) (*quoting* 1 Melvin B. Nimmer & David Nimmer, Nimmer on Copyright § 2.01[B], at 2-13-18 (1995)). The photograph merely depicts an array of levels labeled as wrong, which is a banal expression of matter functionally dictated by the pun.

Material facts are in genuine dispute. Any proof concerning such facts must await trial.

**II.    Bradley cannot show that he has any remedy available on his infringement claim.**

But proceeding to trial would be nugatory. A claim without a remedy is moot, and Bradley fails to identify any relief he may be afforded on his infringement claim.

Summary judgment for the defendant is appropriate when the plaintiff "would be entitled to no monetary relief even if she were to prevail on the merits," *Fariss v. Lynchburg Foundry*, 769 F.2d 958, 961 (4th Cir. 1985), or seeks only forms of relief barred by statute, *see Arevalo v.*

*Herman*, 128 Fed. Appx. 952, 956-57 (4th Cir. 2005). Claims for remedies not available from the Court must be dismissed. *See Pierce v. Freeman*, No. 95-7031, 1997 U.S. App. LEXIS 21633 (4th Cir. Aug. 15, 1997); *Vanover v. Shams*, No. 08-cv-1037, 2008 U.S. Dist. LEXIS 111643 (E.D. Va. Oct. 22, 2008), *aff'd*, 326 Fed. Appx. 126 (4th Cir. 2009); *Walker v. Trans-Union LLC*, No. 11-cv-1110, 2013 U.S. Dist. LEXIS 24348, *5-7 (M.D.N.C. Feb. 22, 2013).

For reasons Analytical has already detailed, Bradley's prayer for relief does not include any cognizable remedy for infringement. DE 27 at 26-27, DE 32, DE 33. "The Copyright Act's remedial scheme … provides the exclusive remedies for copyright infringement[.]" *Nintendo of Am., Inc. v. Aeropower Co.*, 34 F.3d 246, 251-52 (4th Cir. 1994). The available remedies are injunctions and impoundments, which Bradley did not request; damages and profits, which he cannot prove; and costs and attorney's fees, for which he is ineligible. 17 U.S.C. §§ 502-505.

Any other relief is expressly preempted. 17 U.S.C. § 301; *see also Rosciszewski v. Arete Assocs., Inc.*, 1 F.3d 225, 231-33 (4th Cir. 1993) (complete preemption). Accordingly, the Court should deny or disregard Bradley's prayer for punitive damages. DE 29-7, Prayer for Relief ¶ 7; *see* DE 33 at 3. It must also deny his unfounded, tossed-off request that "the Court should award attorneys' fees under its inherent power." DE 38 at 30. He offers no argument in support of an award because no argument is tenable. Bradley is foreclosed from an award of attorney's fees on his infringement claim because Analytical's use of his photograph preceded his registration. 17 U.S.C. § 412. When recourse to the statute's fee-shifting provision is expressly barred, any award of fees on other grounds would contravene the Congressional purpose of Section 412 to encourage timely registration. *See Ryan v. Editions Ltd. West*, 786 F.3d 754, 762 (9th Cir. 2015).

Bradley's catch-all request for "such other and further relief as the Court may deem just and proper", DE 29-7, Prayer for Relief ¶ 10, is also not viable. The request "must reasonably be

interpreted to mean "such other equitable relief." *Shannon v. Montgomery Pub. Sch.*, No. 87-3536, 1988 U.S. App. LEXIS 19563, *6 (4th Cir. Mar. 24, 1988) (emphasis in original). Bradley's infringement claim is solely for "monetary relief under the Copyright Act," not equitable relief. DE 29-7 ¶ 1. *See also* DE 18 ¶ A(3) ("Mr. Bradley claims for actual damages and profits arising out of the alleged copyright infringement.").

Money damages also are not recoverable. Statutory damages, like attorney's fees, are barred by 17 U.S.C. § 412. And Bradley proffered no evidence of any actual damages or profits attributable to the use, while Analytical has shown that none exist, and that his failure to provide a computation of damages precludes such recovery under Rule 37(c)(1). DE 27 at 26, DE 33.

There is no need to squander time considering a motion for summary judgment regarding liability from a plaintiff who seeks only money damages and has no basis for any. Instead, the Court should find the infringement claim moot and grant judgment for Analytical on that claim.

### III.    Bradley's contention that Analytical admits that its use was unauthorized is false.

To make out his case Bradley would need to establish not only a valid, duly registered copyright but also "unauthorized copying." *Nelson-Salabes*, 284 F.3d at 513. Bradley claims to have established a lack of authorization, based on his assertion that "Defendant admits that it did not obtain Plaintiff's permission to re-publish the Photograph." DE 36 at 12. This is inaccurate. While Analytical never denied reposting the photograph, it maintains that the use "was permitted." DE 30-19 ¶ 27, DE 30-22, DE 31-5. Analytical claims both licensed use, which entails permission, and fair use, which does not require it, since "it is wholly authorized by the law." *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1151 (9th Cir. 2016)).

The ostensible "admission" is a misreading of the Answer. Analytical admitted "that it did not license the photograph from Bradley for its website"—that is, analyticalgrammar.com, not its Facebook page. DE 29-8 at 4 ¶ 11. Analytical explained in the same sentence "that it did

not publish the photograph on its website." *Id.* There is no dispute that the Facebook repost was its only use of the photograph. Because Bradley fails to show that the repost was not authorized, as further explained below, his motion for summary judgment must be denied.

## IV.   No issues are in genuine dispute and Analytical is entitled to summary judgment.

### A.    Bradley fails to overcome Analytical's express and implied license defenses.

Every objective fact in the record evidence supports a finding that Analytical held a valid license to use the photograph by reposting it to Facebook. Under the terms of service set forth in Facebook's Statement of Rights and Responsibilities effective in 2017 when Bradley posted the photograph ("SRR"), his express license allowed "everyone" to access and use it, including Analytical, without any restrictions on the form or extent of use. In the same SRR, he also granted Facebook a broad, non-exclusive, sub-licensable license to use the photograph, including copying, displaying, and distributing it. To make sense of that permission, an implied license must flow downstream to cover Facebook's users, again including Analytical. The conduct of the parties and widespread customs of social media use fully support a finding of an implied license. Bradley's arguments against Analytical's express and implied licenses have no merit.

Bradley admits that he "granted a license to Facebook to use the Photograph" through Facebook's terms of service. DE 36 at 6, 12, DE 37 ¶ 28, DE 38-1 ¶ 27. At his deposition, Bradley agreed that his conduct on Facebook was governed by the terms and services of the SRR, and that he "granted a license to the photograph" to Facebook based on the terms operative in 2017. DE 28 ¶ 12, DE 30-1 ¶ 2(4). Yet inexplicably, Bradley now asserts that "the controlling terms of service" were the revised terms effective eighteen months later, "at the time this lawsuit was filed on June 18, 2019." DE 36 at 13 n.1. Even more inexplicably, he instead relies on a later revision effective July 31, 2019. *Id.* at 13, DE 38-10 at 10. He cites no basis for considering either revision relevant *ex post facto*. Obviously, the SRR terms effective in 2017 governed

Bradley's use of Facebook at that time. "The relevant intent is the licensor's objective intent at the time of the creation and delivery of the [work] as manifested by the parties' conduct." *Asset Mktg. Sys., Inc. v. Gagnon*, 542 F.3d 748, 756 (9th Cir. 2008). While Bradley is bound by any updated terms of service, *see* DE 38-10 at ¶ 4(1), he remains bound by the license terms he granted under the 2017 SRR. His express license thereunder provided:

> When you publish content or information using the Public setting, it means that you are allowing everyone, including people off of Facebook, to access and use that information, and to associate it with you (i.e., your name and profile picture).

DE 30-1 ¶ 2(4), DE 36 at 14. That license embraces Analytical's use.

Bradley argues that Analytical's repost "failed to associate" the photograph with him. DE 36 at 14-15. The final clauses of that license were independent, not contingent, so any such "association" was permitted, not mandated. Bradley allowed everyone to access and use what he posted. He also allowed everyone to associate the photograph with him, but he did not require it.

Bradley contends that the same express license "is ambiguous as to whether it actually covers photographs." DE 36 at 15. There was no ambiguity. The SRR encompassed any and all "content or information" that Facebook users published under the Public setting, and expressly included "photos" as an example of content. DE 30-1 ¶¶ 2(1), 2(4). Bradley further argues that under the SRR his photograph is merely "content," not "information." DE 36 at 15. But those terms are not mutually exclusive, as a photograph's content is the visual information it depicts, contains, and conveys. And Facebook's governing terms of use treated photographs as both.

Facebook's Data Policy was formerly called its Data Use Policy. Statement of Additional Material Facts ("Statement") ¶ 9. It defined "Your *information*" to include "the information you choose to share on Facebook, such as when you post a status update, *upload a photo*, or comment on a friend's story." *Id.* ¶ 13. The policy further informed Facebook users, including Bradley:

Once you *share information* with your friends and others, they may be able to sync it with or access it via their mobile phones and other devices. *For example, if you share a photo* on Facebook, someone viewing that photo could save it using Facebook tools or by other methods offered by their device or browser. … Or, if one of your friends has a Facebook application on one of their devices, *your information (such as the things you post or photos you share)* may be stored on or accessed by their device.

*Id.* ¶ 14. So photographs are "information" when shared or uploaded on Facebook, under the website's stated terms. They are also "content." The same policy provided, "Whenever you post *content* (like a status update, *photo* or check-in), you can select a specific audience, or even customize our audience." *Id.* ¶ 16. The SRR also gave "photos" as an example of content. *Id.* ¶ 17. And Facebook incorporated the entire Data Policy into the SRR by reference. *See id.* ¶¶ 1-12, *In re Facebook, Inc.*, 402 F. Supp. 3d 767, 791 (N.D. Cal. 2019).

The Data Policy effective as of December 2017 used the term "content" as within the meaning of "information," and included "photo" within the meaning of both "information" and "content." It provided in part, "We collect the content and other information you provide when you use our Services… This can include information in or about the content you provide, such as the location of a photo or the date a file was created." Statement ¶¶ 18-21. Facebook informed users that "public information" including content they shared publicly on Facebook, could be copied and distributed, on or off Facebook: "In some cases, people you share and communicate with may download or re-share this content with others on and off our Services." *Id.* ¶ 22. Because the SRR fully incorporated that policy, it indisputably included Bradley's photograph in the unlimited permission for access and use he granted to everyone.

As the Data Use Policy instructed, "You should only share information with people you trust because they will be able to save it or re-share it with others[.]" *Id.* ¶ 14. Using the Public setting left the barn door open. *See id.* ¶ 15 ("Choosing to make your information public is exactly what it sounds like[.]"). Bradley gave the public—that is, everyone—an express license.

Bradley fabricates an argument that his express license is invalid because Analytical "did not use the share functionality provided by Facebook's platform to display the Photograph," but reposted it independently. DE 36 at 14. He repeatedly insists that the "Share" function is the only valid way Facebook users may use his photographs. *Id.* at 1, 5, 6, 13-15, 26, 29. But his insistence does not make it so, and his argument has no basis in common parlance or in the SRR.

On social media, share and post are generally synonymous. Pertinent definitions of "share" include "to distribute on the Internet" and "to post (something) on a social media platform," *Share*, Merriam-Webster, https://www.merriam-webster.com/dictionary/share, and to "Post or repost (something) on a social media website or application," *Share*, Oxford English Dictionary, https://www.lexico.com/en/definition/share. Facebook also employs a specialized meaning of the term related to its user interface function that facilitates reuse of content or information via a "Share" icon or button. Professor Sinnreich explained these "technological affordances":

> Social media platforms encourage and reward the widespread repurposing of digital content … On Facebook, for example, the standard user interface facilitates the easy repurposing and redistribution of memes from one user to another. With a click on the Share icon, a Facebook user can take a meme or other item publicly posted by another user and retransmit it, publicly or privately, on a user's timeline or via Facebook message.

DE 29-14 at 8. The SRR did not specifically define "share." DE 30-1 ¶ 17. But its usage of the term wholly distinguished the Share function by using a capital letter to indicate that particular meaning. *See id.* ¶ 17(1) ("social plug-ins such as the Like button, the Share button and other similar offerings"). In every other context, the SRR used lower case to convey the standard meaning, whether discussing sharing of content, information, or passwords. *See id.* ¶¶ 1, 2, 4(8) ("You will not share your password…"), 15(2) ("the content or information users transmit or share on Facebook"), 17(4). So there is no evidence to support the distinction Bradley concocted. Facebook did not say that permissible sharing is limited to the Share function. Instead, the SRR

shows that Facebook supports a range of intra-network means to share content and information. It defined "post" to mean "post on Facebook or otherwise make available by using Facebook." *Id.* ¶ 17(6). It broadly defined "content" to mean "anything you or other users post, provide or share using Facebook Services." *Id.* ¶ 17(4). The governing terms of use support the unconditional license that Bradley gave everyone, including Analytical, to use his photograph.

Analytical has also presented extensive evidence to show that Bradley's express, unrestricted license to Facebook under the SRR, to copy and distribute the photograph, conveyed an implied license or sublicense to Analytical to do the same. Bradley declined to impose any limits on circulation when he posted the photograph, and he reveled as the unattributed viral spread flew beyond Facebook users clicking Share, including on Twitter and in *Trend-Chaser*. *See* DE 27 at 2-4, 10-11, DE 28 ¶¶ 36-39. He manifested nothing short of carte blanche authorization, and "his conduct is reasonably interpreted as the grant of a license." *Field v. Google, Inc.*, 412 F. Supp. 2d 1106, 1116 (D. Nev. 2006). The customs of social media use effectively require an implied license for viral meme use, as evidenced by expert testimony, and by Bradley's own inveterate reuse of third-party works for his Facebook memes, with or without the Share function. *See* DE 27 at 3 n. 1, 11-12, 16, DE 28 ¶¶ 18, 26, 69-71, 73, 79, 84-86.

Bradley cites no evidence that would deter finding that Analytical had an implied license. He notes that he did not personally deliver the photograph to Analytical. DE 36 at 16. That is not dispositive; delivery is only "one factor that may be relied on in determining that an implied license has been granted." *Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 558 n. 6 (9th Cir. 1990). In *Effects Associates*, an implied license was found to shield not only the defendant film director/producer but also the film's distributor, effectively an implied sublicensee, though it had no apparent direct dealings with the plaintiff before the suit. *Id.* at 556, 559. So the issue is not

that Bradley dealt directly with only Facebook, or that Analytical neither asked him to create the photograph nor communicated with him before its repost. DE 36 at 16. The critical issue is the licensor's intent to grant a license, as objectively manifested through conduct. *Asset Mgmt. Sys.*, 542 F.3d at 756. This "broad inquiry" must examine "totality of the circumstances." *Nelson-Salabes*, 284 F.3d at 514-16. *See* DE 27 at 9-10. Bradley admits that he gave Facebook an unrestricted, express license to use the photograph, and that the license was sublicensable. DE 36 at 12-14. He raises no issue of material fact to deny Analytical's showing, based on conduct and custom, that his express license to Facebook flowed downstream to Facebook users such as Analytical through an implied license or sublicense.

Bradley argues that any implied license required "a 'meeting of the minds' between the parties to permit the particular usage at issue." DE 36 at 15 (*quoting Psihoyos v. Pearson Educ., Inc.*, 855 F. Supp. 2d 103, 124 (S.D.N.Y. 2012)). "The flaw in this argument is that a license is not a contract; rather, a license is permission to use a copyrighted work in a particular specified manner. Indeed, a nonexclusive license may be granted unilaterally by a copyright holder so no meeting of the minds is required." *Philpot v. Media Research Ctr. Inc.*, 279 F. Supp. 3d 708, 713 (E.D. Va. 2018) (internal punctuation and quotations omitted). *See also Lowe v. Loud Records*, Civ. A. No. 01-1797, 2003 U.S. Dist. LEXIS 21234, *17 (E.D. Pa. Nov. 20, 2003) (granting defendant summary judgment on copyright infringement claim despite plaintiff's contention that parties "did not have the requisite meeting of the minds to create a nonexclusive license"), *aff'd*, 126 Fed. Appx. 545 (3d Cir. 2005).

"Copyright licenses are not always contracts. A license is merely the unilateral permission to do something." Hersh R. Reddy, *Jacobsen v. Katzer: The Federal Circuit Weighs in on the Enforceability of Free and Open Source Software Licenses*, 24 Berkeley Tech. L.J. 299,

307 (2009). Generally, users' consents to social media websites' "Terms of Service are essentially the grant of 'unilateral permission,' and not a 'bargained-for exchange[.]'" Jane C. Ginsburg & Luke Ali Budiardjo, *Embedding Content or Interring Copyright: Does the Internet Need the "Server Rule"?*, 42 Colum. J.L. & Arts 417, 466 (Summer 2019). While they may not operate as contracts, "these unilateral grants of permission may be enforceable as a noncontractual license." *Id.* The open-source and Creative Commons licenses that proliferate on the internet is largely founded on this noncontractual understanding of copyright licensing.

> Without such a theory of license enforceability, the concepts of open-source or Creative Commons licenses, through which "copyright owners … create irrevocable, nonexclusive licenses by unilateral deed," would fail to function as intended. Recent court decisions affirming the enforceability of open-source licenses support the view that these unilateral grants of permission are enforceable.

*Id.* at 466-67 (*quoting* Christopher Newman, *"A License Is Not a 'Contract Not to Sue': Disentangling Property and Contract in the Law of Copyright Licenses*, 98 Iowa L. Rev. 1101, 1110 (2013)). "Since *Katzer*, courts have uniformly upheld—or accepted without analysis— unilateral licenses like the Creative Commons license." *Id.* at 467 n. 50 (*citing Jacobsen v. Katzer*, 535 F.3d 1373 (Fed. Cir. 2008), and later cases). The *Philpot* court found that "the mere fact that plaintiff uploaded the Photographs to Wikimedia under a nonexclusive CCL [Creative Commons license] is sufficient to grant a license to defendant." 279 F. Supp. 3d at 713. Like Bradley, the plaintiff in *Philpot* unilaterally "offered the public nonexclusive licenses" for his photographs. *Id.* Bradley allowed such use by "everyone" explicitly in the SRR, and implicitly based on conduct and custom. Summary judgment should be denied to Bradley, and granted to Analytical, based on its express or implied license to copy and distribute the photograph.

**B.**     **Bradley fails to overcome Analytical's fair use defense.**

Analytical's use of Bradley's Facebook meme on its Facebook page was a fair use. As an educational publisher, its use was not for a commercial end but with a transformative purpose, as

part of its mission to foster mindfulness about English usage. So there can be no presumption of any market harm to Bradley, and there is no evidence he has any market at all. This is squarely within the scope of the fair use doctrine. Bradley's arguments misinterpret precedent under the four-factor 17 U.S.C. § 107 test and fail to evade summary judgment. No material facts are in genuine dispute and the Court should find for Analytical as a matter of law.

**1. The transformative and noncommercial nature of the use is not in genuine dispute.**

Bradley's assessment of the first factor, which concerns "the purpose and character of the use," misrepresents the facts and misconstrues the law. 17 U.S.C. § 107(1). Analytical's Facebook repost had a transformative, educational purpose, and it was not a commercial exploitation of the photograph. He offers no factual basis to deny it.

**a. Analytical's transformative, educational purpose weighs strongly in favor of fair use.**

The few facts that Bradley cites on the issue of transformative use are found in a single sentence in his Local Rule 56.1(a) Statement: on December 16, 2017, eight days after Bradley published the photograph on his Facebook page, Analytical reposted it on Facebook, using the same "This is wrong on so many levels" caption. DE 37 ¶ 14. All true, though it says nothing about the nature or purpose of the use. So it offers no grounds for the contentions he cites it for, namely, that Analytical used the photograph "in the exact same manner as" him, "to merely illustrate the subject matter depicted in the image." DE 36 at 18, 19. The relevant evidence of record defeats his contentions and demonstrates Analytical's distinct educational purpose.

As Bradley acknowledges, "Analytical offers language arts curricula and instructional materials for English grammar, punctuation, and usage." DE 28 ¶ 46. An exhibit to his complaint shows that the photograph appeared on Analytical's Facebook page next to its mission statement, "Grammar instruction for all!," as well as a statement about its Facebook page, "We love to educate and entertain our Facebook friends." DE 1-2, DE 28 ¶ 47, DE 29-7, DE 30-19 ¶ 4.

Analytical used that page not just to entertain but to "foster mindfulness about English usage," with a stream of grammar advice, lessons, tips, and articles, including grammar and usage-themed memes. DE 27 at 5, DE 28 ¶ 48. Its use of Facebook had a salutary purpose seen as paradigmatic of fair use by Congress and the courts. 17 U.S.C. § 107 ("the fair use of a copyright, including … for purposes such as … teaching … is not an infringement of copyright"); *A.V. v. iParadigms, LLC*, 562 F.3d 630, 638 (4th Cir. 2009) ("In assessing the 'character' of the use, we should consider the specific examples set forth in section 107's preamble"). Professor Sinnreich found after reviewing that Facebook page, including the repost of Bradley's meme,

> … that it emplaced the meme (and its visual pun) within a broader educational environment focused on illustrating the uses and functions of grammar, syntax, and lexicon (the rudiments of language). This environment was created through Defendant's original content, as well as its curation of third-party content, on its Facebook page. … Defendant's posts on its Facebook page are primarily didactic.

DE 29-14 at 11. Bradley, on the other hand, had no educational purpose in taking the photograph and posting it to Facebook. It was only a joke to him. *Id.*, DE 28 ¶¶ 29, 74-76 ("It's just something I do for fun to share with my friends."), DE 37 ¶¶ 2-3. So Analytical's educational purpose was totally distinct.

Bradley intimates that transformative use requires commenting on, adding to, or changing the underlying work. DE 36 at 17-19. It does not. "The use of a copyrighted work need not alter or augment the work to be transformative in nature." *A.V.*, 562 F.3d at 639. "Of course, even a wholesale reproduction may be transformed when placed in a 'new context to serve a different purpose,' but the secondary use still must generate a societal benefit by imbuing the original with new function or meaning." *Brammer v. Violent Hues Prods., LLC*, 922 F.3d 255, 263 (4th Cir. 2019) (*quoting Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1148, 1165 (9th Cir. 2007)). Analytical did exactly that. Placing the photograph in the context of a didactic Facebook page, focused on English language and rhetoric, gave it the new function of an educational tool.

**b.  The noncommercial, educational purpose of Analytical's use weighs strongly in favor of fair use.**

The first-factor analysis also considers whether the "use is of a commercial nature or is for nonprofit educational purposes." 17 U.S.C. § 107(1). Bradley cites the right test, *see* DE 36 at 19, but elides a critical clause: "The crux of the profit/nonprofit distinction is *not whether the sole motive of the use is monetary gain* but whether the user stands to profit from exploitation of the copyrighted material without paying the customary price." *Harper & Row, Publrs. v. Nation Enters.*, 471 U.S. 539, 562 (1985) (emphasis added). So his reliance on Analytical's for-profit status simply misunderstands this factor. If "commerciality carried presumptive force against a finding of fairness, the presumption would swallow nearly all of the illustrative uses listed in the preamble paragraph of § 107, which are generally conducted for profit in this country." *A.V.*, 562 F.3d at 639 (*quoting Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 584 (1994) (cleaned up)).

The issue is whether the use is commercial, not the user. "'[I]t is appropriate to evaluate the use's commercial status on its own terms.'" *Bouchat v. Baltimore Ravens Ltd. P'ship*, 619 F.3d 301, 314 (4th Cir. 2010) (*quoting* 4-13 Nimmer on Copyright § 13.05[A][1][c] (2010)). When the Baltimore Ravens used a copyrighted work in displays "open to the public, free of charge," it had "no clear-cut commercial purpose" and yielded "no direct or immediate commercial advantage," so "the apparent noncommercial nature of the … use therefore 'weighs heavily against [the] infringement claim' with respect to that use." *Id.* (*quoting Bond v. Blum*, 317 F.3d 385, 395 (4th Cir. 2003)). The same is true for Analytical's use of the photograph.

"In assessing commerciality, a court also asks whether the use was exploitative, in that others usually pay to engage in similar conduct." *Brammer*, 922 F.3d at 265. There is no genuine factual issue as to whether Analytical stood to profit by not "paying the customary price." *Harper & Row*, 471 U.S. at 362. It did not. Analytical did not seek or gain any revenue from the

use, and there is no evidence that any use of Bradley's photograph on social media ever had a customary price greater than zero. *See* DE 27 at 15, DE 28 ¶¶ 55-56, 77-79. That price was zero in 2017, when Bradley posted it on Facebook "for public consumption" and delighted in its viral, unpaid circulation. DE 28 ¶¶ 14-17, 27-30, 36-39, 76. It was zero in 2018, when no website met his demands to pay $50 after use. *Id.* ¶¶ 60, 80. And it is zero today, as Bradley has never sold or licensed the photograph, any related merchandise, or any other photograph for financial benefit. *Id.* ¶¶ 2, 66-67. Uncountered expert evidence shows that Analytical's uncompensated repost was a typical, reasonable, and customary use of the viral meme, and that "it is not reasonable for a meme creator to expect a fee for recirculation." *Id.* ¶¶ 70-71, 84-86.

In place of relevant evidence, Bradley emphasizes that Analytical is a business, and its Facebook page was designated as a business account, rather than a personal account. DE 37 ¶¶ 4-5. From that, he spins an *ipse dixit* claim that Analytical "was plainly attempting to pass of[f] Plaintiff's work as its own to drum up business. Accordingly, Defendant sought to profit from Bradley's copyright without paying the customary price." DE 36 at 19, 23. The evidence shows that Analytical did not try to "drum up business" in connection with the photograph. Facebook users can pay to "boost" or promote a post, but Analytical did not promote the repost financially or otherwise, and the repost did not advertise, promote, or refer to any Analytical product or service. DE 28 ¶¶ 54-55; DE 29-14 at 10. Bradley also has no evidence of "passing off" because Analytical never claimed it snapped the photograph. It merely reposted, and Facebook posts do not convey an inherent claim of authorship; a user name indicates who posted material to the site, not who created it. *See* DE 27 at 27-28, DE 29-12 at 13. For that matter, "it is well established that the right to attribution is not a protected right under the Copyright Act." *UMG Recordings, Inc. v. Disco Azteca Distribs., Inc.*, 446 F. Supp. 2d 1164, 1168 (E.D. Cal. 2006); *accord*

*Graham v. James*, 144 F.3d 229, 236 (2d Cir. 1998), *Philpot*, 279 F. Supp. 3d at 720. To the extent that Bradley seeks relief for Lanham Act "passing off" under 15 U.S.C. §§ 1117 or 1125, or for providing false CMI under 17 U.S.C. § 1202(a), he did not plead or support it. It is not cognizable on his infringement claim.

All available evidence shows that the repost was both transformative and not commercial under Supreme Court and Fourth Circuit fair use precedent. The first factor weighs strongly in favor of fair use and against the infringement claim.

**2.      The nature of Bradley's work weighs in favor of fair use.**

The second factor concerns the nature of the work. 17 U.S.C. § 107(2). Bradley argues that it weighs against fair use because the photograph, though widely published, is "creative." DE 36 at 20. Any creativity in his visual translation of a pun—which was created by others— does not end the analysis. DE 27 at 17-18.

Bradley offers no evidence that the photograph "represented a substantial investment of time and labor made in anticipation of a financial return." *MCA, Inc. v. Wilson*, 677 F.2d 180, 182 (2d Cir. 1981). Snapping the photograph took little apparent effort and he posted it the same day, expecting no return. *See* DE 28 ¶¶ 3-6, 19, 76, 91. As he said in a comment on the post six days later, "I had no other motivation other than I hope people would enjoy it." *Id.* ¶ 29. Bradley also offers no evidence that "the incentive for creativity has been diminished." *Bond*, 317 F.3d at 395-96. Instead, he admitted that he has no evidence that Analytical's use caused him damages or had any effect on any market for his photograph. DE 28 ¶¶ 92-93. Bradley testified that he has continued to create Facebook memes "just as much" since 2017, or slowed only due to other commitments. *Id.* ¶¶ 89-90. He declares that he still enjoys posting photographs of puns in his free time. DE 38-1 ¶¶ 4-5; *see* DE 28 ¶ 44. The animating purpose of copyright law is the "economic incentive to create and disseminate ideas." *Harper & Row*, 471 U.S. at 558. With no

showing that Analytical's use affected that incentive, this factor weighs in favor of fair use.

**3.     The extent of Analytical's use weighs in favor of fair use or is neutral.**

The third factor concerns "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. § 107(3). Analytical's use of the entire photograph is typical, routine, and normative for memes on social media. DE 28 ¶ 97, DE 29-12 at 13. "For some purposes, it may be necessary to copy the entire copyrighted work, in which case Factor Three does not weigh against a finding of fair use." *Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 98 (2d Cir. 2014). Full copying is generally found necessary for photographs and other works that are not "meaningfully divisible." *Katz v. Google, Inc.*, 802 F.3d 1178, 1184 (11th Cir. 2015) (quoting *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1178 (9th Cir. 2004)). In the face of that accepted principle, Bradley's argument that full use "alone weighs against fair use" relies on a partial quote from a case that does not stand for the principle for which he cites it. DE 36 at 20-21; *Associated Press v. Meltwater U.S. Holdings, Inc.*, 931 F. Supp. 2d 537, 558 (S.D.N.Y. 2013) ("appropriation of a copyrighted work in its entirety … *where a work is indivisible … is not an absolute bar to such a finding* [of fair use]") (emphasis of elided matter added).

Context matters. The entire photograph was reasonably necessary to serve Analytical's educational purpose. It could not have conveyed the same linguistic lesson with substantially less. *See* DE 29-14 at 13-14. Bradley argues, but offers no evidence, that the extent of use was excessive. DE 36 at 20-21. He fails to show that the third factor weighs against fair use.

**4.     The absence of market harm weighs strongly in favor of fair use.**

The fourth factor addresses "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). "This factor is 'undoubtedly the single most important element of fair use.'" *Bond*, 317 F.3d at 396 (quoting *Harper & Row*, 471 U.S. at 599). It is fatal to Bradley's arguments for infringement liability. He claims a presumption of market

harm that does not apply, ignores his burden to produce evidence of market harm, and fails to counter compelling evidence, including his own admissions, showing that there is no harm at all.

Bradley claims that market harm may be presumed. DE 36 at 21. For support he blithely misapplies *Sony Corp. of Am. v. Univ. City Studios, Inc*., 464 U.S. 417 (1984). The Supreme Court has expressly found it erroneous to "apply[] a presumption ostensibly culled from *Sony*, that 'every commercial use of copyrighted material is presumptively … unfair…'" *Campbell*, 510 U.S. at 583-84 (*quoting Sony*, 464 U.S. at 450). Yet Bradley quotes that discredited *Sony* dictum to argue for the same erroneous *per se* presumption. *See id.* at 585. As noted in *Campbell*, "*Sony* itself called for no hard evidentiary presumption." *Id.* at 584. The correct rule: "No 'presumption' or inference of market harm that might find support in *Sony* is applicable to a case involving something beyond mere duplication for commercial purposes." *Id.* at 591.

Analytical has shown that its use was both noncommercial and transformative. Because no presumption of market harm arises from such use, Bradley must prove harm to defeat Analytical's motion or to carry his own. "A challenge to a noncommercial use of a copyrighted work requires proof either that the particular use is harmful, or that if it should become widespread, it would adversely affect the potential market for the copyrighted work." *Sony*, 464 U.S. at 451. "What is necessary is a showing by a preponderance of the evidence that *some* meaningful likelihood of future harm exists." *Id.* Likewise, "[n]o such evidentiary presumption is available to address … the fourth [factor], market harm, in determining whether a transformative use … is a fair one." *Campbell*, 510 U.S. at 594. When "the second use is transformative, market substitution is at least less certain, and market harm may not be so readily inferred." *Id.* at 591.

Analytical could overcome a presumption of harm if it applied, but it does not, and Bradley cannot sustain his claim without it. There is no evidence that the use harmed him, or is

meaningfully likely to, and Analytical has shown that it caused no economic injury. DE 27 at 20-22, DE 28 ¶¶ 2, 20, 66-68, 92-96, 98. By Bradley's own admissions, he has never had an active market for the photograph, or for any photograph, as no one has paid or offered to pay anything for it. *Id.* He has no evidence that a market for it exists or ever will, much less any market harm.

Bradley asserts that he "is entitled to profit from the market demand" for the photograph, and that Analytical's use "impairs the potential market for the Photograph," simply presuming the market that he fails to show exists. DE 36 at 22. The viral popularity of a meme, through free circulation by social media users, does not reflect market demand. *See* DE 28 ¶¶ 96, 98. It does not even reflect market use. Lacking evidence of a market, he notes that in December 2018, he obtained a copyright registration, retained Liebowitz to file lawsuits, and emailed websites demanding payments for their use. DE 36 at 22, DE 38-1 ¶¶ 24-25. That evidence cuts against the existence of a market, because none of the websites complied. DE 28 ¶¶ 60, 80. His actions reflect at most that he developed a profit motive for the photograph after permitting unrestricted use for a year. *See* DE 27 at 5-7. His newfound desire is not evidence of a market or market harm.

Bradley's last-ditch claim of similarity with *Otto* does not save his claim. DE 36 at 23 (*citing Otto v. Hearst Comm'cns, Inc.*, 345 F. Supp. 3d 412, 432 (S.D.N.Y. 2018)). In *Otto*, the defendant was Hearst Communications, the media conglomerate that owns *Cosmopolitan*, *Esquire*, and other publications. Its display of the plaintiff's photograph on Esquire.com was indisputably commercial because it received advertising revenue from the same web page. *Otto*, 345 F. Supp. 3d at 422, 429. Indeed, Hearst had stipulated that "[c]ommercial advertisements were visible at the same URL … where the Photograph was displayed," and that it had "earned revenue from ads that were visible at the same URL." *Id.*, No. 17-cv-04712-GHW, ECF No. 41, Second Stipulation of Facts ¶¶ 31-32 (S.D.N.Y. filed Feb. 26, 2018). There is no evidence that

Analytical received revenue from its use of the photograph, and no dispute that it did not receive advertising revenue from Facebook or anywhere else. *Otto* does nothing to establish that reposting a meme on Facebook causes the meme's creator any meaningful market harm.

5.  **Weighed together, the four factors strongly support fair use and summary judgment in favor of Analytical.**

As Analytical showed in its Memorandum of Points and Authorities, and again shows above, the four-factor analysis strongly supports a finding of fair use. *See* DE 27 at 12-23. Bradley's inability to raise a genuine factual dispute over any aspect of the analysis defeats his claim and entitles Analytical to summary judgment in its favor as a matter of law.

C.  **Bradley fails to show that any other defenses should be dismissed.**

Analytical is entitled to summary judgment based on its license and its fair use, so there is no need to consider Bradley's arguments against any other pleaded defenses. In any event, those arguments are also unavailing. Bradley is not entitled to dismissal of any defense raised.

Bradley's argument against the first defense, failure to state a claim, contends that his infringement claim meets the plausibility standard required to survive a motion to dismiss. DE 36 at 24. At the summary judgment stage, however, plausible allegations are not enough, as the Court looks beyond the pleadings to record evidence developed through discovery. Upon that evidence Bradley's claims must be dismissed, not Analytical's defense. *See* DE 26, DE 27.

Bradley contends that the third defense, acquiescence, should be dismissed because he was not in direct communication with Analytical before filing suit, and because he claims there is no evidence that he approved its use in particular. DE 36 at 25. Bradley cites no precedent requiring direct communications, and any such precedent would not apply, because he expressly and unconditionally authorized use by "everyone." DE 28 ¶ 14. For a year, he manifested his approval of *every* use, on and off Facebook. Well aware of the photograph's distribution by

Shares and other means, including multiple reposts on Twitter and in click-bait articles, he cheered on as the meme circulated, clicking Like on comments by Facebook users who said they were stealing it. He has also directly acquiesced in Analytical's continuing use since filing suit. Analytical repeatedly offered to take the photograph down from its Facebook page and he did not respond. *Id.* ¶¶ 102-104. The defense applies and cannot be dismissed.

Bradley contends that the fourth defense, standing, should be dismissed because the Copyright Office registered his copyright. DE 36 at 26. As explained in Section I above, the validity of that registration is in dispute, as is his claim to copyright protection. "There is no originality analysis prior to issuance of a copyright certificate." *Charles W. Ross Builder, Inc. v. Olsen Fine Home Bldg., LLC*, 977 F. Supp. 2d. 567, 581 (E.D. Va. 2013) (*citing Univ. Furniture*, 618 F.3d at 430). The defense cannot be decided based solely on the issuance of a registration because an invalid registration cannot confer standing.

Under its fifth defense, justification, Analytical pleaded that its "actions were justified and/or taken in good faith and were not willful, intentional, or purposeful." DE 12 at 6. Intent is an element of Bradley's claim under 17 U.S.C. § 1202(b), and the defense in part addresses the provisions for statutory damages and for a reduced or remitted award for innocent violations. *See* 17 U.S.C. §§ 1203(c)(3)(B), 1203(c)(5)(A). The defense also addresses the inequity of Bradley's infringement claim. Analytical contends that reposting a meme on Facebook was in compliance with the terms of the Facebook SRR, and with broadly accepted standards and norms for social media use. Its reliance on those terms and norms is justified and mitigates any damages that could be found on either of Bradley's claims. Bradley's argument against the defense is that the repost "is what's known as stealing and therefore the justification fails as a matter of law," because Analytical did not use Facebook's Share function. DE 36 at 26. As a matter of law, he is

wrong: even criminal copyright infringement is not theft. *Dowling v. United States*, 473 U.S. 207, 216-18 (1985). As a matter of fact, Analytical had no means to use a Share for the photograph. It was received from a third party through Facebook Messenger, already decoupled from Bradley's original use. DE 28 ¶¶ 49-51. His invective does not provide grounds to dismiss.

Bradley argues that Analytical's seventh defense, *de minimis* use, should be dismissed because Analytical reposted one of Bradley's pictures in its entirety. DE 36 at 27. But the *de minimis* principle is not just a quantitative measure.

> The legal maxim "*de minimis non curat lex*" (sometimes rendered, "the law does not concern itself with trifles") insulates from liability those who cause insignificant violations of the rights of others. … First, *de minimis* in the copyright context can mean what it means in most legal contexts: a technical violation of a right so trivial that the law will not impose legal consequences.
>
> *Ringgold v. Black Entertainment TV, Inc.*, 126 F.3d 70, 74 (2d Cir. 1997).

Bradley has not suffered an injury worthy of federal litigation. He is only aggrieved about Analytical because it did not use the Share function; if it had, "this lawsuit would never have been filed." DE 36 at 29. During the meme's viral wave, Bradley was especially focused on how many Shares his post garnered. *See* DE 28 ¶¶ 23, 28-30 ("Wow! I am stunned! Over 10K shares."), 42 ("Only 295 shares to go above 20,000!"). A Share "links back to the original copyright holder's Facebook account," so it would have increased his tally. DE 36 at 13. But a perceived shortage of social media Shares has nothing to do with the "economic incentive to create and disseminate ideas." *Harper & Row*, 471 U.S. at 558. If it is an injury at all, it is too trivial to remedy. The infringement claim, not the *de minimis* defense, should be dismissed.

Bradley contends that Analytical's eighth defense, unclean hands, is only an "equitable defense to equitable claims" and is unavailable in an "action at law." DE 36 at 28 (*ostensibly quoting Aetna Cas. & Surety Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 607 (2d Cir. 2005)). Bradley seeks both equitable and legal relief, though he can obtain neither. *See Pathe Exchange,*

*Inc. v. Dalke*, 49 F.2d 161, 162 (4th Cir. 1931) (suit for accounting of profits for copyright infringement raised in equity). And the Fourth Circuit recognizes unclean hands as a defense to copyright infringement, both at law and in equity. *Tempo Music, Inc. v. Myers*, 407 F.2d 503, 507-08 & n. 8 (4th Cir. 1969); *see BMG Rights Mgmt. (US) LLC v. Cox. Commc'ns, Inc.*, 149 F. Supp. 3d 634, 677 n. 32 (E.D. Va. 2015), *aff'd in part and rev'd in part on other grounds*, 881 F.3d 293 (4th Cir. 2018). The doctrine estops plaintiffs from asserting an infringement "caused and brought about, at least in part, by … the dereliction of their own agent." *Tempo Music*, 407 F.2d at 507. Bradley was at least partly responsible for any infringement that might otherwise be found. He encouraged all manner of third-party use, letting the photograph circulate without restraint and exulting when it caught on, then singled out one of the many circulators to sue. A copyright owner who "seeds" distribution of his work by uploading it to a file-sharing site must be estopped from contending that resulting acts of distribution infringe. *See* DE 27 at 25.

Bradley argues that Analytical's ninth defense, copyright misuse, should be dismissed because he did not violate antitrust law. DE 36 at 29. Copyright misuse is not limited to antitrust violations. *See Lasercomb Am., Inc. v. Reynolds*, 911 F.2d 970, 977-78 (4th Cir. 1990). Bradley also contends that he "has not misused his copyright to the Photograph simply because the masses found it clever and appealing." DE 36 at 30. True. He misused it by granting an unlimited license and then leveling an infringement claim rooted in entrapment. *See* DE 27 at 23-25.

## CONCLUSION

For the foregoing reasons, the Court should deny Bradley's motion in its entirety, and deny him any relief, and grant summary judgment in favor of Analytical on Bradley's claim of copyright infringement and on its corresponding counterclaim of non-infringement.

Respectfully submitted,

Analytical Grammar, Inc.

By its attorneys:

Signed: August 7, 2020

/s/  Dan Booth
Dan Booth
Dan Booth Law LLC
60 Thoreau Street, #121
Concord, MA 01742
dan@danboothlaw.com
Local Civil Rule 83.1(e) Special Appearance

Christopher M. Thomas
N.C. State Bar No. 31834
christhomas@parkerpoe.com
Parker Poe Adams & Bernstein LLP
PNC Plaza
301 Fayetteville Street, Suite 1400 (27601)
P.O. Box 389
Raleigh, North Carolina 27602-0389
Telephone: (919) 835-4626
Facsimile: (919) 834-4564
Local Civil Rule 83.1(d) Counsel

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Albert P. Allan
ALLAN LAW FIRM, PLLC
435 East Morehead Street
Charlotte, NC 28202
Email: alallan@allaniplitigation.com

Richard Liebowitz
LIEBOWITZ LAW FIRM, PLLC
11 Sunrise Plaza, Suite 305
Valley Stream, NY 11580
Email: RL@liebowitzlawfirm.com

This the 7th day of August, 2020.

/s/ Dan Booth
Dan Booth
Dan Booth Law LLC
60 Thoreau Street, #121
Concord, MA 01742
dan@danboothlaw.com
Local Civil Rule 83.1(e) Special Appearance

Christopher M. Thomas
N.C. State Bar No. 31834
christhomas@parkerpoe.com
Parker Poe Adams & Bernstein LLP
PNC Plaza
301 Fayetteville Street, Suite 1400 (27601)
P.O. Box 389
Raleigh, North Carolina 27602-0389
Telephone: (919) 835-4626
Facsimile: (919) 834-4564
Local Civil Rule 83.1(d) Counsel