**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**WESTERN DIVISION**
**No. 5:19-cv-249-FL**

| | | |
|---|---|---|
| MATTHEW BRADLEY, | ) | **DEFENDANT ANALYTICAL** |
| | ) | **GRAMMAR, INC.'S REPLY IN** |
| Plaintiff, | ) | **FURTHER SUPPORT OF ITS** |
| v. | ) | **MOTION FOR SUMMARY** |
| | ) | **JUDGMENT AND MOTION TO** |
| ANALYTICAL GRAMMAR, INC., | ) | **EXCLUDE** |
| | ) | |
| Defendant. | ) | |

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................1

I.      Bradley violated Rule 26(a) and has no basis for any recovery. .............................................2

II.     Analytical did not remove any CMI, or know of its removal, so the CMI claim fails. ..........5

III.    Analytical's nonexclusive license defeats the copyright infringement claim.........................8

IV.     Analytical's fair use defeats the copyright infringement claim. ...........................................12

CONCLUSION .......................................................................................................16

# TABLE OF AUTHORITIES

**Cases**

*Adlife Mktg. & Commc'ns Co. v. Buckingham Bros., LLC*, No. 5:19-cv-0796 (LEK/CFH), 2020 U.S. Dist. LEXIS 148755, *21 (N.D.N.Y. Aug. 18, 2020) ............................ 15

*A.V. v. iParadigms, LLC*, 562 F.3d 630 (4th Cir. 2009) .................................................... 13, 17

*A.V. v. iParadigms, LLC*, 544 F. Supp. 2d 484 (E.D. Va. 2008) .................................................. 17

*Bain v. Film Indep., Inc.*, CV 18-4126 (JEMx), 2020 U.S. Dist. LEXIS 141859 (C.D. Cal. Aug. 6, 2020) ............................................................................................................ 6

*Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491 (5th Cir. 2012) .................................................. 11

*Bonner v. Dawson*, 404 F.3d 290 (4th Cir. 2005) ............................................................................ 4

*Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514 (4th Cir. 2003) ...................... 3, 4

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994) ........................................................ 16

*Christopher Phelps & Assocs., LLC v. Galloway*, 492 F.3d 532 (4th Cir. 2007) ...................... 3, 4

*Cohee v. Global Horizons, Inc.*, 310 Fed. Appx. 579 (4th Cir. 2009) .......................................... 10

*Dash v. Mayweather*, 731 F.3d 303 (4th Cir. 2013) ........................................................ 2, 3, 4, 5

*Dash v. Mayweather*, No. 3:10-cv-1036-JFA, 2012 U.S. Dist. LEXIS 66003 (D.S.C. May 11, 2012) ............................................................................................................ 3

*Falcon Enters. v. Publ'rs Serv., Inc.*, 438 Fed. Appx. 579 (9th Cir. 2011) .................................. 11

*Fischer v. Forrest*, 286 F. Supp. 3d 590 (S.D.N.Y. 2018) ............................................................ 8

*Fischer v. Forrest*, No. 18-2955-cv, 2020 U.S. App. LEXIS 24491 (2d Cir. Aug. 4, 2020) .................................................................................................................. 8

*Harper & Row, Publrs. v. Nation Enters.*, 471 U.S. 539 (1985) ...................................... 14, 15, 16

*I.A.E., Inc. v. Shaver*, 74 F.3d 768 (7th Cir. 1996) .................................................................. 10, 11

*Jarvis v. K2, Inc.*, 486 F.3d 526 (9th Cir. 2007) ............................................................................ 3

*Kelly Capital, LLC v. S&M Brands, Inc.*, 73 F. Supp. 2d 659 (E.D. Va. 2012) .......................... 10

*Ledo Pizza Sys. v. Ledo Rest., Inc.*, 407 Fed. Appx. 729 (4th Cir. 2011) ...................................... 9

*Mango v. BuzzFeed, Inc.*, 356 F. Supp. 3d 368 (S.D.N.Y. 2019) .................................................. 6

*MCA, Inc. v. Wilson*, 677 F.2d 180 (2d Cir. 1981) ...................................................................15

*Mellin v. Carol Fox & Assocs.*, No. 19 C 6799, 2020 U.S. Dist. LEXIS 144635
(N.D. Ill. Aug. 12, 2020)........................................................................................................11

*Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295 (3d Cir. 2011)..................................5, 7, 8

*Nelson-Salabes, Inc. v. Morningside Dev.*, 284 F.3d 505 (4th Cir. 2002)....................................11

*On Davis v. The Gap, Inc.*, 246 F.3d 152 (2d Cir. 2001)...........................................................2, 4

*Otto v. Hearst Comm'cns, Inc.*, 345 F. Supp. 3d 412 (S.D.N.Y. 2018)..................................14, 15

*Otto v. Hearst Commc'ns, Inc.*, No. 17-cv-4712, 2020 U.S. Dist. LEXIS 12246
(S.D.N.Y. Jan. 23, 2020).........................................................................................................15

*Philpot v. LM Communs. II of S.C., Inc.*, No. 5:17-cv-173-CHB,
2018 U.S. Dist. LEXIS 113927 (E.D. Ky. July 10, 2018)...........................................................6

*Philpot v. Media Research Ctr. Inc.*, 279 F. Supp. 3d 708 (E.D. Va. 2018) ...............................11

*Philpot v. WOS, Inc.*, No. 1:18-CV-339-RP, 2019 U.S. Dist. LEXIS 67978
(W.D. Tex. Ap. 22, 2019)...........................................................................................................6

*Photographic Illustrators Corp. v. Orgill*, 953 F.3d 56 (1st Cir. 2020) ..................................6, 11

*Photographic Illustrators Corp. v. Orgill*, 118 F. Supp. 3d 398 (D. Mass. 2015) ........................6

*Powerline Oil Co., Inc. v. Superior Court*, 37 Cal. 4th 377, 33 Cal. Rptr. 3d 562,
118 P.3d 589 (Cal. 2005) .........................................................................................................10

*Pronman v. Styles*, 676 Fed. Appx. 846 (11th Cir. 2017)............................................................4

*Ringling Bros.-Barnum & Bailey Combined Shows, Inc. v. Utah Div. of Travel Dev.*,
170 F.3d 449 (4th Cir. 1999) .....................................................................................................2

*SAS Inst., Inc. v. World Programming Ltd.*, 874 F.2d 370 (4th Cir. 2017) ................................10

*Sony Corp. of Am. v. Univ. City Studios, Inc.*, 464 U.S. 417 (1984) ...........................................16

*Tharpe v. Lawidjaja*, 8 F. Supp. 3d 743 (W.D. Va. 2014).....................................................11, 12

*Thomas M. Gilbert Architects, P.C. v. Accent Builders & Developers, LLC*,
377 Fed. Appx. 303 (4th Cir. 2010).........................................................................................11

*William A. Graham Co. v. Haughey*, 646 F.3d 138 (3d Cir. 2011) ...............................................4

*World-Wide Rights Ltd. P'ship v. Combe Inc.*, 955 F.2d 242 (4th Cir. 1992)..............................9

**Statutes and Rules**

17 U.S.C. § 504(b) .................................................................................................3, 4

17 U.S.C. § 1202 ....................................................................................................5, 7

17 U.S.C. § 1202(b) ...............................................................................................5, 7

17 U.S.C. § 1203(c) ...................................................................................................8

Fed. R. Civ. P. 26 .......................................................................................................2

Fed. R. Civ. P. 26(e) ..................................................................................................2

Fed. R. Civ. P. 26(a)(1) ...........................................................................................1, 2

Fed. R. Civ. P. 37(c)(1) ...........................................................................................2, 4

Fed. R. Civ. P. 56 .......................................................................................................9

Fed. R. Civ. P. 56(e) ..................................................................................................3

**Other Authorities**

3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 10.03[7] (2020) ...................11

4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 14.01[C][1] (2017) ...............4

4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 14.03 (2017) ..........................4

# INTRODUCTION

The Court should grant Analytical Grammar, Inc.'s ("Analytical") motion for summary judgment (DE 26) and motion to exclude (DE 32) because, in addition to the reasons already stated, Matthew Bradley's ("Bradley") papers confirm that he has no basis to move forward to trial. Admissions and omissions in Bradley's responsive filings (DE 46, DE 47, DE 48) are fatal to both of his causes of action and all of his claims for relief.

- **Bradley admits that he violated Rule 26(a)(1).** There is no dispute that he failed to compute and disclose any damages and profits as required. DE 46 ¶ 94. He does not deny that this failure requires preclusive Rule 37(c)(1) sanctions. DE 33 at 4-12. His sole argument against Analytical's motion to exclude is that his failure to disclose *also* supports Analytical's motion for summary judgment. DE 48.

- **Bradley admits that he has no evidence of damages.** He concedes that no documents show any damages suffered, that Analytical's use of his photograph caused any injury, or that its use is reasonably likely to have any effect on the photograph's market, potential market, or value. DE 46 ¶¶ 92-93. Bradley further admits that no documents establish any fair market value for the photograph. *Id.* ¶ 94.

- **Bradley has no evidence of any profits due to Analytical's use.** He failed to proffer evidence of any share of Analytical's gross revenue reasonably attributable to the use, and failed to identify a causal link with any revenues, though controlling precedent requires those showings. He merely surmised that Analytical "sough[t] to profit" because it was a for-profit publisher, which is totally inadequate. *Id.* ¶¶ 55-56, 77.

- **Analytical did not remove any CMI.** The CMI claim fails because it hinges on a mere "presumption" that Analytical removed CMI. *Id.* ¶ 108. Even if Bradley's username counts as CMI, it was removed before Analytical obtained the photograph. DE 27 at 29-30. He does not dispute that Analytical got the photograph via Facebook Messenger. DE 46 ¶ 49. That message did not include Bradley's name. DE 30-21.

- **Analytical's use was licensed.** "[T]he crux of Plaintiff's complaint is that Defendant failed to utilize Facebook's Share function." DE 47 at 12. But by the terms of service that Bradley admits were then effective, he "allow[ed] everyone … to access and use that information," *id.* at 6, not limited to use by clicking Share. He never placed any terms or conditions on any sharing, reposting, or other distribution. DE 46 ¶ 17.

- **Analytical's use was fair**. Fair use defeats the infringement claim. Bradley fails to counter evidence that "[t]he customary price for a viral use of a social media meme is free." *Id.* ¶ 79. Supreme Court precedent treats Analytical's use as noncommercial, and gives Bradley the burden to demonstrate market harm. DE 27 at 15, 19-20. He admits that he has no such evidence. DE 46 ¶¶ 2, 60, 66-68, 80, 92-95.

## I. Bradley violated Rule 26(a)(1) and has no basis for any recovery.

Bradley failed to disclose, and substantiate, a computation of recoverable damages and profits per Rule 26(a)(1). DE 33 at 1-4. He claimed that he needed financial discovery first, but he received it and never supplemented per Rule 26(e). *Id.* at 4 & 11, DE 33-1 ¶ 3; *see* DE 30-24 ¶¶ 14-16, DE 30-29. Bradley does not dispute his failure to comply with Rule 26. DE 46 ¶ 94. He admits that he "did not present documentary evidence of market loss during the discovery period." DE 47 at 23. He was warned that the failure would likely lead to exclusion at trial per Rule 37(c)(1). DE 20 ¶ A(10). He makes no argument that exclusion is not appropriate. DE 48.

Instead Bradley raises two irrelevant legal points: that damages are not an element of an infringement claim, and that their amount is a jury question. DE 47 at 23-25. Though he presents no evidentiary basis for claiming damages or profits, he insists that he has a right "to a jury to decide the damages suffered." DE 46 ¶ 94. He is wrong. Where, as here, "there is no evidence of damages," the right to have a jury assess damages "would not be infringed by a proper disposition of the issue by summary judgment." *Ringling Bros.-Barnum & Bailey Combined Shows, Inc. v. Utah Div. of Travel Dev.*, 170 F.3d 449, 465 (4th Cir. 1999), *cert. denied*, 528 U.S. 923 (1999). "In the summary judgment context, once a defendant has properly supported his claim that there are no actual damages resulting from infringement, the plaintiff must respond with nonspeculative evidence that such damages do, in fact, exist." *Dash v. Mayweather*, 731 F.3d 303, 313 (4th Cir. 2013), *cert. denied*, 572 U.S. 1034 (2014). "'In order to make out his claim that he suffered actual damage because of the infringer's failure to pay the fee, the owner must show that the thing taken had a fair market value.'" *Id.* at 312 (*quoting On Davis v. The Gap, Inc.*, 246 F.3d 152, 166 (2d Cir. 2001)).

Bradley admits "that there are no documents to establish the fair market value of the Photograph." DE 46 ¶ 94. This forecloses the relief sought. "Actual damages for infringement

are measured according to market value." *Christopher Phelps & Assocs., LLC v. Galloway*, 492 F.3d 532, 539 (4th Cir. 2007). When there is "no evidence … of the market value" of any infringed work—"or if they had any substantial value at all"—there is no evidence for a jury to consider. *Id.* at 540. Furthermore, when "the Plaintiff has not offered sufficient, concrete evidence to indicate an actual value of the [work] he cannot survive summary judgment on the actual damages claim." *Dash v. Mayweather*, No. 3:10-cv-1036-JFA, 2012 U.S. Dist. LEXIS 66003, *15 (D.S.C. May 11, 2012), *aff'd*, 731 F.3d at 310. Bradley does not dispute that he has no evidence of "any damages that he suffered or injury caused by Analytical's use of the Photograph." DE 46 ¶ 93. Thus, his unmet $50 demands to other websites cannot be evidence of damages due to Analytical.[1] *Id.* ¶ 60. No one paid a cent for the photograph or any related goods. *Id.* ¶¶ 2, 60, 66-68, 80, 95. He made it available under a free, nonexclusive license. *Id.* ¶ 12, DE 47 at 6. He does not dispute his lack of evidence that even a *potential* market effect is reasonably likely. DE 46 ¶ 92. Accordingly, he has no basis for a jury to consider actual damages.

Likewise, the issue of profits also is not "a question that can be resolved *only* by a jury." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 519 (4th Cir. 2003), *cert. denied*, 541 U.S. 1042 (2004) (emphasis in original). A copyright plaintiff must

> respond to a properly supported motion for summary judgment by "setting forth specific facts showing that there is a genuine issue for trial." … Should the plaintiff fail so to respond—whether that failure is due to the absence of any conceivable connection between the infringement and the claimed revenues, or instead simply due to the plaintiff's inability to muster nonspeculative evidence in support of the alleged causal link—then summary judgment may properly be awarded to the infringer with respect to part or all of the contested revenues.

*Id.* at 522 (quoting Fed. R. Civ. P. 56(e)). Again, based on his admission, Bradley may

---

[1] *Ex post* demands that no one paid provide no measure of "'what a willing buyer would have reasonably been required to pay a willing seller' for the use[.]" *Dash*, 731 F.3d at 319 (*quoting Jarvis v. K2, Inc.*, 486 F.3d 526, 533 (9th Cir. 2007)); *see* DE 47 at 17. Any suggestion that Bradley's unmet demands set an objective value for the photograph, or entitle him to $50 as damages, "is too speculative to preclude summary judgment on his actual damages claim." *Id.*

not recover profits under 17 U.S.C. § 504(b) because he has not met "the copyright holder's obligation to show that his work had a fair market value." *Dash*, 731 F.3d at 323-24.

Bradley also cannot recover any profits because any "evidence that the claimed revenues are attributable to the infringement is unduly speculative, 'merely colorable,' or 'not significantly probative[.]'" *Id.* at 327 (*quoting Bouchat*, 346 F.3d at 522). Bradley fails to carry his "burden of demonstrating some causal link between the infringement and [a] particular profit stream before the burden-shifting provisions of § 504(b) apply." *Bonner v. Dawson*, 404 F.3d 290, 294 (4th Cir. 2005) (*citing Bouchat*, 346 F.3d at 521).[2] He fails to identify any profit stream tied to the use of the photograph. He does not dispute that Analytical did not use it to advertise or refer to any products or services. DE 46 ¶ 55. Faced with Analytical's showing that it generated no revenues from the use, Bradley counters only that it was a for-profit publisher engaged in social media, and contends that it therefore "sough[t] to profit … by promoting its corporate brand." *Id.* ¶¶ 55-56. That speculative *non sequitur* fails to create a genuine, material dispute. "When an infringer's profits are only remotely and speculatively attributable to infringement, courts will deny recovery to the copyright owner." 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 14.03 (2017). Even "a finding of liability is not a lottery ticket. In all instances, the relief should match the proof." *Id.* § 14.01[C][1]. With "no evidence … from which to conclude what the profits were" attributable to the use, if any, and with no basis for apportionment, the recoverable profits should be zero. *Christopher Phelps*, 492 F.3d at 540-41.

---

[2] *Accord Dash*, 731 F.3d at 329; *Pronman v. Styles*, 676 Fed. Appx. 846, 848 (11th Cir. 2017) ("With respect to profits, the plaintiff must show a causal relationship between the infringement and profits and present proof of the infringer's gross revenue."); *William A. Graham Co. v. Haughey*, 646 F.3d 138, 141 (3d Cir. 2011) (before the burden shifts to the defense, "a plaintiff is first required to prove the defendants' gross revenues over the course of the relevant time period, and then to establish a causal nexus between the infringement and the profits sought"); *Bouchat*, 346 F.3d at 520-21 ("the term 'gross revenue' under the statute means gross revenue reasonably related to the infringement, not unrelated revenues") (*quoting On Davis*, 246 F.3d at 160).

Lacking admissible evidence of damages and profits, Bradley has no basis to proceed to trial. *See Dash*, 731 F.3d at 310. Any damages and profits evidence should be excluded based on Bradley's failure to disclose under Rule 37(c)(1). Summary judgment of no damages and profits should be found. And the infringement claim should be dismissed for lack of relief.

## II.     Analytical did not remove any CMI, or know of its removal, so the CMI claim fails.

Bradley fails to create a genuine issue to maintain his copyright management information ("CMI") claim. He alleged that Analytical "removed" his name, which he contends was CMI, from the photograph. DE 1 ¶ 18, DE 47 at 27. There is no genuine dispute that Analytical did not do this. Bradley does not dispute that Analytical received the photograph from Gene Boecker via Facebook Messenger on December 14, 2017. DE 46 ¶ 49. The message did not mention or refer to Bradley. DE 30-21. As Bradley points out, Analytical then reproduced the image "without any visible modification, cropping or alteration." DE 47 at 19. So, as Analytical's owner explained more than a year ago, "We didn't remove or alter any copyright management information. Nothing identified Mr. Bradley as the photographer when we came across the photo." DE 30-22; *see also* DE 30-20 ¶¶ 3-5. *See Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295, 302 n. 8 (3d Cir. 2011) ("if an infringer merely copies an entire work whole … Section 1202 will probably not be implicated, as the infringer will not have removed or altered any CMI."). Analytical could not have removed something that was not there to be removed.

Bradley denies this exculpatory evidence on the sole basis that Analytical posted the unmarked photograph on Facebook on December 16, 2017, two days after receiving it. DE 46 ¶¶ 50-51. That is irrelevant to whether Analytical had removed any CMI or knew of its removal. Bradley "would have this Court create a variation on *res ipsa loquitur*, such that posting a copy of an image without copyright management information speaks for itself—that the posting party must have removed it." *Philpot v. LM Commc'ns II of S.C., Inc.*, No. 5:17-cv-173-CHB, 2018

U.S. Dist. LEXIS 113927, *15 (E.D. Ky. July 10, 2018). But he adduced no evidence that

> defendant removed indicia of [his] authorship from the image[]. Indeed, there is no evidence that … defendant ever received any images containing copyright attribution information in the first place. … Given the existence of a third party that has not been deposed and is otherwise absent from the case, it would be too speculative to infer that [defendant] removed CMI simply because [plaintiff] avers that [the third party] received images containing copyright information.

*Photographic Illustrators Corp. v. Orgill*, 118 F. Supp. 3d 398, 407 (D. Mass. 2015) (allowing summary judgment for defendant), *aff'd*, 953 F.3d 56 (1st Cir. 2020). The same logic applies here. See DE 27 at 29-30. Bradley's claim that it is "immaterial" that Analytical received the photograph from Mr. Boecker, without CMI, DE 46 ¶ 49, is exactly wrong: it is dispositive.

So is his failure to identify probative evidence that Analytical knew of any unauthorized CMI removal. He acknowledges his burden to establish "that the distribution was done knowing that the CMI was removed and/or altered without permission." DE 47 at 25 (*quoting Mango v. BuzzFeed, Inc.*, 356 F. Supp. 3d 368, 377 (S.D.N.Y. 2019)). But his conclusory assertion that "Defendant knew that it did not create the Photograph and yet passed it off as its own work,"[3] DE 47 at 28, does not meet that burden. That is not evidence that Analytical knew that CMI was ever on the photograph, knew of its removal, and knew that the removal was without permission. Bradley's name was absent when Analytical got the photograph, so "[t]here is no evidence from which a reasonable jury could conclude that [Analytical] either intentionally removed CMI from the … photo or that it published the photo knowing that CMI had been removed." *Philpot v. WOS, Inc.*, No. 1:18-CV-339-RP, 2019 U.S. Dist. LEXIS 67978, *21 (W.D. Tex. Ap. 22, 2019).

---

[3] Also unavailing is Bradley's insinuation that posting the photograph on Facebook amounted to "pass[ing] it off as its own," merely because it appeared with Analytical's username. *See* DE 1-2. That would not constitute CMI alteration or removal. It is undisputed that all Facebook posts display the poster's username. DE 46 ¶ 115. Because Facebook automatically generates usernames with each post, the presence of a username is not an alteration *by the user. See Bain v. Film Indep., Inc.*, CV 18-4126 (JEMx), 2020 U.S. Dist. LEXIS 141859, *15 (C.D. Cal. Aug. 6, 2020). Moreover, "passing off" is not a claim in this lawsuit and it is not a cognizable basis for any pleaded claim. *See* DE 43 at 22-23.

There is also ample, uncontroverted evidence that Analytical had no idea that its meme use would be seen as infringing. *See* DE 30-20 ¶¶ 10-11, DE 30-22 p. 1. Without grounds to know of infringement, there is no § 1202(b) violation. *See, e.g., Murphy*, 650 F.3d at 302 n. 8 ("those intending to make fair use of a copyrighted work are unlikely to be liable under § 1202").

For more than a year after he posted the photograph, Bradley gave no one any reason to think that he would consider any use infringing. DE 46 ¶¶ 58, 59, 114, 118. When he took the photograph with his phone, no author or copyright information was captured or conveyed as metadata. *Id.* ¶¶ 112-113. He has no records showing that he placed any terms or conditions on sharing, reposting, or otherwise distributing it. *Id.* ¶ 17. And Bradley did not communicate with Analytical before suing. *Id.* ¶ 65. So no hint of an infringement claim came from him.

The conventions of social media use also gave Analytical no cause to suspect its use would "induce, enable, facilitate, or conceal an infringement." 17 U.S.C. § 1202(b) *See* DE 28 ¶ 120. Facebook users have no reason to assume, much less know, that a photographic meme ever had a photographer's name attached and removed. Expert evidence, which Bradley presents no evidence to counter, showed that meme attribution is uncommon, and that most meme creators expect and hope for recirculation "without express permission, payment, or attribution." DE 46 ¶¶ 70-71, 79, 96. His only stated ground to dispute that "Analytical did not know, or even believe, that reposting the meme would be an infringement" is that Analytical and its owner had knowledge and experience in educational publishing and social media. *Id.* ¶ 120. But that knowledge only supports Analytical's belief that its use was permitted, given the accepted norms of meme use. Bradley does not dispute that it "shared and reposted thousands of memes on its Facebook page" without consequence, and out of the "millions" of Facebook users who engaged with that page, he alone contended that any of the reposts was not allowed. *Id.* ¶¶ 72, 120. He

creates no genuine dispute over whether Analytical knew or had reason to know that it would somehow aid infringement.

Moreover, Bradley failed to show that his Facebook username *was* CMI identifying him as the photographer when he posted it. He concedes that the purpose of CMI is "to inform the public that something is copyrighted and by whom." DE 47 at 26-27 (*quoting Fischer v. Forrest*, 286 F. Supp. 3d 590, 610-11 (S.D.N.Y. 2018) ("*Fischer I*"), *aff'd*, No. 18-2955-cv, 2020 U.S. App. LEXIS 24491 (2d Cir. Aug. 4, 2020) ("*Fischer II*")). His username fails to qualify as "author-identifying information." *Murphy*, 650 F.3d at 305 n. 13; *see* DE 27 at 28. "While an author's name can constitute CMI, not every mention of the name does." *Fischer II*, 2020 U.S. App. LEXIS 24491, *15. Bradley claims that his username was CMI solely because Facebook conveyed it in proximity to the photograph. DE 47 at 27. But a name is only CMI when it has that characteristic of informing the public about "authorship or copyright ownership." *Fischer I*, 286 F. Supp. 3d at 611. When a name "does not connote" ownership or authorship, it "has no CMI relevance." *Id.* A Facebook username is excluded from the statutory definition of CMI because it is "personally identifying information about a user of a work." 17 U.S.C. § 1203(c).

So Bradley's name was not CMI. Analytical did not remove or alter any CMI when it used the photograph on Facebook. Analytical did not know of any CMI removal or alteration, and it had no reasonable grounds to know that its use would play any role in any infringement. Bradley fails to give the CMI claim enough substance to proceed to trial.

## III. Analytical's nonexclusive license defeats the copyright infringement claim.

Bradley presents no probative evidence to place Analytical's license in genuine dispute. He admits that he posted the photograph on Facebook using the Public setting in December 2017. DE 46 ¶¶ 9, 13-16. He admits that Facebook's then-effective terms of service included a broad provision stating, in pertinent part: "When you publish content or information using the Public

setting, it means that you are allowing everyone, including people off of Facebook, to access and use that information….” DE 47 at 6 (quoting DE 30-1 at 2). He does not dispute that the same terms of service "specifically defined 'use' to include all acts of copying and distribution." DE 46 ¶ 15. Taken together, his concessions leave no dispute that he granted "everyone," including Analytical, an express license to copy and distribute the photograph. DE 27 at 9.

Bradley raises no factual dispute over that express license provision. Instead he conjures three legal arguments about its interpretation and scope. *See* DE 46 ¶¶ 10-15, DE 47 at 10-11. His legal challenges are well within the Court's authority under Rule 56. *See Ledo Pizza Sys. v. Ledo Rest., Inc.*, 407 Fed. Appx. 729, 730 (4th Cir. 2011); *World-Wide Rights Ltd. P'ship v. Combe Inc.*, 955 F.2d 242, 245 (4th Cir. 1992) ("an unambiguous writing justifies summary judgment without resort to extrinsic evidence"). His challenges do not withstand scrutiny.

Bradley "avers that the controlling terms of service were those in effect at the time this lawsuit was filed on June 18, 2019." DE 47 at 8 n.2. This conclusory averment does not create a genuine issue of material fact because the 2017 terms expressly governed all Facebook use at the time of his post and Analytical's repost. *See* DE 30-1 at 2 ("This Statement of Rights and Responsibilities … is our terms of service that governs our relationship with users and others who interact with Facebook … By using or accessing the Facebook Services, you agree to this Statement …"), DE 43 at 12-13. Bradley offers no reason to construe the 2017 provision through the lens of any later terms.

He also suggests that his express license only allowed distributions through Facebook's Share function to "associate the Photograph with Plaintiff's name and profile picture." DE 47 at 10. The 2017 provision covered use on and "off of Facebook" equally, *id.* at 6, so it was not and could not have been limited to a function not available outside Facebook's services. *See* DE 29-

14 at 7-8 (distinguishing Share from other means to share). Bradley allowed everyone to access and use the photograph, and to associate it with him, but did not require that association. *See* DE 43 at 13.

Finally, he contends that the 2017 provision "is ambiguous as to whether it actually covers photographs," and that his photograph did not qualify as "information." DE 47 at 10-11. This is also incorrect because the provision is unambiguous on its face. California law governs Facebook's terms of service. DE 30-1 ¶ 15(1); *see also* DE 38-10 ¶ 4(4). "Under California law, which governs here, '[i]f contractual language is clear and explicit, it governs.'" *Cohee v. Global Horizons, Inc.*, 310 Fed. Appx. 579, 583 (4th Cir. 2009) (*quoting Powerline Oil Co., Inc. v. Superior Court*, 37 Cal. 4th 377, 33 Cal. Rptr. 3d 562, 118 P.3d 589, 598 (Cal. 2005)). The same is true under North Carolina law. *See SAS Inst., Inc. v. World Programming Ltd.*, 874 F.2d 370, 380 (4th Cir. 2017). The 2017 provision covered all "content or information," without limitation. Bradley does not dispute that the terms of service incorporated Facebook's Data Policy by reference. *See* DE 27 at 9 n.2, DE 46 ¶ 14. Documents incorporated by reference are intrinsic evidence. *See Kelly Capital, LLC v. S&M Brands, Inc.*, 73 F. Supp. 2d 659, 670 n. 16 (E.D. Va. 2012), *aff'd*, 532 Fed. Appx. 422 (4th Cir. 2013). Under the Data Policy, "content" is within the meaning of "information," and both terms include "photo." *See* DE 43 at 14-15.

Bradley therefore fails to show that any genuine issue of fact could place Analytical's use outside the terms of the 2017 provision's express license. He also offers no basis to construe his post through the Public setting as anything less than an implied license or sublicense that also permitted Analytical's use.

He argues that an implied license "should be found only in narrow circumstances" that satisfy three factors—request, delivery, and intent—spelled out in *I.A.E., Inc. v. Shaver*, 74 F.3d

768, 776 (7th Cir. 1996). [DE 47](#) at 11. "But the three-factor test from *I.A.E.* is not the exclusive test for creation of an implied license," and "it is problematic for courts to 'transmute those three factors into the only applicable test.'" *Mellin v. Carol Fox & Assocs.*, No. 19 C 6799, 2020 U.S. Dist. LEXIS 144635, *4-5 (N.D. Ill. Aug. 12, 2020) (*quoting* 3 Nimmer on Copyright § 10.03[7] (2020)). Thus, "[t]here may be an implied license if the totality of the parties' conduct supports that one exists." *Id.* at *5 (*citing Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 501 (5th Cir. 2012)); *accord Orgill*, 953 F.3d at 62 (implied licenses can be found "if one or more of these elements is lacking"); *Falcon Enters. v. Publ'rs Serv., Inc.*, 438 Fed. Appx. 579, 581 (9th Cir. 2011) (finding implied license without a licensee request); *Philpot v. Media Research Ctr. Inc.*, 279 F. Supp. 3d 708, 713 (E.D. Va. 2018) (same). The critical factor is intent, under any test, and no direct written agreement between the parties is required. *See* [DE 27](#) at 9-10; *Thomas M. Gilbert Architects, P.C. v. Accent Builders & Developers, LLC*, 377 Fed. Appx. 303, 307 (4th Cir. 2010) (*citing Nelson-Salabes, Inc. v. Morningside Dev.*, 284 F.3d 505, 515 (4th Cir. 2002)).

Bradley suggests that Analytical's brief claimed "that 'direct business dealings' must exist for an implied license to be found." [DE 47](#) at 12. But Analytical made no such argument; it noted that the Fourth Circuit had applied the three-factor test in such a circumstance. *See* [DE 27](#) at 10 n.3 (*citing Nelson-Salabes*, 284 F.3d at 514). The Fourth Circuit has not *required* such direct dealings, and at least one court in this Circuit has found that a photographer granted an implied license "to the public" by posting photographs online, with no direct interaction with the licensee. *Philpot*, 279 F. Supp. 3d at 713 ("there was no meeting of the minds").

"Courts focus on objective evidence revealing the intent of the parties to determine if an implied license exists, and this inquiry also reveals the scope of that license." *Tharpe v. Lawidjaja*, 8 F. Supp. 3d 743, 766 (W.D. Va. 2014). Bradley fails to create a genuine dispute that

his conduct "manifested his intent that the Photograph be seen and shared without restriction." DE 27 at 10. Instead he cites his subjective, *post hoc* disapproval of uses beyond the Share function. DE 47 at 13. He now asserts: "The permission to use content [under the 2017 express license provision] is limited to use by those who credit the copyright holder of the work being shared." DE 46 ¶ 14. That provision states no such limitation. Bradley does not dispute that he raised no such objections in the year after posting the photograph, as he celebrated Share and non-Share distributions alike, including "steals" on Facebook, on Twitter, and in online publications without credit. *See id.* ¶¶ 22, 24-28, 34-40. He concedes that he has no objective evidence that he ever restricted any "sharing, reposting, or other distribution" of the photograph. *Id.* ¶ 17. He did not even seek to stop Analytical's use by requesting a takedown or removal; instead, he tried to turn it into an opportunity to get paid. *See id.* ¶¶ 100-107. All record evidence shows that Bradley's manifest intent, at all relevant times, was to post the photograph freely and fan the flames of viral distribution. And no record evidence shows that he ever imposed any scope limitations on the license he expressly or implicitly granted. *See Tharpe*, 8 F.3d at 766-67.

Bradley's attacks on an irrelevant straw man argument "that once a photograph is posted to Facebook and becomes 'viral,' it loses copyright protection," DE 47 at 1, are likewise without merit. *See also* DE 46 ¶ 20 (mischaracterizing expert report as though it "argues that all photographs which achieve market popularity on the internet automatically lose copyright protection"). He recognizes the widespread social media custom of free distribution of viral memes, yet raises a public policy argument that the custom "does not mean the Court should cast the Copyright Act by the wayside." DE 47 at 13. But Bradley himself cast aside whatever copyright protections the photograph may have (*see* DE 43 at 7-9) when he posted it for public distribution without conditions instead of reserving his rights. He may not now enforce the

copyright against a use that the record evidence shows he licensed.

**IV.  Analytical's fair use of the photograph defeats the copyright infringement claim.**

Summary judgment should also be granted to Analytical on the basis of fair use because Bradley fails to substantiate any genuine dispute over the material facts that establish the defense.

The first factor weights strongly in favor of fair use because Bradley fails to show that Analytical's use was not transformative, educational, and noncommercial. *See* DE 27 at 13-17.

*Transformative:* "A 'transformative' use is one that 'employ[s] the quoted matter in a different manner or for a different purpose from the original,' thus transforming it." *A.V. v. iParadigms, LLC*, 562 F.3d 630, 638 (4th Cir. 2009). Bradley does not deny that his sole purpose for taking and posting the photograph was humor. DE 46 ¶¶ 74-76 ("I'm just posting things that I think are funny"); *see id.* ¶ 29 ("the picture is the joke"). He also does not dispute that Analytical used the photograph on Facebook "to be thought-provoking, not just to entertain." *Id.* ¶ 53. His argument that Analytical did not "re-contextualize the Photograph," DE 47 at 15, is contrary to all record evidence; it drew out a didactic purpose by placing the photograph on its Facebook page focused on English grammar and usage. DE 46 ¶ 48; *see* DE 43 at 19-20. He creates no material dispute over Analytical's distinct, transformative purpose and new context for the use.

*Educational:* Bradley does not contest the nature of Analytical's business: it "offers language arts curricula and instructional materials for English grammar, punctuation, and usage." DE 46 ¶ 46. As he highlights, it sold "grammar, literature, and writing curricula to homeschools and private schools." DE 38-9. Yet he purports to dispute its educational purpose, on untenable grounds: it is a for-profit publisher that sold its materials to schools; its Facebook page was a "business page," not a personal page like Bradley's; its owner, Lt. Col. Erin Karl, edited the base newspaper at Patrick Air Force Base twenty years ago, and is "well-versed in social media." *Id.*, DE 46 ¶¶ 47, 48, 53, DE 47 at 16. Those facts do not controvert Analytical's pedagogical goals.

***Noncommercial:*** Bradley misapplies the leading precedent on "the profit/nonprofit distinction," which is focused not on whether a user sought profit from the use, "but whether the user stands to profit from exploitation of the copyrighted material without paying the customary price." *Harper & Row, Publrs. v. Nation Enters.*, 471 U.S. 539, 562 (1985). Though reciting that standard in part, he leans on his claim that Analytical "disseminates content on its Facebook business page in order to generate revenue." DE 47 at 16. No evidence supports that contention, and it does not support his argument that Analytical's use was exploitative "without paying the customary price." *Id.* at 17. The only record evidence shows that "the customary price for a viral use of a social media meme is free," as Analytical's marketing manager declared. DE 30-20 ¶¶ 10-11; DE 28 ¶ 79. Bradley has never sold or licensed the photograph or any other meme for any price. DE 46 ¶¶ 2, 60, 66-68, 80, 92-95. He does not dispute those pivotal facts or proffer evidence of any paid meme use; instead he quibbles over expert testimony that reinforces Analytical's point. *Id.* ¶ 79; see DE 29-14 at 7-9, 13-14. Though he argues, with no evidence for support, that he "was certainly a willing seller," DE 47 at 17, it is undisputed that he was not trying to sell the photograph at the time of Analytical's use, and that he did not "expect to do anything else with the meme" after posting it on Facebook for free. DE 46 ¶ 19. Moreover, there is no evidence that Analytical ever "stood to profit" from its use. Bradley's point that Analytical is a for-profit entity does not suffice. *Id.* ¶¶ 55-56. Because the customary price for the meme was free, Analytical's unpaid use is not exploitative and noncommercial under *Harper & Row*.

Bradley cites several inapposite New York cases in which news media uses of celebrity photographs were not found transformative. DE 47 at 14-16. No educational purpose was claimed in those cases, and they are not salient here, where that purpose has been shown. He leans hardest on *Otto v. Hearst Communications, Inc.*, 345 F. Supp. 3d 412 (S.D.N.Y. 2018); but

*Otto* involved a commercial defendant that had paid to license photographs, and a photograph of President Trump, for which a licensing market exists.[4] *Id.* at 419-20; *see* [DE 43](#) at 26-27. *Otto* is not relevant because it did not involve a meme, for which customary use is noncommercial. Such use, with a transformative purpose in an educational context, weighs heavily in favor of fair use.

The relevant considerations under the second factor weigh in favor of fair use. Bradley calls the photograph creative, but he does not contend that Analytical "diminished Bradley's incentive to create in any way," or that "the work 'represented a substantial investment of time and labor made in anticipation of a financial return.'" *See* [DE 27](#) at 17 (*quoting MCA, Inc. v. Wilson*, 677 F.2d 180, 182 (2d Cir. 1981)), [DE 43](#) at 23. The wide publication of the meme before Analytical's use is undisputed. [DE 27](#) at 18. He does not deny that he "had no commercial aspirations for the Photograph at the time it was created," but argues that he remains "entitled to enter the market," [DE 47](#) at 18—presuming the existence of a hypothetical market for memes with no evidentiary basis. The nature of Bradley's ephemeral, viral meme favors fair use.

The third factor either supports fair use or is neutral. Bradley objects to expert evidence that "social media users routinely redistribute [memes] in their entirety," but does not materially dispute or rebut it. [DE 46](#) ¶ 97. He also fails to counter Analytical's showing that the photograph was not meaningfully divisible, that he had encouraged wholesale viral reuse, and that such use was reasonably necessary for Analytical's educational purpose. [DE 27](#) at 18-19, [DE 43](#) at 24. He makes no showing that would weigh the extent of Analytical's use of the meme against fair use.

The fourth factor—"undoubtedly the single most important element of fair use," *Harper*

---

[4] "Liebowitz and his client in that case claimed that a reasonable license fee for a photograph of President Trump was $4,000. … However, the [*Otto*] court estimated a reasonable license fee of $100.00 and awarded his client the minimum statutory [damages] recovery of $750." *Adlife Mktg. & Commc'ns Co. v. Buckingham Bros., LLC*, No. 5:19-cv-0796 (LEK/CFH), 2020 U.S. Dist. LEXIS 148755, *21 (N.D.N.Y. Aug. 18, 2020) (*citing Otto v. Hearst Commc'ns, Inc.*, No. 17-cv-4712, 2020 U.S. Dist. LEXIS 12246 (S.D.N.Y. Jan. 23, 2020)).

& *Row*, 471 U.S. at 566—weighs heavily in favor of fair use. Bradley continues to argue for a "presumption of market harm" that is not available when the use is noncommercial, *see id.* at 562, or transformative, *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 594 (1994). In such cases applying that presumption is error. *Id.*; *see* DE 43 at 25. Because the use is noncommercial under *Harper & Row*, Bradley has the burden to prove "either that the particular use is harmful, or that if it should become widespread, it would adversely affect the potential market for the copyrighted work." *Sony Corp. of Am. v. Univ. City Studios, Inc.*, 464 U.S. 417, 451 (1984). He fails to meet that burden because he has no evidence of any harm. And Analytical has shown that he was not harmed, and no "meaningful likelihood of future harm exists." *Id.*; DE 43 at 25-26.

It is undisputed that Bradley "did not expect to use [the photograph] on merchandise of any kind" at the time he posted it. DE 46 ¶ 19 He has no evidence of any revenue from the photograph or related merchandise, and he has not negotiated any agreement to use it for a fee. *Id.* ¶¶ 66-67. So he does not dispute that no documents show "any damages that he suffered or injury caused by Analytical's use of the Photograph," or "any effect that any Defendant use of the Photograph has had, or is reasonably likely to have, on the market for, potential market for, or value of the Photograph or any derivative works." *Id.* ¶¶ 92-93. In particular, Analytical "has not impacted his efforts to sell T-shirts" because he has not tried to market or sell any. *Id.* ¶¶ 68, 95. He has conceded that there is no evidence of harm or of any likely potential market harm.

So his speculative argument that Analytical's use "impairs the potential market for the Photograph," DE 47 at 20, cannot be material. There is no record evidence that a market for memes on social media exists or is likely to develop, or that Analytical's use, or similar uses, have any demonstrable negative effect on such a theoretical market. *See id.* at 20-21, DE 46 ¶¶ 71, 79-80, 92, 96, 98, 106-107. "Because [Bradley] presented no evidence of harm and the

16

potential harm alleged is both speculative and highly unlikely, the fourth factor strongly favors a finding of fair use." *A.V. v. iParadigms, LLC*, 544 F. Supp. 2d 473, 484 (E.D. Va. 2008), *aff'd in pertinent part*, 562 F.3d at 644-45.

Each factor, and all material evidence, supports a finding of fair use and summary judgment for Analytical on the copyright infringement claim.

## CONCLUSION

No material issues of fact remain for a jury to resolve. The evidence requires judgment for Analytical as a matter of law.

Respectfully submitted,

Analytical Grammar, Inc.

By its attorneys:

Signed: August 21, 2020

/s/ Dan Booth
Dan Booth
Dan Booth Law LLC
60 Thoreau Street, #121
Concord, MA 01742
dan@danboothlaw.com
Local Civil Rule 83.1(e) Special Appearance

Christopher M. Thomas
N.C. State Bar No. 31834
christhomas@parkerpoe.com
Parker Poe Adams & Bernstein LLP
PNC Plaza
301 Fayetteville Street, Suite 1400 (27601)
P.O. Box 389
Raleigh, North Carolina 27602-0389
Telephone: (919) 835-4626
Facsimile: (919) 834-4564
Local Civil Rule 83.1(d) Counsel

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system which will automatically send notification of such filing to the following:

Albert P. Allan
ALLAN LAW FIRM, PLLC
435 East Morehead Street
Charlotte, NC 28202
Email: alallan@allaniplitigation.com

Richard Liebowitz
LIEBOWITZ LAW FIRM, PLLC
11 Sunrise Plaza, Suite 305
Valley Stream, NY 11580
Email: RL@liebowitzlawfirm.com

This the 21st day of August, 2020.

/s/  Dan Booth
Dan Booth
Dan Booth Law LLC
60 Thoreau Street, #121
Concord, MA 01742
dan@danboothlaw.com
Local Civil Rule 83.1(e) Special Appearance

Christopher M. Thomas
N.C. State Bar No. 31834
christhomas@parkerpoe.com
Parker Poe Adams & Bernstein LLP
PNC Plaza
301 Fayetteville Street, Suite 1400 (27601)
P.O. Box 389
Raleigh, North Carolina 27602-0389
Telephone: (919) 835-4626
Facsimile: (919) 834-4564
Local Civil Rule 83.1(d) Counsel