IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:19-cv-249-FL

MATTHEW BRADLEY,
           Plaintiff,

- against –

ANALYTICAL GRAMMAR, INC.

           Defendant.

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff Matthew Bradley ("Plaintiff" or "Bradley") respectfully submits this reply memorandum of law in further support of Plaintiff's motion for partial summary judgment as to liability for copyright infringement against Defendant Analytical Grammar, Inc. ("Defendant"). For the reasons explained below, as well as those set forth in Plaintiff's principal motion for partial summary judgment and in his opposition to Defendant's motion for summary judgment, Plaintiff's motion should be GRANTED in its entirety.

## INTRODUCTION

Defendant's opposition brief continues to press the same theme: that photographs uploaded to social media that achieve a certain level of popularity necessarily lose copyright protection by default. Defendant also continues to mislead the Court with its proclamations that Defendant's use was "licensed" by virtue of Facebook's terms of service, which Defendant believes creates a virtual black hole through which all copyright protection is swallowed. No objective user of *any* social media platform could reasonably expect that the act of uploading one's content to a personal social media account automatically grants the entire universe a license to use that content, or as germane here, pass that content off as if it was created by the secondary user.

Unable to dispute any claim of similarity or copying, Defendant attempts to persuade the Court that its use was licensed by ambushing the Plaintiff with undisclosed documents, which were not produced during the discovery period, as well as an undisclosed witness, Michael Duffey. Defendant's failure to disclose those documents and the witness during the discovery period presents a clear-cut violation of Fed.R.Civ.P. 37(c)(1), thereby warranting preclusion of all such evidence. Plaintiff respectfully requests that the Court strike Docket No. 45 in its

entirety, along with those portions of Docket Nos. 43 and 44, which cites to these undisclosed documents and the newly-disclosed witness.

Defendant also brazenly re-asserts that its use was privileged because it was "transformative," even though Defendant did nothing more than copy and re-publish the Photograph and its tagline (passing it off as Defendant's own original work). Had Defendant offered some new meaning or interpretation of Plaintiff's work, such as explaining the meaning behind the pun, or why puns are generally important to English grammar, then at least Defendant would have some colorable claim to a transformative use. But Defendant did nothing but engage in wholesale copying. Defendant did not provide any new insight, perspective, or meaning of any kind. Defendant did not make any alterations to Plaintiff's work, or place it into any collage or juxtaposition. Passing off does not constitute fair use.

At bottom, this case presents a quintessential example of copyright infringement. Defendant published a work knowing it did not own the work, then made believe that such work was created by Defendant. A finding of non-liability under such circumstances would undermine the very purpose of the Copyright Act, which is to stimulate the creation of new works for the benefit of society.

If Defendant liked Plaintiff's image and wanted to create a "teaching moment" for its audience, then expropriation of a pre-existing work was not the solution. Instead, Defendant could have expended its own time and resources to devise an alternate pictorial rendition of the "this is so wrong on many levels" pun. It could have created its own work, and society would be enriched through the variety in renditions of a similar pun. But ultimately, as evidenced by Defendant's undisputed act of expropriation, Defendant elected not to spend its own time or resources to create its own work. Such conduct is infringement, plain and simple.

2

Case 5:19-cv-00249-FL   Document 55   Filed 08/21/20   Page 3 of 12

It is readily apparent on the face of Defendant's business Facebook page that Defendant passed off the Plaintiff's work as its own creation, thereby deceiving Defendant's audience into believing that Defendant, purportedly in the business of disseminating educational materials for profit, created the work for the benefit of its audience. But scholarly publications and manufacturers of academic textbooks do not steal photographs and pass them off as their own original creations. Rather, they either obtain a license from the copyright holder or invest the time and resources into creating their own photographs. It's really that simple.

## ARGUMENT

**POINT I:** **THERE IS NO GENUINE ISSUE OF MATERIAL FACT REGARDING THE VALIDITY OF PLAINTIFF'S COPYRIGHT**

In opposition, Defendant challenges both the validity and originality of Plaintiff's copyright. As demonstrated below, both arguments fail.

**A.** **AS A MATTER OF LAW, PLAINTIFF HAS ESTABLISHED THE VALIDITY OF HIS COPYRIGHT**

To be timely, a certificate of registration must be obtained "before or within five years after first publication" of a work. *Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257 (2d Cir. 2005). Thus, "[p]ossession of a registration certificate creates a rebuttable presumption that the work in question is copyrightable." *Whimsicality, Inc. v. Rubie's Costume Co. Inc.*, 891 F.2d 452, 455 (2d Cir. 1989). A party's "proffer of its certificate of copyright registration thus shifts to [opposing party] the burden of proving the invalidity of the copyright." *Fonar Corp. v. Domenick*, 105 F.3d 99, 104 (2d Cir.), *cert. denied*, 522 U.S. 908 (1997). "The validity of a registration may be rebutted by proof of a certificate holder's fraud on the Copyright Office, though the party seeking to establish such fraud bears a 'heavy burden.'" *BWP Media*,

196 F.Supp.3d at 401 (*citation omitted*); *see also Fonar Corp.*, 105 F.3d at 105 (*"*the presumption [of validity] may be overcome only by 'proof of deliberate misrepresentation.'"*)*.

As a matter of law, the documents produced by Plaintiff in this action, coupled with a sworn declaration, which remains unrebutted by any hard evidence, are sufficient to establish that there is no genuine issue of material fact regarding the validity of Plaintiff's copyright registration. *See Masi v. Moguldom Media Grp. LLC*, No. 18-CV-2402, 2019 WL 3287819, at *4 (S.D.N.Y. July 22, 2019); *Chicoineau v. Bonnier Corp.*, No. 18-CV-3264, 2018 WL 6039387, at *2 (S.D.N.Y. Oct. 16, 2018); *Goodman v. Univ. Beauty Prods. Inc.*, No. 17-CV-1716, 2018 WL 1274855, at *5 (S.D.N.Y. Mar. 9, 2018).

*In Goodman,* 2018 WL 1274855, at *5, the court granted summary judgment in plaintiff-photographer's favor, finding that Mr. Liebowitz's sworn declaration was sufficient to show that the photograph was on deposit with the applicable registration certificate, particularly as Mr. Liebowitz's name was listed under the "Certification" section of the copyright certificate. The court in *Goodman* also stated that it was the defendant's obligation to contact the Copyright Office during discovery and request information to be used to rebut the validity of copyright. *Id.* at 5 ("defendants offer[ed] nothing more than speculative assertions to support this contention," and that "[t]heir failure to submit any evidence . . . prevent[ed] them from raising a triable issue on the validity of the registration.").

Similarly, in *Chicoineau,* 2018 WL 6039387, at *1, the court held that a copyright registration certificate printed from the Copyright Office website, along with an affidavit from plaintiff certifying that photograph was on deposit with the applicable registration, was sufficient to establish a valid registration in the photograph and granting summary judgment in plaintiff's favor. The defendant's failure to contact the Copyright Office during discovery was also noted.

4

Here, as was the case in *Chicoineau* and *Goodman*, Defendant made no attempt to request records from the Copyright Office during discovery to rebut the presumption of validity accorded to Plaintiff's copyright. So instead of presenting any hard evidence, Defendant launches *ad hominen* attacks against Plaintiff's counsel, claiming that Mr. Liebowitz's sworn declaration should be discarded.

Defendant invokes the case of *Usherson v. Bandshell Artist Mgmt.*, No. 19-CV-6368 (JMF), 2020 WL 3483661, at *1 (S.D.N.Y. June 26, 2020) as grounds to allege that Liebowitz Law Firm ("LLF") does not verify that deposit copies are on file with the Copyright Office before filing lawsuits. But the facts in *Usherson* are inapposite. *Usherson* concerned a copyright registration that was performed <u>by the client</u> rather than by Plaintiff's counsel Mr. Liebowitz. Thus, Usherson had processed the registration on his own accord in 2011 (four years before Mr. Liebowitz graduated law school) and then mistakenly represented to LLF years later that the photograph was on deposit. LLF did not request official deposit copies from the Copyright Office before filing suit (because it had no statutory obligation to do so), and it turned out that Usherson's photograph was not on deposit.

In contrast, the present action concerns a copyright registration that was processed "in-house" by Plaintiff's counsel, who has personal knowledge concerning the deposits of photographs uploaded to the Copyright Office's website as part of any given application. As such, unlike the case in *Usherson*, Mr. Liebowitz is able to verify that the Photograph is on deposit with the Copyright Office. Thus, Defendant's argument that LLF does not verify deposit

5

copies before filing lawsuits only applies to cases where the client, as opposed to LLF, processes the application.[1]

B.  **AS A MATTER OF LAW, PLAINTIFF HAS ESTABLISHED THE ORIGINALITY OF HIS COPYRIGHT.**

Defendant argues that it has rebutted the presumption of originality accorded to Plaintiff's copyright by presenting evidence that the pun "this is wrong on so many levels" has been used before through previous photographs of carpentry levels. This misses the point. Plaintiff is not claiming that the pun is original, or that a pictorial rendition of carpentry levels to illustrate the pun is original. Rather, he is claiming that *his own pictorial rendition* of the pun is original.

Such rendition consists of Plaintiff's selection and unique arrangement of the subject matter, timing, lighting, perspective, angle, depth and choice of camera equipment. [SOF ¶ 8] That is all that is needed to meet the minimum threshold of originality for copyright protection. *See, e,.g., Ets–Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1074-76 (9th Cir. 2000) ("[e]ven the slightest artistic touch will meet the originality test for a photograph."); *Morris v. Guetta*, 2013 WL 440127, *3 (CD. Cal. Feb. 4, 2013) ("almost any[ ] photograph may claim the necessary originality to support a copyright merely by virtue of the photographers' personal choice of subject matter, angle of photograph, lighting, and determination of the precise time when the photograph is to be taken").

The case of *Chicoineau* illustrates the point. *Chicoineau,* 2018 WL 6039387, at *2. There, plaintiff took a routine tourist photograph of the Eiffel Tower. Defendant challenged the

---

[1] Finally, Defendant's argument that Mr. Liebowitz does not have personal knowledge of the registration is rebutted by Defendant's own Rule 26(a) disclosures, which identified Mr. Liebowitz as a person with knowledge concerning "Mr. Bradley's applications to register copyright for the photograph" [See 2d Declaration of Richard Liebowitz, Ex. A]. Defendant had the full and fair opportunity to depose Mr. Liebowitz during the discovery period but failed to do so. It cannot now attack Mr. Liebowitz's credibility based on nothing more than citations to unrelated cases.

6

Case 5:19-cv-00249-FL   Document 55   Filed 08/21/20   Page 7 of 12

originality of the photograph on grounds that the Eiffel Tower was an inanimate object and that plaintiff's rendition was just a point-and-click photo. The court rejected the argument, finding the plaintiff's photograph to be original. *Id.*[2]

Here, there can be no dispute that Plaintiff's own pictorial rendition of carpentry levels is original, regardless of whether the underlying pun is original. It's the expression of the idea (i.e., the photograph), not the idea itself (i.e., the pun), which is copyrightable.

C.  **DAMAGES ARE NOT AN ELEMENT OF A COPYRIGHT INFRINGEMENT CLAIM**

Defendant argues that Plaintiff's motion should be denied due to lack of any evidence concerning monetary damages. But Plaintiff's motion does not address damages because, as a matter of law, damages are not an element of a copyright infringement claim. *See, e.g.*, *Cardiff Chamber of Commerce, Inc. v. Lebherz*, 2016 WL 9525236, at *2 (S.D. Cal. July 15, 2016) ("[t]he harm is the invasion of the copyright; no financial loss is required."); *eSilicon Corp v. Silicon Space Tech*, No. C-11-06184 EDL, 2013 WL 12174295, at *10 (N.D. Cal. Feb. 22, 2013) ("Damages . . . are not a required element of a prima facie case of copyright infringement claim"); *In re Aimster Copyright Litig.*, 334 F.3d 643, 649 (7th Cir. 2003) ("[A] copyright owner who can prove infringement need not show that the infringement caused him a financial loss.").

**POINT II:** **WITH RESPECT TO DEFENDANT'S LICENSE DEFENSE, ANY UNDISCLOSED DOCUMENTS OR WITNESSES SHOULD BE PRECLUDED**

---

[2] To place this holding in perspective, it is likely that thousands, if not millions, of photographs of the Eiffel Tower have been created since the Eiffel Tower was first erected in 1889. Yet, even though the Eiffel Tower remains the same, the personal influence of the person holding the camera changes. If the law did not support the original contributions of each and every photographer, no matter how slight, then certain photographers would hold a monopoly over photographs of the Eiffel Tower, thereby defeating the purpose of the Copyright Act to stimulate the production of artistic works.

Plaintiff's principal motion asked the Court to dismiss Defendant's second affirmative defense, which alleges that Defendant's use was subject to either an express or implied license by virtue of Facebook's terms of service. In opposition, Defendant proffers undisclosed documents and an undisclosed witness, Michael Duffey, to support its strained, overly-broad interpretation of Facebook's terms of service as they existed in 2017.

However, none of the documents attached to Dan Booth's declaration at Docket No. 45 were disclosed during the discovery period. Moreover, Defendant also failed to disclose Michael Duffey as a witness in its Rule 26(a) disclosures, or in any of its responses (original or supplemental) to Plaintiff's request for interrogatories. Given that such undisclosed documents and unidentified witness were available to Defendant during the discovery period,[3] and given that there can be no valid excuse for Defendant's failure to disclose, preclusion is warranted as a matter of law. Defendant is not entitled to litigate through trial-by-ambush. *See Mantel v. Microsoft Corp.*, 16 Civ. 5277 (AJN), 2018 U.S. Dist. LEXIS 53549 (S.D.N.Y. Mar. 29, 2018) (dismissing case where plaintiff produced documents for the first time on summary judgment).

With respect to the remaining arguments in support of Defendant's license defense, Plaintiff has now briefed those issues in two prior submissions and will not re-iterate them here. Suffice it to say, Defendant has proffered an overly broad interpretation of Facebook's terms in a manner that gives the entire universe an "open source" license to re-publish any photograph that was ever published to Facebook prior to Facebook's eradication of those terms in 2018. Defendant's interpretation is wildly exaggerated and fails to adequately explain why the key provision upon which Defendant relies limits re-distribution to cases where the original copyright holder receives credit via his or her name and profile picture. *See* Dkt. #30-1, p. 2

---

[3] The Duffey declaration and documents are dated as of November 2, 2018 [Dkt. #45-2], before discovery in this action commenced.

Finally, Defendant asks the Court to find an implied license based on the widespread "custom" of internet users who freely re-distribute photographs on-line (bolstered by an expert opinion that encourages such theft). Indeed, it is also commonly known that there exists widespread use of illicit drugs in American society. But the widespread custom and practice of using controlled substances does not automatically vitiate the Controlled Substances Act. By the same token, the rampant theft of intellectual property on the internet does not render the Copyright Act null and void.

**POINT III:** **DEFENDANT'S FAIR USE DEFENSE IS BORDERLINE FRIVOLOUS**

Defendant continues to assert that its use was privileged because it was "transformative," even though Defendant did nothing more than copy and re-publish the Photograph and its tagline (passing it off as Defendant's own original work). Had Defendant offered some new meaning or interpretation of Plaintiff's work, such as explaining the meaning behind the pun, or why puns are generally important to English grammar, then at least Defendant would have some colorable claim to a transformative use. But Defendant did nothing but engage in wholesale copying. Defendant did not provide any new insight, perspective, or meaning of any kind. Defendant did not make any alterations to Plaintiff's work, or place it into an artistic collage or thematic juxtaposition. Defendant did not offer any commentary or criticism directed at the work, or at the pun in general. Passing off a work as one's own does not constitute fair use.

Further, because Defendant has done nothing to transform the Photograph, the Court may presume market harm as a matter of law. *See Ferdman v. CBS Interactive Inc.*, 342 F. Supp. 3d 515, 541 (S.D.N.Y. 2018) (finding *Sony's* presumption of market harm applies where defendant's secondary use of photograph is not transformative) (citing *Campbell v. Acuff-Rose*,

9

510 U.S. 569, 591 (1994); *Sony Corp. of Am. v. Universal City Studios, Inc.,* 464 U.S. 417 (1984)).

**POINT IV:    DEFENDANT'S OTHER BOILERPLATE DEFENSES FAIL**

In opposition, Defendant has failed to proffer admissible evidence to support its remaining affirmative defenses to liability for copyright infringement under Count I of Plaintiff's complaint. Bradley registered the Photograph with the Copyright Office because he observed on-line users re-posting his Photograph and passing it off as their own work. Bradley believed that his rights were violated when certain users, whether on the Facebook platform or outside, re-published the Photograph to their own accounts or websites and took credit for his original work. [SOF 15]

Defendant's remaining defenses are all variations on the same factual predicate, that Plaintiff made his Photograph available for sharing on Facebook, and that Plaintiff reveled in the viral popularity of the Photograph. But Plaintiff never permitted free "reposting," he only permitted sharing via Facebook's share function because use of the Share function provided Plaintiff proper credit and attribution for his own work. Once again, had Defendant simply employed Facebook's sharing functionality and re-shared Plaintiff's Photograph as thousands of other Facebook users had done, this lawsuit would never have been filed. But because Defendant displayed the Photograph on its commercial webpage without giving Plaintiff proper credit, in an attempt to pass off Plaintiff's work as Defendant's own original creation, Defendant must be held liable for copyright infringement.

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion for partial summary judgment should be GRANTED.

Respectfully submitted:

LIEBOWITZ LAW FIRM, PLLC

**By:/Richard Liebowitz/**
Richard Liebowitz
N.Y. Bar No. 5357702
11 Sunrise Plaza, Suite 305
Valley Stream, NY 11580
T: (516) 233-1660
F: (516) 233-1660
RL@LiebowitzLawFirm.com

*Counsel for Plaintiff
Matthew Bradley*

ALLAN LAW FIRM, PLLC

**By:/Albert P Allan/**
Albert P. Allan
N.C. Bar No. 18882
435 East Morehead Street
Charlotte, NC 28202
T: 704-371-5605
F: n/a
alallan@allaniplitigation.com

*Local Civil Rule 83.1(d) Counsel*