IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:19-cv-249-FL

| | |
|---|---|
| MATTHEW BRADLEY, <br><br> Plaintiff, <br> v. <br><br> ANALYTICAL GRAMMAR, INC., <br><br> Defendant. | ANALYTICAL GRAMMAR, INC.'S [PROPOSED] SURREPLY IN RESPONSE TO MATTHEW BRADLEY'S REPLY |

Facebook's terms of service effective in 2017 form the backbone of Analytical Grammar, Inc.'s ("Analytical") license defense. In support of his motion for partial summary judgment, Matthew Bradley ("Bradley") contradicted his deposition testimony to mount an argument that the controlling terms were instead those in effect when he filed his complaint in 2019. He disclosed no record evidence of what those 2019 terms said and no basis for his new theory. Analytical responded with additional evidence of Facebook's policies in 2017 to impeach and rebut his unfounded attacks. In his reply papers, Bradley fails to state any proper basis to strike that evidence. Impeachment and rebuttal evidence need not be disclosed in discovery under Rule 26, and nondisclosure was both justified and harmless, so there is no basis to strike. And Bradley's purported motion to strike buried in his reply brief violates the Local Civil Rules.

## RELEVANT BACKGROUND

Analytical asserted licensed use as an affirmative defense to the copyright infringement claim, and as grounds for its counterclaim for a declaratory judgment of non-infringement:

> Any use by Analytical of any copyrightable material owned by Plaintiff was licensed. Bradley posted a photograph to Facebook on December 8, 2017 using the "Public" setting. Under Facebook's Terms of Service *effective at that time*, he thereby granted an unconditional public license to access and use the photograph. Analytical reposted the photograph on Facebook on December 16, 2017 subject to

that license.

DE 12, Second Affirmative Defense at 5 (emphasis added); *id.* Counterclaims ¶¶ 4, 27(b). Analytical produced the Facebook Terms of Service ("Statement of Rights and Responsibilities" or "SRR") that were in effect from January 30, 2015 through April 4, 2018, including all of 2017. DE 30-1; *see* DE 28 ¶¶ 10-12, DE 30-2. Bradley agreed at his deposition that the 2017 SRR governed his conduct and activity on Facebook. DE 29-2 at 20:18-21:20. And his reply brief admits that the 2017 SRR was "[t]he terms of service that were effective as of the time Plaintiff initially published the Photograph to Facebook." DE 47 at 6 (citing DE 30-1). It is not disputed that both Bradley and Analytical posted the photograph on Facebook in December 2017.

Yet in his summary judgment papers, Bradley ambushed the license defense by disputing that the SRR governed his conduct in 2017, relying on evidence of Facebook's Terms of Service as later revised on July 31, 2019, and construing the 2017 SRR through those 2019 Terms. *Id.* at 8-11 & n.2, DE 36 at 13-15 & n.2, DE 38-1 ¶ 27, DE 38-10, DE 46 ¶¶ 10-15. His new theory that the 2019 Terms controlled the parties' acts in 2017 flies in the face of his deposition testimony. To impeach and rebut that new theory, Analytical introduced evidence of four filings in *In re Facebook, Inc. Consumer Privacy User Profile Litigation*, Case No. 3:18-md-02843 (VC), in which the court took judicial notice of the 2017 SRR and other historic Facebook user policies, appending two of them to a pretrial order, after a Facebook employee attested to their accuracy. *See* DE 43 at 12-13, DE 44 § I ¶¶ 27-28 & § II ¶¶ 1-22, DE 45.

Bradley portrays himself as the ambushed party, and asks the Court to strike Analytical's impeachment and rebuttal evidence drawn from *In re Facebook* pursuant to Fed. R. Civ. P. 37(c)(1). DE 55 at 1-2 & 9, DE 57. There is no basis to entertain his request.

**ARGUMENT**

Impeachment and rebuttal are proper purposes for undisclosed evidence. *Jeffries v. Pac.*

*Indem. Co.*, No. 97-1398, 1997 U.S. App. LEXIS 35513, *6 (4th Cir. 1997). Documents and witnesses to be used "solely for impeachment" are excluded from both initial and pretrial disclosures. Fed. R. Civ. P. 26(a)(1)(A)(i)-(ii) & 26(a)(3)(A). "Impeachment materials are only relevant to the extent plaintiff puts forth substantive evidence susceptible to impeachment." *Denty v. CSX Transp.*, 168 F.R.D. 549, 550 (E.D.N.C. 1996).

Similarly, even "when otherwise inadmissible," rebuttal evidence is admissible if "reasonably tailored to the evidence it seeks to refute." *United States v. Stitt*, 250 F.3d 878, 897 (4th Cir. 2001). "Rebuttal evidence is defined as 'evidence given to explain, repel, counter, or disprove facts given in evidence by the opposing party. That which tends to explain or contradict or disprove evidence offered by the adverse party.'" *Id.* (*quoting* Black's Law Dictionary 1267 (6th ed. 1990)). "The principal objective of rebuttal is to permit a litigant to counter new, unforeseen facts brought out in the other side's case." *Faigin v. Kelly*, 184 F.3d 67, 87 (1st Cir. 1999). Thus, "rebuttal evidence may be introduced only to counter new facts presented in the [opposing party's] case in chief. Such new facts might include 'surprise' evidence presented by the [opposing party]." *Allen v. Prince George's County, Md.*, 737 F.2d 1299, 1305 (4th Cir. 1984) (citing 6 Wigmore, *Evidence* § 1873 (rev. ed. 1976)).

The SRR effective in 2017 governed both parties' use of the photograph on Facebook. The 2019 Terms have no relevance to this case. During discovery Analytical had no reason to anticipate that evidence refuting the later terms might become relevant because Bradley did not expose his misconstruction of the SRR or his surprising reliance on the 2019 Terms until the summary judgment stage. Evidence rebutting and impeaching that reliance was outside the scope of discovery before then because it was not "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Introducing that evidence in response to Bradley's new argument was consistent

with Rule 26, as "effective rebuttal requires advance knowledge of the line of testimony of the other side." Fed. R. Civ. P. 26 (1970 adv. comm. note) (discussing rebuttal expert reports).

Bradley's contention that Analytical's responses to his interrogatories did not disclose Facebook's employee Michael Duffey as a witness is irrelevant, because his interrogatories did not request information about Facebook's policies. *See* DE 56-3, DE 56-4. And his contention that Analytical sought to introduce Mr. Duffey as a witness is erroneous. Instead, Analytical submitted a declaration by its counsel about filings from *In re Facebook*, including Mr. Duffey's declaration. DE 45-1. The filings are public records, authenticated under Fed. R. Evid. 901(b)(7). Counsel's declaration complied with Fed. R. Civ. P. 56(c)(4), and the facts therein "relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the facts," so it complied with Local Rule 7.1(i)(2). Bradley complains that his evidence has been subject to rebuttal, but he gives no reason to anticipate any evidence opposing the facts declared by Analytical's counsel.

Bradley also offers no reason to doubt the authenticity or veracity of the *In re Facebook* order, Mr. Duffey, or the Facebook policies effective in 2017 to which Mr. Duffey attested. Accordingly, the terms of Facebook's 2017 SRR and Data Policy are adjudicative facts subject to judicial notice under Federal Rule of Evidence 201. The challenged evidence consists of court filings: a pretrial order from *In re Facebook*, Mr. Duffey's declaration in that action, and two of its exhibits. "'[F]ederal courts may, in appropriate circumstances, take notice of proceedings in other courts … if those proceedings have a direct relation to matters at issue.'" *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) (*quoting St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979)); *see also Danser v. Stansberry*, No. 5:08-CT-3116-BO, 2013 U.S. Dist. LEXIS 39293, *11 (E.D.N.C. Mar. 21, 2013) ("a court may take judicial notice

of public records, for example affidavits") (*citing Jama v. City and County of Denver*, 280 F.R.D. 581 (D. Colo. 2012)). Courts also routinely take judicial notice of publicly accessible websites whose accuracy and authenticity are not reasonably subject to dispute. *See Daniels-Hall v. NEA*, 629 F.3d 992, 998-99 (9th Cir. 2010). In particular, it is common for courts to take judicial notice of websites' historical terms of use and privacy policies. *See, e.g., Force v. Facebook, Inc.*, 934 F.3d 53, 60 n.5 (2d Cir. 2019), *Trudeau v. Google LLC*, 349 F. Supp. 3d 869, 876 (N.D. Cal. 2018), *Oracle Am., Inc. v. CedarCrestone, Inc.*, 938 F. Supp. 2d 895, 901 (N.D. Cal. 2013), *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 954-55 (S.D. Cal. 2012). The *In re Facebook court* did precisely that with regard to Facebook's 2017 SRR and earlier versions of its Data Policy. *See* 402 F. Supp. 3d 767, 791 n.12 (N.D. Cal. 2019); *see also In re Facebook, Inc. Secs. Litig.*, No. 5:18-cv-01725-EJD, 2020 U.S. Dist. LEXIS 141716, *52 (N.D. Cal. Aug. 7, 2020) (taking judicial notice of 2017 Data Policy). This Court may do the same and dispense with Bradley's arguments that the additional evidence is prejudicial.

In any event, Analytical's disclosure of further evidence of Facebook's policies in 2017 is both substantially justified and harmless, so its use complies with Rule 37(c)(1). A five-factor test guides the evaluation of nondisclosure:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003); *Russell v. Absolute Collection Services, Inc.*, 763 F.3d 385, 396-97 (4th Cir. 2014). The first four factors relate primarily to harmlessness and the fifth relates mainly to substantial justification. *Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 190 (4th Cir. 2017). They do not support exclusion.

  **1.**  There is no unfair surprise to Bradley. Analytical identified Facebook's Terms of

PPAB 5811290v1
5
Case 5:19-cv-00249-FL   Document 58-3   Filed 08/27/20   Page 5 of 9

Service effective in December 2017 as a basis for its license defense when it answered the complaint. DE 12 at 5. The terms of that SRR effective in 2017, which Analytical duly disclosed and produced, are the same as the terms of the SRR to which Mr. Duffey attested in *In re Facebook*. DE 29-1 ¶ 18, DE 30-1, DE 45-2 ¶ 29, DE 45-3. *See Baker v. United States*, 645 Fed. Appx. 266, 270 (4th Cir. 2016) ("the similarity of the undisclosed testimony to the disclosed testimony … causes the first three [*Southern States*] factors to weigh in favor of" harmlessness). Further, the evidence consists of publicly available court records.

2. If any of Analytical's evidence had been a genuine surprise, Bradley could have remediated any effect by seeking to challenge its authenticity. But he does not and cannot plausibly contest its authenticity. It does not materially affect his ability to litigate.

3. Analytical's evidence addresses a discrete point and "cannot fairly be labeled a trial disruption." *Hill v. Coggins*, 867 F.3d 499, 508 (4th Cir. 2017). Bradley interjected a new legal theory into the case, not Analytical. *See id.* He erroneously "avers that the controlling terms of service were those in effect at the time this lawsuit was filed on June 18, 2019." DE 36 at 13 n.2, DE 47 at 8 n.2. Yet he produced only the terms as later revised by Facebook effective July 31, 2019, which are doubly irrelevant. DE 38-10. Bradley cannot needlessly complicate the case with a theory about the terms of service effective on June 18, 2019, lacking any foundation in the record evidence, and blame rebuttal and impeachment for disrupting the proceedings. Further, no trial date has been scheduled.

4. Analytical's additional evidence is vital because Bradley's surprising reliance on the irrelevant 2019 Terms requires impeachment and rebuttal. As his theory about the 2019 Terms was unstated during discovery and directly contrary to his testimony, DE 29-2 at 20:18-21:20, Analytical built its license defense around the 2017 SRR. Its expert witness found that it

had acted in compliance with the 2017 SRR, and had no basis to address the unproduced terms of service that had been in effect in June 2019. *See* DE 29-14 at 9 & 11. Bradley's failure to disclose any significance he ascribed to the 2019 Terms during discovery deprived Analytical of its opportunity "to meet that evidence via cross examination and via evidence in its rebuttal case (such as its own expert witness)." *Silicon Knights, Inc. v. Epic Games, Inc.*, No. 5:07-CV-275-D, 2012 U.S. Dist. LEXIS 63707, *21-22 (E.D.N.C. May 7, 2012).

**5.** Analytical did not discover or disclose anything about *In re Facebook* before summary judgment because it had no reason to anticipate that Bradley would rely on irrelevant evidence of Facebook's Terms of Service as of 2019. Bradley had testified that the SRR effective in 2017 set forth "the terms and conditions that govern [his] activity on Facebook." DE 29-2 at 20:18-21:20. His newfound and unfounded reliance on later terms, and misconstruction of the SRR, necessitated Analytical's additional evidence. *See Baldassarre v. Norfolk S. Ry.*, 2020 U.S. Dist. LEXIS 29540, *10-11 (E.D. Va. Feb. 19, 2020) (finding substantial justification for undisclosed rebuttal evidence raised in response to new theory that "chang[ed] trajectory of the case"); *accord United States v. Willis*, No. 92-5445, 1993 U.S. App. LEXIS 16031, *13-15 (4th Cir. June 30, 1993).

## CONCLUSION

Bradley's arguments for preclusion of evidence under Rule 37 are unfounded. His request that the Court strike DE 45 and portions of DE 43 and DE 44 should be denied.

Respectfully submitted,

Analytical Grammar, Inc.

By its attorneys:

Signed: August 27, 2020  /s/ Dan Booth
Dan Booth
Dan Booth Law LLC
60 Thoreau Street, #121
Concord, MA 01742
dan@danboothlaw.com
Local Civil Rule 83.1(e) Special Appearance

Christopher M. Thomas
N.C. State Bar No. 31834
christhomas@parkerpoe.com
Parker Poe Adams & Bernstein LLP
PNC Plaza
301 Fayetteville Street, Suite 1400 (27601)
P.O. Box 389
Raleigh, North Carolina 27602-0389
Telephone: (919) 835-4626
Facsimile: (919) 834-4564
Local Civil Rule 83.1(d) Counsel

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system which will automatically send notification of such filing to the following:

Albert P. Allan
ALLAN LAW FIRM, PLLC
435 East Morehead Street
Charlotte, NC 28202
Email: alallan@allaniplitigation.com

Richard Liebowitz
LIEBOWITZ LAW FIRM, PLLC
11 Sunrise Plaza, Suite 305
Valley Stream, NY 11580
Email: RL@liebowitzlawfirm.com

This the 27th day of August, 2020.

/s/ Dan Booth
Dan Booth
Dan Booth Law LLC
60 Thoreau Street, #121
Concord, MA 01742
dan@danboothlaw.com
Local Civil Rule 83.1(e) Special Appearance

Christopher M. Thomas
N.C. State Bar No. 31834
christhomas@parkerpoe.com
Parker Poe Adams & Bernstein LLP
PNC Plaza
301 Fayetteville Street, Suite 1400 (27601)
P.O. Box 389
Raleigh, North Carolina 27602-0389
Telephone: (919) 835-4626
Facsimile: (919) 834-4564
Local Civil Rule 83.1(d) Counsel