UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
Western Division
Civil Case No. 5:19-cv-249-Fl

| | |
|---|---|
| MATTHEW BRADLEY,<br>    Plaintiff<br><br>v.<br><br>ANALYTICAL GRAMMAR, INC.<br>    Defendant | **PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S CONSENTED MOTION FOR STAY OF PROCEEDINGS AND REQUEST FOR ORDER THAT DISQUALIFIED COUNSEL IDENTIFY ALL AVAILABLE MALPRACTICE INSURANCE COVERAGE** |

Plaintiff has moved, with the consent of Defendant, for entry of an order briefly staying (for 30 days) the procedings in this lawsuit and, in addition, ordering that Plaintiff's former counsel provide information concerning malpractice insurance that may cover the provision of services by former counsel and his firm to Plaintiff in connection with this litigation—representation that resulted in disqualification by the Court of Plaintff's former counsel (DE 68)—along with a copy of any applicable malpractice insurance policies.

**PERTINENT FACTS**

The facts set out in Plaintiff's motion are incorporated herein by reference, and the undersigned declares under penalty of perjury, verified by her signature below, that all facts stated therein and below are true to the best of her knowledge, information, and belief.

In brief, former counsel for Plaintiff was disqualified from further representing Plaintiff by this Court's Order entered March 19, 2021 (DE 68). That Order was entered after it became evident that former counsel had been suspended from practice before the United States District Court for the Southern District of New York pending the outcome of disciplinary proceedings against him. Former counsel apparently had notified the clerk of this Court, through counsel, concerning this disciplinary

action on or about December 14, 2021 (DE 65-1). However, former counsel did not timely respond to an Order from the clerk of the United States District Court for the Eastern District of North Carolina requiring him to show cause why reciprocal suspension should not be entered (Resp. (DE 65) ¶ 4), and this Court ordered his suspension.

Plaintiff engaged in a search for substitute counsel. Former counsel Richard Liebowitz and his firm did not provide replacement counsel despite having been engaged on a contingency fee basis to prosecute the lawsuit and despite having additional firm members who had not been removed by the Court. Current local counsel apparently did not consider the continuing representation of Plaintiff to fall within the scope of the obligations to which he had agreed, as he advised Plaintiff via email that a deposit from Plaintiff would be needed before he could provide substantive assistance. Ultimately, Plaintiff approached undersigned counsel who agreed to undertake an investigation and to consider representation.

In the course of that investigation, prior to entering her appearance, undersigned counsel sought copies of Plaintiff's files from former counsel and from local counsel. Through an associate attorney employed with the firm, former counsel provided an allegedly complete copy of the firm's files. The file was substantially deficient, as listed in the motion—so deficient that it did not contain a complete copy of the pleadings in this lawsuit, or even a majority of those pleadings.

In the opinion of the undersigned, it rapidly became apparent that Plaintiff had been disserved by his representation and that significant deficiencies in representation led to the extensive litigation and outcome to date of the litigation.

Accordingly, the undersigned and counsel for Defendant have engaged in discussion of the facts revealed by counsel's investigation of Plaintiff's representation, and regarding the appropriate disposition of the litigation. Both undersigned counsel, and counsel for Defendant, have concluded

that to the extent, if any (as to which each party reserves its rights) any payment would otherwise be due from Plaintiff to Defendant in view of this Court's orders to date, the more appropriate entity to bear the burden of such payment should be Plaintiff's former counsel.

The undersigned now has entered an appearance on behalf of Plaintiff. In order to determine whether a resolution is possible that will not require the pursuit of motions for sanctions from the Court, the parties need to be able to discuss with the malpractice insurer(s) the scope and terms of any malpractice insurance covering former counsel's representation.

Undersigned counsel has been informed by former counsel's firm that there is malpractice insurance that potentially could cover any sums at issue. However, former counsel and his firm have failed to disclose the identity of the malpractic carrier or any details concerning the coverage, despite receiving and acknowledging receipt of multiple requests for that information from the undersigned.

## ARGUMENT

It is clear that this Court has the jurisdiction and authority to control the timing of proceedings before it and accordingly this memorandum will not address that aspect of Plaintiff's motion.

Insofar as the request that Plaintiff's former counsel be required to provide information concerning any malpractice insurance that may cover the provision of services by himself and his firm to Plaintiff relating to this litigation, the Court has inherent authority to govern its own judicial proceedings and to enforce its its disciplinary rules.

<u>The Court's disciplinary rules allow entry of the requested order</u>

Whilst Plaintiff's counsel is not aware of a case precisely on point, it is clear that the Court has jurisdiction over those who seek and obtain permission to practice before the Court, as did

Plaintiff's former counsel. *See*, DE 6, DE 7, and L.R. 83.1(e)(1)(b) (by seeking admission pro hac vice, "the attorney submits to the disciplinary jurisdiction of the court for any misconduct in connection with the litigation in which the attorney is specially appearing"). Other courts agree. *See, e.g., Estate of Williams v. Radford,* No. 1:18-cv-00182-MR-WCM (W.D.N.C. Nov. 20, 2018) (unpublished)(copy attached as Ex. 1). *See also*, DE 61-1, *Usherson v. Bandshell Artist Management*, No. 1:19-cv-06368-JMF, Doc. 87 (S.D.N.Y. Nov. 30, 2020), (imposing discipline on Plaintiff's former counsel).

Further, counsel admitted to practice before the Court are required to abide by the ethical standards set forth in North Carolina's Revised Rules of Professional Conduct. L.R. 83.1(j) ("Professional Standards"). RPC Rule 1.4(a)(3) requires a lawyer to "keep the client reasonably informed about the status of the matter," while paragraph (b) of the rule requires a lawyer to "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." Comment [3] to the rule explains that paragraph (a)(3) requires that the lawyer keep the client reasonably informed about "significant developments affecting the timing or the substance of the representation." Comment [7] to Rule 1.4 adds that "[a] lawyer may not withhold information to serve the lawyer's own interest or convenience or the interests or convenience of another person."

Whether malpractice insurance must be disclosed voluntarily by an attorney varies dependent on the circumstances. For instance, North Carolina State Bar's 2015 Formal Ethics Opinion 4 rules that an attorney need not disclose information concerning malpractice insurance *at the time the attorney informs a client of an error committed by the attorney*. North Carolina has not, however, addressed whether such information must be given once it is clear that malpractice has been committed and/or when a client determines that malpractice has been committed and requests such information in order to obtain redress and assistance.

Substantially the same question as now faces this Court was, however, addressed by the Committee on Professional Ethics of the New York County Lawyers' Assocation in Formal Opinion No. 734 (2005) (copy attached as Ex. 2). There, while deciding that disclosure of malpractice information is not required to prospective clients, the ethics committee answered the question *"Does a lawyer have an obligation to disclose insurance information at the request of a current client?"* in the affirmative when information about coverage becomes "relevant to the representation," specifically noting that the assertion of a claim for malpractice is one circumstance which would make the information relevant. ("In order for a disclosure obligation to arise, the information must be "relevant" to the representation, as observed above. For example, insurance information becomes "relevant" when a lawyer has committed or been charged with malpractice, so that the legal adversity becomes an interest affecting the lawyer's professional judgment under DR 5-101.") Former counsel Mr. Liebowitz is a New York lawyer practicing in the United States District Court for the Southern District of New York (DE 6), in which New York County is located, and presumably is familiar with the opinion issued by that Bar and would expect to conform his practice to its precepts.

In line with that opinion, requiring disclosure of information concerning former counsel's malpractice insurance under these circumstances would be consistent with the ethical standards that this Court has adopted as its own.

<u>Audits have previously been ordered in this District in connection with potential sanctions or misconduct, and this District is not alone in requiring production of information from counsel</u>

While motions for contempt and the associated penalties have not yet been filed, a prior Order entered in this District, and not disturbed on appeal (the appeal being dismissed for lack of jurisdiction) is instructive as to the scope of the Court's authority in troublesome cases. In *Rainbow Sch. Inc. v Rainbow Early Ed. Holding LLC,* 887 F.3d 610 (4th Cir. 2018), the Court reported but

dismissed appeal from an order entered by Judge Boyle (DE 115, No. 5:14-cv-482-BO, E.D.N.C. Dec. 29, 2016) requiring an alleged contemnor to submit to an audit of its activities at its own expense. The undersigned was lead counsel for plaintiff in that case and can advise the Court that the audit went forward after the case was returned from the Fourth Circuit, and its result was reported to the Court (*Rainbow Sch.*, No. 5:14-cv-482-BO at DE 155*.*). The case was resolved soon thereafter. The order requested here is less intrusive than that entered in *Rainbow Sch.* and, although entered against a party rather than their counsel, appropriately illustrates the scope of a court's authority.

Other courts have, consistent with these principles, made clear that the Court can—should it choose—not only impose sanctions on pro hac vice attorneys for misconduct in association with proceedings before it but also require them to provide pertinent information—separate and apart from any sanctions that may be imposed. *See, e.g., Lendus v. Goedus et al*, 2018 Del. Ch. LEXIS 561, *1-*2, 2018 WL 6498674 (No. 2018-0233, Del. Chanc. Ct., Dec. 10, 2018) ("in the rare case where where the conduct of counsel endangers the administration of justice toward those litigating here, this Court must act"). The *Lendus* court ordered disclosure of information from disqualified counsel, independent of and without awarding sanctions: "I direct Mr. Stein to disclose to LendUS, within ten days of this decision, each ex parte contact he has made with LendUS's employees, either in the context of the Florida or Ohio litigations or otherwise during the pendency of this case. As for sanctions, however, I note that the facts regarding these other matters are not developed in the record before me." *Id.* at *28.

Indeed, when it comes to attorney discipline, the Fourth Circuit itself has referred with approval to an order imprisoning an attorney for failure to produce records, and has made clear that the Court has "inherent authority" even to disbar attorneys when the facts demand, although counselling the exercise of caution in taking that step. *Byrd v. Hopson*, 108 Fed. Appx. 749,

756-57 (4th Cir. 2004), referring to *Natural Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 86 F.3d 464 (5th Cir. 1996).

<u>Mr. Liebowitz's disqualification does not defeat the Court's authority</u>

The Court has already ordered (DE 68) the disqualification of Mr. Liebowitz as Plaintiff's counsel. However, it is clear that the Court's jurisdiction to assess sanctions and take other action in furtherance of its authority is not defeated even by dismissal of lawsuits . *See, Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990) (Rule 11 sanctions authorized after lawsuit has been dismissed). By direct analogy, entry of an order disqualifying counsel does not prevent the Court from exercising its jurisdiction over that counsel with respect to matters associated with ongoing litigation in which that counsel was employed.

Of course, with respect specifically to Rule 11 sanctions, certain orders sanctioning counsel may not be entered on the Court's own initiative ***after*** dismissal or settlement of the underlying claims. *See, F.R.Civ.P.* 11(c)(2)(B). ("Monetary sanctions may not be awarded on the court's initiative unless the court issues its order to show cause before a voluntary dismissal or settlement of the claims made by or against the party which is, or whose attorneys are, to be sanctioned.") Here, however, no motion has been filed under Rule 11, no monetary sanctions are sought, and the underlying claims have not been settled or dismissed. Accordingly, the Court's authority over counsel is not implicated or diminished by the provision of Rule 11(c)(5)(B).

**CONCLUSION**

Accordingly, it is respectfully submitted that this Court can and should, for the reasons set forth above and in Plaintiff's motion, and pursuant to its inherent authority and disciplinary rules as set out above, both stay proceedings herein for a period of thirty (30) days, through and

*Memorandum* - Page 7

including June 27, 2021; and order that Plaintiff's former counsel immediately disclose to the parties the identity of each malpractice carrier providing insurance that does or may cover any malpractice committed by former counsel and his firm by reason of their actions and failures to act on behalf of Plaintiff in connection with this litigation, together with a copy of the policy or policies providing such potential coverage.

Respectfully submitted this 27th day of May, 2021.

/s/ Susan Freya Olive
Susan Freya Olive
 NC Bar No. 7252
**OLIVE & OLIVE, P.A.**
Counsel for Plaintiff

500 Memorial Street
P.O. Box 2049
Durham, NC 27702-2049
Phone: (919) 683-5514
emailboxEDNC@oliveandolive.com

## CERTIFICATE OF SERVICE

Undersigned counsel for Plaintiff certifies that the foregoing document was served this date on Defendant by electronically filing the same with the Clerk of Court using the CM/ECF System, which will send notification via electronic means to counsel for Defendant, on this 27th day of May, 2021. A copy also has been transmitted this date to Mr. Richard Liebowitz and to the Liebowitz Law Firm at the email address of record for them and the addresses known to counsel for communication with him and his firm, to wit:

Richard Liebowitz <rl@liebowitzlawfirm.com>;

James Freeman <jf@liebowitzlawfirm.com.; and

Donna Halperin <DH@liebowitzlawfirm.com>.

/s/ Susan Freya Olive
Susan Freya Olive
NC Bar No. 7252
**OLIVE & OLIVE, P.A.**
500 Memorial Street
P.O. Box 2049
Durham, NC 27702-2049
Phone: (919) 683-5514
emailboxEDNC@oliveandolive.com