**Exhibit 2**

# NYCLA COMMITTEE ON PROFESSIONAL ETHICS
# FORMAL OPINION
# No. 734

**TOPIC:**

Lawyer's disclosure obligation to prospective or current client regarding malpractice insurance.

**DIGEST:**

A LAWYER HAS NO AFFIRMATIVE OBLIGATION TO DISCLOSE TO A PROSPECTIVE CLIENT WHETHER THE LAWYER IS COVERED BY MALPRACTICE INSURANCE. IF ASKED BY A PROSPECTIVE CLIENT ABOUT INSURANCE COVERAGE, THE LAWYER MAY RESPOND THAT THE LAWYER HAS A POLICY OF NOT PROVIDING COVERAGE INFORMATION TO PROSPECTIVE CLIENTS. IF ASKED BY A CURRENT CLIENT FOR SUCH INFORMATION, THE LAWYER IS OBLIGATED TO MAKE DISCLOSURE ONLY IF THE INFORMATION IS RELEVANT TO THE REPRESENTATION.

**CODE:**

DR 1-102(A)(4), DR 2-110(C)(5), DR 5-101, DR 7-102(A)(5), EC 7-8.

**QUESTIONS:**

1. DOES A LAWYER HAVE AN AFFIRMATIVE OBLIGATION TO DISCLOSE MALPRACTICE INSURANCE INFORMATION TO A PROSPECTIVE CLIENT?

2. DOES A LAWYER HAVE AN OBLIGATION TO PROVIDE MALPRACTICE INSURANCE INFORMATION TO A PROSPECTIVE CLIENT WHO ASKS FOR IT?

3. DOES A LAWYER HAVE AN OBLIGATION TO DISCLOSE SUCH INFORMATION AT THE REQUEST OF A CURRENT CLIENT?

**OPINION:**

*Question #1: Does a lawyer have an affirmative obligation to disclose insurance information to a prospective client?*

This Committee's jurisdiction is limited to interpreting the New York Lawyer's Code of Professional Responsibility (the "Code"), and the Code does not impose any obligation on a lawyer to disclose to a prospective client whether the lawyer carries malpractice insurance. We are also not aware of any statute in New York that requires such disclosure. Those U.S. jurisdictions that have imposed a disclosure requirement

have done so by enacting an explicit ethical rule.[1]  In January 2004, this Committee recommended that the New York County Lawyers' Association endorse a proposed American Bar Association Model Rule on Financial Responsibility[2]; ultimately the ABA House of Delegates adopted a Model *Court* Rule on Insurance Disclosure.[3]

One reason for our endorsement of the proposed Model Rule is that we do not find such an obligation to be clearly implied either by the Model Rules or in the present Code.  DR 5-101 states that if a lawyer's professional judgment in a representation "will or reasonably may be affected by the lawyer's own financial, business, property, or personal interests," the lawyer should decline the representation unless a disinterested lawyer would believe that the representation would not be adversely affected and the client consents to the representation after full disclosure of the implications of the lawyer's interest.  We do not believe that a lawyer's malpractice insurance coverage is, as a general rule, an interest that is likely to affect the lawyer's professional judgment and therefore we do not believe that disclosure to and consent by the client are required under the Code.

---

[1] Alaska, Ohio, New Hampshire and South Dakota require lawyers who lack malpractice insurance to so notify clients. California *had* a requirement of written disclosure for lawyers who lacked insurance, which requirement lapsed and was not renewed at the end of 2000. Nebraska is studying a proposed rule and Virginia requires that lawyers notify the bar as to coverage, which information is posted online.  Oregon is the only state that has mandatory malpractice coverage for all lawyers in private practice, which coverage is provided through the Oregon State Bar Professional Liability Fund.  James E. Towery, *Should Disclosure of Malpractice Insurance Be Mandatory?* [Point/Counterpoint], GP Solo, April/May 2003. *Available at* http://www.abanet.org/genpractice/magazine/aprilmay2003/towery.html. Towery argues in favor of an ethical rule requiring disclosure, while Edward Mendrzycki responds that disclosure is potentially misleading (because it will necessarily be simplistic disclosure) and that carrying insurance is a "best practices" issue, rather than an ethical one:  "There is no empirical evidence or objective data to show that a lawyer who has insurance is more likely to act ethically than a lawyer who has no insurance."  *Id*.  The State Bar of Georgia's Board of Governors is considering a mandatory disclosure initiative, which if passed would require approval by the state's supreme court to become active.  Greg Bluestein, *Lawyers Could Face Disbarment for Failing to Disclose Coverage Status*, Fulton County Daily Report, Nov. 3, 2004, available at http://www.law.com/jsp/article.jsp?id=1099217137037.  Six states – Delaware, Illinois, Michigan, Nebraska, North Carolina and Virginia – have a rule that parallels the newly adopted ABA rule requiring annual disclosure by lawyers of their insurance status on bar registration statements.  ABA Delegates, in Close Vote, Approve Rule Requiring Lawyers to Report Insurance Status, 20 Law. Man. Prof. Conduct 411 (2004).

[2] Report of the New York County Lawyers' Association Committee on Professional Ethics on the Proposed American Bar Association Model Rule on Financial Responsibility (January 21, 2004).

[3] The rule was adopted by the ABA as a court rule rather than an ethics rule, so that noncompliance does not call for professional discipline, and the rule mandates disclosure only of *whether* a lawyer has malpractice insurance or not, and only to regulators (as opposed to clients). ABA Delegates, in Close Vote, Approve Rule Requiring Lawyers to Report Insurance Status, 20 Law. Man. Prof. Conduct 411 (2004).

*Question #2: Does a lawyer have an obligation to disclose insurance information to a prospective client who asks for it?*

For the same reasons that a lawyer is not obligated to affirmatively disclose coverage information to a prospective client, a lawyer is not obliged to provide such information if asked by a prospective client. Although EC 7-8 states that a lawyer "should exert best efforts to ensure that decisions of the client are made only after the client has been informed of relevant considerations", we do not believe, as a general matter, that a lawyer's insurance coverage will be a relevant consideration in the prospective client's decisions relating to the representation.[4] The question of insurance coverage does not relate to a lawyer's competency, knowledge or experience, or the manner in which the lawyer will conduct the representation. Rather, insurance coverage determines what, if any, recourse a client will have in the event of a lawyer's professional negligence, at which point the representation presumably must end under DR 5-101.

In opining that the fact of insurance coverage is not relevant at this stage to the representation, we acknowledge that some prospective clients will want to know about insurance coverage before agreeing to retain specific counsel (as some clients might insist on knowing details about the lawyer's personal life or law firm internal workings). In some cases, counsel will choose to make disclosure for a variety of business and client-relations reasons in order to obtain the engagement. In other cases, counsel will choose not to make disclosure, and explain to the prospective client that he or she is free to seek alternative counsel. Our opinion is that the decision of whether to disclose is not an *ethical* one and therefore is at the lawyer's discretion.

The question of whether the lawyer has liability insurance falls into a category of questions that a lawyer is not generally obliged to answer at the outset of an engagement, including questions about the lawyer's religious beliefs, racial or ethnic heritage, liquidity or personal net worth (all of which some prospective clients will find "relevant" to the proposed representation). When asked such questions, a lawyer may (1) provide the requested information or (2) state that it is not the policy of the lawyer or firm to provide such information.

Obviously, the lawyer may not give a false or a misleadingly ambiguous answer in responding to a prospective client's questions. DR 1-102(A)(4) (lawyer may not engage in conduct involving dishonesty); DR 7-102(A)(5) (in representing a client, lawyer may not make a false statement of fact).

---

[4] The point at which coverage becomes relevant will generally be the point at which the interests of the lawyer and client become adverse so that the relationship must be terminated (such as in a malpractice claim). *But see* Towery (arguing that the fact of coverage is material to the representation). Clearly in certain types of representations, whether a lawyer or law firm has liability coverage and the extent of that coverage are likely to be important considerations for prospective clients. However, that does not make disclosure of such coverage mandatory as a matter of professional ethics.

*Question #3: Does a lawyer have an obligation to disclose insurance information at the request of a current client?*

In order for a disclosure obligation to arise, the information must be "relevant" to the representation, as observed above. For example, insurance information becomes "relevant" when a lawyer has committed or been charged with malpractice, so that the legal adversity becomes an interest affecting the lawyer's professional judgment under DR 5-101.

There may be other circumstances in which insurance information becomes relevant, but we decline to speculate. If a current client asks the lawyer about insurance, and the lawyer prefers not to make disclosure, the lawyer should make reasonable inquiry of the client in order to determine whether the information is indeed relevant to the representation (*i.e.*, not simply an item of curiosity). If the lawyer determines that the client believes that the information is relevant to the representation but the lawyer does not want to make disclosure, the lawyer may offer to withdraw with the client's permission under DR 2-110(C)(5). Obviously, the client is free at any time to terminate the lawyer's services.

*Conclusion*

A lawyer has no affirmative obligation to disclose to a prospective client whether the lawyer is covered by malpractice insurance or to disclose such information to a prospective client when asked. If asked by a current client for such information, a lawyer should make reasonable inquiry of the client in order to determine whether and why the insurance question is relevant to the representation.