|  |  |  |
|---|---|---|
| | ) | |
| MATTHEW BRADLEY, | ) | **DECLARATION OF** |
| | ) | **MATTHEW BRADLEY** |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| ANALYTICAL GRAMMAR, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

I, Matthew Bradley, declare as follows under penalty of perjury, based on the best of my personal knowledge and/or good faith belief.

1.      I am the plaintiff in this action against defendant Analytical Grammar, Inc. ("Analytical").

2.      I work as a freelance technological consultant. I have an undergraduate degree from Cornell majoring in physics, and a master's degree in electrical engineering from Penn State University. I am not, however, a lawyer and I am not sophisticated or experienced in legal matters.

3.      I have been asked to provide a declaration concerning the initiation of this lawsuit and certain of my dealings with Mr. Richard Liebowitz ("Mr. Liebowitz"), my former attorney who was disqualified by this Court, and I have and agreed to do so without the necessity of a subpoena or deposition.  Opposing counsel has agreed that my recitation of these limited facts does not waive and will not be construed to waive attorney-client privilege, work product privilege, or any other privilege with respect to anything not disclosed herein and my declaration is provided in reliance on that assurance.

4.      On December 8, 2017, I created a photograph that depicts the word "wrong"

handwritten on blue scotch tape and attached to several carpentry levels. That same day, I posted the photograph on my Facebook account with the caption, "This is wrong on so many levels."

5. I understood and still believe that I was and am the copyright owner of the photograph, which was created solely by me and taken solely by me, embodying multiple creative elements both in composing the photograph and in creating the caption.

6. When I discovered that persons whom I had not authorized to use the photo were using it for their own commercial benefit, I sought counsel. I became aware of Liebowitz Law Firm and its publicity concerning the manner in which it would represent photographers whose copyrights had been infringed, as they described on their website.

7. I retained Liebowitz Law Firm ("Firm") on or about December 24, 2018 to enforce my copyrights in my "Wrong on So Many Levels" photograph. A copy of my retainer agreement with the Firm is attached as Exhibit A to this declaration.

8. On June 10, 2019, the Firm informed me that Analytical had posted my "Wrong on So Many Levels" photograph on its Facebook page and asked my approval to pursue the case, by sending the following notice to me:

> The following case has been added by Liebowitz Law Firm, PLLC for your review. Please click Approve if you would like for us to pursue this case. Please click Disapprove if you have licensed this image or gave permission to this company. Giving us permission to pursue these potential infringements, however, does not guarantee that we will pursue them. The decision to pursue these potential claims rests with our attorneys, subject to their analysis and approval.
>
> Thank you, Research Analyst Dept.
>
> Infringer: Analytical Grammar, Inc.
> Infringer URL: https://www.facebook.com/analyticalgrammar/posts/this-is-wrong-on-so-many-levels/10154982827941891/
> Infringer Image: Link to Image

I clicked the "Approve" link and on June 11, 2019, was informed by Mr. Liebowitz that "Your case against Analytical Grammar will be filed in Court in North Carolina this week. We should

hear from their lawyers soon. I will keep you posted." As I later learned, the complaint in this action was filed on June 18, 2019, raising a claim of copyright infringement and a claim of removal of copyright management information. I was not provided any copy of the complaint for review prior to its filing.

9.      Mr. Liebowitz, the Firm's founder and manager, told me at the outset of the case that it was "a slam dunk."

10.      At no time before the complaint was filed did Mr. Liebowitz or anyone at the Firm discuss with me, or mention to me, any potential defense to either of the claims.

11.      My retainer agreement with the Firm stated, "The Copyright Act includes a provision in which attorney's fees may be awarded to prevailing plaintiffs." The agreement does not indicate that that provision of the Copyright Act also authorizes awarding attorney's fees to prevailing defendants. At no time did Mr. Liebowitz or anyone at the Firm advise me of the risk that I might be required to pay Analytical's attorneys' fees under the Copyright Act. Instead, the retainer agreement with the Firm stated, "Aside from the Contingency Fee (described below in paragraph 2), You will not be billed for the preparation and/or litigation of Your case." It also promised that "LLF shall keep You informed of the status of your matter, and agree to explain the laws pertinent to your situation, the available course(s) of action, and the attendant risks." I was never informed of any "attendant risks" in the nature of potential awards of costs or fees that could be imposed against me, until after the Court entered summary judgment dismissing both of my claims. I at all times believed, as I was told in the Agreement, that I would never be charged any money arising from the lawsuit because all costs associated with litigation would be borne by the Firm and reimbursed, if at all, only from any damage award I might receive.

12.      A representative of Analytical, Erin Karl, sent an email to Mr. Liebowitz on August

16, 2019 that included an offer "to settle this matter by making a $500 payment." The email further identified what Analytical would go on to raise as defenses to both claims: that "sharing [the photograph] on Facebook was permitted," and that Analytical "didn't remove or alter any copyright management information. Nothing identified Mr. Bradley as the photographer when we came across the photo." The email was sent with an attachment captioned "Offer of Judgment" that offered to allow entry of judgment against Analytical for $500. The "Offer of Judgment" stated, "To accept this offer, Plaintiff must serve written notice of acceptance within 14 days, or the offer shall be deemed withdrawn in accordance with Federal Rule of Civil Procedure 68(b)." The "Offer of Judgment" also stated, "If Plaintiff does not accept this offer he may become obligated to pay the costs and attorney's fees that Defendant incurs after making this offer."

13.     I understand that the self-styled "Offer of Judgment" may not be valid as a formal offer of judgment, among other reasons because it was sent by a non-attorney who wasn't authorized to represent Analytical Grammar in the lawsuit.  Nonetheless, it is evident that the offer was, at the least, an offer of settlement.  I had understood and believed that I would be consulted regarding any settlement offer, especially since my agreement with the Firm included a requirement that "Client agrees seriously to consider any settlement offer that Attorneys recommend before making a decision to accept or reject such an offer."

14.     It is now my understanding that Analytical's representative, Erin Karl, repeated the settlement offer (including the self-styled "Offer of Judgment") by a follow-up email to Mr. Liebowitz on August 19, 2019, and that Analytical's counsel also requested to engage in settlement discussions, with a reminder of the initial "Offer of Judgment," in email correspondence from Analytical's counsel to Mr. Liebowitz and local counsel on August 20, 2019.

15.     It is also now my understanding that on August 21, 2019 Analytical's counsel

(Mr. Dan Booth) proposed to engage in settlement discussions with Mr. Liebowitz before Analytical answered the complaint, and that Seth Hudson, who was then the Firm's local counsel, asked Mr. Liebowitz to contact Analytical's counsel to discuss settlement.

16.     Mr. Liebowitz did not inform me of the August 16, 2019 email and follow-up August 19, 2019 email, each with the "Offer of Judgment"/settlement offer, within 14 days of the date they were sent and received by him, or even within 30 days. Neither was I informed of the other settlement requests that were transmitted by or on behalf of Analytical Grammar in August and September 2019. To be clear:

> a.  I first learned about the so-called "Offer of Judgment" on or about December 11, 2019, the day before my deposition in this action. On December 11, 2019, Mr. Liebowitz sent me a copy of the Offer of Judgment, which I had not previously seen, by email. On December 12, 2019, the morning of my deposition, Mr. Liebowitz again emailed me about the "Offer of Judgment," telling me, "Please make sure you read this."
>
> b.  I first saw and learned about the other aspects of the original (August 16 and 19, 2019) settlement offers only after I was provided a copy of emails from Analytical Grammar's representative (Erin Karl) to Mr. Liebowitz following the Court's order disqualifying Mr. Liebowitz from representing me, when my current counsel, Ms. Olive, sought and received copies of the Firm's files and shared those files with me.
>
> c.  I first learned of Mr. Booth's follow-up emails asking to discuss potential settlement only after I was provided a copy of Mr. Booth's emails to Mr. Liebowitz following the Court's order disqualifying Mr. Liebowitz from

Bradley Declaration - Page 5

representing me, when my current counsel, Ms. Olive, sought and received copies of the Firm's files and shared those files with me.

17.     Late in the evening on August 18, 2019, I received an email from Mr. Liebowitz. He did not disclose the settlement offer. Instead, he said: "Hope you are well. Analystical Grammer [*sic*] defaulted on the case which means they did not respond back to the complaint. The judge is going to decide the amount of money within the next 5 months. I will keep you posted."

18.     Analytical filed its answer and counterclaims on September 13, 2019. I was not informed of this filing by Mr. Liebowitz. Instead, I learned about the filing online, on or about September 15, 2019, after looking around following receipt of certain comments on my Facebook page. I was surprised to find that an answer had been filed, since I had been told that Analytical had defaulted. I had thought the lawsuit was essentially over with.

19.     After finding out about the counterclaims, I emailed Mr. Liebowitz that evening, sending the answer and counterclaims to him and saying, "I'm no lawyer, but it seems they are severely misinformed about DRM and do not understand the difference between sharing and stealing." Mr. Liebowitz did not explain the meaning of the counterclaims to me or provide any assessment of them to me. Instead, he simply responded: "Yes, this lawyer is trying to get some PR from this, we will take it all the way to judgment." He gave me no indication that Analytical's defenses or counterclaims had any potential validity whatsoever.

20.     It is now my understanding that Mr. Liebowitz offered to settle the action for $5,500 on September 17, 2019, saying in an email to counsel for Analytical that he had been "authorized" to make that offer; and it also is now my understanding that Analytical rejected the offer the next day. Neither Mr. Liebowitz nor anyone at the Firm informed me about that offer, either beforehand or after it was rejected. I was not asked to "authorize" it and could hardly have done so without

Bradley Declaration - Page 6

knowing of it, although I had generally agreed—as set out in the first paragraph of my agreement with the Firm—that the Firm could take any steps that were necessary or appropriate to protect my interests. I learned of the $5,500 settlement offer tendered by Mr. Liebowitz only after Mr. Liebowitz had been disqualified by the Court and I had obtained successor counsel, who obtained and provided to me a copy of the Firm's files reflecting the offer.

21.     It is now my understanding that Mr. Liebowitz filed an answer to Analytical's counterclaims on October 4, 2019. At no time before filing the answer to the counterclaims did Mr. Liebowitz or anyone at the Firm confer with me about which of the allegations in the counterclaims should be admitted or denied. At no time before Mr. Liebowitz filed that answer did he or anyone at the Firm discuss with me, or mention to me, any potential defense to either of our claims, or the merits of the counterclaims.

22.     On October 7, 2019, by email, after I had asked for an estimate of the range of damages we might recover, Mr. Liebowitz estimated that the value of the case was in the $1,000 to $5,000 range and told me, "It looks like they're going to fight."  He did not disclose that an earlier settlement offer he had made to Analytical's counsel's had been rejected, mention the risk that I could be held liable for Analytical's attorneys' fees or costs, or mention that I could run other financial risks associated with proceeding.

23.     It is now my understanding that Mr. Liebowitz offered to settle the action for $500 on October 8, 2019, by sending to opposing counsel an email that said:  "Hi Dan, We can resolve for $500. Let me know. Thanks". Neither Mr. Liebowitz nor anyone at the Firm informed me about that offer before it was made, or sought my consent or specific authorization for that offer.  Further it is my understanding that the offer was rejected by return email, another fact of which I was not timely informed.

Bradley Declaration - Page 7

24.     It is now my understanding that the Court entered an Order on October 10, 2019, discussing sanctions that had been imposed on Mr. Liebowitz in other actions and telling him "to clean up his act," and stating that deficiency notices in this action and in Mr. Liebowitz's other cases assigned to the same judge were "a harbinger for troubled litigation ahead." Neither Mr. Liebowitz nor anyone at the Firm informed me about that Order and the Court's warning, nor did local ocunsel provide me with any copy of it.  I did not learn of it until I received a copy of the pleadings in this case from successor counsel following Mr. Liebowitz's disqualification.

25.     Mr. Liebowitz did not attend my December 12, 2019 deposition in Raleigh, North Carolina. It was defended by Albert Allan, who was then the Firm's local counsel. Neither Mr. Liebowitz nor the Firm paid my expenses. I paid for the airfare from California out of pocket.

26.     I have been informed that in the case of *Usherson v. Bandshell Artist Management*, Case No. 1:19-cv-06368 (S.D.N.Y.), the judge issued an order concerning the conduct of Mr. Liebowitz and his firm and required that a copy of that order be served on all of their current clients. After receiving a copy of the pleadings in my own case following Mr. Liebowitz's disqualification, I became aware that Mr. Liebowitz had filed a copy of the *Usherson* order in this Court on July 27, 2020. To the best of my knowledge and recollection, however, I was not personally served with any copy of that order at any time, and I can find no copy of it in my files.  To the best of my knowledge and recollection, I first learned that Mr. Liebowitz had been subjected to sanctions in any case when, on December 2, 2020, the Firm emailed to me a notice that Mr. Liebowitz had been suspended from practice in the Southern District of New York pending the outcome of disciplinary proceedings against him.  That notice did not identify the case by name and did not include a copy of the order.

27.     On March 4, 2021, I was informed by the Firm that the Court had granted

Analytical's motion for summary judgment, that the Court had "asked Richard [Mr. Liebowitz] to show cause as to why he should not be disqualified as [my] counsel," and that Mr. Liebowitz was "going to ask the Court to allow him to remain my counsel of record for the limited purpose of opposinga potential attorneys' fee motion brought by Defendant." Although I now understand that on January 27, 2021, the Court's clerk ordered Mr. Liebowitz to show cause within 30 days why should not be suspended from practice in this Court, and he did not respond within 30 days, I was not told about that aspect of the matter. When I asked the Firm for further details, because I was confused and had not even known anything was going to be happening in my case at this time, I was told nothing substantive other than that the Firm would not represent me in any appeal.

28.     It is now apparent that I made a serious mistake by putting my trust in Mr. Liebowitz and the Firm. They led me to believe that the only risk I faced in filing suit was that the recovery might be small. I believed that their contingency-fee agreement meant that I had no financial risk and that all costs and expenses would be borne by the Firm. They did not advise me at any point, and I did not know, that this lawsuit had at best a limited potential for recovery coupled with a not insignificant risk of loss. I was never told that costs could be imposed against a losing plantiff under any circumstances, still less that attorneys' fees could at least theoretically be sought against a plaintiff. Further, I never had the opportunity to review and make a reasoned decision on the early offers from Analytical's representative to resolve the case and the early offers from Analytical's attorney to negotiate a settlement of the case, either of which could have avoided the lengthy lawsuit and expenses incurred by all involved. If I had been told about the relevant facts and risks, I certainly would have considered any potential settlement in light of those facts and risks. The fact that Ms. Karl had offered on August 16 and August 19, 2019 that Analytical would settle the case by paying $500, as described in Paragraphs 12-14 above, and the fact that on

October 8, 2019, Mr. Liebowitz made an offer to accept a payment of $500 from Analytical in order to settle the case as described in Paragraph 23 above, suggests that an amount in or around that sum would not have been an unreasonable early settlement figure that would have been acceptable to everyone and would have terminated the lawsuit at an early point in time.

29.     To be clear, this declaration should not in any way be construed to suggest that costs, or fees, or other monetary awards ought to be imposed against Plaintiff or Plaintiff's former counsel in this case. However, if the Court were to impose such costs, or fees, or other monetary awards, it would in my opinion be unfair to impose them against me under these circumstances; and it would be most appropriate to require that they be paid by Mr. Liebowitz and his Firm, thus fulfilling the expectation they intentionally created when dealing with me that I would have no risk.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed this 8th day of July, 2021 in Windsor, California.


MATTHEW BRADLEY

# Liebowitz Law Firm, PLLC
11 Sunrise Plaza, Suite 305
Valley Stream, New York 11580-6111
516-233-1660

## RETAINER AGREEMENT

Thank you for retaining Liebowitz Law Firm, PLLC ("LLF" or "the Firm") to represent you ("You" or "Client"). Part 1215 of the Joint Rules of the Appellate Divisions of the Supreme Court of the State of New York requires most retainer agreements to be in writing, and as discussed, this letter sets out the terms of the retainer agreement between You and the Firm.

1. SCOPE OF ATTORNEY SERVICES: You have requested that LLF provide legal services to You in connection with the investigation, enforcement, or prosecution of your copyright infringement claims (the "Services"). You authorize LLF to take any steps, which, in their sole discretion, are necessary or appropriate to protect your interest in your claims. LLF will represent You to the best of its ability, consistent with professional standards of competence and integrity. LLF has not made any warranties or given any guaranty regarding the ultimate success or outcome of the Services. LLF shall keep You informed of the status of your matter, and agree to explain the laws pertinent to your situation, the available course(s) of action, and the attendant risks. Aside from the Contingency Fee (described below in paragraph 2), You will not be billed for the preparation and/or litigation of Your case.

2. CONTINGENCY FEE:

If the Firm is successful in obtaining money on your behalf, You agree to pay the Firm **fifty percent (50%) of any such amount recovered, whether recovered by lawsuit, settlement, or otherwise** (the "Contingency Fee"). Such percentage shall be computed on the net sum recovered after deducting from the amount recovered fees, expenses, and disbursements properly chargeable to the enforcement of the claim or prosecution of the action (such as court filing fees, deposition transcript fees, expert fees, U.S. Copyright Registration fees, postage fees, photocopies, etc.). In computing the Contingency Fee, the costs as taxed, including interest upon a judgment, shall be deemed part of the amount recovered. In the event there is no recovery, there is no attorney's fee.

The Copyright Act includes a provision in which attorney's fees may be awarded to prevailing plaintiffs. However, such an award is within the discretion of the court and not guaranteed. In the event that the Firm recovers attorney's fees for You or You are awarded attorney's fees, the attorney's fees recovered shall be applied against the amount the Firm would be entitled to under

this agreement. If any attorney's fees award exceeds the amount of the Contingency Fee, whether agreed upon through settlement, awarded by judgment or otherwise, the Firm shall be entitled to the full attorney's fee award.

If the cause of action is settled by You without the consent of the Firm, You agree to pay the Firm the above percentage of the full amount of the settlement for the benefit of You, to whomever paid or whatever called. The Firm shall have, in the alternative, the option of seeking compensation on a *quantum meruit* basis to be determined by the court. In such circumstances, the court would determine the fair value of the Services provided. In addition, the Firm shall be entitled to the Firm's taxable costs and disbursements. In the event You are represented on appeal by another attorney, the Firm shall have the option of seeking compensation on a *quantum meruit* basis to be determined by the court.

In pursuing a *quantum meruit* claim for legal services, LLF will rely on its records of the time it spends working on the Services, including telephone conferences, correspondence, legal research, and the preparation and revision of correspondence or other legal documents, and court conferences. Richard P. Liebowitz, Esq.'s hourly rate is $350 per hour. The Firm also employs associate attorneys with an hourly rate of $300 per hour.

If, after filing Your case, we cannot continue to prosecute the matter and are forced to dismiss it due to Your misrepresentation, omission or a failure to fulfill Your responsibilities as described in Section 3. "CLIENT RIGHTS AND RESPONSIBILITIES" and other sections of this Agreement, then You will be responsible for the filing costs associated with the case. The filing costs include the complaint filing fee ($400) and, if applicable, a service of process fee (approximately $65). You will also be responsible for the copyright registration fees associated with the case (ranging from $35 to $55 per application to the U.S. Copyright Office). You will not be charged for the Firm's time in preparing and litigating Your case.

3. CLIENT RIGHTS AND RESPONSIBILITIES: You agree to fully cooperate with the Firm in the administration of the matter. If Your address or phone number changes, please inform LLF as soon as possible. Client agrees seriously to consider any settlement offer that Attorneys recommend before making a decision to accept or reject such offer. You will make yourself available for depositions, settlement conferences, hearings and certain other appearances where your presence is required. You will make your best effort to assist the Firm's prosecution of Your cases, including but not limited to, producing documents and other requested items pertinent to the prosecution of Your case.

4. ATTORNEY'S RIGHT TO TERMINATE/WITHDRAW: LLF may withdraw and discontinue any representation of You in its sole and absolute discretion at any time prior to the institution of

a lawsuit. In the event that You fail or refuse to cooperate with the Firm to such a degree as to prevent them from rendering effective representation, then LLF shall have the right to demand and receive payment for all unreimbursed fees and expenses. You agree that LLF may withdraw from representing You upon written notice sufficient to enable you to retain new counsel. Without limitation, LLF can withdraw as counsel: 1) if the undersigned decides to cease the practice of law; 2) if evidence discloses that Your claim is without legal merit; 3) if the Firm determines that it does not wish to further prosecute and/or defend Your claims; 4) in the event that You do not provide reasonable cooperation in the prosecution or in the defense of the matter; 5) if You are in material breach of this Agreement; or 6) for any reason authorized by the applicable rules of Professional Conduct.

5. CLIENT'S RIGHT TO TERMINATE: You also understand that You may discharge LLF at any time by sending a writing to LLF. In such event, You will owe LLF all expenses and costs and the greater of: 1) the reasonable hourly rate spent by LLF investigating, enforcing, or prosecuting your claims up to the date of discharge; or 2) 50% of the Contingency Fee that LLF would have earned if there is a future recovery of your claims. LLF retains all rights to collect such fees and costs, including, but not limited to, the right to assert a lien on the case and/or the file.

6. ASSOCIATION OF CO-COUNSEL: You understand that LLF may contract with other attorneys, acceptable to You, for the performance of certain work for the You. The co-counsel fee will be taken out of LLF's Contingency Fee.

7. DISPUTES: In the unlikely event any dispute arising hereunder shall be brought exclusively in the Supreme Court of the State of New York and County of New York, and each party expressly submits to that jurisdiction and venue, except that in the event that a dispute arises between us relating to our fees, You have the right to arbitration of the dispute pursuant to Part 137 of the Rules of the Chief Administrator of the Courts, a copy of which will be provided to you upon request. The waiver by either party of a breach or violation of any provision of this Agreement shall not operate as, or be construed to be, a waiver of any subsequent breach of the same or any other provision hereof.

8. ENTIRE AGREEMENT/SEVERABILITY: This Agreement, and all exhibits hereto, supersedes all previous agreements and constitutes the entire Agreement between You and LLF here forward. This Agreement shall not be modified except by written agreement signed by You and LLF. If any provisions of this Agreement are held in whole or in part to be unenforceable for any reason, the remainder of that provision and of the entire Agreement will be severable and remain in effect.

9. GOVERNING LAW. This Agreement shall be deemed executed in and interpreted in accordance with the law of the State of New York without giving effect to conflicts of law.

10. EFFECTIVE DATE.  The effective date of this Agreement shall be the date upon which You execute it.

11. COPY OF AGREEMENT.  You acknowledge that You have received a copy of this Agreement.

## SIGNATURE PAGE

LIEBOWITZ LAW FIRM, PLLC

*Richard Liebowitz*                              December 19, 2018

Richard P. Liebowitz, Esq.                    Date

THE FOREGOING IS AGREED TO:

Client Name:     Matthew Bradley

Client Company (if any): _____

Address: _____

Phone: _____

Email: _____

Redacted

                                                    12/24/2018

Client Signature                                 Date

4

Form **W-9**
(Rev. November 2017)
Department of the Treasury
Internal Revenue Service

# Request for Taxpayer
# Identification Number and Certification

▶ Go to *www.irs.gov/FormW9* for instructions and the latest information.

**Give Form to the requester. Do not send to the IRS.**

**1** Name (as shown on your income tax return). Name is required on this line; do not leave this line blank.

Matthew Bradley

**2** Business name/disregarded entity name, if different from above

**3** Check appropriate box for federal tax classification of the person whose name is entered on line 1. Check only **one** of the following seven boxes.

☐ Individual/sole proprietor or single-member LLC    ☐ C Corporation    ☐ S Corporation    ☐ Partnership    ☐ Trust/estate

☐ Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=Partnership) ▶ _____

**Note:** Check the appropriate box in the line above for the tax classification of the single-member owner. Do not check LLC if the LLC is classified as a single-member LLC that is disregarded from the owner unless the owner of the LLC is another LLC that is **not** disregarded from the owner for U.S. federal tax purposes. Otherwise, a single-member LLC that is disregarded from the owner should check the appropriate box for the tax classification of its owner.

☐ Other (see instructions) ▶

**4** Exemptions (codes apply only to certain entities, not individuals; see instructions on page 3):

Exempt payee code (if any) _____

Exemption from FATCA reporting code (if any) _____

*(Applies to accounts maintained outside the U.S.)*

**5** Address (number, street, and apt. or suite no.) See instructions.

Redacted

**6**

Requester's name and address (optional)

**7** List account number(s) here (optional)

---

## Part I    Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on line 1 to avoid backup withholding. For individuals, this is generally your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the instructions for Part I, later. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN*, later.

**Note:** If the account is in more than one name, see the instructions for line 1. Also see *What Name and Number To Give the Requester* for guidelines on whose number to enter.

Social security number

Redacted

or

Employer identification number

| | | | – | | | | | |
|--|--|--|--|--|--|--|--|--|

---

## Part II    Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and
2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and
3. I am a U.S. citizen or other U.S. person (defined below); and
4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions for Part II, later.

**Sign Here**

Signature of U.S. person ▶ Redacted

Date ▶ Redacted

---

# General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

**Future developments.** For the latest information about developments related to Form W-9 and its instructions, such as legislation enacted after they were published, go to *www.irs.gov/FormW9*.

## Purpose of Form

An individual or entity (Form W-9 requester) who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) which may be your social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN), to report on an information return the amount paid to you, or other amount reportable on an information return. Examples of information returns include, but are not limited to, the following.

• Form 1099-INT (interest earned or paid)

• Form 1099-DIV (dividends, including those from stocks or mutual funds)

• Form 1099-MISC (various types of income, prizes, awards, or gross proceeds)

• Form 1099-B (stock or mutual fund sales and certain other transactions by brokers)

• Form 1099-S (proceeds from real estate transactions)

• Form 1099-K (merchant card and third party network transactions)

• Form 1098 (home mortgage interest), 1098-E (student loan interest), 1098-T (tuition)

• Form 1099-C (canceled debt)

• Form 1099-A (acquisition or abandonment of secured property)

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN.

*If you do not return Form W-9 to the requester with a TIN, you might be subject to backup withholding. See What is backup withholding, later.*

By signing the filled-out form, you:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee. If applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income, and

4. Certify that FATCA code(s) entered on this form (if any) indicating that you are exempt from the FATCA reporting, is correct. See *What is FATCA reporting,* later, for further information.

**Note:** If you are a U.S. person and a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

**Definition of a U.S. person.** For federal tax purposes, you are considered a U.S. person if you are:

• An individual who is a U.S. citizen or U.S. resident alien;

• A partnership, corporation, company, or association created or organized in the United States or under the laws of the United States;

• An estate (other than a foreign estate); or

• A domestic trust (as defined in Regulations section 301.7701-7).

**Special rules for partnerships.** Partnerships that conduct a trade or business in the United States are generally required to pay a withholding tax under section 1446 on any foreign partners' share of effectively connected taxable income from such business. Further, in certain cases where a Form W-9 has not been received, the rules under section 1446 require a partnership to presume that a partner is a foreign person, and pay the section 1446 withholding tax. Therefore, if you are a U.S. person that is a partner in a partnership conducting a trade or business in the United States, provide Form W-9 to the partnership to establish your U.S. status and avoid section 1446 withholding on your share of partnership income.

In the cases below, the following person must give Form W-9 to the partnership for purposes of establishing its U.S. status and avoiding withholding on its allocable share of net income from the partnership conducting a trade or business in the United States.

• In the case of a disregarded entity with a U.S. owner, the U.S. owner of the disregarded entity and not the entity;

• In the case of a grantor trust with a U.S. grantor or other U.S. owner, generally, the U.S. grantor or other U.S. owner of the grantor trust and not the trust; and

• In the case of a U.S. trust (other than a grantor trust), the U.S. trust (other than a grantor trust) and not the beneficiaries of the trust.

**Foreign person.** If you are a foreign person or the U.S. branch of a foreign bank that has elected to be treated as a U.S. person, do not use Form W-9. Instead, use the appropriate Form W-8 or Form 8233 (see Pub. 515, Withholding of Tax on Nonresident Aliens and Foreign Entities).

**Nonresident alien who becomes a resident alien.** Generally, only a nonresident alien individual may use the terms of a tax treaty to reduce or eliminate U.S. tax on certain types of income. However, most tax treaties contain a provision known as a "saving clause." Exceptions specified in the saving clause may permit an exemption from tax to continue for certain types of income even after the payee has otherwise become a U.S. resident alien for tax purposes.

If you are a U.S. resident alien who is relying on an exception contained in the saving clause of a tax treaty to claim an exemption from U.S. tax on certain types of income, you must attach a statement to Form W-9 that specifies the following five items.

1. The treaty country. Generally, this must be the same treaty under which you claimed exemption from tax as a nonresident alien.

2. The treaty article addressing the income.

3. The article number (or location) in the tax treaty that contains the saving clause and its exceptions.

4. The type and amount of income that qualifies for the exemption from tax.

5. Sufficient facts to justify the exemption from tax under the terms of the treaty article.

*Example.* Article 20 of the U.S.-China income tax treaty allows an exemption from tax for scholarship income received by a Chinese student temporarily present in the United States. Under U.S. law, this student will become a resident alien for tax purposes if his or her stay in the United States exceeds 5 calendar years. However, paragraph 2 of the first Protocol to the U.S.-China treaty (dated April 30, 1984) allows the provisions of Article 20 to continue to apply even after the Chinese student becomes a resident alien of the United States. A Chinese student who qualifies for this exception (under paragraph 2 of the first protocol) and is relying on this exception to claim an exemption from tax on his or her scholarship or fellowship income would attach to Form W-9 a statement that includes the information described above to support that exemption.

If you are a nonresident alien or a foreign entity, give the requester the appropriate completed Form W-8 or Form 8233.

## Backup Withholding

**What is backup withholding?** Persons making certain payments to you must under certain conditions withhold and pay to the IRS 28% of such payments. This is called "backup withholding." Payments that may be subject to backup withholding include interest, tax-exempt interest, dividends, broker and barter exchange transactions, rents, royalties, nonemployee pay, payments made in settlement of payment card and third party network transactions, and certain payments from fishing boat operators. Real estate transactions are not subject to backup withholding.

You will not be subject to backup withholding on payments you receive if you give the requester your correct TIN, make the proper certifications, and report all your taxable interest and dividends on your tax return.

**Payments you receive will be subject to backup withholding if:**

1. You do not furnish your TIN to the requester,

2. You do not certify your TIN when required (see the instructions for Part II for details),

3. The IRS tells the requester that you furnished an incorrect TIN,

4. The IRS tells you that you are subject to backup withholding because you did not report all your interest and dividends on your tax return (for reportable interest and dividends only), or

5. You do not certify to the requester that you are not subject to backup withholding under 4 above (for reportable interest and dividend accounts opened after 1983 only).

Certain payees and payments are exempt from backup withholding. See *Exempt payee code,* later, and the separate Instructions for the Requester of Form W-9 for more information.

Also see *Special rules for partnerships,* earlier.

## What is FATCA Reporting?

The Foreign Account Tax Compliance Act (FATCA) requires a participating foreign financial institution to report all United States account holders that are specified United States persons. Certain payees are exempt from FATCA reporting. See *Exemption from FATCA reporting code,* later, and the Instructions for the Requester of Form W-9 for more information.

## Updating Your Information

You must provide updated information to any person to whom you claimed to be an exempt payee if you are no longer an exempt payee and anticipate receiving reportable payments in the future from this person. For example, you may need to provide updated information if you are a C corporation that elects to be an S corporation, or if you no longer are tax exempt. In addition, you must furnish a new Form W-9 if the name or TIN changes for the account; for example, if the grantor of a grantor trust dies.

## Penalties

**Failure to furnish TIN.** If you fail to furnish your correct TIN to a requester, you are subject to a penalty of $50 for each such failure unless your failure is due to reasonable cause and not to willful neglect.

**Civil penalty for false information with respect to withholding.** If you make a false statement with no reasonable basis that results in no backup withholding, you are subject to a $500 penalty.

**Criminal penalty for falsifying information.** Willfully falsifying certifications or affirmations may subject you to criminal penalties including fines and/or imprisonment.

**Misuse of TINs.** If the requester discloses or uses TINs in violation of federal law, the requester may be subject to civil and criminal penalties.

# Specific Instructions

## Line 1

You must enter one of the following on this line; **do not** leave this line blank. The name should match the name on your tax return.

If this Form W-9 is for a joint account (other than an account maintained by a foreign financial institution (FFI)), list first, and then circle, the name of the person or entity whose number you entered in Part I of Form W-9. If you are providing Form W-9 to an FFI to document a joint account, each holder of the account that is a U.S. person must provide a Form W-9.

**a. Individual.** Generally, enter the name shown on your tax return. If you have changed your last name without informing the Social Security Administration (SSA) of the name change, enter your first name, the last name as shown on your social security card, and your new last name.

**Note: ITIN applicant:** Enter your individual name as it was entered on your Form W-7 application, line 1a. This should also be the same as the name you entered on the Form 1040/1040A/1040EZ you filed with your application.

**b. Sole proprietor or single-member LLC.** Enter your individual name as shown on your 1040/1040A/1040EZ on line 1. You may enter your business, trade, or "doing business as" (DBA) name on line 2.

**c. Partnership, LLC that is not a single-member LLC, C corporation, or S corporation.** Enter the entity's name as shown on the entity's tax return on line 1 and any business, trade, or DBA name on line 2.

**d. Other entities.** Enter your name as shown on required U.S. federal tax documents on line 1. This name should match the name shown on the charter or other legal document creating the entity. You may enter any business, trade, or DBA name on line 2.

**e. Disregarded entity.** For U.S. federal tax purposes, an entity that is disregarded as an entity separate from its owner is treated as a "disregarded entity." See Regulations section 301.7701-2(c)(2)(iii). Enter the owner's name on line 1. The name of the entity entered on line 1 should never be a disregarded entity. The name on line 1 should be the name shown on the income tax return on which the income should be reported. For example, if a foreign LLC that is treated as a disregarded entity for U.S. federal tax purposes has a single owner that is a U.S. person, the U.S. owner's name is required to be provided on line 1. If the direct owner of the entity is also a disregarded entity, enter the first owner that is not disregarded for federal tax purposes. Enter the disregarded entity's name on line 2, "Business name/disregarded entity name." If the owner of the disregarded entity is a foreign person, the owner must complete an appropriate Form W-8 instead of a Form W-9. This is the case even if the foreign person has a U.S. TIN.

## Line 2

If you have a business name, trade name, DBA name, or disregarded entity name, you may enter it on line 2.

## Line 3

Check the appropriate box on line 3 for the U.S. federal tax classification of the person whose name is entered on line 1. Check only one box on line 3.

| IF the entity/person on line 1 is a(n) . . . | THEN check the box for . . . |
|---|---|
| • Corporation | Corporation |
| • Individual<br>• Sole proprietorship, or<br>• Single-member limited liability company (LLC) owned by an individual and disregarded for U.S. federal tax purposes. | Individual/sole proprietor or single-member LLC |
| • LLC treated as a partnership for U.S. federal tax purposes,<br>• LLC that has filed Form 8832 or 2553 to be taxed as a corporation, or<br>• LLC that is disregarded as an entity separate from its owner but the owner is another LLC that is not disregarded for U.S. federal tax purposes. | Limited liability company and enter the appropriate tax classification. (P= Partnership; C= C corporation; or S= S corporation) |
| • Partnership | Partnership |
| • Trust/estate | Trust/estate |

## Line 4, Exemptions

If you are exempt from backup withholding and/or FATCA reporting, enter in the appropriate space on line 4 any code(s) that may apply to you.

**Exempt payee code.**
• Generally, individuals (including sole proprietors) are not exempt from backup withholding.

• Except as provided below, corporations are exempt from backup withholding for certain payments, including interest and dividends.

• Corporations are not exempt from backup withholding for payments made in settlement of payment card or third party network transactions.

• Corporations are not exempt from backup withholding with respect to attorneys' fees or gross proceeds paid to attorneys, and corporations that provide medical or health care services are not exempt with respect to payments reportable on Form 1099-MISC.

The following codes identify payees that are exempt from backup withholding. Enter the appropriate code in the space in line 4.

1—An organization exempt from tax under section 501(a), any IRA, or a custodial account under section 403(b)(7) if the account satisfies the requirements of section 401(f)(2)

2—The United States or any of its agencies or instrumentalities

3—A state, the District of Columbia, a U.S. commonwealth or possession, or any of their political subdivisions or instrumentalities

4—A foreign government or any of its political subdivisions, agencies, or instrumentalities

5—A corporation

6—A dealer in securities or commodities required to register in the United States, the District of Columbia, or a U.S. commonwealth or possession

7—A futures commission merchant registered with the Commodity Futures Trading Commission

8—A real estate investment trust

9—An entity registered at all times during the tax year under the Investment Company Act of 1940

10—A common trust fund operated by a bank under section 584(a)

11—A financial institution

12—A middleman known in the investment community as a nominee or custodian

13—A trust exempt from tax under section 664 or described in section 4947

The following chart shows types of payments that may be exempt from backup withholding. The chart applies to the exempt payees listed above, 1 through 13.

| IF the payment is for . . . | THEN the payment is exempt for . . . |
|---|---|
| Interest and dividend payments | All exempt payees except for 7 |
| Broker transactions | Exempt payees 1 through 4 and 6 through 11 and all C corporations. S corporations must not enter an exempt payee code because they are exempt only for sales of noncovered securities acquired prior to 2012. |
| Barter exchange transactions and patronage dividends | Exempt payees 1 through 4 |
| Payments over $600 required to be reported and direct sales over $5,000[1] | Generally, exempt payees 1 through 5[2] |
| Payments made in settlement of payment card or third party network transactions | Exempt payees 1 through 4 |

[1] See Form 1099-MISC, Miscellaneous Income, and its instructions.

[2] However, the following payments made to a corporation and reportable on Form 1099-MISC are not exempt from backup withholding: medical and health care payments, attorneys' fees, gross proceeds paid to an attorney reportable under section 6045(f), and payments for services paid by a federal executive agency.

**Exemption from FATCA reporting code.** The following codes identify payees that are exempt from reporting under FATCA. These codes apply to persons submitting this form for accounts maintained outside of the United States by certain foreign financial institutions. Therefore, if you are only submitting this form for an account you hold in the United States, you may leave this field blank. Consult with the person requesting this form if you are uncertain if the financial institution is subject to these requirements. A requester may indicate that a code is not required by providing you with a Form W-9 with "Not Applicable" (or any similar indication) written or printed on the line for a FATCA exemption code.

A—An organization exempt from tax under section 501(a) or any individual retirement plan as defined in section 7701(a)(37)

B—The United States or any of its agencies or instrumentalities

C—A state, the District of Columbia, a U.S. commonwealth or possession, or any of their political subdivisions or instrumentalities

D—A corporation the stock of which is regularly traded on one or more established securities markets, as described in Regulations section 1.1472-1(c)(1)(i)

E—A corporation that is a member of the same expanded affiliated group as a corporation described in Regulations section 1.1472-1(c)(1)(i)

F—A dealer in securities, commodities, or derivative financial instruments (including notional principal contracts, futures, forwards, and options) that is registered as such under the laws of the United States or any state

G—A real estate investment trust

H—A regulated investment company as defined in section 851 or an entity registered at all times during the tax year under the Investment Company Act of 1940

I—A common trust fund as defined in section 584(a)

J—A bank as defined in section 581

K—A broker

L—A trust exempt from tax under section 664 or described in section 4947(a)(1)

M—A tax exempt trust under a section 403(b) plan or section 457(g) plan

**Note:** You may wish to consult with the financial institution requesting this form to determine whether the FATCA code and/or exempt payee code should be completed.

## Line 5

Enter your address (number, street, and apartment or suite number). This is where the requester of this Form W-9 will mail your information returns. If this address differs from the one the requester already has on file, write NEW at the top. If a new address is provided, there is still a chance the old address will be used until the payor changes your address in their records.

## Line 6

Enter your city, state, and ZIP code.

## Part I. Taxpayer Identification Number (TIN)

**Enter your TIN in the appropriate box.** If you are a resident alien and you do not have and are not eligible to get an SSN, your TIN is your IRS individual taxpayer identification number (ITIN). Enter it in the social security number box. If you do not have an ITIN, see *How to get a TIN* below.

If you are a sole proprietor and you have an EIN, you may enter either your SSN or EIN.

If you are a single-member LLC that is disregarded as an entity separate from its owner, enter the owner's SSN (or EIN, if the owner has one). Do not enter the disregarded entity's EIN. If the LLC is classified as a corporation or partnership, enter the entity's EIN.

**Note:** See *What Name and Number To Give the Requester,* later, for further clarification of name and TIN combinations.

**How to get a TIN.** If you do not have a TIN, apply for one immediately. To apply for an SSN, get Form SS-5, Application for a Social Security Card, from your local SSA office or get this form online at *www.SSA.gov*. You may also get this form by calling 1-800-772-1213. Use Form W-7, Application for IRS Individual Taxpayer Identification Number, to apply for an ITIN, or Form SS-4, Application for Employer Identification Number, to apply for an EIN. You can apply for an EIN online by accessing the IRS website at *www.irs.gov/Businesses* and clicking on Employer Identification Number (EIN) under Starting a Business. Go to *www.irs.gov/Forms* to view, download, or print Form W-7 and/or Form SS-4. Or, you can go to *www.irs.gov/OrderForms* to place an order and have Form W-7 and/or SS-4 mailed to you within 10 business days.

If you are asked to complete Form W-9 but do not have a TIN, apply for a TIN and write "Applied For" in the space for the TIN, sign and date the form, and give it to the requester. For interest and dividend payments, and certain payments made with respect to readily tradable instruments, generally you will have 60 days to get a TIN and give it to the requester before you are subject to backup withholding on payments. The 60-day rule does not apply to other types of payments. You will be subject to backup withholding on all such payments until you provide your TIN to the requester.

**Note:** Entering "Applied For" means that you have already applied for a TIN or that you intend to apply for one soon.

**Caution:** A disregarded U.S. entity that has a foreign owner must use the appropriate Form W-8.

## Part II. Certification

To establish to the withholding agent that you are a U.S. person, or resident alien, sign Form W-9. You may be requested to sign by the withholding agent even if items 1, 4, or 5 below indicate otherwise.

For a joint account, only the person whose TIN is shown in Part I should sign (when required). In the case of a disregarded entity, the person identified on line 1 must sign. Exempt payees, see *Exempt payee code,* earlier.

**Signature requirements.** Complete the certification as indicated in items 1 through 5 below.

**1. Interest, dividend, and barter exchange accounts opened before 1984 and broker accounts considered active during 1983.** You must give your correct TIN, but you do not have to sign the certification.

**2. Interest, dividend, broker, and barter exchange accounts opened after 1983 and broker accounts considered inactive during 1983.** You must give the certification or backup withholding will apply. If you are subject to backup withholding and you are merely providing your correct TIN to the requester, you must cross out item 2 in the certification before signing the form.

**3. Real estate transactions.** You must sign the certification. You may cross out item 2 of the certification.

**4. Other payments.** You must give your correct TIN, but you do not have to sign the certification unless you have been notified that you have previously given an incorrect TIN. "Other payments" include payments made in the course of the requester's trade or business for rents, royalties, goods (other than bills for merchandise), medical and health care services (including payments to corporations), payments to a nonemployee for services, payments made in settlement of payment card and third party network transactions, payments to certain fishing boat crew members and fishermen, and gross proceeds paid to attorneys (including payments to corporations).

**5. Mortgage interest paid by you, acquisition or abandonment of secured property, cancellation of debt, qualified tuition program payments (under section 529), ABLE accounts (under section 529A), IRA, Coverdell ESA, Archer MSA or HSA contributions or distributions, and pension distributions.** You must give your correct TIN, but you do not have to sign the certification.

## What Name and Number To Give the Requester

| For this type of account: | Give name and SSN of: |
|---|---|
| 1. Individual | The individual |
| 2. Two or more individuals (joint account) other than an account maintained by an FFI | The actual owner of the account or, if combined funds, the first individual on the account[1] |
| 3. Two or more U.S. persons (joint account maintained by an FFI) | Each holder of the account |
| 4. Custodial account of a minor (Uniform Gift to Minors Act) | The minor[2] |
| 5. a. The usual revocable savings trust (grantor is also trustee) | The grantor-trustee[1] |
| b. So-called trust account that is not a legal or valid trust under state law | The actual owner[1] |
| 6. Sole proprietorship or disregarded entity owned by an individual | The owner[3] |
| 7. Grantor trust filing under Optional Form 1099 Filing Method 1 (see Regulations section 1.671-4(b)(2)(i) (A)) | The grantor* |

| For this type of account: | Give name and EIN of: |
|---|---|
| 8. Disregarded entity not owned by an individual | The owner |
| 9. A valid trust, estate, or pension trust | Legal entity[4] |
| 10. Corporation or LLC electing corporate status on Form 8832 or Form 2553 | The corporation |
| 11. Association, club, religious, charitable, educational, or other tax-exempt organization | The organization |
| 12. Partnership or multi-member LLC | The partnership |
| 13. A broker or registered nominee | The broker or nominee |

| For this type of account: | Give name and EIN of: |
|---|---|
| 14. Account with the Department of Agriculture in the name of a public entity (such as a state or local government, school district, or prison) that receives agricultural program payments | The public entity |
| 15. Grantor trust filing under the Form 1041 Filing Method or the Optional Form 1099 Filing Method 2 (see Regulations section 1.671-4(b)(2)(i)(B)) | The trust |

[1] List first and circle the name of the person whose number you furnish. If only one person on a joint account has an SSN, that person's number must be furnished.

[2] Circle the minor's name and furnish the minor's SSN.

[3] You must show your individual name and you may also enter your business or DBA name on the "Business name/disregarded entity" name line. You may use your SSN or EIN (if you have one), but the IRS encourages you to use your SSN.

[4] List first and circle the name of the trust, estate, or pension trust. (Do not furnish the TIN of the personal representative or trustee unless the legal entity itself is not designated in the account title.) Also see *Special rules for partnerships*, earlier.

**\*Note:** The grantor also must provide a Form W-9 to trustee of trust.

**Note:** If no name is circled when more than one name is listed, the number will be considered to be that of the first name listed.

## Secure Your Tax Records From Identity Theft

Identity theft occurs when someone uses your personal information such as your name, SSN, or other identifying information, without your permission, to commit fraud or other crimes. An identity thief may use your SSN to get a job or may file a tax return using your SSN to receive a refund.

To reduce your risk:

• Protect your SSN,

• Ensure your employer is protecting your SSN, and

• Be careful when choosing a tax preparer.

If your tax records are affected by identity theft and you receive a notice from the IRS, respond right away to the name and phone number printed on the IRS notice or letter.

If your tax records are not currently affected by identity theft but you think you are at risk due to a lost or stolen purse or wallet, questionable credit card activity or credit report, contact the IRS Identity Theft Hotline at 1-800-908-4490 or submit Form 14039.

For more information, see Pub. 5027, Identity Theft Information for Taxpayers.

Victims of identity theft who are experiencing economic harm or a systemic problem, or are seeking help in resolving tax problems that have not been resolved through normal channels, may be eligible for Taxpayer Advocate Service (TAS) assistance. You can reach TAS by calling the TAS toll-free case intake line at 1-877-777-4778 or TTY/TDD 1-800-829-4059.

**Protect yourself from suspicious emails or phishing schemes.** Phishing is the creation and use of email and websites designed to mimic legitimate business emails and websites. The most common act is sending an email to a user falsely claiming to be an established legitimate enterprise in an attempt to scam the user into surrendering private information that will be used for identity theft.

The IRS does not initiate contacts with taxpayers via emails. Also, the IRS does not request personal detailed information through email or ask taxpayers for the PIN numbers, passwords, or similar secret access information for their credit card, bank, or other financial accounts.

If you receive an unsolicited email claiming to be from the IRS, forward this message to *phishing@irs.gov.* You may also report misuse of the IRS name, logo, or other IRS property to the Treasury Inspector General for Tax Administration (TIGTA) at 1-800-366-4484. You can forward suspicious emails to the Federal Trade Commission at *spam@uce.gov* or report them at *www.ftc.gov/complaint.* You can contact the FTC at *www.ftc.gov/idtheft* or 877-IDTHEFT (877-438-4338). If you have been the victim of identity theft, see *www.IdentityTheft.gov* and Pub. 5027.

Visit *www.irs.gov/IdentityTheft* to learn more about identity theft and how to reduce your risk.

## Privacy Act Notice

Section 6109 of the Internal Revenue Code requires you to provide your correct TIN to persons (including federal agencies) who are required to file information returns with the IRS to report interest, dividends, or certain other income paid to you; mortgage interest you paid; the acquisition or abandonment of secured property; the cancellation of debt; or contributions you made to an IRA, Archer MSA, or HSA. The person collecting this form uses the information on the form to file information returns with the IRS, reporting the above information. Routine uses of this information include giving it to the Department of Justice for civil and criminal litigation and to cities, states, the District of Columbia, and U.S. commonwealths and possessions for use in administering their laws. The information also may be disclosed to other countries under a treaty, to federal and state agencies to enforce civil and criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism. You must provide your TIN whether or not you are required to file a tax return. Under section 3406, payers must generally withhold a percentage of taxable interest, dividend, and certain other payments to a payee who does not give a TIN to the payer. Certain penalties may also apply for providing false or fraudulent information.

 **HELLOSIGN**

Audit Trail

| | |
|---|---|
| **TITLE** | Matthew Bradley/(US) Liebowitz Law Firm, PLLC Contingency... |
| **FILE NAME** | Liebowitz Law Fir...reement (US) .pdf |
| **DOCUMENT ID** | 7f98f502212cd6ffcafa2c1854baa6b5678792c2 |
| **STATUS** | ● Completed |

## Document History

**SENT**
**12/19/2018**
09:08:53 UTC-5

Sent for signature to Matthew Bradley (mbradley@brad-tech.com) from dh@liebowitzlawfirm.com
IP: 67.85.178.107

**VIEWED**
**12/19/2018**
13:40:49 UTC-5

Viewed by Matthew Bradley (mbradley@brad-tech.com)
IP: 172.58.91.21

**SIGNED**
**12/24/2018**
16:54:59 UTC-5

Signed by Matthew Bradley (mbradley@brad-tech.com)
IP: 98.234.71.216

**COMPLETED**
**12/24/2018**
16:54:59 UTC-5

The document has been completed.