**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**WESTERN DIVISION**
**Civil Action No. 5:19-cv-249-FL**

| | | |
|---|---|---|
| MATTHEW BRADLEY, | ) | **MEMORANDUM IN SUPPORT OF** |
| | ) | **ANALYTICAL GRAMMAR, INC.'S** |
| Plaintiff, | ) | **MOTION FOR ATTORNEYS' FEES,** |
| v. | ) | **COSTS, AND EXPENSES PURSUANT** |
| | ) | **TO 28 U.S.C. § 1927 AND THE** |
| ANALYTICAL GRAMMAR, INC., | ) | **COURT'S INHERENT AUTHORITY** |
| | ) | |
| Defendant. | ) | |

The Court should award Defendant Analytical Grammar, Inc. ("Analytical") its attorneys' fees and costs against Richard Liebowitz ("Liebowitz") and Liebowitz Law Firm, PLLC. While he was lead counsel by special appearance for Plaintiff Matthew Bradley ("Bradley"), Liebowitz raised and pursued claims that he knew were bogus. Analytical pointed out the shortcomings in the claims and promptly offered to settle, but Liebowitz failed to communicate the settlement offers to Bradley and misinformed him about the weakness of his position. Analytical prevailed at summary judgment but the cost of litigation drove Analytical out of business. Liebowitz and his firm must be held liable, pursuant to the Court's inherent authority and 28 U.S.C. § 1927, for multiplying the proceedings with his bad-faith arguments and vexatious tactics.

### Statement of the Case

On behalf of Bradley, Liebowitz raised claims of copyright infringement and removal of copyright management information ("CMI"). DE 1. Analytical counterclaimed for a declaratory judgment. DE 12 pp. 14-17. The Court granted summary judgment to Analytical on Bradley's claims. DE 63. Analytical has moved to dismiss its invalidity counterclaim and for the entry of final judgment in its favor on all other claims and counterclaims. DE 66.

Liebowitz was suspended from practicing law in the Southern District of New York on

November 25, 2020. *See* DE 61 p. 1, DE 61-2. He was suspended from practice in this Court and disqualified from representing Bradley effective March 19, 2021. DE 68. Bradley has engaged new counsel, and so have Liebowitz and his firm. DE 72, DE 75.

**Statement of Pertinent Facts**

In 2017, Bradley posted a photograph on his Facebook page using the Public setting, under terms of service that allowed other users to repost it. Analytical received a copy and reposted the image on its Facebook page, consistent with the unconditional, express license in Facebook's terms of service. After Bradley celebrated the viral circulation for a year, he added CMI to his Facebook post, registered the copyright, and engaged Liebowitz's firm.

Liebowitz initiated this action against Analytical on June 18, 2019, alleging copyright infringement and CMI removal. DE 1. Neither claim was colorable. Analytical could not have removed any CMI because none accompanied the photograph when Analytical received and reposted it. *See* DE 27 pp. 27-30. The infringement claim was likewise meritless due to the express license, as well as Analytical's fair use; and it provided no basis for relief, because Liebowitz did not disclose or produce any evidence that the use caused Bradley any damages or brought Analytical any profits. *See id.* pp. 15-16, 19-30, & 33-34; DE 33.

Liebowitz did not respond to, or inform Bradley about, Analytical's early offers to accept judgment and engage in settlement discussions. Analytical was served with process on or about August 2, 2019. DE 10 ¶ 2, DE 30-19 ¶ 20. It sent Liebowitz a $500 offer of judgment on August 16, 2019, and reiterated the offer three days later. DE 30-19 ¶¶ 21-23, DE 30-22, DE 31-5. Liebowitz did not respond. He misled Bradley on August 18, 2019 that Analytical had defaulted and that damages would be assessed within five months. DE 73 ¶ 5(c). On August 20, 2019, Analytical engaged counsel, who restated its offer to accept entry of judgment for $500. DE 31-6 p. 3. Liebowitz did not respond. On August 21, 2019, Analytical's counsel offered to discuss

2

settlement and conferred with Bradley's then-local counsel, who asked Liebowitz: "Richard-please contact [Analytical's counsel] and speak with him directly about the proposed settlement offer." *Id.* pp. 2-3. Liebowitz still did not respond. Declaration of Dan Booth ("Booth Dec.") ¶ 2; DE 29-1 ¶¶ 62-63, DE 54 ¶¶ 102-104. After Analytical filed its answer, Liebowitz proposed a $5,500 settlement on September 17, 2019. DE 12, DE 31-7. Analytical rejected the offer the next day. Booth Dec. ¶ 4 & Exh. 1 p. 3. He proposed a $1,000 deal on October 7, 2019, explaining that he had demanded $5,500 at first because "we thought her business [Analytical] was larger." *Id.* ¶ 5 & Exh. 1 pp. 1-2. On October 8, 2019, Liebowitz proposed a $500 deal and Analytical rejected it, seeking its sunk costs of defense. *Id.* ¶ 6. Its counsel informed Liebowitz that day:

> Analytical Grammar is currently open to an offer to pay all of its attorneys' fees accrued to date. Alternatively, at any time, you can voluntarily dismiss with prejudice, and my client can seek its fees from the court. Those fees will continue to accrue as long as your client maintains this action, so if he has interest in limiting his exposure, the sooner the better.

*Id.* & Exh. 1 p. 1. Analytical's counsel again told Liebowitz, on November 11, 2019:

> Our client has already incurred more than $20,000 in fees and intends to prevail both on the merits and in obtaining an award of all attorney's fees. That amount will only rise as the case progresses. So if you and your client want to limit the legal fees you face, you should dismiss with prejudice as soon as possible.

*Id.* ¶ 7 & Exh. 2 p. 1. On November 15, 2019, Analytical's counsel again offered to settle, for payment of $20,000 toward its incurred fees, and Liebowitz rejected the offer. *Id.* ¶ 7. Liebowitz did not tell Bradley about Analytical's offers; the offers he had made, ostensibly on Bradley's behalf; Analytical's potentially meritorious defenses; or that maintaining suit exposed Bradley to a risk of an order to pay Analytical's attorneys' fees pursuant to 17 U.S.C. §§ 505 and 1203(b)(5). Declaration of Matthew Bradley ("Bradley Dec.") ¶¶ 10-23 & 28, DE 73 ¶¶ 5(c)-(e).

Liebowitz and Bradley had evidence fatal to Bradley's claims in their hands before filing suit. The pre-2018 Facebook terms of service that defeated the infringement claim were, and

remain, publicly available on Facebook. *See* DE 12 p. 12 (Counterclaim ¶ 14), DE 30-1, www.facebook.com/legal/terms/previous. Liebowitz had displayed and recited verbatim excerpts from those same pre-2018 terms at a Manhattan conference for photographers on June 3, 2019, fifteen days before filing suit. Booth Decl. ¶¶ 9-10 & Exh. 4. And metadata stored on Bradley's phone showed that the photograph did not include or convey CMI. DE 29-5 p. 2; DE 54 ¶¶ 112-113. The photograph in his original Facebook post did not indicate that he was the photographer, and he did not add CMI to that photograph until a year after Analytical used it. DE 54 ¶¶ 58-59.

Analytical produced to Liebowitz evidence dispositive of both claims: Facebook's terms of service, and evidence that it received the photograph from a third party without any CMI. *See* DE 30-1, DE 30-21. Bradley admitted in his deposition that the terms of service effective in 2017 governed at the time of his post and the repost. DE 29-2 pp. 21-22. In all, Liebowitz never had a reasonable basis to claim that Analytical infringed Bradley's copyright or removed or altered any CMI. He also failed to disclose evidence of actual damages, in violation of Rule 26, ensuring that Bradley could not be awarded such relief on either claim. DE 33 pp. 1-4; DE 54 ¶ 93.

But Liebowitz raised the costs of defense with knowingly spurious arguments, including: that Bradley was entitled to a jury trial on actual damages without any supporting evidence, *see* DE 33, DE 47 pp. 29-31; that the repost alone proved a CMI violation, DE 47 p. 33; and that a 2019 revision of Facebook's terms of service governed activity on the site in 2017, DE 36 p. 21 n. 2. When Analytical rebutted the latter argument with more proof that the 2017 terms applied, he further multiplied the proceedings by moving to strike that proof. DE 55 pp. 1-2, DE 60.

Liebowitz propelled the litigation forward until Analytical overcame Bradley's claims at summary judgment. Analytical proved its defense to the copyright infringement claim that it had "reposted the photograph pursuant to an express license." DE 63 p. 1. It also proved that Bradley

could not sustain his CMI claim with "no basis in the record to conclude that defendant removed CMI from the photograph." *Id.* p. 2. Though Analytical was ultimately vindicated, it could ill-afford to defend this litigation. It was administratively dissolved in 2020 when the costs of its defense rose too high. Declaration of Erin Karl ("Karl Dec.") ¶¶ 2, 17.

## Argument

**I.     Analytical should be awarded its attorneys' fees, costs, and expenses against Liebowitz pursuant to 28 U.S.C. § 1927 and the Court's inherent authority.**

Liebowitz should be required to pay the excess expenses he imposed on Analytical under 28 U.S.C. § 1927 and the Court's inherent authority. He was the controlling force behind every unfounded argument and abusive tactic. He filed baseless claims that he refused to withdraw when shown they had no merit. Believing that Analytical had deep pockets, he failed to relay its settlement offers to his client and pressed for a bigger payoff while its legal fees mounted. He never completed Bradley's initial disclosures and withheld responsive discovery until after Bradley's deposition. And his deceptive arguments further multiplied the time required to dispose of this frivolous action, which ultimately drove Analytical out of business.

"[L]itigants and their counsel are not free, simply because they can meet the requirements of a prima facie case, to disregard evidence that comes to light in discovery and to continue to press their case without any reasonable belief that" their claims have merit. *Blue v. U.S. Dep't of Army*, 914 F.2d 525, 537 (4th Cir. 1990). Liebowitz and his firm should be held liable for all fees, costs, and expenses caused by his bad faith conduct, to ensure deterrence and a full recovery.

**A.     Section 1927 and the Court's inherent authority both provide grounds for sanctions.**

Section 1927 and the Court's inherent authority provide grounds for sanctions against Liebowitz. "Any attorney … who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and

5

attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. The Court's inherent powers include the ability "to sanction a party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 382 (2013).

> [T]he only meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent power is … that awards under § 1927 are made only against attorneys or other persons authorized to practice before the courts while an award made under the court's inherent power may be made against an attorney, a party, or both.

*Oliveri v. Thompson*, 803 F.2d 1265, 1274 (2d Cir. 1986). Both Section 1927 and the Court's inherent powers "may permit awards of attorneys' fees against attorneys whose actions compromise standards of professional integrity and competence." *MR Crescent City, LLC v. Draper (In re Crescent City Estates, LLC)*, 558 F.3d 822, 831 (4th Cir. 2009). "Among their other affirmative duties, "[a]ttorneys are obligated to act with candor in presenting claims for judicial resolution." *Six v. Generations Fed. Credit Union*, 891 F.3d 508, 519 (4th Cir. 2018) (*quoting McCoy v. Court of Appeals of Wis., Dist. 1*, 488 U.S. 429, 440 (1988)). "To justify sanctions under § 1927, it is enough that [counsel] acted 'recklessly or in bad faith.'" *Mitchell v. Sonies*, No. 94-2528, 1995 U.S. App. LEXIS 13659, *4 (4th Cir. 1995) (*quoting In re Akros Installations*, 834 F.2d 1526, 1532 (9th Cir. 1985)); *see Sanford v. Virginia*, 689 F. Supp. 2d 802, 807-10 (E.D. Va. 2010) (construing *Sonies* among other cases). An attorney who proceeds on a claim with knowledge that it is meritless acts in bad faith. *Salvin v. Am. Nat'l Ins. Co.*, 281 Fed. Appx. 222, 225 (4th Cir. 2008). An attorney multiplies the proceedings "simply by failing to dismiss a claim [] when it becomes apparent that the claim is meritless." *Id.* at 226. Filing or opposing a motion for summary judgment, "well after [counsel] knew that evidentiary support for the allegations would not be forthcoming," also supports Section 1927 sanctions. *Sweetland v. Bank of Am. Corp.*, 241 Fed. Appx. 92, 97 (4th Cir. 2007).

"A finding of bad faith is warranted where an attorney knowingly or recklessly raises a

frivolous argument[.]" *Sanders v. Tyco Elecs. Corp.*, 235 F.R.D. 315, 324 n. 3 (W.D.N.C. 2006) (internal quotations omitted). "Courts may find bad faith where an attorney engages in reckless behavior that demonstrates a conscious disregard for a foreseeable risk that proceedings will be unreasonably and vexatiously multiplied." *In re AmeriLink, Ltd.*, No. 5:14-cv-236-F, 2015 U.S. Dist. LEXIS 89811, *5 p. 3 (E.D.N.C. July 10, 2015) (internal quotation omitted), *aff'd sub nom. Nakell v. Barth*, 648 Fed. Appx. 324 (4th Cir. 2016). "[B]ad faith turns not on the attorney's subjective intent, but on the attorney's objective conduct." *Dalton v. Premier Behavioral Solutions, Inc.*, No. 7:05-CV-30-FL, 2007 U.S. Dist. LEXIS 113367, *12 (E.D.N.C. June 1, 2007) (*citing Amlong & Amlong, P.A. v. Denny's, Inc.*, 457 F.3d 1180, 1190 (11th Cir. 2006)).

Civil sanctions ordering counsel to pay fees and costs are compensatory, not punitive. *See Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017) (inherent powers); *Six*, 891 F.3d at 520 (Section 1927). In appropriate cases, the Court may "shift all of a party's fees, from either the start or some midpoint of a suit, in one fell swoop." *Goodyear*, 137 S. Ct. at 1187. "If a plaintiff initiates a case in complete bad faith, so that every cost of defense is attributable only to sanctioned behavior, the court may again make a blanket award." *Id.* at 1188. In such cases, "a court escapes the grind of segregating individual expense items … or even categories of such items [] like expert discovery[.]" *Id.* at 1189. No heightened evidentiary burden is required to show bad faith under either Section 1927 or the Court's inherent authority. *Six*, 891 F.3d at 518 n. 9. "A district court's decision to impose sanctions is entitled to 'substantial deference' because 'a district court is in the best position to review the factual circumstances and render an informed judgment as it is intimately involved with the case, the litigants, and the attorneys on a daily basis.'" *Newport News Holding Corp. v. Virtual City Vision, Inc.*, 650 F.3d 423, 443 (4th Cir. 2011) (*quoting Blue*, 914 F.2d at 538) (cleaned up).

7

**B.      Liebowitz litigated in bad faith that deserves sanction.**

Liebowitz's bad faith litigation conduct unjustifiably protracted the litigation and caused Analytical undue expense. He filed claims with no tenable basis, failed to convey settlement offers to Bradley, and further prolonged the litigation with unreasonable arguments.

**1.      Liebowitz should be sanctioned for failing to convey Analytical's settlement offers.**

Liebowitz actively obstructed potential compromise from the outset. He did not respond to Analytical's $500 offer of judgment or its counsel's invitation to engage in settlement discussions. DE 30-19 ¶¶ 20-23, DE 30-22, DE 31-5, DE 31-6 p. 3. His silence ran up Analytical's fees by forcing it to retain counsel and answer the complaint, and left Bradley at risk of paying those fees and recovering nothing. Then he sought to improve on the lapsed offer, employing his "broader strategy to use the burdens of litigation to extract settlements, even in frivolous or unmeritorious suits." *Usherson v. Bandshell Artist Mgmt.*, No. 19-cv-6368 (JMF), 2020 U.S. Dist. LEXIS 112368, *66 (S.D.N.Y. June 26, 2020), DE 27 p. 31 n. 5, DE 42 p. 45. Liebowitz initially demanded $5,500. DE 31-7; DE 54 ¶ 105; Booth Dec. ¶ 3. Three weeks later, he proposed to settle for $1,000, asked if the expired $500 offer was "still on the table," and explained that he had demanded $5,500 at first because "we thought her business [Analytical] was larger." Booth Dec. ¶ 5 & Exh. 1. He offered $500 the next day. *Id.* ¶ 6 & Exh. 1. Analytical explained that it expected to prevail and would accept an offer to pay all of its fees accrued to date, or it would seek its fees once it prevailed. *Id.*

Liebowitz acted in bad faith because he failed to tell Bradley about any of those offers, demands, and discussions for months. Bradley Dec. ¶¶12-24, DE 73 ¶¶ 5(d)-(e). He chose not to inform his client that his strategy exposed Bradley to the risk of an order to pay Analytical's attorneys' fees when it prevailed. *Id.*; Bradley Dec. ¶ 28. His retainer agreement informed Bradley that "[t]he Copyright Act includes a provision in which attorney's fees may be awarded

to prevailing plaintiffs," but not that the fee-shifting provision equally supports awards to prevailing defendants. Bradley Dec. ¶ 7, 11 & Exh. A; *see Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 523 (1994). Lulled into a false sense of security, Bradley testified that he chose to work with the firm because its contingency fee arrangement meant "I didn't have to worry about it," and "I don't have to put money up front." DE 29-2 pp. 82-84; *see* Bradley Dec. ¶¶ 11, 28.

Out of self-interest, Liebowitz sought not to protect Bradley's interests but to extract a quick settlement regardless of the merits of the claims. "Of course, it is an unpardonable sin for a lawyer to fail to advise a client of a settlement offer, and to make it worse, it seems likely that [Liebowitz] deliberately did that because he wanted a bigger fee than the [Rule 68] offer would have allowed." *Edouard v. Nikodemo Operating Corp.*, 481 F. Supp. 3d 90, 93 (E.D.N.Y. 2020). Liebowitz violated his ethical obligations as a member of the New York bar. *See* N.Y. Rul. Prof'l Resp. 1.4(a)(1)(iii) ("A lawyer shall … promptly inform the client of … material developments in the matter including settlement or plea offers."). He also failed to comply with the ethical standards governing practice in North Carolina that apply in this Court. *See* Local Civ. R. 83.1(i); N.C. RPC 1.4(a)(3) ("A lawyer shall … keep the client reasonably informed about the status of the matter"), *id.* 1.4(b) ("A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."); *id.* cmt [2] ("a lawyer who receives from opposing counsel an offer of settlement … must promptly inform the client of its substance unless the client has previously indicated that the proposal will be acceptable or unacceptable or has authorized the lawyer to accept or to reject the offer").

 "[W]here attempts to resolve the matter have been repudiated," a fees award is proper against those who "simply thumbed their noses at their legal obligations." *EMI April Music, Inc. v. Rodriguez*, 691 F. Supp. 2d 632, 637 (M.D.N.C. 2010) (granting fees award under Copyright

Act). Liebowitz's self-dealing and disregard for duty manifested the basest form of bad faith.

> No type of misbehavior by an attorney is more universally and categorically condemned, and is therefore more inherently in 'bad faith,' than the failure to communicate offers of settlement.

*Deadwyler v. Volkswagen of Am., Inc.*, 134 F.R.D. 128, 140 (W.D.N.C. 1991) (imposing sanctions under 28 U.S.C. § 1927 and the Court's inherent powers), *aff'd sub nom. Moore v. Volkswagen of Am., Inc.*, 966 F.2d 1443 (4th Cir. 1992).

> The absolute obligation to communicate, effectively and accurately, the terms of any offer of settlement for the client's decision is a duty which a lawyer owes to his adversaries and the court as well as his clients. Breach of this obligation should be viewed as "a blatant disregard of the rules and regulations which permit the judicial machinery to function smoothly."

*Id.* (*quoting Warner Bros., Inc. v. Dae Rim Trading, Inc.*, 877 F.2d 1120, 1128 (2d Cir. 1989)). Liebowitz's violation of those duties supports an award to Analytical of all reasonable fees and costs incurred after the date he failed to convey its $500 offer. *See Blowers v. Lerner*, No. 1:15-cv-889-GBL-MSN, 2016 U.S. Dist. LEXIS 118773, *42 (E.D. Va. Aug. 31, 2016), *aff'd in pertinent part sub nom. In re Francis*, 739 Fed. Appx. 184 (4th Cir. 2018). Because that offer came before Analytical retained counsel, its subsequent fees and costs are all compensable.

The offer was also better for Bradley than any relief he could have obtained at judgment, and likely would have been accepted had he been properly counseled. But a failure to convey a settlement offer warrants sanctions "[e]ven absent an apparent basis to believe that the offer would have led to the resolution of the case." *Id.* at *22 (*citing Deadwyler*, 134 F.R.D. at 240). That wrongful conduct is compounded when the plaintiff was "never meaningfully aware … of the possible consequences should the case be lost." *Deadwyler*, 134 F.R.D. at 240 (sanctioning class counsel who told class plaintiffs "there would be no risks or obligations"). Leaving Bradley in the dark about settlement offers, and his risks, multiplied this litigation in bad faith. *See Hernandez v. State Farm Lloyds*, No. DR-15-CV-92, 2017 U.S. Dist. LEXIS 215696, *24-26

(W.D. Tex. Jan. 20, 2017) (counsel "was keeping its clients in the dark for its own benefit").

**2.  Liebowitz should be sanctioned for raising bad faith claims and arguments.**

Neither of Bradley's claims was viable. The governing terms of service and the factual and legal predicates of fair use disposed of the infringement claim, and no CMI was conveyed with the photograph when Bradley posted it or when Analytical received it. Yet Liebowitz persisted in prosecuting the claims, resorting to red-herring arguments to keep the case alive.

It was frivolous to deny, when answering the counterclaims, that Bradley had posted the photograph using Facebook's Public setting, and that Facebook's terms of service then in effect provided: "When you publish content or information using the Public setting, it means that you are allowing everyone, including people off of Facebook, to access and use that information." DE 12 p. 12 ¶ 14 (providing hyperlink to those terms); DE 15 ¶ 14. Even after Analytical produced those terms, Liebowitz falsely asserted that they were not in Bradley's possession. DE 33-4 (Response No. 11), Booth Dec. ¶ 12. In his deposition, Bradley agreed that his conduct on Facebook was governed by the terms of service effective in 2017. *See* DE 29-2 pp. 21-22. After that concession, it was sheer bad faith to maintain that more recent terms of service governed. DE 36 at 13 n. 1, DE 38-10. "By refusing to voluntarily dismiss the case once its lack of merit became evident, [Liebowitz] protracted the litigation. [Analytical] was forced to continue with its discovery obligations, file a summary judgment motion, and respond to [Liebowitz's] opposition to that motion." *Salvin*, 281 Fed. Appx. at 226 (affirming sanctions imposed on plaintiff's counsel who took positions contrary to plaintiff's deposition testimony). Liebowitz argued that "the controlling terms of service were those in effect at the time this lawsuit was filed on June 18, 2019," not at the time Bradley posted the photograph in 2017. DE 36 p. 21 n. 2, DE 47 p. 14 n. 2, DE 54 ¶ 11. He offered no support for that argument, never even quoting from the terms that he claimed "controlled." Instead he cited and produced only a more recent July 2019 revision. DE

36 p. 21, DE 38-10 p. 11, DE 47 pp. 14-15. His senseless reliance on the wrong Facebook policies raised the costs of defense. When Analytical rebutted his argument by showing what Facebook's legal department identified as the applicable terms at the given time, Liebowitz mischaracterized the rebuttal as an improper attempt to introduce a new witness and asked the Court to strike, requiring further motion practice. DE 55 pp. 1-2, DE 58, DE 60.

Liebowitz knew well that he had no basis to represent that the Facebook terms of service effective in mid-2019 governed the parties' conduct in 2017. *See* DE 54 ¶¶ 10-14, DE 47 p. 14 & n. 2. On June 3, 2019, fifteen days before filing suit, in a presentation on "Protecting Your Copyrights in the Age of Social Media" at a conference for photographers, he displayed and quoted the text of ¶ 2(1) of the pre-2018 terms verbatim, emphasizing: "It's very important that you guys understand, when you use social media, what the terms of service are. So, when you use social media, you still own the copyright, but read the terms of services to see about certain licenses you grant when you post on social media." Booth Dec. ¶ 10 & Exh. 4. And as he further recognized there, such licenses are a function of the terms of service effective before, not after, a given post: "*when you sign up for these sites*, there's actually licenses that are granted to the social media sites *when you sign up*, so it's very important to know your rights." *Id*. (emphasis added). His contrary arguments about the 2019 terms were fabricated in bad faith.

The "dearth of evidence that Plaintiff suffered actual damages" also supports a finding of bad faith. *Stern v. Does*, 978 F. Supp. 2d 1031, 1050 (C.D. Cal. 2011) ("The value of Plaintiff's copyright was not impaired."); *see id.* at 1051 ("Because Plaintiff had no compensable damages and no reason to seek injunctive relief, the Court concludes that he brought his copyright claim in bad faith."), *aff'd sub. nom Stern v. Weinstein*, 512 Fed. Appx. 701 (9th Cir. 2013). Liebowitz admitted that the photographs in the six copyright actions he pursued in this District, including

Bradley's photograph, were "of modest value." ECF No. 16, Response to Order to Show Cause ¶ 6, *Masi v. Mythical Entm't*, No. 5:19-CV-438-FL (E.D.N.C. filed Nov. 13, 2019). Even that assessment proved overly generous. He had no evidence that Bradley suffered any market harm or other damages, or that his photograph had any market value at all; Bradley has never sold or licensed it, or any other photograph, for financial benefit. DE 33-4 (Responses 26, 28, 32), DE 54 ¶¶ 2, 66-68, 92-95. Liebowitz ignored a $500 Rule 68 offer and demanded $5,500, only to argue that Bradley might have obtained a $50 fee for the use. DE 47 pp. 23 & 31. Litigating over such unvalued work betrays an improper, opportunistic motive. *See Collins v. Volz*, No. 12-cv-45, 2013 U.S. Dist. LEXIS 62273, *6 (W.D.N.C. Apr. 29, 2013) (awarding fees against copyright plaintiff who brought suit "over property which she herself valued at only $440"). Liebowitz maintained his extensive "history of unsubstantiated and outsized demands," and of spurning settlement offers beyond the maximum recovery available, "prolonging litigation in pursuit of an unjustifiably inflated claim." *Otto v. Hearst Commc'ns, Inc.*, No. 17-cv-4712, 2020 U.S. Dist. LEXIS 12246, *10-12 (S.D.N.Y. Jan. 23, 2020) (seeking $125,000 for photograph worth $100).[1]

Liebowitz also raised a specious argument that Bradley had a right to reach a jury on the issue of damages, insisting that "pecuniary harm is <u>not</u> a prerequisite to sustaining a copyright infringement claim." DE 47 p. 30. But that is only true if the plaintiff is eligible for statutory damages, unlike Bradley, or if the defendant has recoverable profits, unlike Analytical. *See* DE 33 pp. 3, 6-8. Because actual damages are purely compensatory, a copyright plaintiff who can

---

[1] *See also Boesen v. United Sports Publ'ns, Ltd.*, No. 20-cv-1552, 2021 U.S. Dist. LEXIS 57706, *10 (S.D.N.Y. Mar. 25, 2021), *Mustard v. InfoWars, LLC*, No. 20-cv-485, 2020 U.S. Dist. LEXIS 200258, *2-5 (S.D.N.Y. Oct. 27, 2020); *Sadowski v. Davis*, No. 20-cv-2244, 2020 U.S. Dist. LEXIS 107790, *4-5 (S.D.N.Y. June 19, 2020); *Seidman v. Authentic Brands Grp. LLC*, No. 19-cv-8343, 2020 U.S. Dist. LEXIS 70418, *2 & 19 (S.D.N.Y. Apr. 21, 2020); *Sadowski v. JSN Global Media, Inc.*, No. 18-cv-1392, 2018 U.S. Dist. LEXIS 205365, *2 (S.D.N.Y. Dec. 3, 2018); *Pereira v. 3072541 Can., Inc.*, No. 17-cv-6945, 2018 U.S. Dist. LEXIS 195406, *2-3 (S.D.N.Y. Nov. 15, 2018).

recover only actual damages must demonstrate some such harm. "To survive summary judgment of an actual damages claim, a copyright holder must show that the thing taken had a fair market value." *Dash v. Mayweather*, 731 F.3d 303, 318-19 (4th Cir. 2013). Liebowitz was well aware of that basic legal precept. His law firm's website informs prospective clients: "You may receive actual damages and profits. However, calculating these requires evidence of licensing history, the market value, and any earnings received by the accused because of the infringement." Booth Dec. ¶ 13 & Exh. 5. So it was frivolous to demand that a jury weigh damages that no evidence supported. Demanding it long after his Rule 26 disclosure violation precluded any recovery was the epitome of hubris and bad faith. DE 33.

It was also an act of bad faith for Liebowitz to contend that Analytical had removed CMI from Bradley's photograph, after Analytical showed that it was received with no CMI attached. DE 27 pp. 36-37; *see* DE 30-21. Liebowitz submitted a response that did not dispute that Analytical received the photograph via Facebook Messenger on December 14, 2017. DE 54 ¶ 49. Though it was obvious from the face of the message that it conveyed no CMI, and that that was the first time Analytical saw the photograph, he purported to dispute those facts. *Id.* ¶¶ 50-51. Liebowitz's argument that Bradley had "established distribution of the infringed work containing altered CMI" ignored conclusive evidence that no such alteration was done *by Analytical*, so Analytical could not be liable. DE 47 p. 33 (quotation omitted).

Liebowitz, of all people, must have appreciated Analytical's showing that his claims were specious. He was America's busiest copyright lawyer before he was sanctioned in *Usherson*. No attorney with his experience could put forth his claims and arguments in good faith. *See Bechler v. MVP Grp. Int'l, Inc.*, No. 16-cv-8837, 2021 U.S. Dist. LEXIS 41874, *16 (S.D.N.Y. Mar. 5, 2021) ("this is not counsel's first rodeo. … To the contrary [Liebowitz], having filed more than

1,200 copyright cases in this district <u>alone</u> over the last four years, is intimately familiar with the law in this area.") (emphasis original) (citing *Usherson*); *Ward v. Consequence Holdings, Inc.*, No. 18-cv-1734, 2020 U.S. Dist. LEXIS 80499, *8 (S.D. Ill. May 7, 2020) ("based on the sheer volume of cases that Liebowitz has filed, the Court feels that he should know better by now").

Yet he often pursues infringement claims against valid license holders, as he did here.[2] Time and again, Liebowitz has sued downstream users for infringement on behalf of clients who had provided their works to the defendant or the general public for unrestricted use, via Facebook and elsewhere.[3] With his firsthand knowledge of the relevant case law, it was mendacious for Liebowitz to deny that Analytical's Facebook use of a photograph that Bradley publicly posted on Facebook was both licensed and a fair use. The infringement claim hinged on Liebowitz's position that the repost of the photograph "failed to" use Facebook's "share functionality." DE 36 pp. 9, 21-23, DE 37 ¶ 28, DE 47 pp. 15-16, DE 54 ¶ 14. Bradley's self-serving affidavit was the sole support that Liebowitz offered for his insistence that the license in

---

[2] *See Bechler*; *Craig v. PopMatters Media, Inc.*, 448 F. Supp. 3d 844, 847 (N.D. Ill. 2020); *Adlife Mktg. & Commc'ns Co. v. Popsugar, Inc.*, No. 19-cv-297, 2020 U.S. Dist. LEXIS 52752, *2 (N.D. Cal. Mar. 26, 2020); *Colwell v. Eleven Creative Servs., Inc.*, No. 18-cv-2784, 2020 U.S. Dist. LEXIS 12412, *1-2 (D. Colo. Jan. 26, 2020); *Sands v. Bauer Media Grp. USA, LLC*, No. 17-cv-9215, 2019 U.S. Dist. LEXIS 160421 (S.D.N.Y. Sept. 18, 2019); *Rice v. NBCUniversal Media LLC*, No. 19-cv-447, 2019 U.S. Dist. LEXIS 114690, *2-3 (S.D.N.Y. July 10, 2019); *Zuma Press, Inc. v. Getty Images (US), Inc.*, No. 16-cv-6110, 2019 U.S. Dist. LEXIS 109967 (S.D.N.Y. July 1, 2019), *aff'd*, No. 19-3029, 2021 U.S. App. LEXIS 6139 (2d Cir. Mar. 3, 2021).
[3] *See Castle v. Kingsport Publ'g Corp.*, No. 19-cv-92, 2020 U.S. Dist. LEXIS 233919 (E.D. Tenn. Dec. 14, 2020) (finding fair use of photograph that plaintiff posted on Facebook and distributed in person); *Boesen v. United Sports Publ'ns, Ltd.*, No. 20-CV-1552, 2020 U.S. Dist. LEXIS 203682, *13 (E.D.N.Y. Nov. 2, 2020) (finding fair use of photograph that plaintiff posted on Facebook and his website); *Kanongataa v. Am. Broad. Cos., Inc.*, No. 16-cv-07382, 2017 U.S. Dist. LEXIS 169534, *2 (S.D.N.Y. Oct. 4, 2017) (awarding Section 505 fees against a father who posted a video live-stream of his son's birth on Facebook using the Public setting, under the terms of service in effect from 2015 to 2018, then sued several media companies for posting fair-use excerpts of the footage); *cf. Reynolds v. Hearst Commc'ns, Inc.*, No. 17-cv-6720-DLC, 2018 U.S. Dist. LEXIS 35453, *1-2 & 8 (S.D.N.Y. Mar. 5, 2018) (requiring cost bond; plaintiff provided his photograph of Melania Trump with no apparent restriction to the Trump campaign, which provided it to *Elle* magazine requesting its use online, over which he brought suit).

Facebook's terms of service applied only to use of Facebook's Share button. DE 36 p. 6 (*citing* DE 37 ¶ 28 (*citing* DE 37-1 ¶ 27 & DE 38-10)). He also argued that the license was "ambiguous as to whether it actually covers photographs." DE 36 p. 23, DE 47 pp. 16-17. The Court rightly found these arguments unavailing. DE 63 p. 2; *see* DE 43 pp. 19-20.

Analytical began to flag the complaint's flaws for Liebowitz even before it engaged counsel, explaining: "The photo was a viral meme and we thought that sharing it on Facebook was permitted. We didn't remove or alter any copyright management information. Nothing identified Mr. Bradley as the photographer when we came across the photo." DE 30-22; Karl Dec. ¶ 4. It further spelled out the issues in its defenses and counterclaims and the Rule 26(f) report. DE 12 pp. 5, 7, 10, 12 & 15; DE 18 pp. 1-3. Liebowitz took no heed, even when Analytical produced conclusive evidence of the license and the absence of CMI in its initial discovery responses on November 22, 2019. DE 30-1, DE 30-21, Booth Dec. ¶¶ 11-12. At his December 12, 2019 deposition, when shown the Facebook terms of service effective in 2017, Bradley admitted that those terms governed his use of Facebook. DE 29-2 pp. 21-22. Liebowitz disregarded that testimony and baldly argued that later terms applied. At the February 17, 2020 mediation, Analytical again confronted him and Bradley with evidence fatal to their claims: proof that Analytical received the photograph without CMI, and the 2017 terms that showed its use was under license. Karl Dec. ¶ 11. Analytical implored him to dismiss the suit, or at least the CMI claim, and the claims for forms of damages barred by law. *Id.* Liebowitz refused to narrow the scope of the case, forcing Analytical to prove defenses that he knew he could not counter.

The first document in Analytical's production, stamped AG0001, gave conclusive proof of non-removal of CMI: the Facebook message transmitting the photograph to Analytical with no CMI and no reference to Bradley. DE 30-21; *see also* DE 30-19 ¶ 6, DE 30-24 p. 4

(Responses 2 & 3), Booth Dec. ¶ 11. With no countervailing evidence, Liebowitz frivolously objected that this dispositive evidence was "immaterial and irrelevant," and purported to dispute the facial proof that the message conveyed no CMI. DE 54 ¶¶ 49, 51. Because the evidence did not convince him to withdraw the claim, Analytical further developed proof that CMI was also not attached to the photograph as underlying metadata. Bradley testified at his December 12, 2019 deposition that "metadata on the photograph itself" identified him as the photographer, and that he had provided the metadata to Liebowitz. DE 29-2 p. 23:5-16. An associate in Liebowitz's firm had said that all non-privileged responsive documents would be produced before the deposition, but the requested metadata was withheld until January 23, 2020, more than a month later. Booth Dec. ¶¶ 15-18, DE 33-5, DE 33-6. That metadata documentation disproved any claim of CMI within the photograph because, as Liebowitz ultimately conceded, it did not include any author or copyright information. DE 29-5, DE 54 ¶ 113, DE 27 p. 34 n. 6.

An attorney may multiply the proceedings "simply by failing to dismiss a claim [] when it becomes apparent that the claim is meritless." *Salvin*, 281 Fed. Appx. at 226 (affirming Section 1927 sanctions); *Sweetland*, 241 Fed. Appx. at 97 (same, where attorney proceeded "despite [his] apparent recognition of his lack of substantiating evidence to support his initial allegations"). Under the Court's inherent authority and Section 1927, counsel may be sanctioned "for raising objections in bad faith," with reason to know those objections are baseless. *Six*, 891 F.3d at 521.

Liebowitz did not make a sufficient investigation into the facts underlying Bradley's claims. There was no pre-suit communication with Analytical. DE 30-19 ¶ 15, DE 54 ¶ 65. He ignored repeated warnings that the claims were unfounded, seeing no incentive to evaluate the merits of a case with sound defenses like this one and weed it out of his settlement mill. DE 73 ¶ 5(e). This was one of the more than 750 copyright cases he filed in 2019. Bill Donahue,

*'Copyright Troll' Lawyer Finally Slows Down*, Law360 (Jan. 22, 2021), https://www.law360.com/articles/1347215. His firm filed more than 2500 in four and a half years. DE 38-11 ¶ 4. In May 2020 he had more than 500 pending. *Mondragon v. Nosrak*, No. 19-cv-1437, 2020 U.S. Dist. LEXIS 82934, *32 n.8 (D. Colo. May 11, 2020). But he "should not be filing hundreds of lawsuits in different courts around the country" because he "cannot competently prosecute the number of cases [he] is filing." *Id.* *34-35. That made him "a clear and present danger to the fair and efficient administration of justice." *Id.* n. 2.

Liebowitz's stubborn adherence to untenable claims exacerbated the costs of defense. "A copyright troll plays a numbers game in which it targets hundreds or thousands of defendants seeking quick settlements priced just low enough that it is less expensive for the defendant to pay the troll rather than defend the claim," and Liebowitz's "litigation strategy … fits squarely within the definition of a copyright troll." *McDermott v. Monday Monday, LLC*, No. 17-cv-9230, 2018 U.S. Dist. LEXIS 184049, *5 (S.D.N.Y. Oct. 26, 2018). As the *Usherson* court found, Liebowitz and his firm's bad-faith actions are "part of their broader strategy to use the burdens of litigation to extract settlements, even in frivolous or unmeritorious suits." DE 27 p. 31 n. 5, DE 42 p. 45. He rode out this lawsuit, gambling as usual that a merits dismissal would bring at worst a Section 505 award that Bradley alone would face, after failing to warn him of that likely consequence.[4] His ruse of claiming infringement of a photograph freely shared under license, and alleging CMI removal where no CMI existed, was a bait-and-switch misuse of copyright. Similar sue-and-

---

[4] *See generally Berg v. M&F W. Prods., Inc.*, No. 6:19-cv-418-JDK, 2021 U.S. Dist. LEXIS 119524, *19 (E.D. Tex. June 28, 2021) (reprimanding Liebowitz under Rule 11 while awarding $483,808.20 in fees and costs against his client under Section 505); *Craig v. PopMatters Media, Inc.*, 448 F. Supp. 3d 844, 849 (N.D. Ill. 2020) (awarding $24,040.45 under Section 505 against client; declining to reach alternative argument for 28 U.S.C. § 1927 sanctions against Liebowitz); *Kanongataa*, 2017 U.S. Dist. LEXIS 169534, *6 & n. 15 (awarding $121,469 under Section 505 against plaintiff while "express[ing] no view on whether and to what extent the plaintiff may have recourse against [Liebowitz] … in view of any attorney advice to pursue this case").

settle copyright-troll strategies have been found to "meet the elements of a fraudulent scheme." *United States v. Hansmeier*, 988 F.3d 428, 438 (8th Cir. 2021) (copyright attorneys "directed agents to make the copyrighted works available on websites known for illegal downloading … to ensure that they would have a pool of potential copyright infringers to target through litigation").

His tactics require sanctions to compensate Analytical in full. "'[W]e must remember that it wasn't the defendant who chose to litigate.'" *Diamond Star*, 30 F.3d at 506 (*quoting Cohen v. Va. Elec. & Power Co.*, 617 F. Supp. 619, 623 (E.D. Va. 1985)). "'It is increasingly recognized that the person who forces another to engage counsel to vindicate, or defend, a right should bear the expense of such engagement and not his successful opponent.'" *Fogerty*, 510 U.S. at 529 (*quoting* W. Strauss, *Damage Provisions of the Copyright Law*, Study No. 22 p. 31 (H. Judiciary Comm. Print 1960)). "Defendants should not be required to bear the costs of responding to frivolous claims and irrelevant allegations or to counter improper and unreasonable arguments." *Nexus Servs. v. Moran*, No. 16-cv-35, 2018 U.S. Dist. LEXIS 47911, *40 (W.D. Va. Mar. 23, 2018), *aff'd*, 750 Fed. Appx. 241 (4th Cir. 2019).

> Indeed, the need for a fee award is greater for prevailing defendants than it is for prevailing plaintiffs, as prevailing defendants obtain no affirmative relief from a victory on the merits. Without the prospect of obtaining attorney's fees, a defendant's costs of vindicating its rights would often, if not always, exceed the private benefit to the defendant, and thus defendants would be more inclined to settle.

*Humphreys & Partners, L.P. v. Lessard Design, Inc.*, 152 F. Supp. 3d 503, 513 (E.D. Va. 2015).

## II. Analytical's request for attorneys' fees is reasonable and well supported.

The Court should grant Analytical's request for attorneys' fees in full, pursuant to the twelve factors for determining the reasonableness of hours and rates set forth in *Johnson v. Georgia Highway Express Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), as adopted in *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 (4th Cir. 1978). *See Sweetland*, 241 Fed. Appx. at 94-95

(*Johnson* factors applied to Section 1927 sanctions); *Harvey v. CNN, Inc.*, Civ. A. No. RDB-20-3068, 2021 U.S. Dist. LEXIS 85245, *2-4 (D. Md. May 4, 2021) (same for sanctions pursuant to Section 1927 and the Court's inherent authority). The factors are:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions presented; (3) the skill required to properly perform the legal services; (4) the attorneys' opportunity costs; (5) the customary fee for like work; (6) the attorneys' expectations at the outset of the litigation; (7) the time limitations imposed by the client or case; (8) the amount in controversy and results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case within the legal community; (11) the nature and length of the relationship and (12) awards in similar cases.

*Barber*, 577 F.2d at 226 n. 28. Each relevant factor supports Analytical's request in full.

**A.      The time and labor expended was reasonable as required to defend this case.**

Analytical incurred all of its attorneys' fees because Liebowitz chose to withhold basic information from his client, including its settlement offers and the fees it stood to recover upon prevailing. This case required substantial expense of time and labor from Analytical's attorneys to secure summary judgment. The complaint raised two distinct claims under the Copyright Act. Liebowitz propounded 42 requests for production and 18 interrogatories. *See* DE 56-3, DE 56-4. His pursuit of Analytical's profits required Analytical to seek third-party discovery from its customers to foreclose the claim. DE 27 p. 33, DE 30-19 ¶¶ 11-14, DE 30-24 (Responses 7-8 & 14-15), DE 30-25, DE 33-3 p. 4. His failure to disclose a basis for damages made Analytical's expert witness frame his analysis around missing facts. DE 33 pp. 9-10, DE 33-3 p. 4. Liebowitz's refusal to concede the facts of the license defense obligated Analytical to substantiate elaborate fair use and misuse defenses as well. *See* DE 27 pp. 19-32. His obfuscation of the applicable Facebook terms of service multiplied Analytical's workload at summary judgment, requiring a second statement of material facts and a surreply to establish the correct, governing terms. Booth Dec. ¶¶ 8 & 18, DE 50, DE 60.

The experience of Analytical's attorneys in copyright law yielded a reduction of the time required that makes the fee request all the more reasonable. Lead counsel Dan Booth has more than 16 years of litigation experience, with his practice focused on intellectual property law since 2007, and has served as lead counsel in dozens of copyright disputes, many involving claims over online uses of photographic works. Booth Dec. ¶ 21. Local counsel Chris Thomas began his practice 17 years ago and concentrates in intellectual property rights and disputes concerning those rights. Declaration of Chris Thomas ¶ 4 ("Thomas Dec."). He is the chair of the North Carolina Bar Association Intellectual Property Law Section's copyright committee. *Id.* ¶ 6. He was awarded "Lawyer of the Year" in 2019 for his work in copyright law in Raleigh by *The Best Lawyers in America*; included in *The Best Lawyers in America* in the categories of intellectual property litigation from 2018 to 2021 and copyright law from 2019 to 2021, among others; listed in *Chambers USA: America's Leading Lawyers in Intellectual Property* from 2013 to 2020; and profiled in *Super Lawyers* as a "Top Rated Intellectual Property Litigation Attorney in Raleigh, NC" in 2021. *Id.* ¶ 7.

**B.     The novelty and difficulty of the issues support an award.**

Briefing the defense required legal research into specialized copyright doctrines in this Circuit and nationwide, and marshaling that precedent in a novel setting. Despite Facebook's ubiquity, no copyright case had construed the "allowing everyone" clause of its pre-2018 terms of service. And while Bradley's CMI argument rested on inapposite cases about "gutter credits," refuting it required an exhaustive survey of all relevant case law. The complexity and rigor of Analytical's legal arguments reflect the novel and difficult issues presented.

**C.     The skill required to perform the legal services supports an award.**

"Copyright infringement is a specialized area of the law." *Arista Records v. Tysinger*, 867 F. Supp. 345, 347 (M.D.N.C. 1994). Mr. Booth's and Mr. Thomas's "significant experience" in

the field was required to defend this action. *Id.*; Booth Dec. ¶¶ 21-22, Thomas Dec. ¶ 19. Counsel staffed the matter leanly and efficiently, allocating discrete responsibilities between the firms and professionals involved, who strove to avoid any unnecessary, duplicative, or unproductive hours, and ensured that the attorneys assigned to each task required were properly skilled. Booth Dec. ¶ 27, Thomas Dec. ¶ 19. Mr. Booth handled most of the substantive motion practice and discovery himself, conferring with local counsel as required, while Analytical's sole representative at both Mr. Bradley's deposition and the mediation was Mr. Thomas's then-associate Catherine Lawson. *Id.*

**D.     The attorneys' opportunity costs support an award.**

Defendants' lead counsel, a solo practitioner, was required to dedicate most of his time to this case at several stages of discovery and over several months of motion practice, in lieu of his other pending matters. Booth Dec. ¶ 29. The case also occupied substantial time for local counsel to the exclusion of other cases. Thomas Dec. ¶ 20. The fact that this case spanned two years and consumed 440.4 hours of counsel's time supports the reasonableness of an award at their regularly claimed rates. *See Superior Form Builders*, 881 F. Supp. at 1027.

**E.     The fees requested are customary for similar work.**

As set forth in the declarations of attorneys Booth, Thomas, and Timberlake, the time expended and hourly rates at issue are customary for similar copyright litigation disputes. These attorneys are highly experienced and qualified to confirm that the fees requested are customary. Analytical exercised billing judgment to ensure no unnecessary or excessive hours were included.

Liebowitz, who began practicing law in 2015, claims rates of $425 to 450 per hour. *Seelie v. Original Media Grp. LLC*, No. 19-cv-5643, 2020 U.S. Dist. LEXIS 5477, *13 (E.D.N.Y. Jan. 13, 2020), *Aberle v. GP Clubs, LLC*, No. A-19-CV-1066-RP, 2020 U.S. Dist. LEXIS 126126, *14 n.2 (W.D. Tex. July 17, 2020). Analytical's rates were reasonable by comparison. *See*

*Raleigh Wake Citizens Ass'n v. Wake City Bd. of Elections*, No. 5:15-cv-156-D, 2017 U.S. Dist. LEXIS 162673, *17-18 (E.D.N.C. Sept. 29, 2017) (comparing with rates of opposing party's counsel); *Swann v. Charlotte-Mecklenburg Bd. of Ed.*, 66 F.R.D. 483, 485 (W.D.N.C. 1975) (considering fees paid to opposing counsel). Lead counsel Dan Booth charged $425 per hour. Booth Dec. ¶ 22. Several other courts have approved attorneys' fees' awards for his services at comparable rates. *Id.* ¶ 23. Local counsel charged $425 per hour for partner Chris Thomas; $350 per hour for senior associate Catherine Lawson; $295 per hour for associate Sloan Carpenter; and $195 per hour for paralegal Tina Routh. *Id.* ¶ 25; Thomas Dec. ¶ 11.

"The Court may also consider professional surveys, such as the Report of the Economic Survey of the American Intellectual Property Law Association ('AIPLA'), in determining the reasonableness of billing rates." *Agio Int'l Co. v. Zhejiang Longda Force Co.*, No. 1:15-cv-192-MR, 2019 U.S. Dist. LEXIS 103384, *7 (W.D.N.C. June 20, 2019) (*citing Mathis v. Spears*, 857 F.2d 749, 755-56 (Fed. Cir. 1988)). *Accord Superior Form Builders*, 881 F. Supp. at 1027-28; *Newport News Holding Corp. v. Virtual City Vision, Inc.*, No. 3:08-cv-19, 2009 U.S. Dist. LEXIS 141814, *19 (E.D. Va. July 24, 2009), *aff'd*, 650 F.3d 423; *Aventis CropScience, N.V. v. Pioneer Hi-Bred Int'l, Inc.*, No. 1:00-cv-463, 2010 U.S. Dist. LEXIS 57337, *14 (M.D.N.C. June 8, 2010). The latest AIPLA survey confirms that counsel's rates are within the range typically charged by similarly experienced intellectual property attorneys. Booth Dec. ¶¶ 24-25 & Exh. 7.

## F. The attorneys' expectations at the outset of the litigation support the award request.

Counsel was paid at set hourly rates agreed to at the outset. When Liebowitz would not respond to settlement proposals and forced Analytical to incur fees, the defense set out to litigate in earnest and prevail on the merits. Booth Dec. ¶ 2. Analytical requested an award of its costs and fees in its answer, correctly anticipating that it would ultimately prevail. DE 12 p. 3. Lead counsel had faced Liebowitz in several prior cases and correctly anticipated a difficult case, due

to Liebowitz's chronic representation of claims unworthy of litigation and fitful compliance with the federal rules. Booth Dec. ¶ 30. His misconduct was "a harbinger for troubled litigation ahead." DE 16 p. 2. Yet at the outset counsel could not have anticipated his disqualification, or his failures to convey critical information that stood to cut the case short. Counsel expected that settlement offers would be forwarded. Those complicating factors further support an award.

**G.     The time limitations imposed in the case show that the request is reasonable.**

From the nature of the case, Analytical had to expend more time and effort defending Bradley's claims than Liebowitz had to spend to pursue it. To expedite the case and limit Liebowitz's proclivity for making defendants run up bills, Analytical proposed and complied with a brief schedule for discovery and dispositive motions. Its attorneys worked diligently to complete tasks within the deadlines set by the Court. Liebowitz exacerbated the time pressures of the case by failing to provide discovery, supplementing the delayed production only under threat of sanctions, and withholding responsive documents he had received from Bradley until after his deposition. Booth Dec. ¶¶ 14-17. He further prolonged the litigation with a meritless summary judgment motion and request to exclude, and dilatory responses to orders to cure and to show cause, and caused several stays related to his ultimate disqualification. *See* DE 62, DE 68, DE 71. The revelations since then that Liebowitz had gone rogue have only caused further expense.

**H.     Analytical's thorough success on the merits as the prevailing defendant, at the expense of sacrificing its business, supports an award.**

"[T]he most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *Doe v. Chao*, 435 F.3d 492, 506 (4th Cir. 2006). This request is reasonable given the amount in controversy and the results obtained. The complaint prayed for up to $25,000 in statutory damages, actual and punitive damages, and attorney's fees. DE 1 p. 5. Analytical's attorneys defeated Liebowitz's motion for partial summary judgment and secured

summary judgment dismissing both claims. DE 63. And all claims and counterclaims were so related that there is no practical distinction between time spent on them for this purpose.

Analytical's success was complete. Because that success was also Pyrrhic, interests of compensation and deterrence further support an award. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991) (sanctions awards under the courts' inherent power serve "the dual purpose of 'vindicating judicial authority … and making the prevailing party whole'") (*quoting Hutto v. Finney*, 437 U.S. 678, 689 n. 14 (1978)). The tragedy of this bogus copyright lawsuit is that it forced Analytical's owner and sole proprietor Lt. Col. Erin Karl ("Karl") to sell off Analytical's valuable educational intellectual property. Karl Dec. ¶¶ 2, 17; DE 28 ¶¶ 46, 48. Analytical's founder Robin Finley, Karl's mother, developed its core grammar curriculum over her 34 years as a language arts instructor. Karl Dec. ¶ 13. Battling cancer, Ms. Finley made Karl the majority owner in 2009 and passed away in 2015. *Id.*; DE 30-19 ¶ 3. Karl ran Analytical out of her basement in Raleigh. DE 30-19 ¶ 2. When this case began, her Air Force Reserve service involved active drilling for a total of 45 to 50 days per year. Karl Dec. ¶ 16; DE 18 ¶ H. The legal fees forced Karl to resume full-time active duty in January 2020. Karl Dec. ¶ 16. Analytical also ran a GoFundMe campaign to fund the defense, raising more than $37,000 to date. *Id.* ¶ 14; https://gofund.me/99ef48cd. As Karl explained on GoFundMe, "Defending my small business against this lawsuit will cost thousands of dollars. … I simply can't absorb these costs, and I want desperately to keep publishing the amazing curriculum my mother authored all those years ago." *Id.* When that still could not cover the costs, she had to sell off Analytical's intellectual property to keep paying the legal bills, transferring ownership to Math-U-See, Inc./Demme Learning in July 2020 so that her mother's educational legacy would be perpetuated, then dissolved the company and began to wind it down. Karl Dec. ¶ 17; DE 54 ¶¶ 46, 48, 78.

Attorneys' fees can only partly remedy the harm this case caused. Analytical sacrificed its business to stand up on principle against invalid claims and unreasonable arguments from an attorney who deceived even his own client. It cannot be made fully whole again, but Analytical must be fully compensated, and counsel in the Liebowitz mold must be deterred from bringing and maintaining claims with no merit that drive small companies like Analytical out of business. *See Superior Form Builders v. Dan Chase Taxidermy Supply Co., Inc.*, 881 F. Supp. 1021, 1024 (E.D. Va. 1994) (finding a need for compensation and deterrence where prevailing party was "a small businessman"), *aff'd*, 74 F.3d 488 (4th Cir. 1996).

**I.      The reputation, experience, and skill of Analytical's attorneys supports an award.**

As set forth in their supporting declarations, attorneys Booth and Thomas have significant experience in litigation and in copyright law, and they have well-regarded reputations in the community. Indeed, Analytical engaged its lead counsel because of his reputation and experience in copyright cases brought by Liebowitz and his peers. Karl Dec. ¶ 6.

**J.      The undesirability of the case within the legal community supports an award.**

Analytical lacked the financial resources to pay for a defense that lasted longer than a few months. Few lawyers in any community would want to defend federal litigation against a notorious attorney and be forced to carry a substantial balance for years at risk of nonpayment.

**K.      The nature and length of the professional relationship between the attorneys and Analytical supports an award.**

This is Analytical's first lawsuit and its first matter represented by this counsel. Growing out of this representation, lead counsel also represented Analytical in taking measures to protect its intellectual property, and in transferring that property to its current owner.

**L.      Attorneys' fee awards in similar cases show that Analytical's request is reasonable.**

The fees and costs requested in this case are reasonable compared with amounts awarded

in other recent copyright actions in this Circuit. *See Silicon Knights, Inc. v. Epic Games, Inc.*, 917 F. Supp. 2d 503, 534 (E.D.N.C. 2012) ($2,091,722.833 in fees and $277,852.13 in costs awarded under Copyright Act and other statutes); ECF No. 414, *United Supreme Council v. United Supreme Council of the Ancient Accepted Scottish Rite for the 33 Degree of Masonry*, No. 16-cv-1103 (E.D. Va. Aug. 16, 2019) (same, for $245,040.40 in fees and $13,424.98 in costs); *Allora, LLC v. Cambridge Builders of Johnston County, Inc.*, No. 5:08-CV-590-H, 2012 U.S. Dist. LEXIS 193582, *7 (E.D.N.C. Sept. 27, 2012), *aff'd*, 532 Fed. Appx. 349 (4th Cir. 2012) ($209,027.62 in fees under Copyright Act). *See also Six*, 891 F.3d at 519 (affirming $150,000 in sanctions against counsel pursuant to Section 1927 and the district court's inherent authority in RICO Act case); *Design Res., Inc. v. Leather Indus. of Am., Inc.*, No. 1:10CV157, 2016 U.S. Dis. LEXIS 134319 (M.D.N.C. Sept. 29, 2016) (awarding $524,712 in attorneys' fees to defendants in Lanham Act case); Order, ECF No. 97, *Quill Ink Books Ltd. v. Soto*, Civ. No. 19-cv-0476-LO-MSN (E.D. Va. July 23, 2020) (awarding copyright defendant sanctions at $400 per hour).

The fees requested are also reasonable compared to amounts awarded in similar cases against Liebowitz and his firm as sanctions, or against his clients under Section 505. *See* DE 42 p. 55 (*Usherson*) ($103,517.49 award against Liebowitz and his firm); *Craig v. UMG Recordings, Inc.*, No. 16-cv-5439, 2019 U.S. Dist. LEXIS 113771, *16-19 (S.D.N.Y. July 9, 2019) ($64,691 in fees and $33,841.63 in costs awarded pursuant to Section 1927); *Rock v. Enfants Riches Deprimes, LLC*, No. 17-cv-2618, 2020 U.S. Dist. LEXIS 15081, *18 (S.D.N.Y. Jan. 29, 2020) ($90,008.13 award against plaintiff and $10,000 sanctions against Liebowitz and his firm).

## IV. Analytical should be reimbursed for all of its attorney's fees, costs, and expenses.

Analytical should be awarded every bit of its "excess costs, expenses, and attorney's fees reasonably incurred" because of Liebowitz's bad faith conduct. 28 U.S.C. § 1927.

As noted above, GoFundMe donors substantially contributed to funding the defense. Karl

Dec. ¶ 14. In gratitude, Analytical plans to offer to reimburse the donors if its request is awarded, though their donations were not contingent. *Id*. ¶ 15. The donations should not limit its recovery in any way. "Put simply, a litigant's good luck in having the financial wherewithal to defend against a frivolous suit—whether because of insurance, a GoFundMe campaign, a rich uncle, or a pro bono lawyer—does not automatically immunize the losing party from the consequences of her actions." *Hughes v. Benjamin*, No. 17-cv-6493, 2020 U.S. Dist. LEXIS 139698, *12-13 (S.D.N.Y. Aug. 5, 2020) (awarding fees to prevailing copyright defendant whose GoFundMe campaign more than covered his defense fees); *see Hoffman v. Oakley*, 184 N.C. App. 677, 685-86, 647 S.E. 2d 117 (2007) (affirming cost award to defendants whose insurer had paid all costs incurred), *Charter Oak Fire Ins. Co. v. Am. Capital, Ltd.*, 760 Fed. Appx. 224, 228-29 (4th Cir. 2019) (same, for fees and costs paid by codefendants). "In other contexts, courts have consistently held that the fact that a third party has paid some or all of the prevailing party's legal fees does not bar a recovery of statutory attorney's fees." *ABC, Inc. v. Primetime 24, J.V.*, 67 F. Supp. 2d 558, 562 (M.D.N.C. 1999) (collecting cases), *aff'd*, 232 F.3d 886 (4th Cir. 2000); *accord Morrison v. C.I.R.*, 565 F.3d 658 (9th Cir. 2009). The GoFundMe donations will not represent a windfall for Analytical and should not weigh against or reduce its recovery. Liebowitz and his firm should bear the toll they imposed, not Analytical or its supporters.

The recovery should include all costs taxable for the prevailing party under the Copyright Act, pursuant to 17 U.S.C. § 505 and Fed. R. Civ. P. 54(d), in the six categories specified in 28 U.S.C. § 1920. *See Rimini St., Inc. v. Oracle USA, Inc.*, 139 S. Ct. 873, 878 (2019); *Silicon Knights*, 917 F. Supp. 2d at 510. Those allowable costs include the $611.40 deposition reporter's fee and transcript charges, pursuant to 28 U.S.C. § 1920(2) and LR 54.1(c)(1)(A), *see* DE 29-2, and Analytical's $150 share of the mediator's fee, *see Pelczynski v. Orange Lake Country Club,*

*Inc.*, No. 11-cv-1829, 2014 U.S. Dist. LEXIS 68756, *30-31 (D.S.C. May 20, 2014) ("half of the payment to the mediator" is recoverable). Booth Dec. ¶ 32 & Exh. 9. "Unless a federal statute, these rules, or a court order provides otherwise," such costs "should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1).

And sanctions pursuant to Section 1927 and the Court's inherent authority are assessable for all expenses that followed from the sanctionable conduct, and are not limited to taxable costs. *See Blowers v. Lerner*, No. 1:15-cv-889-GBL-MSN, 2017 U.S. Dist. LEXIS 149772, *16-17, 22 & n.3 (E.D. Va. Sept. 14, 2017) (distinguishing expenses under Section 1927 from Section 1920 costs); *cf. Assocs. Against Outlier Fraud v. Huron Consulting Grp., Inc.*, 817 F.3d 433, 436 (2d Cir. 2016) (distinguishing expenses under False Claims Act from Section 1920 costs). Thus, while the Supreme Court has held that expert witness litigation expenses are not recoverable as "costs" under the Copyright Act, *Rimini St.*, 139 S. Ct. at 877, it has also authorized courts exercising their "inherent sanctioning authority" to award "expenses—say, for expert discovery—[that] were incurred solely because of a litigant's bad-faith conduct," *Goodyear Tire*, 137 S. Ct. at 1187-88. Accordingly, citing the *Rimini Street* decision, the Southern District of New York awarded a prevailing defendant its attorneys' fees under the Copyright Act and then, pursuant to Section 1927 and its inherent authority, awarded expert expenses and other costs that would not have been taxable under the Copyright Act alone. *See PaySys Int'l, Inc. v. Atos SE*, No. 14-cv-10105, 2019 U.S. Dist. LEXIS 79150, *26-27, *30-33 (S.D.N.Y. May 9, 2019).

Therefore, all costs and expenses imposed by Liebowitz's bad faith should be recoverable, including its expert fees, and the legal research and duplication costs itemized in the firms' billing statements. Analytical's expert witness Dr. Aram Sinnreich charged $300 per hour, substantially discounted from his standard rate of $500 per hour, and billed a total of $5,190 for

17.3 hours of work. *See* DE 29-14 p. 6; Booth Dec. ¶ 32 & Exh. 9; Thomas Dec. ¶ 22.

In total, Analytical should be awarded $6,689.32 in costs and expenses.

## V.     Sanctions should be entered jointly and severally against Liebowitz and his firm.

The sanctions awarded against Liebowitz should also run jointly and severally against his firm Liebowitz Law Firm PLLC because their "actions were indistinguishable." *Craig v. UMG Recordings, Inc.*, 380 F. Supp. 3d 324, 339 (S.D.N.Y. 2019) (sanctioning both Liebowitz and his firm jointly and severally pursuant to Section 1927 and the Court's inherent authority); *Rock*, 2020 U.S. Dist. LEXIS 15081, *9 (same); *Usherson*, DE 42 p. 26 (same; also under Rule 16); *Ward*, 2020 U.S. Dist. LEXIS 80499, *11 (same; pursuant only to Court's inherent authority); *Adlife*, 2020 U.S. Dist. LEXIS 148755, *25-27 (same); *accord Six*, 891 F.3d at 518 (affirming sanctions against attorneys and their law firms jointly). Law firms and their attorneys alike are subject to sanctions under Section 1927 and pursuant to the Court's inherent powers. *See Enmon v. Prospect Capital Corp.*, 675 F.3d 138, 147-48 (2d Cir. 2012).

Their liability is for all of the "excess costs, expenses, and attorneys' fees" incurred since August 16, 2019, when Liebowitz refused to convey the settlement offer. 28 U.S.C. § 1927. He "multiplie[d] the proceedings … unreasonably and vexatiously" by continuing to prosecute the claims thereafter. *Id.*; *see Goodyear Tire*, 137 S. Ct. at 1187 ("The [inherent authority] award is then the sum total of the fees that, except for the misbehavior, would not have accrued."); *Dalton*, 2007 U.S. Dist. LEXIS 113367, *13-14; *AmeriLink*, 2015 U.S. Dist. LEXIS 89811, *8.

Analytical's $6,689.32 in costs and expenses detailed above, and the $177,801.10 in attorneys' fees detailed in the attached declarations of counsel and supporting exhibits, were imposed on Analytical by Liebowitz's bad-faith actions and should be recovered jointly and severally from Liebowitz and his firm.

Dated: July 8, 2021

Respectfully submitted,

Analytical Grammar, Inc.

By its attorneys:

DAN BOOTH LAW LLC

/s/  Dan Booth
Daniel G. Booth
60 Thoreau Street, #121
Concord, MA 01742
dan@danboothlaw.com
Local Civil Rule 83.1(e) Special Appearance

PARKER POE ADAMS & BERNSTEIN LLP

Christopher M. Thomas
N.C. State Bar No. 31834
christhomas@parkerpoe.com
PNC Plaza
301 Fayetteville Street, Suite 1400 (27601)
P.O. Box 389
Raleigh, North Carolina 27602-0389
Telephone: (919) 835-4626
Facsimile: (919) 834-4564
Local Civil Rule 83.1(d) Counsel