# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NORTH CAROLINA
# WESTERN DIVISION
# No. 5:19-cv-249-FL

MATTHEW BRADLEY,                               )
                              Plaintiff,       )
                                               )
        - against –                            )
                                               )
                                               )
ANALYTICAL GRAMMAR, INC.                       )
                                               )
                                               )
                              Defendant.       )

## MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES PURSUANT TO 28 U.S.C. § 1927 AND THE COURT'S INHERENT AUTHORITY

NOW COME the Liebowitz Law Firm, PLLC ("LLF") and Richard Liebowitz ("Liebowitz"), former counsel for plaintiff Matthew Bradley, by and through undersigned counsel, and hereby submit their Memorandum of Law in opposition to Analytical Grammar, Inc.'s ("Analytical") Motion for Attorneys' Fees, Costs and Expenses ("Motion"):

## INTRODUCTION

The relief sought in Analytical's Motion requires a showing of bad faith and that the specific costs at issue would not have been incurred but-for the wrongful conduct undertaken in bad faith. *See, e.g.*, *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186-87 (2017); *E.E.O.C. v. Great Steaks, Inc.*, 667 F.3d 510, 522 (4th Cir. 2012). Further, when a party refuses to accept settlement terms it previously offered, even after a ten month delay, the party should be denied an award of costs and expenses under Section 1927. *See, e.g.*, *E. & J. Gallo Winery v. Gallo Nero*, 782 F. Supp. 457, 471 (N.D. Cal. 1991). In its Motion, Analytical seeks to recover

1

approximately $180,000.00 in attorneys' fee and additional costs—most all of which were incurred after Analytical refused to settle this matter for $500.00 in October 2019 upon the same terms Analytical contends it offered in late August, 2019. Additionally, as previously found by another Federal District Court, Analytical's attorney Dan Booth charges excessive and needless fees. Analytical is unable to show Mr. Booth's excessive fees would not have been incurred but-for any alleged misconduct, and the alleged conduct should not give rise to sanctions under the circumstances. This Court, therefore, should deny Analytical's Motion.

## FACTUAL BACKGROUND

This action arises out of Analytical's undisputed use and publication of Plaintiff Matthew Bradley's ("Bradley") photograph without attributing ownership to Bradley. Plaintiff Bradley is a freelance technological consultant who created a photograph of a clever pun and posted it to his Facebook account in December 2017. (*See* Bradley Decl. [D.E.83-1] ¶ 4). Analytical is a North Carolina Corporation and is a sophisticated media publisher which operates a Facebook *business* page for its for-profit enterprise. (*See* Compl. [D.E. 1] ¶ 6; Answer [D.E. 12] ¶ 6; *see also* Dalton Decl. ¶ 7). On 16 December 2017, Analytical undisputedly republished a photograph owned by Bradley (the "Photograph"), which Bradley still contends was unauthorized, without attributing the Photograph to Bradley. (Compl. Ex. B [D.E. 1-2]; Bradley Decl. ¶ 6; *see also* Dalton Decl. ¶ 6). Analytical did not use Facebook's "Share" function to display the Photograph. (Compl. Ex. B [D.E. 1-2]). Instead, Analytical expropriated the Photograph and passed the work off as its own original creation. (Compl. Ex. B [D.E. 1-2]; Bradley Decl. ¶ 6; *see also* Dalton Decl. ¶ 6).

Bradley registered the Photograph with the U.S. Copyright Office because he observed on-line users re-posting his Photograph and passing it off as their own work. (*See* Bradley Decl. [D.E. 83-1] ¶ 6; Compl. [D.E. 1] ¶ 9). Bradley believed that his rights were violated when certain users,

2

whether on the Facebook platform or other platforms, re-published the Photograph to their own accounts or websites and took credit for his original work. (*See id.*).

On or about 24 December 2018, Bradley retained LLF to enforce his copyright to the Photograph. (Bradley Decl. [D.E.83-1] ¶ 7). Bradley's retainer agreement authorized LLF to "take any steps that were necessary or appropriate to protect [Bradley's] interests," which could include making settlement offers. (*See* Bradley Decl. [D.E. 83-1] ¶ 20). Thereafter, a North Carolina attorney, Seth L. Hudson ("Hudson"), who also represented Bradley, commenced this action, with LLF seeking to appear as out of state counsel. (*See* Compl. [D.E. 1] p 6).

After receiving the Complaint, Erin Karl ("Karl"), who is not a licensed attorney in North Carolina,[1] purported to make an offer of judgment on behalf of Analytical by sending the same to Hudson and Liebowitz by email. (Karl Decl. [D.E. 83-2] ¶¶ 4-5). Attorney Hudson, who commenced this action, did not inform Bradley of this purported offer of judgment. (*See* Bradley Decl. [D.E. 83-1] ¶ 16). In the email without citing any basis, Karl contended Analytical "thought that sharing it on Facebook was permitted." (*Id.*). Karl did not claim Analytical had a license to republish the Photograph, did not dispute Analytical published it as if it were created by Analytical, and did not indicate how Analytical obtained the Photograph.

Thereafter, on 20 August 2019, Dan Booth ("Booth"), attorney for Analytical who was not licensed or yet admitted to practice in North Carolina in the subject litigation, emailed Hudson and Liebowitz, stating as follows:

> **My client regrets the unlicensed use of Mr. Bradley's photo** and, on Friday, offered to accept entry of judgment for $500 to resolve the matter. My client believed in good faith that its use of the viral meme was permissible and would not constitute infringement.

---

[1] *See* N.C. Gen. Stat. § 84-4 (making it unlawful for any person, except active members of the Bar of the State of North Carolina admitted and licensed to practice as attorneys-at-law, to appear as attorney or counselor at law)

3

(D.E. 31-6 p 3 (emphasis added)). Booth, nor any attorney authorized to practice law in North Carolina ever served a valid offer of judgment or subsequently made an actual settlement offer on the same terms. On 13 September 2019, Analytical filed its Answer and Counterclaims against Bradley.

While Analytical denied Bradley owned a copyright to the Photograph in its answer, it alleged in its Counterclaim that Bradley had registered copyrights for the Photograph. (Answer [D.E. 12] ¶ 9, Counterclaim ¶ 19). Without any factual basis, Analytical also asserted a claim for Invalidity of Copyright (first cause). (Counterclaim [D.E. 12] ¶¶ 23-25). Analytical additionally asserted claims seeking a Declaratory Judgment of non-infringement (second cause), and non-removal of copyright management information (third cause). Notably, contrary to the email Booth sent less than a month before, Analytical—for the first time—also alleged to have a purported license to republish the Photograph. (Answer [D.E. 12] p 4). Thereafter, both Booth and Analytical used this litigation to advertise their own businesses and raise funds—including for Analytical's own benefit to purchase litigation insurance for its business in the future—from third-parties. (*See* Dalton Decl. ¶ 3-11 and Exhibits).

In September 2019, Analytical formed a GoFundMe Campaign to raise funds. (Karl Decl. [D.E. 83-2] ¶ 13). On the GoFundMe, Analytical acknowledged it republished the Photograph on its Facebook page. (Dalton Decl. ¶ 6). It further recognized Analytical had nearly 800,000 followers. (*Id.* at ¶ 7). Analytical represented it intended to use any excess funds "to purchase litigation insurance for Analytical Grammar (something I do not currently have), which may help me in the future if it happens again." (*Id.* at ¶ 8). Analytical was also resolved not to settle the matter, including its counterclaims, and was "determined to prevail on the merits." (Karl Decl. [D.E. 83-2] ¶ 10).

At that time, Liebowitz made efforts to resolve the claim. On 17 September 2019, Liebowitz requested Analytical to settle the matter for $5,500.00 at that very early stage of litigation. (Booth Decl. [D.E. 83-5] ¶ 3). Analytical nearly immediately rejected the settlement offer. (*Id.* at ¶ 4). Analytical's GoFundMe posts indicate that it had not been required to pay any of its costs or attorneys' fees out-of-pocket at that time. (*See* Dalton Decl. ¶ 9 and Exhibits). In fact, on 22 September 2019, Analytical noted on its GoFundMe that "We've already raised enough to cover the retainers and fees that I've had to pay up until that point." (*Id.*).

Thereafter, on 8 October 2019, Karl posted on Analytical's GoFundMe as follows: "First, WOW! We have surpassed 20% of the goal, which is amazing. That covers my legal fees and retainers so far, which is an ENORMOUS weight off my chest. Thank you!" (Dalton Decl. ¶ 10 and Exhibits). While Analytical was attempting to use this litigation to raise funds for its own benefit to purchase insurance, and had raised more than enough funds to cover any attorneys' fees incurred, Analytical refused to settle the matter for the same amount identified in its invalid offer of judgment. Specifically, a few weeks after Karl sent the invalid offer of judgment, on 8 October 2019, Analytical refused to settle this matter for $500.00. (Booth Decl. [D.E. 83-5] ¶ 6).

While Analytical had not paid any of its own attorneys' fees out-of-pocket at that point, (*see* Dalton Decl. ¶ 10 and Exhibits), Booth noted that Analytical would only be open to a settlement offer that included payment to Analytical for "all of its attorneys' fees accrued to date," (Booth Decl. [D.E. 83-5] ¶ 6), in retaliation for Bradley exercising his constitutional right to seek redress from the courts for what Bradley believed was an unauthorized use of his Photograph, (*see* Bradley Decl. [D.E. 83-1] ¶¶ 4-6). Booth said Karl was "outraged and resolute . . . [and] not backing down." (D.E. 83-6). While Booth noted Bradley could dismiss his claims, but Booth refused to even offer to dismiss Analytical's counterclaims—including the counterclaim seeking

to invalidate Bradley's copyright. Notably, at this time, Analytical lacked any basis to continue pursuing its counterclaim to invalidate Bradley's copyright.

At the latest, prior to Bradley's deposition in early December 2019, Bradley received and was instructed to review the invalid offer of judgment. (Bradley Decl. [D.E. 83-1] ¶ 16(a)). The parties then proceeded to mediate the claims in February 2020. Karl indicates that the mediator informed Bradley of Analytical's alleged defenses to the suit and that Analytical demanded Bradley pay Analytical's expenses to resolve the matter at the mediation. (Karl Decl. [D.E. 83-2] ¶ 11). Per Karl, Bradley refused to settle the claim for even a fraction of Analytical's purported costs and fees—most if not all of which Analytical had not been actually required to pay out-of-pocket. (*See id.*) Again, at that time and all times, Analytical's counterclaim to invalidate Bradley's copyright lacked any basis.

Thereafter, Analytical moved for summary judgment "on both claims raised by [Bradley] and on its corresponding counterclaims for declaratory judgment." (Analytical's Mot. [D.E. 26]). This Court entered summary judgment for Analytical "[a]ssuming without deciding that plaintiff possessed a valid copyright for the photograph at issue." (Order [D.E. 63] p 1). In doing so, contrary to Booth's initial email, the Court found Analytical reposted the photograph pursuant to an express license, specifically citing the following language in Docket Entry 30-1:

> When you publish [1] **content or** [2] **information** using the Public setting, it means that you are allowing everyone, including people off of Facebook, [A] to access and use that **information**, and [B] **to associate it with you (i.e., your name and profile picture)**.

(*Id.* (citing D.E. 30-1 ¶ 2(4) (emphasis added))). The Court also dismissed Bradley's DMCA claim, finding that it was undisputed that Analytical received the Photograph from a Facebook user named Gene Boecker. (D.E. 63 p. 1). In doing so, the Court determined that Plaintiff's arguments were "unavailing" but did not hold that such arguments were unreasonable or frivolous. (*Id.*) This

Court then entered Judgment. (Judgment [D.E. 64]). This Court's Judgment did not otherwise expressly address Analytical's first cause of action seeking to invalidate Bradley's copyright.

Increasing the costs of litigation for all involved—after the 21 February 2020 discovery deadlines in this Court's Case Management Order and without seeking leave of this Court as required by Local Civil Rule 26.1(b), (CMO [D.E. 20 ¶ A(3)]), Booth then issued Subpoenas to LLF and Liebowitz, and LLF's financial institution, seeking overly broad financial information and documents regarding LLF and Liebowitz. (*See* D.E. 79). Booth refused to withdrawal the improper Subpoenas until after LLF and Liebowitz incurred substantial, needless, attorney's fees.

Analytical subsequently filed the instant Motion seeking relief against LLF and Liebowitz. Analytical and Bradley, through new counsel, then filed a Stipulation and Motion for Disposition of all outstanding claims and counterclaims. (D.E. 86). In that motion, Analytical agreed its claim seeking a declaratory judgment declaring Bradley's copyright invalid "shall be and is dismissed with prejudice." (*Id.* at ¶ 1). The Motion further stated "the parties shall bear their own costs." (*Id.* at ¶ 4). This Court subsequently entered Judgment in accordance with that joint motion. Analytical's Motion is now before the Court.

## <u>ARGUMENT</u>

The United States Supreme Court previously recognized "the 'American Rule' that attorney's fees ordinarily are not among the costs that a winning party may recover." *Roadway Express v. Piper*, 447 U.S. 752, 759 (1980). Considering that litigation is at best uncertain, the "rule here has long been that attorney's fees are not ordinarily recoverable in absence of a statute, [inherent authority,] or enforceable contract providing therefore." *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 717-18 (1967), *superseded by statute on other grounds*, Lanham Act of 1975, 15 U.S.C. § 1117. "The fact that a plaintiff may ultimately lose his case is not itself

a sufficient justification for the assessment of fees." *Lewis v. Safeway Stores, Inc.*, 671 F. Supp. 361 (D. Md. 1987). Here, instead of moving for attorneys' fees or costs under the Copyright Act, 17 U.S.C. 505, which does not permit fee-shifting to a parties' counsel, Analytical moved for attorneys' fees and costs under 28 U.S. C. § 1927 and the Court's inherent authority.

   An attorney may not be sanctioned under 28 U.S.C. § 1927 unless the attorney "so multiplies the proceedings . . . unreasonably and vexatiously." 28 U.S.C. § 1927. Section "1927 does not distinguish between winners and losers, or between plaintiffs and defendants. The statute is indifferent to the equities of a dispute and to the values advanced by the substantive law. It is concerned only with limiting the abuse of court processes." *Roadway Express v. Piper*, 447 U.S. 752, 762 (1980). As such, Section 1927 is "unconcerned with the merits of the lawsuit." *E.E.O.C. v. Great Steaks, Inc.*, 667 F.3d 510, 522 (4th Cir. 2012). Rather, it is focused only on the conduct of the litigation. *Id.*

   The Fourth Circuit interpreted Section 1927 to require several showings from the party moving for relief under Section 1927. First, the movant must show the attorney acted in "bad faith." *E.E.O.C.  v. Great Steaks, Inc.*, 667 F.3d 510, 522 (4th Cir. 2012) (noting the Fourth "Circuit requires a finding of bad faith"); *see also McKenzie v. Norfolk S. Ry. Co.*, 497 F. App'x 305, 312 (4th Cir. 2012). To make this showing, subjective evidence of bad faith should be required. *See ABT, Inc. v. Juszczyk*, 2012 U.S. Dist. LEXIS 170353, *7 (W.D.N.C. Nov. 30, 2012) (noting the court must look at objective evidence and attorney's subjective representations). Second, the movant must show the specific bad faith conduct "wrongfully multiplies" the proceedings. *Six v. Generations Fed. Credit Union*, 891 F.3d 508, 520 (4th Cir. 2018). Third, it requires showing "a causal link between wrongful conduct and an unreasonable vexatious multiplication of proceedings, [and] then to connect the costs wrongfully incurred as a result of the sanctioned

8

attorney's conduct to amount" sought by the moving party." *Id.* Section 1927 "is construed in favor of the [attorney against whom sanctions are sought] so as not to chill legitimate advocacy." *ABT, Inc*, 2012 U.S. Dist. LEXIS 170353, *6 (W.D.N.C. Nov. 12, 2012).

Separate from that statutory authority, the Court also has "the inherent authority in appropriate cases to assess attorneys' fees and impose other sanctions against a litigant or a member of the bar who has 'acted in bad faith, vexatiously, wantonly, and for oppressive reasons.'" *Williams v. Family Dollar Servs.,* 327 F.Supp.2d 582, 585 (E.D.Va.2004) (quoting *Chambers v. NASCO, Inc.,* 501 U.S. 32, 45–46 (1991)). The power allows a court to sanction an attorney's actions taken in bad faith, wantonly, oppressively, or vexatiously. *Id.* "[I]nherent powers must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991).

A court's exercise of its inherent power is reserved only for serious misconduct. *Suntrust Mortg., Inc. v. AIG United Guar. Corp.*, No. 3:09–CV–529, 2011 WL 1225989, at *19-20 (E.D.Va. Mar. 29, 2011); *see also Sanford v. Virginia*, 689 F.Supp.2d 802, 813 (E.D.Va.2010) (a court's inherent power to impose sanctions is implicated where misconduct is something "more egregious than that required for other types of sanctions."). The power "ought to be exercised with great caution," in circumstances such as those involving "the very temple of justice [being] defiled." *Royal Royal Ins. v. Lynnhaven Marine Boatel, Inc.,* 216 F.Supp.2d 562, 567 (E.D.Va.2002) (citations omitted). For these reasons, District Courts in the Fourth Circuit have held that "clear and convincing evidence of bad faith and vexatious behavior is required for a court to exercise its inherent authority to sanction." *Balcar v. Bell and Assoc., LLC*, 295 F.Supp.2d 635, 640 (N.D.W.Va. 2003) (internal citations omitted)); *see also U.S. ex rel. Rector v. Bon Secours Richmond Health Corp.*, No. 3:11-CV-38, 2014 WL 66714, at *5 (E.D. Va. Jan. 6, 2014) ("a party

must show that misconduct occurred by 'clear and convincing' evidence, as opposed to by a mere preponderance in order for the court to exercise its inherent power to sanction").

Though the scope of the court's inherent power covers more than just rule or statute-based misconduct, the level of misconduct required "is almost always something more egregious than that required for other types of sanctions." *Sanford v. Commonwealth of Va.,* 689 F.Supp.2d 802, 814 (E.D.Va.2010), *abrogated on other grounds by McKenzie v. Norfolk S. Ry. Co.,* 497 Fed.Appx. 305 (4th Cir.2012). Like attorneys' fees and costs under § 1927, a showing of bad faith is required, though like § 1927 it is unclear whether a subjective or objective bad faith standard applies. *See Blair v. Shenandoah Women's Center, Inc.,* 757 F.2d 1435, 1438 (4th Cir.1985) (stating that there were sufficient facts to support a finding of subjective bad faith by plaintiff's attorney in prosecuting the case). *Atkins Nuclear Secured, LLC v. APTIM Fed. Servs., LLC,* No. 1:18-CV-1112 (AJT/JFA), 2019 WL 2480045, at *5 (E.D. Va. Mar. 5, 2019), *report and recommendation adopted,* No. 118CV1112AJTJFA, 2019 WL 1793137 (E.D. Va. Apr. 24, 2019) (Applying a subjective standard and declining to impose sanctions where defendant's in-house counsel "were, at best, ill-advised."). Regardless of the bad faith standard required under the court's inherent power, if a defendant fails to meet its burden that it is entitled to attorneys' fees and costs under § 1927, it necessarily follows it also fails to make a showing that the Court's inherent powers are necessary to rectify a litigation abuse. *Stradtman v. Republic Servs., Inc.,* 121 F. Supp. 3d 578, 587–88 (E.D. Va. 2015); *see also Atkins Nuclear Secured, LLC v. Aptim Fed. Servs., LLC,* 2019 U.S. Dist. LEXIS 69920, at *11 (E.D. Va. April 24, 2019) (noting a "district court's inherent sanctioning power is narrower than its authority to impose sanctions under Rule 11 or 28 U.S.C. § 1927 and requires a showing of greater culpability"). For the same reasons Analytical failed to show that Liebowitz and LLF should be sanctioned under Section 1927, its

request to sanction Liebowitz and LLF under the Court's inherent power should be denied.

## I.  Analytical's Memorandum Fails to Address the Applicable "But-For" Requirement

In its Memorandum, Analytical fails to make the required showing that it incurred fees "but-for" any alleged misconduct. Notably, the Supreme Court has held fees awarded under a court's inherent authority for bad faith conduct must be limited to fees the moving party would not have incurred "but for" the specific bad faith conduct at issue. *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1183-84 and 1186 n.5 (2017). This causal link showing is applicable when considering whether to award fees pursuant to Section 1927. *Six v. Generations Fed. Credit Union*, 891 F.3d 508, 520 (4th Cir. 2018); *see also Peterson v. BMI Refractories,* 124 F.3d 1386, 1396 (11th Cir.1997) (the dollar amount of the sanction must bear a financial nexus to the excess proceedings, i.e., the sanction may not exceed the "costs, expenses, and attorneys' fees reasonably incurred because of such conduct."); *Haynie v. United Air Lines, Inc.*, 740 Fed. App'x 273, *274-75 (4th Cir. Oct. 19, 2018) (vacating trial court's award of sanctions for failing to conduct sufficient analysis). Per the Supreme Court, only in "**exceptional cases**," the required but-for standard may permit "a trial court to shift all of a party's fees, from either the start or some midpoint of a suit, in one fell swoop." *Goodyear Tire*, 137 S. Ct. at 1187. The "court must be careful to award only fees that were incurred as the proximate cause" of the required misconduct. *Nexus Servs. v. Moran*, 2018 U.S. Dist. LEXIS 47911, *41 (W.D. Va. March 23, 2018). This Court should, therefore, reject Analytical's requests for this Court to ignore the applicable standard and award fees in "one fell swoop." (D.E. 84 p 7).

## II.  The Purported Offer of Judgment and Settlement Discussions Should not Give Rise to a Fee Award and Analytical is Unable to Show Increased Expenses that Would Have Been Avoided But-For the alleged Conduct

While LLF disputes the veracity of the alleged misconduct, Analytical's primary argument

appear to stem from whether a $500.00 purported Offer of Judgment was conveyed to Bradley. This argument fails on several grounds. First, Karl attempted to engage in the unauthorized practice of law in North Carolina by signing her name on the purported "Offer of Judgment," (*See* D.E. 30-22), on behalf of Analytical, a North Carolina Corporation. *See* Fed. R. Civ. P 11 & 68; *In re Lazarus*, 2005 Bankr. LEXIS 1093, *8-9 (Bankr. M.D.N.C. March 14, 2005) (noting that in "North Carolina only licensed attorney may engage in the practice of law . . . [which includes] creat[ing] a document for another person"); *In re Twin Cnt'y Motorsports, Inc.*, 367 N.C. 613, 614, 766 S.E.2d 832, 833 (2014) (noting a corporation must be represented by an attorney). Booth never served a valid offer of judgment signed by an attorney. (*See* Booth Decl. [D.E. 83-5] ¶ 2).

In addition, Analytical's citations of rules related to valid settlement offers are misplaced because the purported offer of judgment Karl emailed was void. (*See* Karl Decl. [D.E. 83-2] ¶¶ 3-7 (noting Booth reiterated the void offer of judgment)). Here, the purported offer of judgment on its face stated it "exclude[ed] any attorneys' fees" and "each party shall bear its own attorneys' fees." (D.E. 30-22). In copyright cases, attorney's fees are included as part of costs for purposes of offers of judgment under Rule 68. *See Marek v. Chesny*, 473 U.S. 1, 6 (1985) ("As long as the offer does not implicitly or explicitly provide that the judgment not include costs, a timely offer will be valid."); *Lucas v. Wild Dunes Real Estate, Inc.*, 197 F.R.D. 172, 173 (D.S.C. 2000). As such, the purported offer of judgment, (D.E. 30-22), that expressly excluded attorney's fees was invalid and void. *See Thompson v. S. Farm Bureau Cas. Ins. Co.*, 520 F.3d 902, 904 (8th Cir. 2008) (noting an offer of judgment may not exclude costs to be valid); *Bentley v. Bolger*, 110 F.R.D. 108, 111-114 (C.D. Ill. 1986) (holding offer of judgment that excluded attorney's fees was invalid). Accordingly, Karl's purported offer of judgment was void, and Analytical does not address any purported duty to immediately inform a client of a void offer of judgment.

Similarly, the *Blowers* case cited by Analytical is inapposite. Unlike *Blowers*, in this case Analytical emailed an invalid offer of judgment. The *Blowers* case also did not deal with a situation where an attorney may have inadvertently delayed conveying information about an invalid offer of judgment for a short period of time. (*See* Bradley Decl. [D.E. 83-1] ¶ 16(a) (confirming Bradley knew about the offer of judgment during the litigation)). Notably, here, also unlike *Blowers*, another attorney, Hudson, also represented Bradley and allegedly did not inform Bradley of the invalid offer. There is also no evidence LLF or Liebowitz rejected the offer of judgment or acted in self-interest. (*See* Karl Decl. [D.E.83-2] ¶ 8). This is shown by the fact that Liebowitz requested Analytical to resolve the matter, upon the same terms of the purported offer of judgment, in October 201—a few weeks after Karl purportedly emailed the invalid offer of judgment. Especially for such a short period, the "loss of an opportunity for settlement should not be considered as a factor in determining the propriety or the amount of sanctions." *Insurance Ben. Admrs. V. Martin*, 871 F.2d 1354, 1361 (7th Cir. 1989).

Even if the offer of judgment was valid, at best, Analytical's argument is based on timing. Importantly, by October 8, 2019, Analytical refused to resolve the matter for $500.00, making any delay thereafter irrelevant. While LLF and Liebowitz dispute Bradley's assertions, taken as true, Bradley was made aware of the purported Offer of Judgment at the latest in December 2019, within a few months after the offer of judgment was emailed. (Bradley Decl. [D.E. ] ¶ 16(a)). Moreover, in *Blower*, the party testified in his deposition that he would have rejected the settlement offer his attorney rejected without consultation with his client—because it was for more than the party was seeking. In striking contract, there is no evidence that Bradley, even in hindsight, would not have commenced this action or would have accepted an offer to settle for $500.00 at that time. Bradley's declaration is void of any statement to the contrary. Karl's declaration further indicates that

13

Bradley would not agree to Analytical's settlement demands at mediation after being fully informed of all issues. (Karl Decl. [D.E. 83-2] ¶ 11). Thus, unlike *Blowers*, Analytical is unable to show any costs would not have been incurred but-for Bradley allegedly being uninformed of the offer for a limited period of time.

Analytical's inability to make the required "but-for" showing is further illustrated by Analytical's rejection of settlement offers. In September and early October 2019, Booth states Liebowitz requested Analytical to resolve the matter for $5,500.00, then $1,000.00, and then for $500.00—the same amount Analytical included in the invalid offer of judgment just over thirty-five days before that time.[2] (Booth Decl. [D.E. 83-5] ¶¶ 3-6). On the same day Liebowitz requested Analytical to resolve the matter for $500.00, Karl posted on Analytical's GoFundMe that she had raised more than sufficient funds to pay for all of Analytical's attorney's fees. (*See* Booth Decl. ¶ 6; Dalton Decl. ¶ 10). As Karl readily acknowledges, she "became determined to prevail on the merits." (Karl Dec. [D.E. 83-2] ¶ 10).

Importantly, "finally acceding to the most favorable terms offered by [Analytical] . . . is [not] so 'vexatious' to warrant an award of expenses for the bulk of the action as such conduct seems more common place than dilatory." *E. & J. Gallo Winery v. Gallo Nero*, 782 F. Supp. 457, 471 (N.D. Cal. 1991). In *E. & J Gallo*, the court refused to award fees under Section 1927 when Gallo Nero belatedly 'came around' to Gallo's original terms ten months after the original offer, at which time Gallo rejected the offer. *Id.* The court in *E. & J Gallo* found it was in fact Gallo, by rejecting an offer it had made ten months prior, which caused subsequent expenses. *Id.* Here, like *E. & J. Gallo*, on 8 October 2019, Analytical would not agree to the same terms of its invalid offer

---

[2] While LLF and Liebowitz dispute Bradley's claims regarding his discussions with LLF and Liebowitz related to settlement, Bradley acknowledges in his Declaration that Liebowitz was authority to take actions he deemed necessary to protect Bradley's interests. (*See* Bradley Decl. [D.E. 83-1] ¶ 20).

of judgment just over thirty-five days after the offer of judgment was allegedly made. (See Both Decl. [D.E. 83-5] ¶¶ 2-6). In doing so, Analytical's principal, Erin Karl, admits that when she decided to reject the $500 offer in early October 2019, she was resolved in her conviction to litigate the case to final judgment "on principal." (Karl Decl. [D.E. 83-2] ¶ 9). Under these express admissions, it is evident that Analytical was not positioned to settle the case and instead wanted to see the action through to final judgment. This shows any costs incurred after 8 October 2019 were in fact caused by Booth and Analytical—and this court should deny Analytical's present motion in its entirety. *See Generations Fed. Credit Union*, 891 F.3d at 520.

## III. Bradley's Claims are Objectively Reasonable and Based on Good Faith Arguments in a Complex Copyright Matter Presenting Novel Issues

### A. The Court should reject Booth's self-serving Declaration regarding contested issues made contrary to applicable Local Civil Rules.

In its brief, Analytical makes a myriad of assertions, largely taken out of context, and based on Booth's self-serving Declaration and Bradley's Declaration. Booth's Declaration should be stricken for violating this Court's Local Rules, as it is replete with contested matters. *See* Local Civil Rule 7.1(i) (noting an attorney should not submit their own affidavit regarding contested facts). Additionally, the Declarations are replete with hearsay and matters of which the Declarant lacks personal knowledge. Importantly, LLF and Liebowitz have not had an opportunity to cross-examine Booth or Bradley regarding the assertions in their Declaration. As such, the Court should strike Bradley's and Booth's Declaration.

Additionally, the self-serving Declarations and assertions in Analytical's Memorandum do not support an imposition of sanctions. For example, Analytical mockingly calls Liebowitz "America's busiest copyright lawyer." (D.E. 84 p 14). Also, without supporting evidence, Analytical claims Liebowitz did not make sufficient investigation. In support, it notes only that

there was no pre-suit communication with Analytical and that Liebowitz filed other cases that year. (D.E. 84 p 17). Even if true, and regardless of Analytical's disdain for Liebowitz, this should not support a finding of bad faith. *See Luna v. Guilford Cty.*, 2019 U.S. Dist. LEXIS 12065, *7-8 (M.D.N.C. Jan. 24, 2019) (refusing to issue sanctions when faced with claimed unreasonable investigation and bringing time-barred claims as § 1927 does not focus on merits).

### B.     Litigating an issue of first impression should not support a finding of bad faith.

Analytical further incorrectly argues fees should be awarded because claims were allegedly filed without a tenable basis. However, as noted by the Fourth Circuit,

> The unambiguous text of § 1927 aims only at attorneys who multiply proceedings. . . Likewise, an attorney who files a meritless claim may not be sanctioned under § 1927 if he does not engage in such conduct. Section 1927 focuses on the conduct of the litigation and not on its merits.

*DeBauche v. Trani,* 191 F.3d 499, 511 (4th Cir.1999) (internal citations omitted). This Court's summary judgment order provided no indication on its face that the claims were frivolous or objectively unreasonable.[3] Rather, it determined that Bradleys' arguments were "unavailing." This Court's Summary Judgment Order did not cite any case previously interpreting Facebook's terms of service. As Analytical expressly acknowledges, despite "Facebook's ubiquity, no copyright case had construed the 'allowing everyone' clause of its pre-2018 terms of service," and this case presented complex legal issues. (D.E. 84 p 21). Under these circumstances, a fee award should not be allowed. *See Silicon Knights, Inc. v. Epic Games, Inc.*, 917 F. Supp. 2d 503, 517 (E.D.N.C.

---

[3] Claims are objectively unreasonable when they "have no legal or factual support." *Viva Video, Inc. v. Cabrera,* 9 F. App'x 77, 80 (2d Cir. 2001). A "lack of success on the merits, without more," does not establish that a position was "objectively unreasonable." *Overseas Direct Imp. Co. v. Family Dollar Stores Inc.*, No. 10 Civ. 4919 (JGK), 2013 WL 5988937, at * 2 (S.D.N.Y. Nov. 12, 2013) (citations omitted); *see also Agence France Presse v. Morel*, No. 10-CV-2730 (AJN), 2015 WL 13021413, at *3 (S.D.N.Y. Mar. 23, 2015) ("[T]he fact that a party's factual or legal theory was not ultimately successful does not mean it was objectively unreasonable."), *aff'd sub nom. Presse v. Morel*, 645 F. App'x 86 (2d Cir. 2016).

2012), <u>aff'd</u>, 551 F. App'x 646 (4th Cir. 2014); *accord Sweetland v. Bank of Am. Corp.,* 241 F. App'x 92, 99 (4th Cir. 2007) (denying attorney sanctions where a recusal motion was based on a completely novel legal theory that had never been addressed by any court and, therefore, require[d] more research than called for by a question that has already been addressed). Even in the face of contentions that litigation was brought in bad faith or made unnecessarily complicated, sanctions should not be awarded because a party lost on the merits at summary judgment on matters of first impression. *RLM Communs. Inc. v. Tuschen*, 2015 U.S. Dist. LEXIS 35016 (E.D.N.C. March 19, 2015) (refusing to impose sanctions).

In its Memorandum, Analytical erroneously implies that Liebowitz acted in bad faith after it produced what it contended to be the applicable terms of service. To begin, Analytical's argument directly contradicts Booth's email to Liebowitz Analytical relies on to support its arguments related to the purported offer of judgment. On 20 August 2019, Booth emailed Hudson and Liebowitz, stating as follows:

> **My client regrets the unlicensed use of Mr. Bradley's photo** and, on Friday, offered to accept entry of judgment for $500 to resolve the matter. My client believed in good faith that its use of the viral meme was permissible and would not constitute infringement.

(D.E. 31-6 p 3 (emphasis added)). Booth's admission that Analytical's use of Bradley's Photograph was unlicensed should serve as a judicial admission that there was at the very least a good faith dispute regarding the issue. As such, no misconduct should be found now that Booth and Analytical took a different position. Additionally, the Court cited the following as the applicable language:

> When you publish [1] **content <u>or</u>** [2] **information** using the Public setting, it means that you are allowing everyone, including people off of Facebook, [A] to access and use that **information**, and [B] **to associate it with you (i.e., your name and profile picture)**.[4]

---

[4] The terms "information" and "content" are defined separately in these terms of service. (D.E. 30-1 ¶ 17(3) and (4)). The term "information" is defined to mean "facts and other information about you, including actions taken by users and non-users who interact with Facebook." (D.E. 30-1 ¶ 17(3)). The term "content" is defined to mean "anything you or other users post, provide or share using Facebook Services." (D.E. 30-1 ¶ 17(4)). The provision cited by this Court

(*Id.* (citing D.E. 30-1 ¶ 2(4) (emphasis added))). This provision uses separately defined terms "content" and "information," and only states that posting allows other to access and use "information." (D.E. 30-1 ¶¶ 2(4), 17(3) and (4)). Since the Photograph would at least arguably fall under the defined term "content," (D.E. 30-1 ¶ 17(4)), the license is at least ambiguous. Simply because this Court found the terms of service supported summary judgment for Analytical, this should not evidence bad faith, as parties should not be prevented from exercising their constitutional right to petition the courts for redress if the matter presents ambiguous terms.

Further, Analytical's arguments regarding Liebowitz's comments at a conference, which Analytical takes out of context, are unavailing and do not evidence bad faith. It is nearly universally accepted that a lawyer may take different positions on legal issues, even mutually exclusive positions. *See, e.g.*, *Oliver v. City of Garland*, 2008 U.S. Dist. LEXIS 75289, *3 (Sept. 26, 2008) (refusing to find bad faith necessary to award sanctions under § 1927 because a lawyer previously signed onto a contrary legal position then asserted in that litigation). Further, Analytical and Booth obviously believe they should be held to a different standard—considering that Booth sent an email in this case noting Analytical's use was unlicensed and then Analytical subsequently raised a license as an affirmative defense. (*C.f.* D.E. 31-6 p 3; D.E. 12 p 12 (emphasis added)). If Analytical's argument based on alleged statements outside of this litigation has any merit, *a fortiori*, Liebowitz should be entitled to his fees incurred in responding to this Motion and Booth's prior subpoenas given Booth's prior inconsistent representations—in this very case.

Analytical's arguments that bad faith is evidenced by the "modest value" of Bradley's work is also unavailing. Bradley's claims in this matter were asserted in good faith. (*See* Bradley Decl. [D.E. 83-1] ¶¶ 5-6). It is undisputed that Analytical posted Bradley's Photograph to its its 800,000

---

does not seem to clearly grant a license for others to use posted "content," such as the Photograph.

followers without attributing ownership to Bradley or any third-party, as if the Photograph were Analytical's own. The claim was properly motivated to seek redress for what Bradley in good faith alleged was unauthorized use of the Photograph by others for their own commercial benefit. (*See* Bradley Decl. [D.E. 83-1] ¶¶ 5-6). Courts have recognized that the "advent of social media, and the internet generally, poses a myriad of issues for both copyright holders and those seeking to license or exploit their work." *Agence France Presse v. Morel*, No. 10-CV-2730 (AJN), 2015 WL 13021413, at *4 (S.D.N.Y. Mar. 23, 2015), *aff'd sub nom. Presse v. Morel*, 645 F. App'x 86 (2d Cir. 2016). "The federal courts have recognized that 'the whole area of social media presents thorny and novel issues with which courts are only now coming to grips.' *Id.* (internal quotation omitted); *see also Higgins v. Koch Dev. Corp.*, 11-cv-81 (RLY) (WGH), 2013 WL 3366278, at *2 (S.D. Ind. July 5, 2013) ("Postings on Facebook and other social media present a unique challenge for courts, due to their relative novelty and their ability to be shared by or with someone besides the original poster."); *Miller v. Facebook, Inc.*, 10-cv-264 (WHA), 2010 WL 2198204, at * 1 (N.D. Cal. May 28, 2010) (noting the "slipperiness of enforcing intellectual property rights in a world where creating and dispersing infringing material to the public via social networking websites has become all too easy").[5] "The Copyright Act is intended, not only for a plaintiff to obtain damages for infringement, but to deter the infringers and other potential infringers from infringing on copyrighted works." *Bell v. Taylor*, No. 1:13-CV-00798-TWP, 2014 WL 902573, at *2 (S.D. Ind.

---

[5] "Beyond the courts, academics and practitioners are similarly coming to terms with the implications of social media and traditional copyright law." *Agence France Presse*, 2015 WL 13021413, at *4 (citing Rebecca Haas, "Twitter: New Challenges to Copyright Law in the Internet Age," 10 J. Marshall Rev. Intell. Prop. L. 231, 248 (2010) (anticipating the challenges of enforcing copyright through media like twitter); Kirsten M. Koepsel, "Social Networks and the Uneasy Relationship with Copyright Law," Md. B.J., November/December 2012, at 20, 27 (advising practitioners on how to advise clients with social media and copyright concerns). In the context of the social media revolution, it is "all the more important that litigants be encouraged to test objectively reasonable legal theories in order to better develop the jurisprudential landscape. This weighs strongly against the awarding of attorneys' fees." *Id.*

Mar. 7, 2014) (citing *F.W. Woolworth Co. v. Contemporary Arts*, 344 U.S. 228, 231–33, 73 S.Ct. 222, 97 L.Ed. 276 (1952); *F.E.L. Pub'ns, Ltd. v. Catholic Bishop of Chi.*, 754 F.2d 216, 219 (7th Cir.1985)).

### C. Litigating novel claims should not support a finding of bad faith.

This Court should not award costs against Liebowitz because Bradley's underlying infringement claim presented novel and complex questions of fact and law that have yet to be decided by the Fourth Circuit. In fact, Analytical expressly acknowledged in its Memorandum that this case presented difficult and novel issues of copyright. (D.E. 48 p 21). Many courts have noted a fee award in inappropriate in cases involving novel or complex issues of copyright law. *See, e.g.*, *Silicon Knights, Inc. v. Epic Games, Inc.*, 917 F. Supp. 2d 503, 517 (E.D.N.C. 2012), *aff'd*, 551 F. App'x 646 (4th Cir. 2014) ("Ordinarily an award of attorney's fees is not appropriate in copyright cases involving novel, complex, or unsettled issues of law and fact."); *see also Lotus Dev. Corp. v. Borland Int'l, Inc.,* 140 F.3d 70, 75 (1st Cir.1998) (noting "novel cases require a plaintiff to sue in the first place" and that "a district court may balance against the potentially chilling effect of imposing a large fee award on a plaintiff, who, in a particular case, may have advanced a reasonable, albeit unsuccessful, claim."); *Earth Flag Ltd. v. Alamo Flag Co.*, 154 F. Supp. 2d 663,666 (S.D.N.Y. 2001) ("a court should not award attorneys' fees where the case is novel or close because such a litigation clarifies the boundaries of copyright law."); *Yang v. Mic Network, Inc.,* No. 18-CV-7628 (AJN), 2020 WL 6562403, at *3 (S.D.N.Y. Nov. 9, 2020). Especially considering that no court had addressed the specific terms of service at issue when analyzing the novel issues, (*See* D.E. 84 p 21), this Court should not find that litigating the issues constitutes bad faith or otherwise evidences conduct warranting sanctions.

### D. This Court should reject Analytical's arguments based on legal issues and doctrines not previously decided by this Court.

Analytical makes several arguments regarding legal issues and doctrines that have not been addressed by this Court. For example, Analytical's Memorandum raises issues related to the Fair Use Doctrine, whether Bradley incurred actual damages, and the modest value of Bradley's work. (D.E. pp 12-13, 15). Analytical claims that litigating over unvalued work is evidence of bad faith. (D.E. p 13). These do not give rise to wrongful conduct or a bad faith finding.

As noted above, litigating over novel issues of first impression do not give rise to a finding of bad faith. Individuals may seek redress from the courts even if some, like Analytical, consider their damages or minimal or nominal. Federal courts have consistently held that pecuniary harm is <u>not</u> a prerequisite to sustaining a copyright infringement claim. *See, e.g.*, *Cardiff Chamber of Commerce, Inc. v. Lebherz*, 2016 WL 9525236, at *2 (S.D. Cal. July 15, 2016) ("[t]he harm is the invasion of the copyright; no financial loss is required."); *In re Aimster Copyright Litig.*, 334 F.3d 643, 649 (7th Cir. 2003) ("[A] copyright owner who can prove infringement need not show that the infringement caused him a financial loss."). Moreover, the fact that Analytical raised a fair use affirmative defense is not evidence of bad faith. *Boesen v. United Sports Publications, Ltd.,* No. 20-CV-1552-ARR-SIL, 2021 WL 1145730, at *3 (E.D.N.Y. Mar. 25, 2021) (denying fees application after granting Rule 12(b)(6) motion on fair use). Importantly, this Court's Summary Judgment Order did not mention these issues. Now, Analytical is seeking to further litigate the merits of this case. Neither this Court nor LLF and Liebowitz should be required to continue to litigate regarding the merits of Analytical's other affirmative defenses. Section 1927 does not focus on the merits.

Further, it is undisputed Analtyical published Bradley's Photograph as its own to its 800,000 Facebook followers. Bradley commenced this action in good faith. (Bradley Decl. [D.E. 83-1] ¶ 6). After Analytical emailed an invalid offer of judgment, it refused to resolve this matter

on the same terms—$500.00—a few weeks later, while Analytical and Booth used this litigation to promote their businesses. Meanwhile, Analytical demanded payment from Bradley, even though Analytical posted on its GoFundme that all of its attorney's fees had been paid by donations. Analytical now claims it thereafter incurred nearly $180,000.00 to defend a lawsuit that it refused to resolve in October 2019 for $500.00. This shows that the arguments do not give rise to a finding of bad faith or that any wrongful conduct by LLF or Liebowitz caused increased costs.

E.    **Analytical failed to show it would not have incurred costs but-for Bradley's second claim.**

Analytical's Memorandum fails to show any increased costs were caused by Bradley's Second Claim for Relief under § 1202. Bradley posted his Photograph on his Facebook next to his name, and Analytical undisputedly republished the Photograph to its 800,000 followers without attributing ownership to any other party. Analytical's argument is premised on the fact that it contends it received Bradley's Photograph without CMI attached. Karl's claim that she had not previously seen or obtained Bradley's Photograph, prior to receiving it from a third-party, raises issues of credibility. *See Mango v. BuzzFeed, Inc.*, 356 F. Supp. 3d 368 (S.D.N.Y. 2019), *aff'd,* 970 F.3d 167 (2d Cir. 2020) (finding party violated DMCA after assessing the credibility of the witnesses who denied knowledge of CMI at bench trial). While LLF and Liebowitz dispute this evidences bad faith conduct, Analytical failed to show any nexus to any conduct by Liebowitz causing any increased costs, or costs resulting from the conduct.

Analytical does not claim that Liebowitz engaged in extensive electronic discovery or depositions in further pursuit of Bradley's Second Claim. In its Memorandum, Analytical notes it retained an expert to refute Bradley's basis for damages, responded to interrogatories and requests for production, raised an argued defenses not addressed by this Court, and performed other tasks related to the dispute over the governing terms of service. There is no basis to find or conclude any

such work would not have been done but-for any alleged wrongful conduct related to Bradley's second claim. Based on Analytical's determination to litigate, it also pursued counterclaims and defended Bradley's claim for infringement that presented an issue of first impression. As such, there is no basis to award sanctions against Liebowitz or LLF.

IV. **This Court Should Reject Analytical's Claimed Fees and Expenses Incurred in Pursuit of Its Counterclaims—Including One Dismissed with Prejudice**

Additionally, Analytical requests this court to award it all attorney's fees, "in one fell swoop," but largely disregards it pursued counterclaims. However, Analytical does not even attempt to show a nexus between any wrongful conduct of Liebowitz and Analytical filing and pursuing its counterclaims. In fact, in its counterclaims, Analytical denied that Bradley owed the copyright, but asserted the opposite in its counterclaim. (Answer [D.E. 12] ¶ 9, Counterclaim ¶ 19).

Analytical's First Cause of Action sought to invalidate Bradley's copyright. (D.E. 12 ¶ 23-25). It claimed, among other things, that the photograph lacked creativity. Analytical has not shown any good faith basis for bringing or pursuing this claim. In July, 2021, Analytical's claim for invalidity was dismissed with prejudice. This evidences that all costs related to this counterclaim could not have been caused by any wrongful conduct of Liebowitz. Given the lack of any basis to connect Analytical's counterclaims to any wrongful conduct of Liebowitz, and lack of any causal connection to costs related to the counterclaims, Liebowitz and LLF should not be required to pay Analytical's costs and expenses pursuing its counterclaims.

V. **Analytical's Alleged Costs and Fees Are Excessive**

Moreover, reasonable attorney's fees do not include fees for hours that are excessive, redundant, or otherwise unnecessary. *Craig v. PopMatters Media, Inc.*, 448 F. Supp. 3d 844, 847 (N.D. Ill. 2020). As the court in *Craig* elegantly put when reviewing Booth's excessive fees, with

Booth, "[u]nfortunately, the fee matter became the tail that wagged the dog." *Id.* at 848. The court in *Craig* found many issues with Booth's fees, noting time that was spent on clerical tasks, excessive time spent communicating via email with his client and local counsel, unnecessary, and vague. *Id.* at 848-49. Likewise, in this matter, Booth's invoice reflect excessive time, unnecessary tasks, and vague entries.

Similar to *Craig*, Booth spent excessive time on this matter. For example, Booth spent 9 hours drafting answer and counterclaims to a relatively short complaint. (D.E. 83-13 p 1). On 8/28/19, and many other dates, he spent unnecessary time reviewing other court dockets. His bills include PACER charges related to these other documents. (*Id.*). Booth spent over 100 hour on summary judgment motions for claims Analytical now alleges are frivolous. He further spent months on the present motion. However, Booth only spent 9.3 hours of time on the DMCA claim, collectively on 12/9/19, 2/3/20, 3/11/20, and 8/13/20. (*See* D.E. 83-13). Like the court in *Craig*, especially considering Analytical made no effort to show any causal connection between time entries and any allegedly wrongful conduct of Liebowitz, this Court should reject Analytical claim for unreasonable fees even if it believes any conduct warrants a fee award.

**VI.    Analytical's Claimed Fees and Expenses Are Unreasonable For A Case That Could Have Resolved For $500.00 in October 2019 But-For Analytical's Resolve to Litigate "on principal"**

Especially after Analytical refused to resolve these claims under the same terms it offered just over a month before, LLF and Liebowitz should not be required to pay excessive, unreasonable, and unnecessary fees. In a case that could have been resolved in early October 2019, Analytical seeks $177,801.10 in attorneys' fees and $6,689.32 in costs. At that time, however, according to Analytical's GoFundMe page, all of Analytical's fees had been paid by third-parties. (*See* Dalton Decl. ¶¶ 9-10). Dan Booth billed a total of $6715.00 through October 7, 2019. (D.E. 83-13, p. 1-2).  Parker Poe billed $ 1610.65 during this period. (D.E. 83-3, p. 7, 10). Analytical's

principal, Erin Karl, admits that when she decided to reject the $500 offer in early October 2019, she was resolved in her conviction to litigate the case to final judgment "on principal" alone. (Karl Declr. [D.E. 83-2] ¶ 9). Karl also stated that, as of October 2019, "I became determined to prevail on the merits." (Karl Declr. [D.E. 83-2] ¶10). Indeed, Booth states that Karl was "not backing down." (D.E. 83-6, p. 1). Thus, Defendant's recovery of legal fees, if any, should be limited to the amount of $8325.65.

Further, as an equitable concern, it should be emphasized that Analytical has only incurred a total of $9907.70 in out-of-pocket fees to defend the action. Booth's time entries show that Analytical paid him a total of $46,907.70 during the course of litigation. (*See* D.E. 83-13, p. 2 ($3000,00); D.E. 83-3, p. 4 ($4,407.70); D.E. 83-13, p. 11 ($4,000); D.E. 83-13, p. 15 ($16,000); D.E. 83-12, p. 19 ($12,000); D.E. 83-13, p. 2021 ($2500); D.E. 83-13, p. 24 ($2000); D.E. 83-12, p. 25 ($1500); D.E. 83-13, p. 27 ($1500)). However, approximately, $37,000.00, if not more, of these fees were paid by other people through GoFundMe donations. (Karl Declr. ¶ 13). Thus, if Booth's invoices and Karl's declaration are to be credited, Analytical has only incurred $9,907.70 in actual out-of-pocket fees, about five-percent of the total that it seeks to recover on this motion. Indeed, the at least $37,000.00 raised by donors is more than enough to compensate Booth for fees incurred in the 50 –day period between August 19, 2019 and October 8, 2019, which totaled only $8325.65. To award Defendant any more than that amount would be wholly punitive, rather than compensatory.

Analytical also claims that "the costs of this lawsuit forced me to sell off Analytical's valuable intellectual property and let go of the business that had been part of my family for decades." (Karl Decl. ¶ 12). This assertion is inconsistent with the facts. On 17 September 2019, Liebowitz requested Analytical to settle the matter for $5,500.00 at that very early stage of

litigation. (Booth Decl. [D.E. 83-5] ¶ 3). Analytical nearly immediately rejected the settlement offer. (*Id.* at ¶ 4). At that time, Analytical had not been required to pay any of its costs or attorneys' fees. (Dalton Decl. ¶ 9). In fact, on 22 September 2019, Analytical noted on its GoFundMe that "We've already raised enough to cover the retainers and fees that I've had to pay up until that point." (*Id.*).

Thereafter, on 8 October 2019, Karl posted on Analytical's GoFundMe as follows: First, WOW! We have surpassed 20% of the goal, which is amazing. That covers my legal fees and retainers so far, which is an ENORMOUS weight off my chest. Thank you!" (Dalton Decl. ¶ 10). While Analytical was attempting to use this litigation to raise funds for its own benefit to purchase insurance, and had raised more than enough funds to cover any attorneys' fees incurred, Analytical refused to settle the matter for the same amount identified in its invalid Offer of Judgment. Specifically, a few weeks after Karl sent the invalid Offer of Judgment, on 8 October 2019, Analytical refused to settle this matter for $500.00. (Booth Decl. [D.E. 83-5] ¶ 6).

While Analytical had not paid any of its own attorneys' fees at that point, (*see* Dalton Decl. ¶ 10), Booth noted that Analytical would only be open to a settlement offer to pay Analytical "all of its attorneys' fees accrued to date," (Booth Decl. [D.E. 83-5] ¶ 6), for Bradley attempting to seek the court for redress of the unauthorized use of his Photograph, (*see* Bradley Decl. [D.E. 83-1] ¶¶ 4-6). Booth said Karl was "outraged and resolute . . . [and] not backing down." (D.E. 83-6 p 1). In addition, in February 2020, the parties had a long mediation where an experienced mediator tried to help the parties resolve the case. Again at this mediation, Analytical declined to put any offer on the table and only asked for its attorney's fees back. Bradley, on the other hand, put reasonable settlement demands on the table some of which were non-monetary offers. However, Analytical outright rejected all of Plaintiff's offers and demanded its attorney's fees back. In line

26

with Karl resolute, Analytical claims it was billed approximately $180,000.00 in attorneys' fees to defend a claim it refused to settle for $500.00 in October 2019. Analytical cannot plausibly claim Liebowitz proximately or actually caused Analytical to sell its intellectual property.

## VII.  Booth's Wrongful Conduct Unreasonably Increased the Costs of Litigation

After this Court issued its Summary Judgment Order, and before Analytical filed any motion for sanctions, Booth then issued Subpoenas to LLF and Liebowitz, and a financial institution, seeking overly broad financial information and documents regarding LLF and Liebowitz. (*See* D.E. 78 and 79]). Booth initially refused to withdrawal the improper Subpoenas until after LLF and Liebowitz incurred substantial, needless, attorney's fees, and Booth filed an opposition to the Motion to Quash directed to LLF and its financial institution. (D.E. 81). While this Court's Case Management Order required Analytical to complete discovery by February 21, 2020, Booth argued the subpoenas were discovery subpoenas in opposition to Liebowitz and LLF's Motion to Quash. (*See* D.E. 20 ¶ A(3); D.E. 81 p 2-3). This demonstrates that Booth knowingly violated this Court's Local Rules by serving discovery after the deadline without seeking leave of this Court as required by Local Civil Rule 26.1(b).

Despite such actions, Analytical makes numerous assertions alleging wrongful conduct by Liebowitz, citing many unrelated cases involving Liebowitz. These unrelated cases should not dictate the outcome in this matter.  An examination of the facts shows that Bradley commenced this action in good faith because Analytical undisputedly used Bradley's Photograph as its own. Thereafter, Analytical refused to resolve this matter for $500.00 in early October 2019, on terms it claims would have been acceptable just weeks before. Thereafter, Analytical describes itself as a victim. However, at the time it refused to resolve this matter for $500.00, Analytical had not been required to pay its own attorney's fees and was using the present lawsuit to raise funds for it to

purchase insurance in the future. In fact, Analytical demanded Bradley pay Analytical for attorney's fees Analytical had not itself paid. Analytical and Booth then allegedly incurred attorneys' fees of approximately $180,000.00 to defend a suit it refused to settle for $500.00—it now wants Liebowitz to pay. (*See* Karl Decl. [D.E. 83-2] ¶ 10). After winning on the merits, Booth choose to further increase the costs of litigation with his Subpoenas and this Motion. As this Court previously entered Judgment finding that no other motions should be filed in this matter and the parties should bear their own costs, Liebowitz respectfully requests this Court to deny Analytical's Motion in its entirety and simply close this case.

## CONCLUSION

For the foregoing reasons, LLF and Liebowitz respectfully contend that Analytical failed to make the required showing of wrongful conduct under the circumstances, and further failed to show it would not have incurred additional costs but-for any alleged conduct of Liebowitz. As such, Liebowitz and LLF respectfully request this Court to deny Analytical's Motion. In the alternative, Liebowitz requests the Court to limit any award to reasonable fees Analytical actually incurred and itself paid prior to Analytical's refusal to resolve this claim for $500.00 on October 8, 2019.

Respectfully submitted, this the 30th day of August, 2021.

/s/ LUKE A. DALTON
Luke A. Dalton
N.C. Bar No: 41188
luke.dalton@mgclaw.com
McAngus Goudelock & Courie, PLLC
Post Office Box 30516
Raleigh, North Carolina 27622
Telephone: (919) 719-8204
Facsimile: (919) 510-9825
*Counsel for Liebowitz Law Firm, PLLC and Richard Liebowitz*

28

## CERTIFICATE OF SERVICE

I hereby certify that on this August 30th, 2021, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system, which will serve the document on registered users,

including the following:

Susan Freya Olive
Olive & Olive, P.A.
emailboxednc@oliveandolive.com
Attorney for Plaintiff

Dan Booth
Dan Booth Law LLC
dan@danboothlaw.com
Attorney for Analytical Grammar, Inc.

/s/ LUKE A. DALTON
Luke A. Dalton (N.C. Bar No: 41188)
luke.dalton@mgclaw.com
McAngus Goudelock & Courie, PLLC
Post Office Box 30516, Raleigh, North Carolina 27622
Telephone: (919) 719-8204
*Counsel for Liebowitz Law Firm, PLLC and Richard*
*Liebowitz*

29