IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Action No. 5:19-cv-249-FL

| | |
|---|---|
| MATTHEW BRADLEY, ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> ANALYTICAL GRAMMAR, INC., ) <br> ) <br> Defendant. ) | ANALYTICAL GRAMMAR, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES PURSUANT TO 28 U.S.C. § 1927 AND THE COURT'S INHERENT AUTHORITY |

Analytical Grammar, Inc. ("Analytical"), in further support of its motion for sanctions against Richard Liebowitz ("Liebowitz") and Liebowitz Law Firm, PLLC ("LLF") (together "Opponents"), DE 83, hereby replies to matters initially raised in their response thereto, DE 93.

**I.     The pertinent facts support the sanctions motion.**

Analytical's brief recounts the material facts. DE 84 pp. 2-5. None of those facts are in serious dispute. Opponents contend without specificity that declarations by their former client Matthew Bradley ("Bradley") and Analytical's lead counsel include contested matters, hearsay, and matters beyond their knowledge; and they generally "dispute Bradley's claims regarding his discussions with LLF and Liebowitz related to settlement"; but they identify no unsupported or contested fact in either declaration. DE 93 pp. 14 n. 2, 15. Their response cites those declarations a dozen times each, treating their facts as reliable. *Id.* pp. 2-3, 5-6, 12-15, 18-19, 21, 26. They waive the issue, adducing no evidence that controverts any fact stated in the brief and supporting declarations. The unfounded request to strike the declarations must be denied. *Id.* p. 15.

That leaves Opponents' original sin in this case essentially undisputed. They obstructed settlement by withholding all offers from their client. They ignored Analytical's August 16 and 19, 2019 settlement offers and its August 20 and 21, 2019 requests to discuss settlement before its answer was due. DE 83-1 ¶¶ 12-16. Liebowitz first disclosed the initial offer to Bradley three

1

months after it lapsed, and never disclosed the other communications. *Id.* ¶ 16. He did not tell Bradley when Analytical informed him, on October 7, October 8, and November 11, 2019, that resolution would require payment of all fees it had incurred. *See id.* ¶ 23, DE 83-5 ¶¶ 5-7, DE 83-6. Without Bradley's input, Liebowitz rejected Analytical's November 15, 2019 offer to settle for $20,000 toward its fees. DE 84 p. 3, DE 83-5 ¶ 7. His *ultra vires* offers, for $5,500 on September 17, 2019 and $500 on October 8, 2019, were made without Bradley's knowledge; Opponents had never "sought [his] consent or specific authorization." DE 83-1 ¶¶ 20, 22-23. Those offers were therefore invalid and void, and provide no basis to avoid or limit sanctions.

On such damning facts, Opponents offer no arguments that detract from the motion. Bradley's counsel sabotaged settlement by keeping him in the dark. His only concrete injury was their malpractice, *see* DE 73, which was also the "but for" cause of Analytical's fees and costs.

**II.    Opponents' bad faith conduct was the "but for" cause of Analytical's fees and costs.**

Opponents contend that Analytical did not address the "but for" grounds for sanctions. DE 93 p. 11. They are wrong. The sanctions memorandum shows the direct, causal link from their sanctionable, bad faith conduct to all of Analytical's costs and fees.

- "Liebowitz actively obstructed potential compromise from the outset. … Liebowitz acted in bad faith because he failed to tell Bradley about any of those offers, demands, and discussions for months." DE 84 p. 8.

- "Analytical incurred all of its attorneys' fees because Liebowitz chose to withhold basic information from his client, including its settlement offers and the fees it stood to recover upon prevailing." *Id.* p. 20.

- "[Opponents'] liability is for all of the 'excess costs, expenses, and attorneys' fees' incurred since August 16, 2019, when Liebowitz refused to convey the [first] settlement offer." *Id.* p. 30 (*quoting* 28 U.S.C. § 1927).

- "Because that offer came before Analytical retained counsel, its subsequent fees and costs are all compensable." *Id.* p. 10.

Opponents do not deny that their failures to communicate settlement offers were acts of

bad faith. If not for those failures, compounding their failures to convey the risks of litigation and the weakness of the claims, there would have been no need to litigate. Analytical would not have had to retain counsel and litigate its meritorious defenses to victory at great expense.

A.     **Opponents violated their duty to convey Analytical's settlement offers to Bradley.**

Opponents argue that Analytical's August 16, 2019 offer was invalid because it was not "signed by an attorney," and void because it "excluded attorney's fees," and that they therefore had no "duty to … inform" Bradley. DE 93 p 12. They are wrong in each respect.

Settlement offers are not the sole province of counsel. A corporate "agent may negotiate with an opposing party," which does not constitute "litigat[ing] for the corporation." *LexisNexis, Div. of Reed Elsevier, Inc. v. Travishan Corp.*, 155 N.C. App. 205, 208, 573 S.E.2d 547 (2002). Signing and sending a Rule 68 offer, not filed with the Court *pro per*, was not "the unauthorized practice of law," DE 93 pp. 3 n. 1, 12, because it was not an appearance. A non-attorney making "an appearance in an 'action or proceeding' before a judicial body" commits unauthorized practice. *In re Twin County Motorsports*, 367 N.C. 613, 615, 766 S.E.2d 832 (2014). But making an "appearance" means "'coming into court,'" particularly "the overt act by which [defendant] submits himself to the court's jurisdiction[.]'" *Hamlin v. Hamlin*, 302 N.C. 478, 482, 276 S.E.2d 381 (1981) (*quoting* 5 Am. Jur. 2d *Appearance* § 1). "[A] party 'has appeared in the action' … only where that party has actually made some presentation or submission *to the district court* in the pending action." *Zuelzke Tool & Eng'g Co. v. Anderson Die Castings, Inc.*, 925 F.2d 226, 230 (7th Cir. 1991). Thus, "defendant's letter to plaintiff's counsel was not an appearance[.]" *Town & Country Kids v. Protected Venture Inv. Trust #1*, 178 F.R.D. 453, 455 (E.D. Va. 1998).

Excluding fees did not void the offer. Copyright Act fees are discretionary, not an entitlement. 17 U.S.C. § 505. And the statute precluded awarding fees to Bradley because his

copyright registration was untimely. 17 U.S.C. § 412; *see Nat'l Med. Advisory Servs., Inc. v. Kolb*, No. 88-3575, 1989 U.S. App. LEXIS 22228, *9 (4th Cir. Sept. 29, 1989). Rule 68 did not require the offer of judgment to include fees that Bradley could not have obtained at judgment.

The August 16 and 19, 2019 emails, with the Rule 68 letter attached, separately offered "to settle this matter by making a $500 payment." DE 30-22 p. 2, DE 31-5 p. 1. Opponents had a duty to inform, even if the offer had some infirmity under Rule 68, because "it is evident that the offer was, at least, an offer of settlement." DE 83-1 ¶ 13. *See* ABA Formal Op. 326 (1970) ("it is the duty of a lawyer to inform his client of every settlement offer made by the opposing party"); *Patrick v. Williams*, 102 N.C. App. 355, 368, 402 S.E.2d 452 (1991) ("case law clearly establishes that attorneys may be held liable, among other breaches of duty, for failing to inform their clients of an existing settlement offer"). The bad faith in failing to convey settlement offers and litigation risks is so fundamental that Analytical need not prove that its offer would have been accepted. *Deadwyler v. Volkswagen of Am., Inc.*, 134 F.R.D. 128, 140 (W.D.N.C. 1991), *aff'd sub nom. Moore v. Volkswagen of Am., Inc*, 966 F.2d 1443 (4th Cir. 1992); *see* DE 84 p. 10.

Yet properly advising Bradley would have led to settlement. *See* DE 83-1 ¶ 28. The offer was ten times higher than Liebowitz's $50 valuation of the infringement claim, and the other claim was baseless in fact, as Analytical explained. DE 30-22 p. 2; DE 47 pp. 23, 31. Opponents chose to deny the parties that opportunity in bad faith, and "§ 1927 sanctions may be appropriate against counsel who 'needlessly and vexatiously 'multiplies a proceeding' by rejecting a settlement offer that would afford complete relief to his client." *Shaffer v. Farm Fresh, Inc.*, 966 F.2d 142, 146 (4th Cir. 1992). Their denial that they rejected the offer is simply wrong. DE 93 p. 13. They admitted that they never "responded to Analytical's offers to accept judgment." DE 46 ¶¶ 102-04. And Liebowitz's $5,500 counteroffer constituted a rejection as a matter of law. DE

83-6 p. 4; *see Cole v. Champion Enters.*, 496 F. Supp. 2d 613, 628 (M.D.N.C. 2007).

B.  **Liebowitz's unauthorized offers were invalid and further support sanctions.**

Opponents argue that Analytical itself was the cause of its costs incurred after it rejected Liebowitz's second offer on October 8, 2019. DE 93 p. 15. The argument is unavailing because both of his offers were unauthorized and therefore void. Liebowitz claimed his first offer was "authorized," but he made it behind Bradley's back, two days after telling him, "we will take it all the way to judgment." DE 83-6 p. 4, DE 83-1 ¶¶ 19-20. His second offer came a day after agreeing with opposing counsel to "return to our clients to see if a settlement can be reached"; Analytical's counsel duly conferred, while Liebowitz did not bother. DE 83-6 p. 1, DE 83-2 ¶ 10. Bradley "was not asked to 'authorize' [the first offer] and could hardly have done so without knowing of it," and Opponents "never informed [him] about [the second] offer before it was made, or sought [his] consent or specific authorization for that offer." DE 83-1 ¶¶ 20, 23.

Bradley had agreed in general terms that LLF could take steps to protect his interest. *Id.* ¶ 20 & p. 11 ¶ 1; DE 93 pp. 3, 14 n. 2. But that does not suffice. "The authority to negotiate, however, is far different from the authority to agree to a specific settlement." *Auvil v. Grafton Homes, Inc.*, 92 F.3d 226, 230 (4th Cir. 1996). It is sanctionable for plaintiff's counsel to "conduct[] active settlement negotiations … without *specific authority* from any plaintiff …. for any demand made on [their] behalf[.]" *Deadwyler*, 134 F.R.D. at 140 (emphasis added). "An attorney cannot compromise his client's case without special authority to do so[.]" *Moye v. Cogdell*, 69 N.C. 93, 95 (1873). "[A] lawyer cannot divest a client of his exclusive authority to settle his case." N.C. State Bar Op. RPC 145 (Jan. 15, 1993). A settlement reached without such specific client authority is both invalid and void. *Dembinski v. Stage Rigging Servs., Inc.*, No. COA09-985, 2010 N.C. App. LEXIS 178, *3-4, *reported at* 690 S.E.2d 768 (Feb. 2, 2010); *cf. Owens v. Voncannon*, 251 N.C. 351, 354, 111 S.E.2d 700 (1959) (consent judgment).

Liebowitz's invalid offers cannot exonerate or redeem the harm he caused by withholding Analytical's valid offers. It was all part of the same chain of bad faith conduct. "No type of misbehavior by an attorney is more … inherently in 'bad faith,' than the failure to communicate offers of settlement"—whether made to the client or ostensibly by him. *Deadwyler*, 134 F.R.D. at 140. The contention that the case "could have been resolved" upon the sham offer on October 8, 2019 is untenable. DE 93 p. 24. Opponents themselves assert that there is no basis to consider that offer viable: "there is no evidence that Bradley, even in hindsight, … would have accepted an offer to settle for $500.00 at that time." *Id.* p. 13. It could not have bound him. *See Tauber v. E.F. Hutton & Co.*, No. 85-1895, 1986 U.S. App. LEXIS 37900, *7 n.1 (4th Cir. Sept. 15, 1986) ("'the compromise, being unauthorized and being therefore in itself void, ought not to bind the injured party'") (*quoting Holker v. Parker*, 11 U.S. 436, 453 (1813)). Opponents have no basis to rely on any Liebowitz offer that Bradley did not know about, consent to, or authorize.

### III.  Opponents' arguments to limit Analytical's recovery are baseless.

Failing to appreciate the significance of "but for" causation, Opponents contend that their liability for Analytical's fees should be capped by other supposed contributing factors, namely Analytical's rejection of the void offer and its GoFundMe litigation funding. Those routine aspects of Analytical's defense do not mitigate the effects of their bad faith conduct.

"Often, events have multiple but-for causes. … the traditional but-for causation standard means [Opponents] cannot avoid liability just by citing some *other* factor that contributed[.]" *Bostock v. Clayton County, Ga.*, 140 S. Ct. 1731, 1739, 207 L. Ed. 2d 218 (2020). "It has long been the law that there is a difference between 'but for' causation and 'sole' causation." *EEOC v. City of Greensboro*, No. 1:09CV576, 2010 U.S. Dist. LEXIS 132159, *35 (M.D.N.C. Dec. 14, 2010) (citations omitted). "[B]ut-for causation is established 'if the predicate act combines with other factors to produce the result, so long as the other factors alone would not have done so—if,

so to speak, it was the straw that broke the camel's back[.]'" *United States v. Campbell*, 963 F.3d 309, 316 (4th Cir. 2020) (*quoting Burrage v. United States*, 571 U.S. 204, 211 (2014)).

"It is a common principle of tort law that where more than one action or party each was a contributing cause of subsequent damage, liability may be imposed on the wrongdoer if the intervening acts or final result were foreseeable to the wrongdoer." *In re GMC*, 110 F.3d 1003, 1018 (4th Cir. 1997) (awarding $190,541.31 in costs and fees as contempt sanctions against plaintiff's counsel; "[defendant] need not prove that the actions it took in [litigation] were solely caused by [plaintiff's counsel's] contumacious behavior"). It was readily foreseeable to Liebowitz that failing to inform Bradley of the settlement offers would force Analytical to incur defense costs, and that it would therefore reject his October 8, 2019 offer and pursue its sunk costs, even if the defense required outside funding. Analytical told Liebowitz that it made the initial offer hoping to avoid engaging counsel. DE 30-22 p. 2. His obstinacy required it. Analytical told him, a day before his offer, that it would seek to recoup its costs. DE 83-5 ¶ 5. He and Bradley knew about the GoFundMe campaign by then too, as Facebook users had posted about it on Bradley's Facebook page. *See* DE 29-2 at 78:8-79:5, DE 31-8 p. 4, DE 83-1 ¶ 18. These later, foreseeable aspects of the defense are no basis to limit Opponents' liability.

A.     **Liebowitz's October 8, 2019 offer does not limit Opponents' liability.**

Opponents' argument for limiting Analytical's recovery to fees and costs incurred before October 8, 2019 is baseless. DE 93 p. 25. Analytical offered on that day to settle on exactly those terms: "all of its attorneys' fees accrued to date." DE 83-6 p. 1, DE 83-5 ¶ 6. Opponents did not inform Bradley. DE 83-1 ¶ 23. After putting Analytical through two years of costly litigation, they are not entitled to the terms of yet another settlement proposal they chose to ignore.

Their argument also depends on a false equivalence. Analytical's valid $500 offers, before it had any costs of suit, were superior to Liebowitz's October 8, 2019 offer, which was

void and therefore had no value. By then Analytical had incurred $8,347.35[1] in litigation costs, and had told Liebowitz "that Analytical would seek to recoup the thousands of dollars in legal fees it had incurred." DE 83-5 ¶ 6. So his unauthorized offer did not "'finally acced[e] to the most favorable terms offered[.]'" DE 93 p. 14 (*quoting E. & J. Gallo Winery v. Gallo Nero*, 782 F. Supp. 457, 471 (N.D. Cal. 1991)). *Gallo* is not analogous. In that case the defendant "acceded" to an injunction the plaintiff had demanded, which was all that the plaintiff ultimately obtained at summary judgment. 782 F. Supp. at 460, 471. But Analytical won judgment and paid Liebowitz nothing, securing a better result than any offer proposed.

**B.     GoFundMe donations to Analytical's defense do not limit Opponents' liability.**

Opponents, having caused Analytical to incur $184,490.42 in fees and costs, state "as an equitable concern" that it has so far paid its lead counsel $46,907.70, largely from GoFundMe contributions, and argue that therefore awarding any more than $8,325.65 would be punitive, not compensatory. DE 93 p. 25. The argument is not supported by precedent, logic, or equity. Nothing in 28 U.S.C. § 1927 or in the Court's inherent powers requires a party seeking to recover its fees and costs to demonstrate that it has paid its lawyers in full—or at all; "courts frequently allow recovery even where the prevailing party did not actually suffer financial harm, as in cases where a third party provided or paid for the prevailing party's legal services." *Hughes v. Benjamin*, No. 17-cv-6493, 2020 U.S. Dist. LEXIS 139698, *11-12 (S.D.N.Y. Aug. 5, 2020) (collecting cases). *See also* DE 84 pp. 27-28. Opponents cite no case to the contrary.

"Analytical … only wants to be made financially whole, and to have Mr. Liebowitz and his law firm held accountable for their actions." DE 83-2 ¶ 14. It will offer to repay its GoFundMe donors if its fees are awarded, so there is no concern about a windfall. *Id.* It agreed to pay all fees and costs counsel incurred, but could not cover the bills on its own; "Analytical

---

[1] Opponents' tally of $8,325.65 omits $21.70 in costs. *See* DE 83-13 p. 1-2, DE 83-3 pp. 7-12.

8
Case 5:19-cv-00249-FL   Document 94   Filed 09/13/21   Page 8 of 12

lacked the financial resources to pay for a defense that lasted longer than a few months." *Id.* ¶ 13, DE 84 p. 26; *see* DE 83-3 ¶ 23, DE 83-5 ¶ 27. Its balance due to lead counsel alone remains over $100,000, which it has been defraying with payments totaling $1,000 per month. DE 83-13 pp. 24-27. Ultimately, the expenses foisted on Analytical by Opponents' misconduct broke up the business. DE 83-2 ¶¶ 2, 16. Nothing is equitable about forcing Analytical to bear any of it.

C. **Opponents identify no fees unduly incurred due to their misconduct.**

Opponents' contention that Analytical's lead counsel "spent excessive time on this matter" has no support. DE 93 p. 24. Once forced to litigate, Analytical spent the time needed to ensure its successful defense. The $184,490.42 total sought is relatively modest; "the median litigation cost to take a copyright infringement case where 'less than 1 million' is at stake through the close of discovery was $250,000." Morgan Pietz, *Copyright Court*, 64 J. Copyright Soc'y 1, 4 (Winter 2017) (*citing* Am. Int'l Prop. Law Ass'n, *Report of the Economic Survey 2015* (2015)); *see also Berg v. M&F W. Prods., Inc.*, No. 6:19-cv-418-JDK, 2021 U.S. Dist. LEXIS 119524, *10-12 (E.D. Tex. June 28, 2021) (in case brought by Opponents, awarding $483,808.20 under Copyright Act to prevailing defendant). Opponents identify no unwarranted hours or costs.

It was reasonable for lead counsel to spend 9.0 hours researching and drafting a 17-page answer with 12 thoroughly pleaded affirmative defenses, most of which were litigated, and 3 counterclaims. DE 93 p. 24. Spending 0.8 hours researching dockets of other cases, to cite precedents unavailable on Lexis, was also reasonable. *Id.*; DE 83-13 pp. 1, 4, 6, 8. Liebowitz's Local Civil Rule 83.1(e)(5) violations and filing deficiencies "mirrored" in other cases in this Court required that brief attention. *Masi v. Mythical Entm't*, No. 5:19-cv-438-FL, 2020 U.S. Dist. LEXIS 50681, *1-2 (E.D.N.C. Mar. 24, 2020); *see* DE 16. Analytical's modest costs, including $36.60 in PACER charges on such research over two years, were also reasonably incurred. After discovery, lead counsel properly focused work on preparing the successful summary judgment

brief (54.8 hours), supporting documents (18.5 hours), and motion to exclude (9 hours); the response to Liebowitz's summary judgment motion (36.9 hours) and supporting documents (13 hours); and Analytical's reply (23 hours) and surreply (14.2 hours). DE 83-13. Opponents necessitated that time by failing to counsel Bradley about the risks and flaws of his case, willfully frustrating settlement, withholding discovery, obfuscating dispositive facts, and refusing to concede meritless claims.

Opponents argue that they "should not be required to pay Analytical's costs and expenses pursuing its counterclaims." DE 93 p. 23. Analytical prevailed on two of its three counterclaims, and spent at most 6.6 hours on all three before their resolution by stipulation. DE 83-3 p. 11; *see* DE 83-13 pp. 1, 14, 22. So any reduction of the award on this ground should be by at most $935, for 2.2 hours (one-third of 6.6 hours) at counsel's highest billed rate of $425 per hour. But no reduction is due. The full cost of defending this action is properly compensated by sanctions because it would have been avoided if Opponents had not violated their obligations as counsel.

Opponents contend that lead counsel spent "excessive time … communicating via email with his client and local counsel." DE 93 p. 23. Such time was often waived, and in no month did lead counsel bill for more than 3 hours of communications with Analytical, or more than 2 hours spent conferring with local counsel. DE 83-13. Opponents' blinkered view of the time necessary to keep clients in the loop is what forced this frivolous suit to judgment. It cannot be credited.

**IV.  Conclusion.**

Opponents' response fails to provide any valid reason to deny Analytical an award of its reasonably incurred fees and costs. Wherefore, and for the reasons previously stated in and in support of the motion for sanctions, the Court should grant the motion in its entirety.

Respectfully submitted this 13th day of September, 2021.

        Analytical Grammar, Inc.

        By its attorneys:

        DAN BOOTH LAW LLC

        /s/ <u>Dan Booth</u>
        Daniel G. Booth
        60 Thoreau Street, #121
        Concord, MA 01742
        dan@danboothlaw.com
        Local Civil Rule 83.1(e) Special Appearance

        PARKER POE ADAMS & BERNSTEIN LLP

        Christopher M. Thomas
        N.C. State Bar No. 31834
        christhomas@parkerpoe.com
        PNC Plaza
        301 Fayetteville Street, Suite 1400 (27601)
        P.O. Box 389
        Raleigh, North Carolina 27602-0389
        Telephone: (919) 835-4626
        Facsimile: (919) 834-4564
        Local Civil Rule 83.1(d) Counsel

**CERTIFICATE OF SERVICE**

    I, Dan Booth, hereby certify that on September 13, 2021, true copies of Analytical Grammar, Inc.'s foregoing Reply in Support of Its Motion for Attorneys' Fees, Costs, and Expenses Pursuant to 28 U.S.C. § 1927 and the Court's Inherent Authority was electronically filed using the Court's CM/ECF system, which will send notification of such filing to the following counsel of record:

Susan Freya Olive
Olive & Olive, P.A.
500 Memorial Street
P.O. Box 2049
Durham, NC 27702-2049
solive@oliveandolive.com
(counsel for plaintiff Matthew Bradley)

Luke A. Dalton
McAngus, Godelock & Courie, PLLC
P.O. Box 30516
Raleigh, NC 27622
luke.dalton@mgclaw.com
(counsel for Richard A. Liebowitz and Liebowitz Law Firm, PLLC)

September 13, 2021                  /s/ <u>Dan Booth</u>
                                               Daniel G. Booth