IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:19-CV-249-FL

| MATTHEW BRADLEY, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| ANALYTICAL GRAMMAR, INC., | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on defendant's motion for attorneys' fees, costs, and expenses against plaintiff's former lead counsel and firm, jointly and severally, pursuant to Federal Rule of Civil Procedure 54(d). (DE 83). The motion has been briefed fully, and the issues raised are ripe for ruling. For the reasons that follow, the motion is granted in part and denied in part.

**STATEMENT OF THE CASE**

Plaintiff commenced this action June 18, 2019, asserting claims of copyright infringement under the Copyright Act, 17 U.S.C. §§ 106 and 501, and removal of copyright management information under the Digital Millennium Copyright Act, 17 U.S.C. § 1202(b), arising out of defendant's alleged use on its Facebook page of plaintiff's photograph with reference to a linguistic pun, "[t]his is wrong on so many levels." (Compl. Ex. B (DE 1-2)). Plaintiff sought actual damages, defendant's profits or gains, and statutory damages up to $25,000.

Defendant filed its answer September 13, 2019, and asserted counterclaims seeking declaratory judgment that plaintiff's alleged copyright was invalid and unenforceable, defendant did not infringe plaintiff's alleged copyright, and defendant did not remove, alter, or falsify copyright information when it distributed plaintiff's photograph. On October 4, 2019, the court

on its own initiative issued notice to plaintiff's former attorney, Richard P. Liebowitz, to cure noticed deficiencies in each of the three cases assigned to the undersigned, describing the dockets as "a harbinger for troubled litigation ahead." (Order (DE 16) at 2).

Following a period of discovery, on July 17, 2020, defendant moved for summary judgment and to exclude undisclosed evidence and arguments on damages. That same date, plaintiff moved for partial summary judgment on defendant's affirmative defenses and defendant's counterclaims for declaratory judgment of invalidity of plaintiff's copyright and of non-infringement.

In the interim, the Committee on Grievances for the Southern District of New York temporarily suspended Richard P. Liebowitz from the practice of law, pending outcome of disciplinary proceedings against him. Thereafter, pursuant to Local Civil Rule 83.7b(b)(ii), the clerk of this court ordered Richard P. Liebowitz to demonstrate why imposition of identical discipline would not be warranted. Liebowitz failed to respond to the clerk's show cause order within 30 days, as directed. On February 18, 2021, the court ordered him to show cause why he should not be disqualified from representing plaintiff in this matter, to which he responded. On March 3, 2021, the court granted defendant's motion for summary judgment and entered judgment in favor of defendant. (DE 63, 64). On March 19, 2021, the court disqualified Richard P. Liebowitz from representing plaintiff. (DE 680.

Plaintiff caused notice of appearance to be filed by new counsel on his behalf May 27, 2021, and that same day plaintiff and defendant filed a consent motion to stay all proceedings for 30 days and to compel Richard P. Liebowitz to disclose his malpractice insurance information. On June 8, 2021, the court stayed the case, but denied the parties' motion for production of malpractice information, citing North Carolina ethical rules.

2

On June 15, 2021, counsel entered an appearance for Richard P. Liebowitz and his law firm, Liebowitz Law Firm, PLLC (collectively "respondents").[1] The instant motion followed, in which defendant seeks $177,518.00 in attorneys' fees[2] and $6,689.32 in costs from respondents. In support, defendant relies upon memorandum of law and declarations of: plaintiff; Erin Karl ("Karl"), former president, owner, and sole proprietor of defendant; Christopher M. Thomas ("Thomas"), local counsel for defendant, with exhibits thereto; Dan Booth ("Booth"), also counsel of record for defendant, with exhibits thereto; and Edward L. Timberlake, a copyright and trademark attorney practicing in the Raleigh area. In response, respondents rely upon a declaration of Luke A. Dalton, counsel for respondents, and a declaration of Richard P. Liebowitz, both with exhibits.

In the meantime, while briefing proceeded forward on the instant motion, the court entered an order and judgment on July 27, 2021, upon the parties' joint stipulation and motion for disposition of all outstanding claims and counterclaims, dismissing defendant's first counterclaim with prejudice, granting defendant's second and third counterclaim, and dismissing plaintiff's claims, leaving only the instant motion for disposition. (DE 88, 89).

---

[1] On June 15, 2021, Richard P. Liebowitz moved to quash subpoenas issued by defendant, which subpoenas defendant withdrew shortly before filing the instant motion.

[2] Though defendant asserts in its motion and memorandum that it seeks a total of $177,801.10 in attorneys' fees, (Def. Motion (DE 83) at 1; Def. Mem. (DE84) at 30), Thomas provides in his declaration that Parker Poe seeks $24,985.50 in fees, (Thomas Decl. (DE 83-3) ¶ 12), and Booth provides in his declaration that Dan Booth Law seeks $ 152,532.50 in fees, (Booth Decl. (DE 83-5) ¶ 26). Those individual amounts add up to a lesser total amount of $177,518.00, which the court takes as the relevant total.

3

## COURT'S DISCUSSION

Defendant moves for attorneys' fees, costs, and expenses against respondents, jointly and severally, pursuant to 28 U.S.C. § 1927 and the court's inherent authority. The court considers first whether such sanctions are warranted and second, finding that they are, how much to award.

A.  Whether Respondents Should be Sanctioned

"[F]ederal courts have inherent authority to sanction" deriving from their "powers . . . to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Six v. Generations Fed. Credit Union, 891 F.3d 508, 519 (4th Cir. 2018).[3] Courts are empowered "to fashion an appropriate sanction for conduct which abuses the judicial process," such as "an order . . . instructing a party that has acted in bad faith to reimburse legal fees and costs incurred by the other side." Id. Hall v. Cole, 412 U.S. 1, 5(1973) ("[I]t is unquestioned that a federal court may award counsel fees to a successful party [pursuant to its inherent authority] when his opponent has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.")

Courts also may impose sanctions under 28 U.S.C. § 1927, which provides in pertinent part:

> Any attorney . . . admitted to conduct cases in any court of the United States . . . who so multiplies proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorney's fees reasonably incurred because of such conduct.

A finding of bad faith is a necessary precondition to the imposition of fees on an attorney under § 1927. See Brubaker v. City of Richmond, 943 F.2d 1363, 1382 n.25 (4th Cir. 1991). Unlike Federal Rule of Civil Procedure 11, which primarily governs pleadings, § 1927 obligates attorneys to avoid dilatory tactics and delay throughout the entire course of litigation. Bakker v. Grutman, 942 F.2d 236, 242 (4th Cir. 1991) (emphasis omitted) ("Section 1927 was intended to sanction

---

[3]  Internal citations and quotation marks are omitted from all citations unless otherwise specified.

conduct Rule 11 does not reach; i.e., protracting or multiplying the litigation to run up the opposing party's costs, remedied by awarding excess attorneys' fees and costs."). Thus, § 1927 authorizes sanctions where counsel's bad faith conduct multiplies the proceedings and results in excess costs and expense to the opposing party.

While the United States Court of Appeals for the Fourth Circuit has not addressed the issue, other circuits have held that bad faith under § 1927 turns not on the attorney's subjective intent, but on the attorney's objective conduct. See Amlong & Amlong, P.A. v. Denny's, Inc., 500 F.3d 1230, 1240 (11th Cir. 2007); Cruz v. Savage, 896 F.2d 626, 632 (1st Cir. 1990) (holding the phrase "unreasonably and vexatiously" demands an objective analysis and § 1927 does not require malicious intent or a bad purpose); Braley v. Campbell, 832 F.2d 1504, 1512 (10th Cir. 1987) ("[T]he proper standard under . . . § 1927 is that excess costs, expenses, or attorney's fees are imposable against an attorney personally for conduct that, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court." (emphasis added)); Jones v. Continental Corp., 789 F.2d 1225, 1230 (6th Cir. 1986) (holding § 1927 authorizes a court to assess fees against an attorney despite the absence of any conscious impropriety); Knorr Brake Corp. v. Harbil, Inc., 738 F.2d 223, 227 (7th Cir. 1984) (holding district court "need not find that an attorney acted because of malice" to issue sanctions for intentional misconduct). But see Oliveri v. Thompson, 803 F.2d 1265, 1273 (2d Cir. 1986) ("[A]n award under § 1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay.").

The court's inherent powers and § 1927 both "permit awards of attorneys' fees against attorneys whose actions compromise standards of professional integrity and competence." In re Crescent City Ests., LLC, 588 F.3d 822, 831 (4th Cir. 2009). For instance, sanctions may be appropriate where an attorney violates "[t]he absolute obligation to communicate, effectively and

5

accurately, the terms of any offer of settlement for the client's decision." Deadwyler v. Volkswagen of Am., Inc., 134 F.R.D. 128, 140 (W.D.N.C. 1991), aff'd sub nom. Moore v. Volkswagen of Am., Inc., Nos. 91-2021, 91-2031, 91-2118, 91-2135, 1992 WL 145293 * 1 (4th Cir. June 25, 1992); see Shaffer v. Farm Fresh, Inc., 966 F.2d 142, 146 (4th Cir. 1992) ("Although a court may not use the threat of sanctions directly to force settlement of a case, § 1927 sanctions may be appropriate against counsel who needlessly and vexatiously 'multiples a proceeding' by rejecting a settlement offer that would afford complete relief to his client."). That obligation is one a lawyer "owes to his adversaries and the court as well as his clients," and at base is reflective of the more general obligation to keep clients informed of their case. Deadwyler, 134 F.R.D. at 140 ("Breach of this obligation should be viewed as 'a blatant disregard of the rules and regulations which permit the judicial machinery to function smoothly.'" (quoting Warner Brothers, Inc. v. Dae Rim Trading, Inc., 877 F.2d 1120, 1128 (2nd Cir. 1989))).

Here, sanctions are warranted under the court's inherent authority and § 1927, against respondents jointly and severally,[4] due to a failure to notify plaintiff of settlement offers. In particular, it is undisputed that on three occasions prior to filing an answer and engaging local counsel defendant offered to make a $500.00 payment to plaintiff and accept judgment to settle his claims. The first two offers were made by Karl as an agent of defendant, and the third was

---

[4] Respondents do not contest defendant's assertion that, if applicable, sanctions should be awarded jointly and severally against respondents rather than only Richard P. Liebowitz individually. The Fourth Circuit has affirmed a district court order awarding sanctions jointly and severally against law firms for which sanctioned attorneys practiced pursuant to § 1927. See Six v. Generations Fed. Credit Union, 891 F.3d 508, 518, 522 (4th Cir. 2018) (affirming Dillon v. BMO Harris Bank, N.A., No. 1:13-CV-897, 2017 U.S. Dist. LEXIS 18877 (M.D.N.C. Feb. 10, 2017)). Applying the same analysis from that underlying case, the record reflects the Liebowitz Law Firm, PLLC was on relevant pleadings, the firm name bears Richard P. Liebowitz's surname, there is no evidence to suggest Richard P. Liebowitz was acting outside the scope of his authority as an agent of Liebowitz Law Firm, PLLC, and Liebowitz Law Firm, PLLC has not presented any evidence to reduce its relative culpability. See Dillon, 2017 U.S. Dist. LEXIS 18877, at *22-24; see also Craig v. UMG Recordings, Inc., 380 F. Supp. 3d 324, 339 (S.D.N.Y. 2019) ("Because Liebowitz's actions were indistinguishable from those of [the Liebowitz Law Firm PLLC] as a firm, the Court awards costs and fees against both Liebowitz and the Liebowitz Law Firm PLLC, jointly and severally."). Thus, the court determines that, where Richard P. Liebowitz is liable, Liebowitz Law Firm, PLLC is liable also, jointly and severally.

made by Booth, counsel for defendant, on the day he was retained. All were made directly to Richard P. Liebowitz by email. (First Offer (DE 30-22) at 2; Second offer (DE 31-5) at 2; Third Offer (DE 31-6) at 3). Richard P. Liebowitz did not respond to these offers in advance of the deadline to file an answer nor did he inform plaintiff of them until months later, well after they had lapsed. He instead misinformed plaintiff following the offers made that defendant had defaulted in the case. ((DE 73) ¶ 5(c)). After defendant filed its answer, Richard P. Liebowitz offered to settle the action for $5,500.00, stating that he had been "authorized" to make the offer, when in fact plaintiff was unaware of the offering. (Bradley Decl. (DE 83-1) ¶ 20; $5,500.00 Settlement offer (DE 31-7) at 2).[5] He then offered sums of $1,000.00 and $500.00, again without consulting plaintiff. (Booth Decl. (DE 83-5) ¶5; Email Exchange (DE 83-6) at 1).

Respondents' failure to notify plaintiff of the settlement offers, and Richard P. Liebowitz's subsequent offerings without authorization, were "inherently in bad faith." Deadwyler, 134 F.R.D. at 140 ("No type of misbehavior by an attorney is more universally and categorically condemned, and is therefore more inherently in 'bad faith,' than the failure to communicate offers of settlement."). That failure was compounded by respondents' additional failure to inform plaintiff of the risks of litigation. See id. (finding significant the failure to inform named plaintiffs of the incumbent risks, which in turn induced the plaintiffs to participate in the class action). Tellingly, though the retainer agreement between plaintiff and respondents provided that "[t]he Copyright Act includes a provision in which attorney[s'] fees may be awarded to prevailing plaintiffs," it did not additionally note that provisions of the Act also authorize awarding attorneys' fees to prevailing defendants. (See Bradley Decl. Exhibit A (DE 83-1) at 11). Plaintiff in fact was "never

---

[5] Respondents assert Booth's declaration should be stricken "as it is replete with contested matters" and further both Booth's and Bradley's declarations should be stricken as they "are replete with hearsay." (Opp. Mem. (DE 93) at 15). Where respondents fail to cite to offending paragraphs or pages with any particularity, their assertion, construed as a motion, is DENIED.

7

informed of any attendant risks in the nature of potential awards of costs or fees that could be imposed against [him], until after the [c]ourt entered summary judgment dismissing both of [his] claims." (Bradley Decl. (DE 83-1) ¶ 11).

Even more broadly, plaintiff was not adequately informed of developments in his case. Plaintiff was not provided a copy of the complaint prior to its filing, nor was he informed of defendant's filing of its answer and counterclaims, the merits of defendant's affirmative defenses, or the court order entered October 10, 2019, discussing sanctions and instructing Richard P. Liebowitz "to clean up his act."[6] (Order (DE 16) at 2; Bradley Decl. (DE 83-1) ¶¶ 8, 18, 24).

This conduct by respondents was unreasonable and vexatious, and it in turn multiplied proceedings that could have otherwise terminated at least as of August 20, 2019, the date on which defendant's final settlement offer was made. Other courts have found attorney failure to convey settlement offers to clients sanctionable pursuant to § 1927 even absent an apparent basis to believe the offer would have led to resolution of the case. See Deadwyler, 134 F.R.D. at 140 (adopting the view that an attorney failing to communicate substantial offers of settlements acts "unreasonably and vexatiously" under § 1927 even under "the strictest requirements"). Here, however, there is evidence that plaintiff would have accepted the initial offers of settlement. (See, e.g., Bradley Decl. (DE 83-1) ¶ 28 ("If I had been told about the relevant facts and risks, I certainly

---

[6] In addition, while not in itself determinative of the instant motion, the court notes that respondents' conduct in all regards is consistent with that which has been admonished by a myriad of courts as reflective of respondents' overall strategy to "target[] hundreds or thousands of defendants seeking quick settlements priced just low enough that it is less expensive for the defendant to pay the troll rather than defend the claim." McDermott v. Monday Monday, LLC, No. 17-cv-9230 (DLC), 2018 U.S. Dist. LEXIS 184049, at *5 (S.D.N.Y. Oct. 26, 2018); id. at * 9 ("As evidenced by the astonishing volume of filings coupled with an astonishing rate of voluntary dismissals and quick settlements in Mr. Liebowitz's cases in this district, it is undisputable that Mr. Liebowitz is a copyright troll."); see Usherson v. Bandshell Artist Mgmt., No. 19-CV-6368 (JMF), 2020 U.S. Dist. LEXIS 112368, at *66 (S.D.N.Y. June 26, 2020) ("[Respodnents'] willful disregard of the registration requirement is part of their broader strategy to use the burdens of litigation to extract settlements, even in frivolous or unmeritorious suits."); see also Mondragon v. Nosrak LLC, Civil Action No. 19-cv-01437-CMA-NRN, 2020 U.S. Dist. LEXIS 82934, at *34-35 (D. Colo. May 11, 2020) ("Just one person, and especially a young and inexperienced person who . . . still does not have in place a software system to keep track of his numerous commitments to courts around the country, cannot competently prosecute the number of cases Mr. Liebowitz is filing.").

would have considered any potential settlement in light of those facts and risks."); id. ("[T]he fact that . . . Liebowitz made an offer to accept a payment of $500 . . . suggests that an amount in or around that sum would not have been an unreasonable early settlement figure that would have been acceptable to everyone and would have terminated the lawsuit[.]")). Indeed, it appears from the record that the initial offers of settlement would have afforded complete relief to plaintiff. (See Pl. Mem. (DE 47) at 23, 31 (arguing plaintiff might have obtained a $50 fee for the use); see also Masi v. Mythical Entm't, No. 5:19-CV-438-FL, Response to Show Cause Order at 3 (E.D.N.C., filed Nov. 13, 2019, ECF No. 16) (respondents' response to show cause order providing that the photograph in the instant case is "of modest value")); Shaffer, 966 F.2d at 146.

In addition, after failing to communicate defendant's offers of settlement, respondents further multiplied proceedings by continuing to litigate after it became clear upon discovery that plaintiff's claims were without merit. In its summary judgment order, the court cited to defendant's initial responses to requests for production and concluded: "the record reflects that defendant reposted the photograph pursuant to an express license. . . . [and it] is undisputed that defendant received the photograph in a message from a third party, Gene Boercker, and that message did not include any information attributing the photograph to plaintiff." (March 3, 2021 Order (DE 63) at 1-2); see Blue v. U.S. Dep't of Army, 914 F.2d 525, 537 (4th Cir. 1990) ("[D]ogged pursuit of a colorable claim becomes actionable bad faith once the attorney learns (or should have learned) that the claim is bound to fail."). Additionally, respondents created delays in relation to Richard P. Liebowitz's eventual disqualification, including that created by his failure to respond to the clerk of court's initial show cause order. Such dilatory action was consistent with the many deficiencies chronicled in this court's October 10, 2019, order, again indicative of bad faith. (See Oct. 10, 2019 Order (DE 16) at 2-5).

9

Respondents' arguments to the contrary are unavailing.  Respondents primarily assert that defendant's offers of settlement were invalid under Federal Rule of Civil Procedure 68 as all excluded attorneys' fees and at least the initial offers were sent by Karl, a non-attorney.  Even assuming defendant's failure to comply with the specific formalities of the rule, the court declines to construe the particularities of Rule 68 to constrain that which triggers the duty of an attorney to notify their client of what is evidently an offer of settlement.  Rule 68 promotes settlement by creating an exception to the general rule that allows a prevailing party to recover its costs—it does not purport to define the contours of what amounts to an offer of settlement triggering the duty to advise a client of an offer.  See EDNC Local Civ. R. 83.1(i); N.C. RPC 1.4(a)(3) ("A lawyer shall . . . keep the client reasonably informed about the status of the matter"), id. 1.4(b) ("A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."); id. cmt [2] ("[A] lawyer who receives from opposing counsel an offer of settlement . . . must promptly inform the client of its substance unless the client has previously indicated that the proposal will be acceptable or unacceptable or has authorized the lawyer to accept or to reject the offer.").  Indeed, whether pursuant to the attorney's duty to inform a client of an offer of settlement, or pursuant to the more general duty to keep a client reasonably apprised of developments, at least by defendant's third offer to settle the case, respondents were obliged to inform plaintiff of the offers.  To hold otherwise would be contrary to public policy favoring settlement of claims.  See Williams v. First Nat. Bank, 216 U.S. 582, 595 (1910) ("Compromises of disputed claims are favored by the courts.").

Respondents additionally argue that any error was harmless as they did engage in negotiations, and in fact offered to resolve the matter on the same terms as, and mere weeks after, the purported offers of judgment.  Those offers, however, were made by respondents without authorization by plaintiff.  Though pursuant to the retainer agreement respondents had the

10

authority to take actions they deemed necessary to protect plaintiff's interest, they lacked specific authority to agree to a settlement amount. See Auvil v. Grafton Homes, Inc., 92 F.3d 226, 230 (4th Cir. 1996) ("The authority to negotiate . . . is far different from the authority to agree to a specific settlement."); Deadwyler, 134 F.R.D. at 140 (finding it sanctionable for sanctionable for plaintiff's counsel to "conduct[] active settlement negotiations . . . without specific authority from any plaintiff . . . . for any demand made on [their] behalf"); (see also Bradley Decl. (DE 83-1) ¶ 13 ("I had understood and believed that I would be consulted regarding any settlement offer.")). Thus, far from countering it, respondents' subsequent negotiations without specific authority from plaintiff contribute to the court's bad faith finding.

Finally, respondents assert defendant fails to establish that absent respondents' misconduct the lawsuit would have been earlier terminated. Namely, respondents assert that according to the express admissions by Karl and Booth defendant was determined to see the action through to final judgment. Similarly, respondents point to plaintiff's rejection of defendant's settlement demands at mediation. With regard to the latter rejection, by that time, whereas defendant initially offered plaintiff payment to settle, by mediation defendant would not agree to a settlement unless plaintiff covered their fees at least in part. (See Karl Decl. (DE 83-2) ¶ 11("By the time of mediation, [defendant] had incurred more than $50,000 in attorneys' fees[.]")). Thus, rejection of the later offer does not preclude acceptance of the initial offers. Indeed, as already noted, the record indicates plaintiff would likely have accepted defendant's offers, particularly considering that they afforded complete relief. (See Pl. Mem. (DE 47) at 23, 31). As for the admissions by Karl and Booth, they were made in the context of rejecting respondents' purported offers of settlement, after defendant had already incurred considerable fees in answering plaintiff's claims and engaging local counsel. (Karl Decl. (DE 83-2) ¶ 9); Booth Email (DE 83-6) at 1). Those expenses had not been incurred when defendant made its initial offers, and thus the later offers were not

commensurate. Respondents cite to no other evidence that defendant would not have honored its initial offers made.

Thus, based on the foregoing, where respondents unreasonably and vexatiously multiplied proceedings, sanctions are warranted pursuant to the court's inherent authority and 28 U.S.C. § 1927.

B.      Calculating Sanctions

The court's inherent authority and 28 U.S.C. § 1927 allows for the award of fees, costs, and expenses causally linked to the wrongful conduct. Goodyear Tire & Rubber Co. v. Haeger, 137 S. Ct. 1178, 1186 (2017) (sanction pursuant to the court's inherent powers); Six v. Generations Fed. Credit Union, 891 F.3d 508, 520 (4th Cir. 2018) (sanction pursuant to § 1927). Such awards are compensatory in nature and are not punitive. Goodyear Tire & Rubber Co., 137 S. Ct. at 1186 ("[A] sanction counts as compensatory only if it is calibrated to the damages caused by the bad-faith acts on which it is based."); Six, 891 F.3d at 520. Where, as here, "a court finds that a lawsuit, absent litigation misconduct, would have settled at a specific time . . . then the court may grant all fees incurred from that moment on." Goodyear Tire & Rubber Co., 137 S. Ct. at 1187-88.

"The essential goal in shifting fees is to do rough justice, not to achieve auditing perfection." Id. at 1187. "Accordingly, a district court may take into account its overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." Id.; see Lee v. First Lenders Ins. Servs., Inc., 236 F.3d 443, 446 (8th Cir. 2001) ("[A] sanctioning court must make an effort to isolate the additional costs and fees incurred by reason of conduct that violated § 1927. But the task is inherently difficult, and precision is not required."); Blue, 914 F.2d at 547 (stating that a "reasonable sanction" may mean sanctions "more or less than the actual costs and fees" created by the offending conduct).

12

In the context of fee-shifting statutes the Fourth Circuit has instructed district courts to determine a "lodestar amount (reasonable hourly rate multiplied by hours reasonably expended), applying the Johnson/Barber factors when making its lodestar determination." Grissom v. The Mills Corp., 549 F.3d 313, 320 (4th Cir. 2008) (citing Barber v. Kimbrell's Inc., 577 F.2d 216, 226 (4th Cir.1978) and Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717–19 (5th Cir.1974)). These factors are:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

Id. at 321. The district court need only discuss "those factors of the litany that are applicable to the present fee determination, and the district court is under no obligation to go through the inquiry of those factors that do not fit." In re A.H. Robins Co., Inc., 86 F.3d 364, 376 (4th Cir. 1996).

After calculating the lodestar figure, "the district court is in a position to adjust the award upward or downward in light of the relevant considerations identified in Johnson and elsewhere." Arnold v. Burger King Corp., 719 F.2d 63, 67 (4th Cir. 1983); see, e.g., McAfee v. Boczar, 738 F.3d 81, 89 (4th Cir. 2013) ("We have never ruled . . . that when certain Johnson factors have merged into the lodestar calculation, they are not to be otherwise considered to adjust the lodestar amount."). The court may "award[] some percentage of the remaining amount, depending on the degree of success" achieved. Grissom, 549 F.3d at 321. "[T]he trial court has broad discretion to reduce the fee award in light of mitigating factors, such as the difficulty of the case, the motivation of the [party required to pay attorneys' fees], and the relative economic status of the litigants." Arnold, 719 F.2d at 68.

13

In this case, respondents' misconduct occurred at least as of defendant's third offer of settlement, made by Booth August 20, 2019. As defendant incurred all its legal fees and costs subsequent to that offer, and all those fees costs are attributable to respondents misconduct as the case would have otherwise settled, the court in its discretion may consider the propriety of the entire amount of fees and costs sought. See Goodyear Tire & Rubber Co., 137 S. Ct. at 1187-88. Defendant is represented by Parker, Poe, Adams & Bernstein, LLP ("Parker Poe") as well as Dan Booth Law, LLC ("Dan Booth Law"). Reimbursement is sought for a total of $177,518.00 in fees. The relevant claimed hourly billing rates are as follows:

| Timekeeper | Position | Date of Admission into First State Bar | Rates |
|---|---|---|---|
| Booth, Daniel G. | Principal | 2006 | 425.00 |
| Thomas, Christopher M. | Partner | 2003 | 425.00 |
| Lawson, Catherine R. L. | Associate | 2012 | 350.00 |
| Carpenter, Sloan L.E. | Associate | 2018 | 295.00 |
| Thomas, M. Kathy | Paralegal | n/a | 265.00 |
| Marshall, Carrie J. | Paralegal | n/a | 235.00 |
| Burn, Victoria B. | Paralegal | n/a | 225.00 |
| Mayhew, Candace | Paralegal | n/a | 205.00 to 210.00 |
| Bibb, Marcia M. | Paralegal | n/a | 200.00 |
| Routh, Tina P. | Paralegal | n/a | 195.00 |

(Timberlake Decl. (DE 83-4) at 2-3).

Defendant provides detailed documentation supporting these rates including declaration by Timberlake that they are customary and consistent with the billing rates charged in the area, district

14

court orders finding them to be reasonable, and the 2019 Report of the Economic Survey of the American Intellectual Property Law Association ("AIPLA") which indicates all are within range with the national average. (See id. at 3; Thomas Decl. (DE 83-3) Exhibit 2 at 50 (an order from the United States District Court for the Middle District of North Carolina finding the rates of Thomas, Carpenter, and Routh to be reasonable); AIPLA 2019 Survey (DE 83-12) (reflecting that nationwide partners with 15 to 24 years' experience charge an average of $505 per hour, associates with 7 to 9 years' experience charge an average of $364 per hour, and associates with less than 5 years' experience charge an average of $309)); see, e.g., Craig v. PopMatters Media, Inc., 448 F. Supp. 3d 844, 848-49 (N.D. Ill. 2020) (awarding Booth's fees at $425 pursuant to 17 U.S.C. § 505); Lightspeed Media Corp. v. Smith, No. 12-cv-889, 2013 U.S. Dist. LEXIS 168615, *18-21 (S.D. Ill. Nov. 27, 2013) (awarding Booth's fees at $409 per hour as sanction against opposing party). Defendant also notes that Richard P. Liebowitz, who began practicing law in 2015, charges a rate of $425 and $450 per hour. See Seelie v. Original Media Grp. LLC, No. 19-cv-5643, 2020 U.S. Dist. LEXIS 5477, *13 (E.D.N.Y. Jan. 13, 2020); Aberle v. GP Clubs, LLC, No. A-19-CV-1066-RP, 2020 U.S. Dist. LEXIS 126126,*14 n.2 (W.D. Tex. July 17, 2020). Respondents do not challenge the billing rates, and the court finds them to be reasonable.

Multiplying these rates by time expended, counsel for defendant seeks $177,518.00 for a total of 440.4 work hours spent. In justifying this enormous total, defendant asserts that the subject matter, copyright infringement, is a specialized area of the law, and this case specifically required complex and rigorous defense.

But in this case, defendant seeks sanctions at least in some part on the basis that plaintiff's claims were "specious." (Def. Mem. (DE 84) at 13). Further, and as already noted as a basis for sanctions, at least as of defendant's initial responses during discovery it was clear that plaintiff's claims were without merit. (See March 3, 2021 Order (DE 63) at 1-2). Such significant time spent

15

by defendant's attorneys defending against plaintiff's claims, including over 100 hours on summary judgment alone, is unreasonable.

In its discretion, the court reduces the compensable time expended in calculating the lodestar amount. Rather than calculating the appropriate amount by reducing the number of hours which in turn were charged at different rates depending on actor, the court reduces the total fees by a percentage amount. In this instance, considering the totality of the circumstances, weighing the general complexity of this area of law against the "specious" nature of plaintiff's claims, the nominal initial settlement offer amount, as well as the relative simplicity of the facts in this case, the court finds that a 40% reduction in compensable time is warranted.

In sum, $106,510.80, or 60% of $177,518.00, is the appropriate lodestar amount. Dividing that between the two firms, the total comes to $14,991.30 and $91,519.50 to Parker Poe and Dan Booth Law, respectively (equaling 60% of their claimed total).

The court considers other issues meriting potential reductions. First, within defendant's asserted hourly total is time spent on a counterclaim later dismissed with prejudice by joint stipulation. See McAfee v. Boczar, 738 F.3d 81, 88 (4th Cir. 2013) ("[T]he court must subtract fees for hours spent on unsuccessful claims unrelated to successful ones."). Where it is impossible to comb through defendant's timesheets and attempt to separate the fees incurred as a result, in its discretion the court reduces the total amount by an additional 10%, to $95,859.72, comprising $13,492.17 and $82,367.55 to Parker Poe and Dan Booth Law, respectively.

Further, though Parker Poe does not seek recovery of fees incurred after this court's March 3, 2021, summary judgment order, Dan Booth Law seeks all fees incurred including those related to the instant motion. The text of § 1927 does not expressly address whether compensable fees may include time spent on a sanctions motion. Some courts have recognized that the language of § 1927 is broad enough to cover such fees. See, e.g., Dillon v. BMO Harris Bank, N.A., No. 1:13-

16

CV-897, 2017 WL 564501, at *2 (M.D.N.C. Feb. 10, 2017) (collecting cases). Nevertheless, the Fourth Circuit has cautioned that attorneys should be allowed to present a fair defense to a sanctions motion without fear of additional sanctions. See Blue, 914 F.2d at 548 ("Litigants should be able to defend themselves from the imposition of sanctions without incurring additional sanctions."). But see Norelus v. Denny's, Inc., 628 F.3d 1270, 1300 (11th Cir. 2010) ("[B]ecause it was taking a wholesale approach to the various theories under which the district court had awarded sanctions in the first place, the court [in Blue] apparently saw no reason to confront the plain language of § 1927").

Thus, at least where defendant has produced no evidence of bad faith by respondents with regard to litigating the instant motion, the court will not award those fees in full. Following March 3, 2021, the date of summary judgment, Booth billed approximately $22,100.00, almost all of that related to the instant motion. Recognizing the cautionary statement of the court of appeals in Blue, and the need to discourage excessive sanctions litigation, in a case such as this where proceedings on the merits were minimal, the court will award 50% of that billed amount, equaling $11,050.00, and totaling $71,317.55 for Dan Booth Law ($82,367.55 reduced by $11,050.00). This amounts to a total of $84,809.72, apportioned between the law firms.

The court rejects respondents' contention that the court should limit fees awarded to those incurred prior to defendant's refusal to resolve plaintiff's claims for $500.00 on October 8, 2019. Respondents argue that "after [defendant] refused to resolve these claims under the same terms it offered just over a month before, [respondents] should not be required to pay . . . fees." (Opp. Mem. (DE 93) at 24). Relatedly, respondents also point to the stark disparity between the near $180,000.00 fees incurred and the refusal to settle the case for that same $500.00 offer. As already noted, because respondents did not communicate defendant's initial settlement offers to plaintiff, defendant was forced to incur fees answering the complaint and engaging local counsel. Thus,

17

plaintiff's (or, more accurately, respondents') offer to settle for $500.00 payment to plaintiff was not commensurate with defendant's offers made prior to the incurrence of those fees. The court has taken into account already the low amount of the initial settlement offer. The court will not disqualify defendant from an attorneys' fee award for declining to take such offer and shoulder those fees incurred as a result of respondents' bad faith failure to inform plaintiff of defendant's offers of settlement.[7]

The court additionally rejects respondents' argument that the court should reduce fees based on GoFundMe donations to defendant, which covered approximately $37,000.00 of defendant's fees. Ultimately, the fact that defendant had the support of third party contributors through its GoFundMe campaign, though relevant, does not insulate respondents from paying an award. See Pickering v. Holman, 459 F.2d 403, 407-08 (9th Cir. 1972) (holding in a patent case that, although a third party had paid the prevailing party's legal fees and expenses, the prevailing party was nevertheless entitled to recover those fees and expenses from the losing party); American Council of the Blind of Colorado, Inc. v. Romer, 962 F.2d 1501, 1503-04 (10th Cir. 1992) (finding full payment of attorney's fees by nonparty to be irrelevant to an award of attorney's fees to a prevailing party under § 1988), vacated on unrelated grounds, 506 U.S. 1075 (1993); ABC, Inc. v. Primetime 24, Joint Venture, 67 F. Supp. 2d 558, 562 (M.D.N.C. 1999) ("[T]he fact that [a prevailing party's] legal fees and expenses have been paid by [a third party] may be a factor which the court considers in deciding whether to exercise its discretion in awarding fees, that fact does not bar [the prevailing party] from recovering such fees."), aff'd, 232 F.3d 886 (4th Cir. 2000).

---

[7] Notably, while defendant declined plaintiff's $500.00 offer to settle, it did communicate it was "open to an offer to pay all of its attorneys' fees accrued to date." (DE 93-8 at 2). It communicated the same at mediation.

Particularly where the court has already reduced defendant's fees beyond the amount claimed to have been fundraised by its campaign, the court declines to reduce the fees further on this basis.[8]

Turning, then, to costs and expenses, defendant seeks an additional $6,689.32 for the following items:

| Description | Cost |
| --- | --- |
| Bradley deposition (December 12, 2019) | $611.40 |
| Parker Poe costs for printing and duplication | $391.10 |
| Dan Booth Law legal research and postage | $283.10 |
| Dr. Aram Sinnreich (expert witness) | $5,190 (17.3 hours of work billed at $300 per hour) |
| Michele Ledo (court-appointed mediator) | $150 |

Respondents do not specifically contest these costs beyond asserting, without explanation or elaboration, Dan Booth Law spent unnecessary time reviewing other court documents on PACER. Nevertheless, for the same reason the court reduced fees to calibrate them to the complexity of the underlying matter, the court in its discretion also reduces the cost imposed in relation to defendant's expert witness, whose report was pertinent to defendant's fair use defense. Where $300.00 is already a discounted rate from the expert witness' standard rate, however, the court reduces the amount by only 20%. With that reduction, the court requires defendant pay $4,152.00 for the costs incurred for the expert witness, resulting in a total of $5,587.60 awarded in costs and expenses.

---

[8] Respondents additionally point to defendant's fees incurred in relation to its allegedly wrongful subpoenas to respondents and a financial institution following entry of summary judgment. As Dan Booth Law waived those fees, and Parker Poe does not seek fees following entry of summary judgment, the court does not consider this additional argument.

In sum, the court find the amounts of $84,809.72 in fees and $5,587.60 in costs awardable in this case, under to 28 U.S.C. § 1927 and the court's inherent authority. Those amounts are awardable against respondents, jointly and severally.

## CONCLUSION

Based on the foregoing, defendant's motion for attorneys' fees (DE 83) is GRANTED IN PART and DENIED IN PART, as set forth herein. The clerk is DIRECTED to enter judgment in favor of defendant against Richard P. Liebowitz and Liebowitz Law Firm, PLLC, jointly and severally, for attorneys' fees in the amount of $84,809.72, with $71,317.55 attributable to work incurred by Dan Booth Law, LLC and $13,492.17 to work incurred by Parker, Poe, Adams & Bernstein, LLP, together with costs in the amount of $5,587.60. The clerk then will close this case.

SO ORDERED, this the 11th day of July, 2022.

_____
LOUISE W. FLANAGAN
United States District Judge